**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 4:21-01074-P |
| v. | § § | |
| UNITED AIRLINES, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

I.      Plaintiffs Misstate the Standard of Review ............................................... 2

II.     Plaintiffs Ignore Threshold Barriers to Emergency Relief For Both the Putative
        Class and the Named Plaintiffs .................................................................. 3

        A.      This Court Lacks The Power To Grant The Nationwide Preliminary
                Injunction Sought, Given That No Class Has Been Certified Or Even
                Likely Could Be Certified .............................................................. 3

        B.      Plaintiffs Failed to Exhaust The EEOC Administrative Process ........... 5

III.    Plaintiffs Have Not Established a Likelihood of Success on the Merits ........... 8

        A.      United Has Not Waived Its Right to Contest the Plaintiffs' Claim to
                Reasonable Accommodation ........................................................... 8

        B.      Plaintiffs' Title VII Reasonable-Accommodation Claim Has No
                Likelihood of Success on the Merits ................................................ 9

        C.      Plaintiffs' ADA Reasonable-Accommodation Claim Has No Likelihood of
                Success on the Merits .................................................................. 13

        D.      Neither Title VII Nor the ADA Impose Independent Liability Based on the
                Absence of an "Interactive Process." ............................................. 15

        E.      Plaintiffs' Retaliation Claims Have No Likelihood of Success on the
                Merits ...................................................................................... 17

        F.      There Are Additional Defects in Certain Named Plaintiffs' Claims ......... 17

IV.     Equitable Factors Independently Preclude Injunctive Relief .......................... 18

CONCLUSION ................................................................................................. 20

<u>**TABLE OF AUTHORITIES**</u>

**Page**

CASES

*Alexander v. Sandoval,*
   532 U.S. 275 (2001).........................................................................................................6, 7

*Anderson v. U.S.F. Logistics (IMC), Inc.,*
   274 F.3d 470 (7th Cir. 2001) ...............................................................................................19

*Austin v. Davis,*
   876 F.3d 757 (5th Cir. 2017) ...............................................................................................16

*Barrington v. United Airlines, Inc.,*
   No. 1:21-cv-02602-RMR (D. Colo.).......................................................................................5

*Beckerich v. St. Elizabeth Med. Ctr.,*
   2021 WL 4398027 (D. Ky. Sept. 24, 2021)............................................................................1

*Bedeski v. Boeing Co.,*
   2015 WL 5675427 (W.D. Wash. Sept. 25, 2015)..................................................................17

*Big Tyme Invs., LLC v. Edwards,*
   985 F.3d 456 (5th Cir. 2021) .................................................................................................2

*Brener v. Diagnostic Ct. Hospital,*
   671 F.2d 141 (5th Cir. 1982) ...............................................................................................12

*Chevron U.S.A., Inc. v. Echazabel,*
   536 U.S. 73 (2002)................................................................................................................15

*Conlay v. Baylor Coll. of Med.,*
   2010 WL 774162 (S.D. Tex. Mar. 3, 2010)..........................................................................19

*Cruson v. Jackson Nat'l. Life Ins. Co.,*
   954 F.3d 240 (5th Cir. 2020) .................................................................................................4

*Davis v. Brennan,*
   2019 WL 4544973 (N.D. Tex. Aug. 22, 2019)...............................................................8, 11

*Davis v. PBGC,*
   571 F.3d 1288 (D.C. Cir. 2009) ............................................................................................2

*Davoll v. Webb*,
   194 F.3d 1116 (10th Cir. 1999) ........................................................................9

*DHS v. New York*,
   140 S. Ct. 599 (2020) ...................................................................................3, 5

*Drew v. Liberty Mut. Ins. Co.*,
   480 F.2d 69 (5th Cir. 1973) ..............................................................................7

*EEOC v. Chevron Phillips Chem. Co*,
   570 F.3d 606 (5th Cir. 2009) ...........................................................................16

*Employment Div. v. Smith*,
   494 U.S. 872 (1990) .......................................................................................20

*Ernst v. Methodist Hosp. Sys.*,
   1 F.4th 333 (5th Cir. 2021) ...............................................................................5

*Fort Bend Cnty. v. Davis*,
   139 S. Ct. 1843 (2019) .....................................................................................6

*Foy v. University of Texas*,
   146 F.3d 867 (5th Cir. 1998) ...........................................................................19

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021) ....................................................................................20

*Garcia v United States*,
   680 F.2d 29 (5th Cir. 1982) .............................................................................18

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) .....................................................................................4

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) .........................................................................................4

*Hernandez v. Reno*,
   91 F.3d 776 (5th Cir. 1996) ..............................................................................4

*Hohider v. United Parcel Serv., Inc.*,
   574 F.3d 169 (3d Cir. 2009) ........................................................................9, 16

*Hopkins v. Cornerstone Am.*,
   2006 WL 8453061 (N.D. Tex. Feb. 6, 2006) ....................................................18

*Hustvet v Allina Health Sys.*,
    910 F.3d 399 (8th Cir. 2018) ...............................................................14

*Ivy v. Jones*,
    192 F.3d 514 (5th Cir. 1999) ...............................................................13

*Leonce v. Callahan*,
    2008 WL 58892 (N.D. Tex. 2008) .........................................................16

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...............................................................................4

*Loulseged v. Akzo Nobel, Inc.*,
    178 F.3d 731 (5th Cir. 1999) ...............................................................16

*Marionneux v. Groendyke Transp., Inc.*,
    170 F.3d 183 (5th Cir. 1999) .................................................................8

*Martinez v. Tyson Foods, Inc.*,
    2021 WL 1289898 (N.D. Tex. Apr. 7, 2021) (Pittman, J.)......................17

*Myers v. Hose*,
    50 F.3d 278 (4th Cir. 1995) ...................................................................8

*Nichols v. Alcatel USA, Inc.*,
    532 F.3d 364 (5th Cir. 2008) ...............................................................20

*Picard v. Tammany Parish Hosp.*,
    423 F. App'x 467 (5th Cir. 2011) .........................................................16

*Ross v. Blake*,
    136 S. Ct. 1850 (2016)............................................................................6

*Sherrod v. Am. Airlines, Inc.*,
    132 F.3d 1112 (5th Cir. 1998) .............................................................13

*Silva v. City of Hidalgo, Tex.*,
    575 F. App'x 419 (5th Cir. 2014) .........................................................16

*Stacker v. Intellisource*,
    LLC, 2021 WL 2646444 (D. Kan. June 28, 2021) ...............................18

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)................................................................................4

*Tagore v. United States*,
   735 F.3d 324 (5th Cir. 2013) ........................................................................10, 11

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018)......................................................................................3, 4

*TWA v. Hardison*,
   432 U.S. 63 (1977)...........................................................................................9, 10

*United States v. Short*,
   181 F.3d 620 (5th Cir. 1999) ................................................................................6

*Webb v. Houston Comm. Coll. Sys.*,
   2010 WL 1727051 (S.D. Tex. Apr. 27, 2010) ......................................................13

*Wren v. Midwestern State Univ.*,
   2019 WL 501920 (N.D. Tex. Jan. 23, 2019) ........................................................14

*Wynn v. Whitney Holding Corp.*,
   220 F. Supp. 2d 582 (M.D. La. 2002)...................................................................14

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983) .................................................................................4

**STATUTES**

42 U.S.C. § 12111 ........................................................................................................15

42 U.S.C. § 12112 ......................................................................................................8, 15

42 U.S.C. § 12117 ..........................................................................................................5

42 U.S.C. § 12203 ........................................................................................................17

42 U.S.C. § 2000e ................................................................................................9, 10, 15

42 U.S.C. § 2000e-3 .....................................................................................................17

42 U.S.C. § 2000e-5 .............................................................................................5, 6, 7, 19

## <u>INTRODUCTION</u>

In their supplemental trial brief ("Tr. Br."), plaintiffs continue to press for an utterly unprecedented result: they are demanding a nationwide injunction on behalf of an uncertified class of employees with a dizzying array of legal claims and factual circumstances, none of whom have exhausted their administrative remedies. To achieve that end, they are asking this Court to decide—without full briefing or all the evidence—multiple hotly disputed issues, including but not limited to disagreements about: (1) the details of United's vaccine policies; (2) the costs and burdens of plaintiffs' proposed alternative accommodations; (3) whether any of the plaintiffs have properly alleged "disabilities"; (4) whether this Court has the authority to grant class-wide relief; (5) whether there is an atextual exception to the statutory exhaustion requirement; (6) the nature and degree of the claimed harm to plaintiffs; and (7) the harm of an injunction to United and the public.

The other courts that have, in the last several weeks and months, faced similar requests for emergency relief in vaccine policy litigation have all refused to second-guess private employer decisions regarding health and safety in the workplace. *See, e.g.*, *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027 (D. Ky. Sept. 24, 2021). This Court should do the same—there is no reason whatsoever to rush to decide the many complex issues in this case on an expedited, emergency basis.

In United's opening brief, we explained the multiple reasons why this Court should reject plaintiffs' request for preliminary injunctive relief, and we stand by those arguments. In this supplemental filing, we offer a further response to the arguments upon which plaintiffs rest in their trial brief.

## STATEMENT OF FACTS

For the facts, United refers to its September 23, 2021 Opening Brief ("Def. Op. Br.") and accompanying appendix ("Def. App."), the Supplemental Declaration of Kirk Limacher ("Def. Supp. App."), and to its forthcoming factual presentation during the October 8, 2021 hearing on the Preliminary Injunction.

## ARGUMENT

### I.   Plaintiffs Misstate the Standard of Review.

Invoking a 40-year-old decision, plaintiffs assert that "[w]here one or more of the [preliminary-injunction] factors is very strongly established, this will ordinarily be seen as compensating for a weaker showing as to another or others." Tr. Br. 2 (quoting *Knights of Ku Klux Klan v. E. Baton Rouge Par. Sch. Bd.*, 578 F.2d 1122, 1125 (5th Cir. 1978)).  That outdated assertion is contrary to governing law reaffirmed by the Fifth Circuit this year:  because a preliminary injunction "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements," if a party fails to establish *any* of the requirements, "the injunction should be denied and there is no need for the court to address the other requirements." *Big Tyme Invs., LLC v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021); *accord Davis v. PBGC*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (explaining that "the old sliding-scale approach to preliminary injunctions" is no longer viable under Supreme Court precedent).  Accordingly, here the "extraordinary remedy" of a preliminary injunction cannot issue if plaintiffs fail to satisfy even one of the following elements:  "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, [or] (4) that the grant of an injunction will not disserve the public interest." *Big Tyme Invs.*, 985 F.3d at 463-64.

II.     **Plaintiffs Ignore Threshold Barriers to Emergency Relief For Both the Putative Class and the Named Plaintiffs.**

Plaintiffs argue that "class-wide relief is warranted" and seek nationwide relief on behalf of the absent putative class members.  Tr. Br. 10.  Moreover, they do so even though the named plaintiffs have not exhausted the EEOC administrative charge process.  *Id.* 23-24.  But controlling precedent from the Supreme Court and the Fifth Circuit prevent this Court from granting a preliminary injunction that extends (A) to putative class members in the absence of a class that is certified or at least likely to be certified; or (B) to any plaintiffs who have not exhausted the mandatory statutory exhaustion requirement, given that the EEOC has declined to exercise its express statutory authority to seek interim relief pending conclusion of the administrative proceedings.

   A.     **This Court Lacks The Power To Grant The Nationwide Preliminary Injunction Sought, Given That No Class Has Been Certified Or Even Likely Could Be Certified.**

Plaintiffs' position is that, so long as *one plaintiff* is entitled to a preliminary injunction, this Court has the power to grant such relief to the *entire putative class*.  That is the only way to explain, for example, how they can seek a class-wide injunction in the absence of a determination that the class should be certified or is likely to be certified, or why they think it sufficient to argue that "*some* named Plaintiffs suffer from *bona fide* disabilities," Tr. Br. 13 (emphasis added).  Yet plaintiffs provide no authority for their notion that this Court may grant a nationwide injunction to an uncertified class simply by finding that one of the named plaintiffs is entitled to individual relief.  That position is foreclosed by both binding precedent and fundamental principles of Article III standing, equitable restraint, and Rule 23 certification.  *See generally DHS v. New York*, 140 S. Ct. 599, 600-01 (2020) (Gorsuch, J., concurring); *Trump v. Hawaii*, 138 S. Ct. 2392, 2424-29 (2018) (Thomas, J., concurring).

As the Fifth Circuit has held, unless and until a class is certified, class-wide relief is permissible only insofar as necessary to redress the named plaintiffs' own injuries.  *See Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996); *see also*, *e.g.*, *Zepeda v. INS*, 753 F.2d 719, 727-29 & 729 n.1 (9th Cir. 1983).  In *Hernandez*, because "[t]he breadth of the injunction issued by the trial judge … [was] not necessary to remedy the wrong suffered by the [named plaintiff]," the Fifth Circuit "modified [it] to apply to [the named plaintiff] only," while allowing the district court to revisit "the breadth of the injunction" if it "determine[d] to certify a class [on] remand."  91 F.3d at 781; *cf. Cruson v. Jackson Nat'l. Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) ("What brings putative class members before the class is certification," which is "the critical act … render[ing] them subject to the court's power.").  Here, of course, if any of the named plaintiffs are entitled to injunctive relief, their asserted injuries would be fully remedied by an individualized accommodation, so there is no basis to grant broader relief.

That conclusion is compelled by Article III's case-or-controversy requirement.  A federal court may entertain suit only by a plaintiff who has suffered a concrete "injury in fact," and may grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury."  *Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018).  Because neither standing nor remedies are "dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), injunctions cannot extend relief beyond the harms to "any plaintiff in th[e] lawsuit," *id.* at 358, or adjudicate claims by plaintiffs whose harms "ha[ve already] been remedied," *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009).  Relatedly, a court's equitable authority is confined to relief "traditionally accorded by courts of equity" in 1789, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999), and those courts "did not provide relief beyond the parties to the case," *Hawaii*, 138 S. Ct. at 2427 (Thomas J., concurring).

Moreover, considering class-wide relief for an uncertified class is contrary to Federal Rule of Civil Procedure 23.  If the named plaintiffs prevail, the putative absent class members all benefit; but if the named plaintiffs lose, the putative absent class members are not bound and remain free to relitigate elsewhere.  *See New York*, 140 S. Ct. at 601 (Gorsuch, J., concurring) (criticizing that "asymmetric" result).  That is particularly problematic here, as putative class members who sue elsewhere, *e.g.*, *Barrington v. United Airlines, Inc.*, No. 1:21-cv-02602-RMR (D. Colo.), could get the benefit of any injunction in this case *even where they lose in their own cases*.

Finally, plaintiffs' position is especially indefensible because they have not even requested class certification or attempted to show that certification is at least likely.  Nor could they possibly make that showing, given the myriad ways in which the putative class definition and injunction are overbroad, and the highly individualized inquiries that would be necessary if it were narrowed.  This Court lacks the power to grant the sweeping nationwide relief sought, and must limit its consideration to the individual claims of the named plaintiffs.

### B.    Plaintiffs Failed to Exhaust The EEOC Administrative Process.

Plaintiffs admit that "individuals asserting claims under Title VII or the ADA must complete the EEOC's administrative process before seeking 'final relief' through a civil action." Tr. Br. 24.  Title VII (and the ADA by incorporation) expressly provide that an employee "*must* exhaust administrative remedies" by both "fil[ing] a timely charge with the EEOC *and* then *receiv[ing] a notice of the right to sue*."  *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (emphases added); *see also* 42 U.S.C. §§ 2000e-5(f)(1), 12117(a).  Plaintiffs, however, seek to avoid this rule by claiming that because they each "ha[ve] a pending charge with the EEOC," they may seek preliminary injunctive relief "to maintain the status quo pending the action of the [EEOC]."  Tr. Br. 23-24.

Plaintiffs' position lacks any textual basis in the statute. Congress has specifically addressed the availability of interim judicial relief pending administrative exhaustion, authorizing only "the [Equal Employment Opportunity] Commission . . . [to] bring an action for appropriate temporary or preliminary relief pending final disposition of the charge" if "the Commission concludes … that prompt judicial action is necessary." 42 U.S.C. § 2000e-5(f)(2). Under basic principles of modern statutory interpretation, because Congress authorized the initiation of a civil action by either the EEOC or the employee, but then authorized *only the EEOC* to seek interim relief *if it* deems necessary, the clear inference is that Congress has *denied* authorization to the employee to flout the statutory exhaustion requirement when the Commission chooses *not* to seek interim relief. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

Plaintiffs' sole response is to invoke a 50-year-old decision that is both (1) no longer good law and (2) distinguishable. Tr. Br. 23-25 (citing *Drew v. Liberty Mut. Ins. Co.*, 480 F.2d 69, 73 (5th Cir. 1973) (concluding that employees had an implied right to ask a court "to fashion an equitable remedy" to protect their substantive rights by preserving the status quo pending the Commission's action)). *First*, "intervening Supreme Court case[s]" have "implicitly overrule[d]" the Fifth Circuit's "prior precedent." *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999). Most specifically, *Drew*'s remarkable premise that employees have always possessed an implied right to ask a court of equity to disregard an express statutory exhaustion requirement was flatly repudiated in *Ross v. Blake*, 136 S. Ct. 1850 (2016), which held that "mandatory exhaustion statutes … establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1857; *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (describing "Title VII's charge-

- 6 -

filing instruction" as a "claim-processing rule[]" that is "mandatory if timely raised").  And more generally, the *Drew* court's equity-based approach is a particularly stark exemplar of "the understanding of private causes of action that held sway 40 years ago when Title [VII] was enacted" but that the Supreme Court has long ago "abandoned" and "not returned to … since." *Sandoval*, 532 U.S. at 287.  As Justice Scalia explained in *Sandoval*, the Court has "sworn off the habit of venturing beyond Congress's intent" to create "private rights of action," as reflected by the statute's "text and structure."  *Id.* at 287-88.  And under that now-controlling approach, it is clear that employees have never had an "implied" right to ask a court of equity to disregard this *express* statutory exhaustion requirement, and it is crystal clear that employees have no such right after Congress gave *the Commission alone* the express right to seek interim relief when *it* deems necessary.  Simply put, in determining whether any preliminary injunction should be stayed pending appeal, the Fifth Circuit (let alone the Supreme Court) will not treat *Drew* as binding, and this Court should not either.

*Second*, *Drew* is distinguishable and should at least be limited to its peculiar facts to minimize the legal tension with intervening precedent.  In particular, after the employee in *Drew* had sought interim relief, the EEOC itself sought and obtained such relief under Section 2000e-5(f)(2), and the only reason the Fifth Circuit opined on the district court's dismissal of the employee's suit was to relieve the employee of being subjected to court costs and to give the employee the opportunity to seek attorneys' fees.  *See* 480 F.2d at 72.  Thus, regardless of its broader (and since-repudiated) reasoning, the precise holding of the case on the facts presented is that the employee's suit should not have been dismissed *after* the EEOC itself had obtained relief; the case thus should not be extended to a situation like this where the EEOC has chosen *not* to seek interim relief.

- 7 -

III.  **Plaintiffs Have Not Established a Likelihood of Success on the Merits.**

    A.  **United Has Not Waived Its Right to Contest the Plaintiffs' Claim to Reasonable Accommodation.**

As a threshold matter, plaintiffs assert that, because United chose to grant a limited accommodation to the six named plaintiffs and the putative class members, it somehow made a binding "determination" of coverage under Title VII and the ADA that this Court "should not revisit."  Tr. Br. 3, 13.  This argument finds no support in law or logic.

United's *pre-litigation* decision to grant a limited accommodation to a *broader* set of employees than legally required cannot relieve plaintiffs of their obligation *in litigation* to establish that they actually have a statutory right to compel United to extend a more favorable accommodation.  As courts have recognized, the perverse result of a contrary rule would be to "[d]iscourag[e] discretionary accommodations," as that "good deed would effectively ratchet up liability."  *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995); *accord Marionneux v. Groendyke Transp., Inc.*, 170 F.3d 183, at *1 n.1 (5th Cir. 1999) (citing *Myers* approvingly for the rule that defendants are "free to exceed the requirements of the ADA" without penalty); *Davis v. Brennan*, 2019 WL 4544973, at *10 (N.D. Tex. Aug. 22, 2019) (same under Title VII).

That is especially true here, where United voluntarily extended accommodations *beyond* what the ADA or Title VII require.  The ADA's accommodation requirement applies only to an "otherwise qualified individual with a disability."  42 U.S.C. § 12112(a)(5)(A).  United chose to accommodate non-disabled persons with "medical reasons" not to get vaccinated.  Def. App. 123.  Likewise, although United conducted some inquiry into the sincerity of the religious beliefs asserted, it by no means made a formal determination that sufficient evidence had been adduced to satisfy Title VII in court—it merely decided that it was sufficiently satisfied to grant the accommodation it was voluntarily providing.  *See* Def. Supp. App. 4 ¶ 6.

These two facts alone are sufficient basis to deny preliminary injunctive relief to the putative class.  Neither the class definition nor the proposed injunction is limited to persons with a "disability" or a *sincere* religious belief.  Compl. ¶ 118, at 29 ¶ (f).  Nor can they be so limited at this stage:  given the intensely individualized inquiry that would be necessary, plaintiffs face significant obstacles to class certification, *see Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 185-86 (3d Cir. 2009) (class was improper where "establishing the unlawful discrimination alleged by plaintiffs would require determining whether class members are 'qualified' under the ADA"— an assessment "too individualized and divergent").  *Accord Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (Rule 23 precluded class certification because "the district court would have had to conduct individualized inquiries to determine whether a potential class member met the statutory definition.").

**B.    Plaintiffs' Title VII Reasonable-Accommodation Claim Has No Likelihood of Success on the Merits.**

**1. "Undue Hardship."**  Although plaintiffs devote most of their Title VII discussion, Tr. Br. 2-8, to disputing the "reasonableness" of United's provided accommodation, the Court need not reach that issue.  A plaintiff's Title VII claim should be rejected if the plaintiff's proposed accommodations would impose more than a de minimis burden without inquiring into reasonableness.  This follows from the statutory language. 42 U.S.C. § 2000e(j) (calling for the "reasonabl[e] accomodat[ion] to an employee's or prospective employee's religious observance or practice *without undue hardship* on the conduct of the employer's business" (emphasis added)).

Plaintiffs concede (Tr. Br. 9) that "the Supreme Court has held that requiring an employer 'to bear more than a de minimis cost' in order to accommodate an employee 'is an undue hardship.'"  *TWA v. Hardison*, 432 U.S. 63, 84 (1977).  Their effort to overcome that standard distorts the rule beyond recognition.  As the Fifth Circuit has recognized, the Supreme Court

adopted an extremely lenient standard for "undue hardship" because, while private companies may not discriminate against religious employees, those employees may not externalize onto their co-workers and employers non-trivial costs of their religious practices. *See Tagore v. United States*, 735 F.3d 324, 330 (5th Cir. 2013). Thus, contrary to plaintiffs' suggestion, the *Hardison* "more than de minimis" standard applies with full force regardless of whether the employer would need "to breach a collective-bargaining agreement or pay other employees overtime." *Compare* Tr. Br. 9, *with, e.g.*, *Tagore*, 735 F.3d at 330 (finding a proposed accommodation to be more than de minimis simply because it "would be time-consuming, impractical and detrimental to" safety concerns).

Compared to vaccination, masking and testing will pose greater health risks to United's other employees and to plaintiffs themselves. Those increased risks cause significant problems for the operation of United's business. Those problems include the complexity and burden of designing testing protocols, obtaining the requisite testing and verification staffing and materials, and customer and employee dissatisfaction. Such a process would also be quite expensive. United conducts limited pre-departure crew testing for select destinations where a negative test is required for entry into the country, or where the risk for the crew members is particularly high. That limited testing has cost United $5,600,000, and is projected to cost $7,000,000 annually. Def. Supp. App. 5 ¶ 17. Rolling out "mask wearing, periodic antibody testing, and periodic COVID testing," as plaintiffs propose, Tr. Br. 21, for all employees who received an accommodation across the United States would be exponentially more costly and burdensome and interfere with "the conduct of [United's] business." 42 U.S.C. § 2000e(j). The record declarations and other materials in the case already reveal many of these. At the October 8 hearing, United will further detail these costs and burdens, as well as the various ways plaintiffs' proposed accommodations would impact the

co-workers of those seeking the religious accommodation—itself an independent way to establish that plaintiffs' claim fails the "de minimis" test.  *Tagore*, 735 F.3d at 329-30.  But, even on the existing record, plaintiffs' bald assertion that "it would be simple and cost little or nothing for United" to adopt their proposed alternatives cannot be taken seriously.  Tr. Br. 9.

In making that argument, plaintiffs are effectively questioning United's business judgment, replacing the "more than de minimis" standard with the type of heighted scrutiny of means-end fit required where the government expressly discriminates against religious persons.  *See, e.g.*, Tr. Br. 15 (asserting that "United cannot explain why indefinite unpaid leave is the *only* available accommodation").  Plaintiffs' challenge on costs/burdens of accommodations is also flawed in two other respects.  *First*, plaintiffs claim United's evidence "that a 'periodic testing protocol' would 'impose a substantial cost on United,' Limacher Decl. ¶ 6 (Def.'s App. 118), is undercut by United's acknowledgement that it is currently developing 'new testing and safety protocols' for certain United employees, *id*. ¶ 22 (Def.'s App. 121)."  Tr. Br. 13.  Not at all.  The fact that in its business judgment United is considering bearing significant costs to set up testing for operational employees who are not customer facing (Def. App. 117-18 ¶¶ 6-8)—or has outlaid costs to meet specific needs (as described above)—does not change the Title VII baseline of what is required.  *See Davis*, 2019 WL 4544973, at *10 (explaining that "employer's prior accommodation does not establish the reasonableness of that accommodation").  This is exactly the ratcheting up concern, discussed above, that would disincentivize employers from adopting a generous posture toward accommodations.

*Second*, plaintiffs seek to minimize the burden of testing by suggesting that the vaccine policy would not need to apply to "employees with pre-existing immunity to COVID-19."  Tr. Br. 5.  Evidence at the hearing will address the limitations of so-called "natural immunity."  Moreover,

there would need to be an administrative scheme or protocol to verify who has contracted COVID-19 (and developed antibodies as a result). Creating that scheme would be a complicated and costly endeavor. *See* Def. Supp. App. 5 ¶ 17.

**2. "Reasonable Accommodation."** In any event, the initial accommodation that United has already provided is "reasonable" in these extraordinary circumstances, and that is sufficient to reject plaintiffs' claim. *First*, United did *not* put the same accommodation "in place for all requesters." Tr. Br. 6. Instead, the accommodation was tailored to the employee's type of role and what mitigation was feasible, consistent with United's health and safety needs. As United's witness explains—and the hearing will further show—United accommodated certain employees with non-operational, non-customer facing roles by allowing them "to work remotely on a case-by-case basis"; and it accommodated employees with operational non-customer facing roles, such as ramp personnel and mechanics, with a temporary leave that will end as soon as United can implement an effective safety protocol tailored to each specific location and circumstance. Def. Supp. App. 3 ¶¶ 10-12.

*Second*, plaintiffs' suggestion that United implemented a system where "'very few people' would receive accommodations" is false. Tr. Br. 16. The truth is United granted: (A) about 82% of religious accommodation requests and (B) about 63% of medical accommodation requests. *See* Def. Supp. App. 2 ¶ 8. *Finally*, although plaintiffs may have preferred a different accommodation, Title VII accommodations "need not be on the employee's terms." *Brener v. Diagnostic Ct. Hospital*, 671 F.2d 141, 146 (5th Cir. 1982). Temporarily placing employees on leave—pending new safety measures—is not unreasonable, particularly given that keeping them in the workplace would increase risks to the health of co-workers and impose significant costs on the business.

**C.     Plaintiffs' ADA Reasonable-Accommodation Claim Has No Likelihood of Success on the Merits.**

**1. No "Disability**." The ADA principally defines a "disability" as a mental or physical impairment that substantially limits one or more major life activities of an individual. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998) (citing 42 U.S.C. § 12102(2)). "The particularized inquiry mandated by the ADA centers on substantial limitation of major life activities, not mere impairment." *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999).[1]

David Sambrano, David Castillo, and Genise Kincannon's requests for a medical accommodation were based solely on the fact that they had already contracted and recovered from COVID-19, and were concerned about the risks of additional COVID-19 antibodies. Pl. App. 3 ¶ 10 (Sambrano), 19 ¶ 11 (Castillo), 30 ¶ 13 (Kincannon); *see also* Pl. App. 24 ¶ 7 (Debra Jonas relying in part on this ground). But having previously had *and fully recovered* from COVID-19 is, if anything, the *opposite* of being "disabled." Plaintiffs have not alleged any actual impairments and, indeed, their trial brief contains no argument whatsoever why Sambrano, Castillo, or Kincannon satisfy the "disability" definition. *See* Tr. Br. 12-14.

Instead, plaintiffs limit their "disability" arguments to Seth Turnbough's multiple sclerosis ("MS") diagnosis and Debra Jonas's allergies. Yet plaintiffs *still* have not articulated any impairment to Mr. Turnbough's major life activities as a result of his MS. Tr. Br. 13; Pl. App 14 ¶ 6. As courts within the Fifth Circuit have made clear, having MS is not enough to establish a disability. *See Webb v. Houston Comm. Coll. Sys.*, 2010 WL 1727051, at *9 (S.D. Tex. Apr. 27, 2010) (despite diagnosis of MS, plaintiff did not establish a "physical or mental impairment that

---

[1] The ADA defines a "disability" as being "regarded as" having the requisite impairment, *see Sherrod*, 132 F.3d at 1119, but the EEOC's regulations expressly provide that the "reasonable accommodation" duty does not extend to employees who satisfy only that prong of the "disability definition," 29 C.F.R. § 1630.9(e). And regardless, plaintiffs have not even argued, let alone likely demonstrated, that United either viewed them as disabled or denied them an accommodation or otherwise discriminated them based on such a view.

substantially limited her ability to perform the duties of her job  . . . or any other major life activity"); *Wynn v. Whitney Holding Corp.*, 220 F. Supp. 2d 582, 589-90 (M.D. La. 2002) (noting that "[m]ultiple sclerosis does not automatically qualify as a disability under the ADA" and plaintiff was "not substantially limited in her ability to work").

Likewise, even considering Ms. Jonas's supplemental affidavit elaborating on her allergies, her condition simply does not rise to the level of substantial impairment necessary to entitle her to protection under the ADA.  Although she mentions that she must take care in what she "eat[s], drink[s], touch[es], and inhale[s]," it appears that these measures are successful in avoiding her most serious symptoms, and the rest—"persistent sinusitis, watery eyes, and post-nasal drip" are simply not substantial enough to qualify as a disability under the ADA.  *Hustvet v Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018) (plaintiff's allergic reactions do not constitute disability where "record reveals that [plaintiff] has garden-variety allergies to various items that moderately impact her daily living"); *Wren v. Midwestern State Univ.*, 2019 WL 501920, at *7 (N.D. Tex. Jan. 23, 2019) (Plaintiff did not sufficiently plead she is disabled where she claimed to have allergies "controlled by medication, diet, and environmental restrictions" that "affect and limit major life activities, including eating, sleeping, and breathing").[2]

---

[2] Plaintiffs also rely on dicta from an out-of-circuit district court opinion—which *denied* an ADA plaintiffs' claim because the plaintiff has not established a qualified disability—for the proposition that "doubtless" certain "reactions to vaccines [that are] severe enough . . . to rise to the level of a disability under the ADA."  Tr. Br. 13 (quoting *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 165 (S.D.N.Y. 2020)).  But that court was not suggesting, as plaintiffs argue, that a non-disabled individual has an ADA claim solely because a required vaccine might cause negative side-effects.  Instead, the court was stating the unremarkable proposition that a vaccine could trigger a side effect that *in the future* would render the person disabled—say for example, if a person reacted to a vaccine by becoming blind.  Neither Mr. Turnbough nor Ms. Jonas have been vaccinated or suffered any such potential side-effects.  They cannot rely on the possibility that they might to satisfy the ADA.

**2. Additional defects.** There are several other problems with the ADA claims. Given the nature and degree of the health and economic harms posed by plaintiffs' alternative accommodation, United can demonstrate an "undue hardship" even pursuant to the higher "significant difficulty or expense" standard under the ADA. 42 U.S.C. § 12111(10)(A). Although financial resources are one factor, the statute directs that considerations also include the "type of operation"—here the airline industry, which presents special concerns—and the large "number of its employees." *Id.* § 12111(10)(B).

Plaintiffs also argue that United's "interpretation of the direct threat defense" is too broad (Tr. Br. 15 n.5) but ignore the statutory text providing for the defense where there is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). This defense also applies to "threat[s] to self," meaning that the danger that COVID-19 poses to unvaccinated workers is a basis for its application. *See Chevron U.S.A., Inc. v. Echazabel*, 536 U.S. 73, 78 (2002) (the ADA authorizes, by regulation, "an employer to screen out a potential worker with a disability not only for the risks he would pose to others . . . but for the risks on the job to his own health or safety as well.")

### D. Neither Title VII Nor the ADA Impose Independent Liability Based on the Absence of an "Interactive Process."

Unable to demonstrate that United *substantively* failed to provide a reasonable accommodation without undue hardship, plaintiffs try to argue that United nevertheless may be preliminarily enjoined because it likely failed to satisfy a purported *procedural* duty to engage in an "interactive process." Tr. Br. 2, 12. But no such duty exists.

The language in both Title VII and the ADA unambiguously impose only a substantive duty to reasonably accommodate without undue hardship, not any independent procedural duty to engage in an "interactive process" regardless. *See* 42 U.S.C. §§ 2000e(j), 12112(a)(5)(A). And

- 15 -

the same goes for the EEOC's regulations implementing those provisions.  The ADA regulations at most contemplate that it "may be necessary" in some circumstances to engage in an "interactive process" to "determine the appropriate reasonable accommodation."  29 C.F.R. §§ 1605.2(b)-(c), 1630.2(o)(3), 1630.9.  Nor do plaintiffs cite *any* precedent from this circuit imposing a purely procedural "interactive process" duty on employers under Title VII.  *See* Tr. Br. 2 (citing a Fifth Circuit decision involving the ADA and a Fifth Circuit decision imposing a duty of good-faith on *employees*).  Rather, as noted above, courts in this circuit have held that an employer can prevail under Title VII by showing that plaintiffs' proposed accommodations would impose more than a de minimis burden even when the employer "wholly failed to explore, discuss, [or] offer to provide any accommodations whatsoever."  *Leonce v. Callahan*, 2008 WL 58892, at *2 (N.D. Tex. 2008). As for the ADA, plaintiffs invoke *EEOC v. Chevron Phillips Chem. Co*, 570 F.3d 606, 621 (5th Cir. 2009).  To the extent that decision could be interpreted to suggest that there is a claim for failure to follow an "interactive process," such a reading has been rejected by the Fifth Circuit in subsequent decisions,[3] and would also be inconsistent with prior precedents that would control under the rule-of-orderliness.[4]  Thus, the rule is that the "failure to engage in the interactive process, in itself, does not constitute" an ADA violation.  *Hohider*, 574 F.3d at 194.  And in any event, United *did* engage in a good-faith interactive process.  *See* Def. Supp. App. 2 ¶ 5.

---

[3] *See Picard v. Tammany Parish Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011) (rejecting plaintiffs' reliance "upon our statement regarding the interactive process" in *Chevron Phillips*, and explaining that "the 'interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations"); *Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 424 n.3 (5th Cir. 2014) (explaining that the "summary statement" on interactive process from *Chevron Phillips* should not be applied literally).

[4] *See, e.g., Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999); Def. Op. Br. 15; *Austin v. Davis*, 876 F.3d 757, 778 (5th Cir. 2017) (explaining that "one panel of our court may not overturn another panel's decision, absent an intervening change in the law… and *the earlier panel decision controls*." (emphasis added)).

### E.      Plaintiffs' Retaliation Claims Have No Likelihood of Success on the Merits.

Title VII and the ADA prohibit retaliatory "discriminat[ion]" against an individual "because" the individual "opposed" an "unlawful . . . practice."  42 U.S.C. §§ 2000e-3(a), 12203(a).  Even assuming that plaintiffs' requests for accommodation were protected opposition, United did not "discriminate" against plaintiffs "because" they had made that request:  indeed, far from treating plaintiffs *worse* for having requested an accommodation, United treats them *better* than other unvaccinated employees, by providing them with leave (or other forms of accommodation) rather than discharging them for being unvaccinated.  *See* Def. Supp. App. 4 ¶¶ 13-15; Def. Op. Br. 17.  Their *vaccination status* drove United's decision-making, not whether or not they requested an accommodation.

### F.      There Are Additional Defects in Certain Named Plaintiffs' Claims.

There are at least three more plaintiff-specific defects with the claims.  *First*, as for Mr. Castillo, his Title VII claim is barred because he failed to submit a claim for religious accommodation prior to the deadline.  Pl. App. 18 ¶¶ 5-7.  Title VII does not require United to abandon reasonable, neutral, deadlines for requesting an accommodation.[5]  *See, e.g., Bedeski v. Boeing Co.*, 2015 WL 5675427, at *3 (W.D. Wash. Sept. 25, 2015) ("Where the employer has established reasonable procedures for making and handling accommodation requests, it may expect its employees to utilize those procedures absent extenuating circumstances.").

*Second*, the Court clearly lacks personal jurisdiction over the claims of Mr. Turnbough because his claims arise entirely outside of Texas.  Compl. ¶ 10; Pl. App. 13 ¶ 2 (resident of Illinois "based in Chicago, IL").  *E.g., Martinez v. Tyson Foods, Inc.*, 2021 WL 1289898, at *2 (N.D. Tex.

---

[5] Plaintiffs are wrong to suggest that the medical accommodation requests were preferred over religious accommodations because employees had longer to submit medical-based requests.  The deadline was the same for both, August 31. Def. Supp. App. 2 ¶ 7. To the extent that United has allowed medical accommodation requests after the deadline, it has done so only for medical conditions that have arisen since the end of August.

Apr. 7, 2021) (Pittman, J.); *Stacker v. Intellisource*, LLC, 2021 WL 2646444, at \*8 (D. Kan. June 28, 2021). The same is true for at least two of the other named plaintiffs (as well as other members of the putative class). *Third*, United will show that under its policy—which is designed to evolve and adapt to changing circumstances—some of the named plaintiffs have the option of coming back to work, such that their claims are or soon will be moot. United's accommodation policy states that employees in non-customer facing positions will be put on "*temporary*, unpaid leave" only until United "develops and implements . . . safety protocol[s] tailored to each specific location and circumstance." Def. Supp. App. 3 ¶ 12 (emphasis added). United is moving ahead with developing those alternatives. *Id.* 6 ¶ 20. In particular, United will, in the next two weeks, be rolling out a pilot program for individuals who work in airport operations in select states, including Texas. This program has two components. First, it will allow employees in non-customer facing positions, such as ramp services, to return to the workplace subject to a new testing protocol (and with other safeguards). *Id.* Moreover, airport operations personnel in customer-facing assignments will be offered non-customer facing assignments (in accordance with collectively bargained rules) which will allow them to return to the workplace. *Id.* This program will be available to two of the named plaintiffs, Ms. Hamilton and Ms. Jonas. *Id.* ¶¶ 16, 20. Accordingly, both of them will, in the near future, have the option of returning to work.

## IV.    Equitable Factors Independently Preclude Injunctive Relief.

   **A.    No Irreparable Harm.** As Judge Means has stated, "[t]he irreparable harm necessary to obtain a preliminary injunction is not established by loss of income, financial distress, or inability to find other employment." *Hopkins v. Cornerstone Am.*, 2006 WL 8453061 (N.D. Tex. Feb. 6, 2006). This is one of the most fundamental principles in employment law. *See, e.g.*, *Garcia v United States*, 680 F.2d 29, 31-32 (5th Cir. 1982) ("There is no provision in the law for injunctions against discharge in routine termination cases because the remedy by way of

reinstatement and back pay is well established and is universally used.").  Plaintiffs fail to cite any case to the contrary.  Instead, they argue that this is an "extraordinary" case because they face an "impossible choice" between surrendering their religious beliefs about "the COVID-19 vaccine or face termination."  Tr. Br. at 24-25.  But all of the employees in the putative class have been *granted* an accommodation—none of them is being forced to abandon their religious beliefs.[6] Moreover, plaintiffs cite no authority in the employment context for an alleged impingement on religious belief justifying an injunction.  Cases where this argument has been advanced have, in fact, rejected it.  *See, e.g.*, *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001) (holding that plaintiff's inability to engage in her religious practice "while the trial proceeds does not appear to impose irreparable injury").

Moreover, to the extent Congress wanted to allow for preliminary injunctive relief against discrimination, it did so by enabling the EEOC or Attorney General special statutory authority to seek one.  *See* 42 U.S.C. § 2000e-5(f)(2).  Plaintiffs' charges are currently pending with the EEOC, which can intervene if the law requires, but has evidently declined to do so.  *E.g.*, *Conlay v. Baylor Coll. of Med.*, 2010 WL 774162, at *5 (S.D. Tex. Mar. 3, 2010) (explaining that the Fifth Circuit recognizes 2000e-5(f)(2) as "[a]n exception to the irreparable harm requirement for governmental plaintiffs seeking injunctive relief pursuant to statute.").  Plaintiffs also claim that the secondary effects of lost income—loss of housing, health care, burdens on educational choice—are irreparable.[7]  As we have already noted, that is simply not so.  Plaintiffs focus on the alleged

---

[6] In an effort to show that the policy has irreparable effects, Plaintiffs cite the example of Mr. Lockwood. (Tr. Br. at 19) They say "[b]ecause [David Lockwood] could not afford to be without income for an extended period, he ultimately decided to violate his religious beliefs" and become vaccinated.  *Id.*  However, even if this example could be generalized to people who still refused to be vaccinated, Mr. Lockwood withdrew his religious accommodation and got his first vaccination *before* United announced what types of accommodation would be offered and, thus, it cannot be that the prospect of unpaid leave "coerced" him into becoming vaccinated.  *See* Def. Supp. App. 3 ¶¶ 9-10.

[7] Moreover, plaintiffs' claims of reputational and psychological harm are not irreparable.  *Foy v. University of Texas*, 146 F.3d 867 (5th Cir. 1998) (loss of reputation is not an "exceptional circumstance" or an irreparable harm).

significance of the harms, Tr. Br. 4-5, 18, citing cases noting that loss of income can be a "serious hardship," while skipping over irreparability.

**B.     Balance of Equities.**   Plaintiffs seek to address the balance of equities by repackaging other elements of the preliminary injunction inquiry, stating that "[r]equiring United to comply with the law does not impose a harm that outweighs Plaintiffs' irreparable injury."  Tr. Br. at 20.  This ignores the harms to United, United's stakeholders, and the public—especially if enjoined nationwide, but even if only as to all or some of the named plaintiffs.  The impact on the health of its workers and the business costs, including loss of reputation, incurred due to an erroneous invalidation of United's vaccine policy are costs United will never fully recover.[8]

**C.     Public Interest.**   As for the public interest, Plaintiffs again cite the principle that infringement of constitutional rights such as the Free Exercise of Religion have been found to be irreparable.   Tr. Br. 22-23.   This line of constitutional authority is inapplicable to justify an injunction here because United is a private employer.   And even in the context of government overreach, "neutral and generally applicable" laws are not invalid even if they "incidentally burden religion."  *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021) (discussing *Employment Div. v. Smith*, 494 U.S. 872 (1990)).   As Justice Scalia explained, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)).'"  *Smith*, 494 U.S. at 889.

## CONCLUSION

For these reasons, Plaintiffs' motion for emergency relief should be denied.

---

[8] The need for at least *some* protection against those eventualities is why, were the Court to issue any preliminary injunction, a substantial monetary bond would be essential. *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 379 (5th Cir. 2008) (failure to order bond reversible error).

Dated: October 5, 2021                    Respectfully submitted,


                                          */s/ Jordan M. Matthews*
                                          Jordan M. Matthews
                                          IL Bar No. 6300503
                                          JONES DAY
                                          77 W. Wacker Drive, Suite 3500
                                          Chicago, Illinois 60601
                                          Telephone: (312) 782-3939
                                          Facsimile: (312) 782-8585
                                          Email: jmatthews@jonesday.com

                                          Donald J. Munro
                                          D.C. Bar No. 453600
                                          JONES DAY
                                          51 Louisiana Avenue, NW
                                          Washington, DC 20001
                                          Telephone: (202) 879-3939
                                          Facsimile: (202) 626-1700
                                          Email: dmunro@jonesday.com

                                          Alexander V. Maugeri
                                          N.Y. Bar No. 5062666
                                          JONES DAY
                                          250 Vesey Street
                                          New York, NY 10281-1047
                                          Telephone:  212.326.3939
                                          Facsimile:  212.755.7306
                                          Email: amaugeri@jonesday.com

                                          Russell D. Cawyer
                                          State Bar No. 00793482
                                          Kelly Hart & Hallman LLP
                                          201 Main St., Ste. 2500
                                          Fort Worth, Texas  76102
                                          Telephone: (817) 878-3562
                                          Facsimile: (817) 335-2820
                                          Email: russell.cawyer@kellyhart.com

                                          **ATTORNEYS FOR DEFENDANT**
                                          **UNITED AIRLINES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

On October 5, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jordan M. Matthews*
Jordan M. Matthews