**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

DAVID SAMBRANO, individually and on
behalf of all others similarly situated, *et al.*,

                *Plaintiffs,*

      v.

UNITED AIRLINES, INC.,

                *Defendant.*

Civil Action No.: 4:21-cv-01074-P

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT..........................................................................................................3

    I.    This Court Has Personal Jurisdiction Over United. ...........................................3

        A.    This Court has general jurisdiction over United because of United's continuous and systematic affiliation with Texas...................................3

        B.    Even if this Court lacks general jurisdiction, it can still exercise specific jurisdiction because *Bristol-Myers Squibb* does not apply to class actions. ...........7

    II.    United's Motion With Respect to Putative Class Members is Foreclosed by Fifth Circuit Precedent...................................................................................13

CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Agher v. Envoy Air Inc.*,
    No. 18-cv-6754, 2018 WL 6444888 (C.D. Cal. Oct. 12, 2018) .................................5

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ...........................................................................................2, 4

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco County*,
    137 S. Ct. 1773 (2017) ............................................................................ 2, 7, 11, 12

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................................8

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ..............................................................................................11

*Canaday v. Anthem Companies, Inc.*,
    9 F.4th 392 (6th Cir. 2021) ...................................................................................12

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab'y Prod., Inc.*,
    No. 17-cv-2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018)...............................10

*Coffey v. Mesa Airlines Inc.*,
    No. 18-cv-3688, 2019 WL 4492952 (C.D. Cal. Apr. 15, 2019)................................9

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) .............................................................................3, 13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................4, 6

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
   141 S. Ct. 1017 (2021) ...........................................................................1, 3, 8

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) .....................................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .....................................................................................2

*Hardin v. United Airlines, Inc.*,
   No. H-20-3893, 2021 WL 3771768 (S.D. Tex. July 15, 2021) ...........................4, 9

*In re Checking Acct. Overdraft Litig.*,
   780 F.3d 1031 (11th Cir. 2015) .........................................................................13

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) .....................................................................................8

*Jones v. Depuy Synthes Prod., Inc.*,
   330 F.R.D. 298 (N.D. Ala. 2018)....................................................................10

*Lyngaas v. Curaden AG*,
   992 F.3d 412 (6th Cir. 2021) ................................................................2, 10, 11

*Martinez v. Tyson Foods*,
   No. 4:20-cv-00528-P, 2021 WL 1289898 (N.D. Tex. 2021) .........................2, 7, 14

*Molock v. Whole Foods Mkt. Grp., Inc.*,
   952 F.3d 293 (D.C. Cir. 2020).........................................................................13

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014). ......................................................................3, 8

*Morlan v. Universal Guar. Life Ins. Co.*,
   298 F.3d 609 (7th Cir. 2002) .........................................................................13

*Moser v. Benefytt, Inc.*,
   8 F.4th 872 (9th Cir. 2021) .............................................................................13

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) ..................................................................2, 10, 12

*Sanchez v. Launch Tech. Workforce Sols., LLC*,
   297 F. Supp. 3d 1360 (N.D. Ga. 2018) .............................................................11

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997).......................................................................................11

*Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*,
   No. CV-H-18-2142, 2019 WL 3713724 (S.D. Tex. Jan. 25, 2019).........................5

*Walden v. Fiore*,
   571 U.S. 277 (2014) ....................................................................................7, 8

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ................................................................................................3

*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994) ...............................................................................................13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..............................................................................................................7

**Other Authorities**

*Airline Hub Guide: Which U.S. Cities Are Major Hubs and Why it Matters*,
    https://www.airfarewatchdog.com/blog/50066526/airline-hub-guide-which-u-s-cities-are-
    major-hubs-and-why-it-matters/. .........................................................................................6

United, *Flights to Texas*, https://www.united.com/en-us/flights-to-texas-tx ................................1

United, *Fly United to destinations near and far*, https://www.united.com/en-us/flights ...............1

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................12

**INTRODUCTION**

United Airlines ("United") fundamentally misunderstands the personal-jurisdiction inquiry at issue here. Confusing class actions with "mass" actions, and conflating personal jurisdiction objections with venue, United appears to argue that every possible plaintiff in this case would have to be harmed in the DFW area. That is not how any of this works. But to argue otherwise, United wrongly relies on misinterpretations of cases to claim an exemption from the general jurisdiction to which it is subject in Texas. The motion to dismiss should be denied.

Although United is incorporated in Delaware and headquartered in Illinois, "its business is everywhere." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1022 (2021). Indeed, United states that it has the "most comprehensive route network among North American carriers." Mot. at 1 (ECF 47). It flies to "more than 210 destinations" in the United States, *see* United, *Fly United to destinations near and far*, https://www.united.com/en-us/flights, and operates 1,800 flights every day, *see* ECF 48 ¶ 6. Of its seven "main U.S. hubs," one is located in Houston, Texas. *Id.*; *see also* Mot. at 2. Additionally, United has numerous flights to and from other Texas airports, and its website promises customers that they can "[t]ravel to Texas with United Airlines from over 200 airports within the United States and an additional 100 airports internationally." United, *Flights to Texas*, https://www.united.com/en-us/flights-to-texas-tx. In transporting customers to and from these hundreds of airports, United sends 486 flights in and out of Texas every day. ECF 48 ¶ 6. Those flights account for 27 percent of *all* United flights. *Id.* Such an enormous undertaking requires an equally enormous workforce, and 9,600 United employees, representing 16 percent of the entire United roster, are employed here in Texas. *Id.* ¶ 10. Thus by "every means imaginable," United has shown its deep ties to Texas. *Ford Motor Co.*, 141 S. Ct. at 1028.

United would have this Court ignore such ties and find that it lacks jurisdiction to hear and protect against the very real harms United employees will suffer in Texas—and in this District— if they are forced to choose between their livelihoods and either their religious beliefs or their health. But neither the Supreme Court's cases addressing the "propriety of general jurisdiction," such as *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017), nor its cases on specific jurisdiction compel such a counter-intuitive result. To the contrary, the Court has recognized that out-of-state corporations may have affiliations with the forum state that are so "continuous and systematic" that the corporation is "essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). United is such a corporation.

But even if this Court were to find otherwise, United is still subject to specific personal jurisdiction for the claims brought by both the Plaintiffs located here *and* the absent putative class members. As to the Plaintiffs, they are—even now—suffering in Texas because of United's discriminatory and retaliatory actions. As to the putative class members, they are also suffering from United's discriminatory and retaliatory actions. This Court clearly has specific personal jurisdiction over United for these claims and the Court should reject United's misguided reliance on *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco County*, 137 S. Ct. 1773, 1781 (2017), and *Martinez v. Tyson Foods*, No. 4:20-cv-00528-P, 2021 WL 1289898 (N.D. Tex. 2021). Mot. at 3. Indeed, United (1) ignores the conclusions of the two circuits to address the application of *Bristol-Meyer* to class actions, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446 (7th Cir. 2020); *Lyngaas v. Curaden AG*, 992 F.3d 412, 435 (6th Cir. 2021), and (2) ignores the differences between collective-action cases under the Fair Labor Standards Act ("FLSA") and Rule 23 class actions.

2

Moreover, there is no reason even to address those issues at this point with respect to the putative class members. In the Fifth Circuit, for jurisdictional purposes, a non-plaintiff class member is not before a court prior to class certification. *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020). Accordingly, the Court need not resolve United's personal jurisdiction arguments as to the putative class members.

## ARGUMENT

## I.     This Court Has Personal Jurisdiction Over United.

This Court should deny United's motion to dismiss because the Court has general jurisdiction over United or, at the least, because the Court has specific jurisdiction over United with respect to Plaintiffs' claims.[1]

### A.     This Court has general jurisdiction over United because of United's continuous and systematic affiliation with Texas.

United's continuous and systematic affiliation with Texas is sufficient to support this Court's exercise of general jurisdiction over it, and United's attempts to avoid that logical conclusion are misguided. Although the Fifth Circuit has recognized that it is difficult to establish general jurisdiction outside of a business's place of incorporation, it has never suggested that it is impossible. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Nor could it. As Justice Gorsuch recognized just last term, "changing economic realities" have led to a cautious expansion of the "old rule" on general jurisdiction in exceptional cases. *Ford Motor Co.*, 141 S. Ct. at 1034 (Gorsuch, J., concurring in the judgment). Where a corporation has so "continuous and systematic" connections with a state as to render them at home there, the corporation is subject to general personal jurisdiction *even if* the state is not its primary place of

---

[1] To the extent this Court doubts its personal jurisdiction, it should grant Plaintiffs leave to conduct limited discovery to allow it to obtain information about United's ties to the forum. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

business and it is not incorporated there. *BNSF Ry. Co.*, 137 S. Ct. at 1558. To determine whether general jurisdiction over a corporation is proper, courts conduct an "appraisal of [the] corporation's activities in their entirety." *Id.* at 1559. The relevant question is not the "magnitude of the defendant's in-state contacts," but rather what percentage of their overall activities take place in the forum state. *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014)). Applying that framework, *BNSF* declined to find that a railway company was subject to a court's general jurisdiction because less than 6% of its total railroad mileage and less than 5% of its total workforce was located in the state. *Id.* at 1554.[2]

United cites only three cases supporting its suggestion that its connection with Texas is not so "exceptional" as to subject it to general personal jurisdiction. Mot. at 3. As discussed below, United relies on these cases without acknowledging the critical differences that make them inapplicable here.

United first suggests that the issue of general jurisdiction is answered by *Hardin v. United Airlines, Inc.*, No. H-20-3893, 2021 WL 3771768, at *2 (S.D. Tex. July 15, 2021). Not so. In *Hardin*, as here, United moved to dismiss the case for lack of general jurisdiction. *Id.* at *1. Hardin's opposition, however, did "not address United's contentions as to personal jurisdiction," and she therefore waived that issue. *Id.* at *1 n.1. Thus, contrary to what United implies (Mot. at 3), the *Hardin* court did not find that United was not subject to general jurisdiction in Texas. Instead, it found only that Hardin had waived the personal jurisdiction issue by failing to respond to it. At most*, Hardin* stands for the unremarkable proposition that a party concedes an issue by failing to respond—an immaterial point here.

---

[2] Though United suggests (Mot. at 2–3) that *BNSF* turned on the total number of in-state miles and employees in the forum state, that is incorrect. Those numbers were only relevant when viewed against all of *BNSF*'s railroad miles and all of its employees.

United next relies on *Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*, but their incomplete discussion of that case fares no better. No. CV-H-18-2142, 2019 WL 3713724, at \*2 (S.D. Tex. Jan. 25, 2019). According to United, the *Victor Elias* court held that it did not have general jurisdiction over Marriott despite Marriott's having significant ties to Texas. Mot. at 3. But United fails to note that the court's decision was based on the fact that the 487 properties at issue were "owned by third-party affiliates or subsidiaries, not by Marriott" and that Marriott itself managed "only one property in Texas." *Victor Elias*, 2019 WL 3713724, at \*2. Moreover, the plaintiff there did nothing to show that Marriott had "control over any alleged subsidiary" that would make the subsidiary's conduct "attributable to Marriott." *Id.* In sum, *Victor Elias*, like *Hardin*, merely involves a plaintiff who failed to show that the defendant had the continuous and systematic ties necessary to establish general jurisdiction.

With those two cases gone, United is left to rely on *Agher v. Envoy Air Inc.*, No. 18-cv-6754, 2018 WL 6444888, at \*2 (C.D. Cal. Oct. 12, 2018), an out-of-circuit district court case involving an airline with significantly fewer contacts with the forum state than United has with Texas. Mot. at 3. In *Agher*, the court declined to exercise general jurisdiction over American Airlines because "less than 8%" of its total workforce and only about 16% of its flights originated in California. 2018 WL 6444888, at \*2. By contrast, 27% of all United flights begin or end in Texas, and 16% of its U.S. workforce is employed here. Mot. at 2.

Moreover, United admits that the Houston George Bush Intercontinental Airport is a "hub" for the airline—one of only seven domestic airports through which the majority of United's traffic is routed. Mot. at 2. Hubs are used by airlines as central bases of operation that allow airlines to save money on overhead by flying to smaller markets (with flights not as likely to be filled) out of the hubs (which can be connected through more filled flights). *See Airline Hub Guide: Which U.S.*

*Cities    Are    Major    Hubs    and    Why    it    Matters*, https://www.airfarewatchdog.com/blog/50066526/airline-hub-guide-which-u-s-cities-are-major-hubs-and-why-it-matters/. These hub cities are key for United, and the company invests in those places beyond just the airport. *See, e.g.*, United Airlines to give $8M to help Houston, other hub cities, https://www.bizjournals.com/houston/news/2018/05/30/united-airlines-to-give-8m-to-help-houston-other.html (noting May 30, 2018 announcement by United that it would give $8 million in grants to "help address pressing issues identified by local leadership" in its U.S. hub markets).  This also explains why United has corporate support offices in Houston and it is unsurprising that the largest airline presence in Houston—one of the largest cities in the world—is United.

Although a "corporation that operates in many places can scarcely be deemed at home in all of them," the fair "appraisal" of United's activities "in their entirety" required by the general-jurisdiction analysis supports the conclusion that the large fraction of United's worldwide flights and U.S.-based crew located in Texas—combined with the presence of a major hub in the state—subject it to general jurisdiction here. *Daimler AG*, 571 U.S. at 139 n.20. United is everywhere in Texas, including in this District (where United's CEO, Scott Kirby, also resides). United takes advantage of its Texas ties daily as it shuttles thousands of people in and out of the state—with almost 30% of its business going through the state—and the airline depends on thousands of Texas employees like Plaintiffs who live in this District. And to be sure, a "hub"—defined as "the effective center of an activity, region, or network," Lexico, *Hub*, https://www.lexico.com/en/definition/hub—is understood to be one of an airline's "bases." Those

continuous and systematic contacts with Texas make it at home here, and thus this Court has general jurisdiction over United.[3]

**B.     Even if this Court lacks general jurisdiction, it can still exercise specific jurisdiction because *Bristol-Myers Squibb* does not apply to class actions.**

Were this Court nevertheless to conclude that United's expansive contacts with Texas are not sufficient to support general jurisdiction, it should nonetheless find that it has specific jurisdiction. United asks this Court to extend *Bristol-Myers* and *Martinez* far beyond their reach, and its argument against specific jurisdiction boils down to two flawed propositions. First, United claims that three named Plaintiffs have not established sufficient contacts with Texas to establish specific jurisdiction. Mot. at 4. Even if that were true—which it is not—the Court may proceed with this action based on the claims of the other Plaintiffs. Second, United claims that there is no specific jurisdiction as to potential putative class members based on an unsupported leap in logic regarding *Bristol-Myers*. *Compare* Mot. at 4 (recognizing that *Bristol-Myers* was a "mass-action suit in state court"), *with* Mot. at 6 (arguing that "putative class members" fall "under *Bristol-Myers*").  Both arguments fail.

First, United inverts the traditional personal jurisdiction analysis by asking this Court to focus on the Plaintiff's contacts with Texas instead of United's. According to United, because three of the named Plaintiffs have fewer contacts with Texas than do other Plaintiffs, they have not established sufficient contacts with the forum state to subject United to personal jurisdiction in Texas. Mot. at 4–5. United thus argues that under *Walden v. Fiore*, personal jurisdiction cannot rest here because "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 5 (quoting *Walden v. Fiore*, 571 U.S. 277, 288 (2014)). United misreads *Walden*. The defendant

---

[3] Because personal jurisdiction is a state-wide inquiry, United's explanation concerning the scope of its DFW activity is irrelevant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

there had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone" to the forum state. *Id.* at 289. "Because that was true, the Court had no occasion to address the necessary connection between a defendant's in-state activity and the plaintiff's claims." *Ford Motor Co.*, 141 S. Ct. at 1031. But here, United airplanes travel to and from Texas hundreds of times each day, including to one of its main hubs in Houston. Mot. at 2. And it maintains and relies upon a substantial workforce in Texas and in this District. *Id.* United is thus wrong to compare its contacts with this District with the *Walden* defendant's complete lack of contacts with Nevada. And in the process, United asks this Court to apply a "causation only approach" to jurisdiction that the Supreme Court just this year held found "no support" in its cases. *Id.* at 1026 *Walden* thus bears no resemblance to this case and the Court should reject United's reliance on it.

United's dependence (Mot. at 5) on *Monkton Insurance*, 768 F.3d 429, fares no better. The business there had a website showing that it did "business *with* Texas, not *in* Texas." *Id.* at 432 (emphasis added). It lacked a "physical presence in the state" and "did not conduct business in the state." *Id.* at 433. Once again, given United's size and ubiquitous presence in Texas, it cannot escape jurisdiction by citing cases that do not involve any in-state presence.

A faithful review of Supreme Court precedent, which requires courts to review "the relationship . . . that the 'defendant *himself*' creates with the forum State," paints a completely different picture than the one United has presented. *Walden*, 571 U.S. at 284 (emphasis original) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Those cases clarify that a court's "minimum contacts analysis [should] look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)).

United also incorrectly dismisses its connection to Kincannon's and Sambrano's contacts with Texas. *See* Mot. at 6 n.4. Ms. Kincannon and Capt. Sambrano both reside in Texas. ECF 7 at 2, 28. United's failure to reasonably accommodate these Plaintiffs directly affects them in Texas because while they are on unpaid leave, they will be grounded in their home states. And it is in Texas where Kincannon and Sambrano will be forced to choose between complying with United's mandate and keeping their jobs. Their injuries are directly tied to the forum. United cites two cases in a footnote that allegedly support their proposition that the residence of an airline employee is insufficient to establish personal jurisdiction over the employee's claims. *See* Mot. at 6 n.4. Neither case is applicable here. In the first case, the court found that the court had no specific jurisdiction because the airline had not availed itself of the forum, and the airline's actions were not directed at the forum state. *See Coffey v. Mesa Airlines Inc.*, No. 18-cv-3688, 2019 WL 4492952, at *5–*6 (C.D. Cal. Apr. 15, 2019). For reasons addressed throughout this Opposition, the same cannot be said of United in Texas. The second case is *Hardin*. Once again, United overlooks that the specific-jurisdiction question in *Hardin* was waived. *Hardin,* 2021 WL 3771768, at *3 ("*Because* Hardin fails to address how this Court has general or specific jurisdiction over United in any of her briefing, the Court finds Hardin has not met her burden of establishing a *prima facie* case of personal jurisdiction.") (emphasis added). Thus, United's repeated insistence that *Hardin* has any applicability here is incorrect.

Regarding Plaintiff Turnbough, United concedes that he has flown through DFW and that he has used his ride share pass to fly to DFW multiple times in just the last few years. ECF 48 ¶ 16. He does this to visit family—a benefit that United would take away from him if placed on unpaid leave. ECF 7 at 13. United thus does not challenge his ties to DFW through United's benefits; it merely takes issue with how "regularly" Turnbough uses them to travel to the District.

United first notes that Turnbough has not used his ride share pass to travel to DFW since summer 2019. Of course, given the COVID-19 pandemic, it is unsurprising that Turnbough's travel, like many others, decreased in 2020 and 2021. Additionally, United states that Turnbough has flown less than ten flights through DFW since 2016. Mot. at 5. It remains the case, as United concedes, that Turnbough flies to DFW on behalf of United and uses a United benefit that he will no longer be able to use if United places him on unpaid leave. *Id.*

But even if this Court were to credit United's misguided understanding of personal jurisdiction, it would have no effect on the case overall. United only challenges specific jurisdiction as to three Plaintiffs. *See* Mot. at 4-5. Thus, even if this Court were to dismiss the claims brought by those three Plaintiffs, this case would proceed with the other Plaintiffs. Moreover, the dismissed Plaintiffs would then merely be included in the class after certification. And for reasons addressed immediately below, this Court does not need to have personal jurisdiction over the claims of absent class members if it has jurisdiction over the named plaintiffs.

Second, this Court should reject United's "desired application of *Bristol-Myers*" because it would "create a sea change in class action jurisprudence." *Jones v. Depuy Synthes Prod., Inc.*, 330 F.R.D. 298, 312 (N.D. Ala. 2018). Indeed, the only two circuits to directly address this issue have squarely rejected the reading of *Bristol-Myers* that United urges. *Mussat*, 953 F.3d at 446; *Lyngaas*, 992 F.3d at 435. And rightly so. There are "material differences" between the "mass tort actions" at issue in *Bristol-Myers* and a "purported class action invoking federal question subject matter jurisdiction." *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab'y Prod., Inc.*, No. 17-cv-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018). Both circuits to address this issue found those differences important. Unlike a mass action, where "all of the plaintiffs are named parties to the case," in a class action, "the lead plaintiffs earn the right to represent the interests of

absent class members," who are "not full parties to the case for many purposes." *Mussat*, 953 F.3d 441, 447 (7th Cir. 2020). A district court "need not have personal jurisdiction over the claims of absent class members at all." *Id.* at 448. Then-Judge Barrett, who sat on the panel, joined that opinion in full. And just this year, the Sixth Circuit similarly held that "*Bristol-Myers Squibb* does not extend to federal class actions." *Lyngaas*, 992 F.3d at 435. In many other cases around the country, courts have rightly continued—even after *Bristol-Myers*—to allow class action certification provided the named plaintiff can establish personal jurisdiction over the defendant. *Sanchez v. Launch Tech. Workforce Sols.*, *LLC*, 297 F. Supp. 3d 1360, 1367 (N.D. Ga. 2018) (collecting cases finding that in class actions, courts have personal jurisdiction over defendants as long as they have specific jurisdiction over the named plaintiffs). The existence of the few outliers United cites—including one district court case and another dissenting opinion—does not overcome the overwhelming weight of authority that United ignored.

The cases that limited *Bristol-Myers* to its facts got it right. The Supreme Court has long upheld the designation of class actions despite a large and geographically diverse class. *Califano v. Yamasaki*, 442 U.S. 682, 701-02 (1979). The Supreme Court alone has the authority to modify those precedents, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997), and it certainly did not do so in *Bristol-Myers*, a case where the Court (1) emphasized that it was only applying a "straightforward application in this case of settled principles of personal jurisdiction" and (2) left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1783. This Court should reject United's suggestion that the *Bristol-Myers* Court did what it expressly said it was *not* doing even for mass action lawsuits, never mind that this is a class-action lawsuit. Instead, the Court should follow the Sixth and Seventh Circuits in holding that *Bristol-Myers* did not silently overturn a string of "cases

involving nationwide classes where the plaintiff relied on specific, rather than general, personal jurisdiction in the trial court, without any comment about the supposed jurisdictional problem." *Mussat*, 953 F.3d at 445 (collecting such cases).

United's attempt to compare this Court's opinion in *Martinez* to this case should be rejected for the same reason. *Martinez* faithfully applied *Bristol-Myers* because it was a case dealing with individuals who were plaintiffs in their own right. That is not the case here. Unsurprisingly, the Supreme Court has already held that any comparison between FLSA cases and Rule 23 actions are "inapposite . . . because Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). Under the FLSA, plaintiffs who "opt in" are treated as party plaintiffs. But as Judge Sutton recognized, that is a "distant cry from how a Rule 23 class action works." *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 403 (6th Cir. 2021). And because of those differences, the *Canaday* panel—which was addressing an FLSA collective action suit—did not consider itself bound by *Lyngaas*, which addressed Rule 23 class actions. This Court should similarly reject United's attempt to shoehorn this case into *Martinez*.

Finally, United's effort to limit this Court's jurisdiction by citing Rule 4(k) also fails because it "mix[es] up the concepts of service and jurisdiction." *Mussat*, 953 F.3d at 448. The rule addresses "*how* and *where* to serve process; it does not specify on *whom* process must be served." *Id.* And because a district court is not required to have personal jurisdiction over all class members to begin with, as long as the "court has personal jurisdiction over the defendant with respect to the class representative's claim, the case may proceed." *Id.* Here again, the distinction between FLSA actions and Rule 23 actions is relevant: As full parties, FLSA plaintiffs who have opted-in to a case—to represent their own interests—create personal jurisdiction concerns that are simply absent

in Rule 23 class action cases where the plaintiffs "represent the interests of absent class members." *Id.* at 447.

## II.      United's Motion With Respect to Putative Class Members is Foreclosed by Fifth Circuit Precedent.

United's motion with respect to putative class members also fails. The Fifth Circuit has held that "[p]rior to class certification," a "personal jurisdiction defense as to putative non-resident class members [is] not 'available' under Rule 12." *Cruson*, 954 F.3d at 251. Other circuits agree. *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs"); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) ("HII did not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of unnamed putative class members who were not yet parties to the case."); *In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) ("Absent class certification, there is no justiciable controversy between Wells Fargo and the unnamed putative class members."); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 299 (D.C. Cir. 2020) (holding that because "whether the putative nonresident class members are parties to the action is 'logically antecedent' to whether the court has authority to exercise personal jurisdiction over them," a motion to dismiss those putative nonresident class members was premature).

Here, this Court has not yet certified a class. Thus, the putative class members that United seeks to dismiss from this action are not yet part of this action for jurisdictional purposes.[4] As the *Cruson* court made clear, the personal-jurisdiction defense is not available to United at this time.

---

[4] This does not, of course, place them out of this Court's reach for purposes of the preliminary injunction. *Washington v. Reno*, 35 F.3d 1093, 1097 (6th Cir. 1994) (upholding in part a nationwide preliminary injunction before class certification because it was necessary to provide relief).

To be sure, this Court has held in the FLSA context that it must resolve personal-jurisdiction issues first. *Martinez*, 2021 WL 1289898, at *2. But such cases involve collective action where plaintiffs opt-in and are treated as full parties. *Id.* at *5. In those instances, resolving personal jurisdiction first makes sense. Not so here, where class certification is a prerequisite to any class members even coming within the Court's jurisdiction. Accordingly, United's attempt to dismiss the claims as to putative class members is premature. United will have another attempt to make these arguments, after the Court certifies a class and the class members are under the Court's jurisdiction.

## CONCLUSION

United is everywhere in Texas, and a large portion of its daily operations occur here. This Court should hold that it has general personal jurisdiction over it for that reason and deny the motion. But even if it does not, it should deny the motion because (1) the arguments made against the putative class members are premature and wrong in any event and (2) the named Plaintiffs each satisfy the elements of specific jurisdiction because United has purposefully availed itself of Texas's laws and is actively harming the Plaintiffs in this state.

14

October 8, 2021                              Respectfully submitted,

                                            */s/ John C. Sullivan*
                                            John C. Sullivan
                                            Texas Bar No. 24083920
                                            john.sullivan@the-sl-lawfirm.com
                                            S|L LAW PLLC
                                            610 Uptown Boulevard, Suite 2000
                                            Cedar Hill, TX 75104
                                            Telephone: (469) 523-1351
                                            Facsimile: (469) 613-0891

                                            */s/ Robert C. Wiegand*
                                            Robert C. Wiegand
                                            Texas Bar No. 00791924
                                            bob.wiegand@swolegal.com
                                            Melissa J. Swindle
                                            Texas Bar No. 24013600
                                            Melissa.swindle@swolegal.com
                                            Stewart Wiegand & Owens PC
                                            325 N. St. Paul Street, Suite 3750
                                            Dallas, TX 75201
                                            Telephone: (469) 899-9800
                                            Facsimile: (469) 899-9810

                                            */s/ Mark R. Paoletta*
                                            Mark R. Paoletta*
                                            D.C. Bar No. 422746
                                            mpaoletta@schaerr-jaffe.com
                                            Gene C. Schaerr*
                                            D.C. Bar No. 416368
                                            Brian J. Field*
                                            D.C. Bar No. 985577
                                            Kenneth A. Klukowski*
                                            D.C. Bar No. 1046093
                                            Joshua J. Prince*
                                            D.C. Bar No. 1685532
                                            Annika M. Boone*
                                            Utah Bar No. 17176
                                            SCHAERR | JAFFE LLP
                                            1717 K Street NW, Suite 900
                                            Washington, DC 20006
                                            Telephone: (202) 787-1060
                                            Facsimile: (202) 776-0136

                                            * Admitted *pro hac vice*

                                            *Counsel for Plaintiffs and the
                                            Proposed Class*

15

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing has been served via the Court's electronic filing system upon all counsel of record.

/s/ Robert C. Wiegand
Robert C. Wiegand

16