**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| DAVID SAMBRANO, DAVID CASTILLO, KIMBERLY HAMILTON, DEBRA JENNEFER THAL JONAS, GENISE KINCANNON, and SETH TURNBOUGH, on their own behalf and on behalf of all others similarly situated, | Civil Action No.: 4:21-01074-P<br>Jury Trial Demanded |
| *Plaintiffs,* | |
| v. | |
| UNITED AIRLINES, INC., | |
| *Defendant.* | |

**AMENDED CLASS ACTION COMPLAINT**

1.    Plaintiffs David Sambrano, David Castillo, Kimberly Hamilton, Debra Jennefer Jonas, Genise Kincannon, and Seth Turnbough (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, complain as follows against Defendant United Airlines, Inc. ("United").

2.    This is a class action brought to remedy United's pattern of discrimination against employees who requested religious or medical accommodations from United's mandate that its employees receive the COVID-19 vaccine.

3.    Rather than complying with its obligations under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), United responded by informing the requesting employees that they would be effectively terminated.

4.      United's actions have left Plaintiffs with the impossible choice of either taking the COVID-19 vaccine, at the expense of their religious beliefs and their health, or losing their livelihoods.  In doing so, United has violated Title VII and the ADA by failing to engage in the interactive process and provide reasonable accommodations, and also by retaliating against employees who engaged in protected activity.

**PARTIES**

5.      Plaintiff David Sambrano is a Captain with United.  Mr. Sambrano requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation."  Mr. Sambrano also attempted to request a medical accommodation, but United's online accommodation request system, which was the only formal mechanism United offered for employees to submit either a religious or medical accommodation request, prevented him from doing so.  Mr. Sambrano is a citizen and resident of Texas, and lives in the Northern District of Texas.

6.      Plaintiff David Castillo is an Aircraft Technician with United at Dallas Fort Worth International Airport ("DFW") and lives in Tarrant County, Texas.  Mr. Castillo requested both a religious and a medical accommodation from United's vaccine mandate on September 17, 2021.  Because United stated that it was no longer accepting requests through its online accommodation request system on August 31, 2021, which was the only formal mechanism United offered its employees to submit an accommodation request, Mr. Castillo made the unilateral decision to request these accommodations through his supervisor.  A United Human Resources representative has now informed Mr. Castillo through his supervisor that the religious accommodation request is untimely, but that Mr. Castillo may submit his medical request.   Mr. Castillo's religious accommodation request has thus been administratively denied.  Even assuming the representation

about the medical accommodation is accurate, however, Mr. Castillo will likely also be offered the same "accommodation" of indefinite unpaid leave if his request is granted.  And if he is not offered unpaid leave, he will be terminated as of September 27, 2021, pursuant to United's vaccine mandate.  Mr. Castillo is a citizen and resident of Texas, and lives in the Northern District of Texas.

7.      Plaintiff Kimberly Hamilton is a Station Operations Representative with United. Ms. Hamilton requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation."  Ms. Hamilton is a citizen and resident of Texas, and lives in the Northern District of Texas.

8.      Plaintiff Debra Jennefer Thal Jonas is a Customer Service Representative assigned to the United Club at DFW.  Ms. Jonas requested a medical accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation."  Ms. Jonas also sought to request a religious accommodation, but United's online accommodation request system prevented her from requesting a second form of accommodation because employees had no other formal mechanism for submitting another accommodation request.  Ms. Jonas is a citizen and resident of Texas, and lives in the Northern District of Texas.

9.      Plaintiff Genise Kincannon is a Flight Attendant for United.  She lives in the Fort Worth area.  Ms. Kincannon requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation."  Ms. Kincannon is a citizen and resident of Texas, and lives in the Northern District of Texas.

10.     Plaintiff Seth Turnbough is a Captain with United.  Mr. Turnbough is based in Chicago and flies through DFW in his duties as a Captain.  Mr. Turnbough requested a medical accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation."  In addition to his work trips through DFW, Mr. Turnbough regularly uses his "ride share" passes to fly into DFW to visit his local family—passes that would be taken away under United's proffered accommodation.

11.     Defendant United is a Delaware corporation with its principal place of business in Chicago, Illinois.  United regularly operates flights through DFW and maintains a large workforce at that airport.  DFW is located within this judicial district; a substantial portion of which is located in Tarrant County, Texas.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

13.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events complained of herein occurred in this District and Division.

15.     This case challenges United's decision to implement a COVID-19 vaccine mandate without also granting reasonable accommodations as required under Title VII and the ADA.  On information and belief, several activities and occurrences related to the development of the mandate and the determination for how to respond to accommodation requests occurred in this District, and in Texas more broadly.  Indeed, United's Chief Executive Officer ("CEO"), Scott Kirby, lives in Dallas.  And given the significance of United's vaccine policy, and Mr. Kirby's

personal involvement in the development and communication of that policy, it is implausible that Mr. Kirby would not have engaged in that decision making while at his residence in Dallas. Moreover, one of United's seven hubs is in Houston, Texas. Additionally, United maintains a corporate support office in Houston, Texas.

16.     Moreover, United's actions are felt by Plaintiffs in this District, and this is where the unlawful employment practices occurred. Each time Plaintiffs who reside in this District access United's electronic databases—including Help Hub—they are asked whether they want to withdraw their request for a reasonable accommodation. Similarly, Plaintiffs receive United's constant e-mail reminders about the vaccine mandate while located in this District. Moreover, if Plaintiffs elect to receive the COVID-19 vaccine, those who reside in this District will likely do so here. And finally, if placed on unpaid leave, they will be harmed in this District.

## FACTUAL ALLEGATIONS

### A.     The COVID-19 Pandemic and Response

17.     By Spring 2020, the novel coronavirus SARS-CoV-2, which can cause the disease COVID-19, spread rapidly around the world.

18.     Around this same time, United began implementing certain mitigation procedures for its workforce, including several of the following requirements for its employees: wear United-issued masks, gloves, and, for some, eye protection; maintain distance from others; and participate in temperature checks. United also began increasing the cleaning regimens of its aircraft—spraying cabins with an anti-viral spray between flights—and it upgraded its HEPA filters to prevent the spread of COVID-19.

19.     Since that time, at least three separate COVID-19 vaccines have been developed and authorized for use in the United States. The Food and Drug Administration ("FDA") issued

an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 1, 2020. One week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine.  Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

20.    On August 23, 2021, the FDA issued full approval for the Pfizer vaccine Comirnaty for individuals 16 years of age and older.  Pfizer's EUA also remains in place.

21.    To date, the FDA has not yet issued any other approvals for either the Moderna or Johnson & Johnson vaccine.

**B.    United's Vaccine Mandate**

22.    On August 6, 2021, United's CEO Scott Kirby announced that all employees would be required to receive a COVID-19 vaccine within five weeks of the FDA granting full approval of a vaccine, or five weeks after September 20, 2021, whichever came first.

23.    As noted, the FDA approved Pfizer's COVID-19 Comirnaty vaccine on August 23, 2021.

24.    Accordingly, United employees must receive at least the first dose of a COVID-19 Comirnaty vaccine by September 27, 2021.

25.    Employees are required to upload a copy of their vaccination record to a United database called Flying Together by September 27, 2021.  *See* Thomas Pallini, *United is the first US airline to require all employees be vaccinated against COVID-19*, BUSINESS INSIDER (Aug. 6, 2021),     https://www.businessinsider.com/united-requiring-us-employees-get-covid-19-vaccine-2021-8.

26.    Employees who do not upload a copy of their vaccination record showing a COVID-19 vaccination will be terminated.

27.     United's mandate is absolute—there is no alternative for periodic testing, mask wearing, or social distancing, even for employees who have already had COVID-19 and still enjoy immunity from the disease.  Employees must choose vaccination or termination.  Or, as discussed below, employees who are "accommodated" for religious or health reasons may choose what will likely be several years of unpaid leave without benefits: effectively, termination.

28.     This policy from United contrasts with the Federal Government's recent announcement that the Department of Labor is developing a rule to require certain large employers to mandate vaccination *or* periodic testing for its employees.  United is not offering the option of periodic testing, either in general or for employees who receive an accommodation.

29.     This policy from United also differs substantially from the European Union's digital COVID-19 certificate, which considers the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from COVID-19.  *See EU Digital COVID Certificate*, EUROPEAN COMMISSION, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en.

30.     When United announced the vaccine mandate, it stated that employees could request accommodations for religious or health reasons.  *See* Daniella Genovese, *United Airlines vaccine mandate driven by delta variant, hospitalization data, CEO Scott Kirby says*, FOXBUSINESS (Aug. 10, 2021), https://www.foxbusiness.com/lifestyle/united-ceo-scott-kirby-pushed-vaccine-mandate-driven-by-hospitalization-data.  This is in line with Equal Employment Opportunity Commission ("EEOC") guidance on private employers issuing such mandates.  *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO*

*Laws* §§ K.1 & K.2.*,* EEOC (May 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

31.     However, United's CEO Mr. Kirby also threatened employees "to be very careful about" requesting such accommodations.  Mr. Kirby stated that there would be very "few people that get through the medical and religious exemption process"—describing such employees derisively as "all [of a] sudden decid[ing] 'I'm really religious.'"  Mr. Kirby threatened those employees by stating that they are "putting [their] job[s] on the line" if they request such accommodations. *See* Decl. of Kimberly Hamilton, attached to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

32.     In addition to Mr. Kirby's threats, United has placed substantial and unconscionable pressure on its employees.  One of the many examples of such pressure, some of which are more specifically discussed below, occurred in early-September when United began sending postcards to all employees who had not yet provided proof of vaccination.

33.     The postcards stated that the employees had not uploaded evidence of vaccination and repeated in bold text: "Unvaccinated employees without a reasonable accommodation will be separated from United."  As these postcards were not sent in an envelope, United effectively broadcast its employees' vaccination status to all who saw the postcards.

34.     According to United, this vaccination mandate is aimed at increased safety.  *See* Leslie Josephs, *United will require its U.S. employees to be vaccinated, a first for country's major airlines*, CNBC (Aug. 6, 2021), https://www.cnbc.com/2021/08/06/united-airlines-vaccine-mandate-employees.html.  Yet United does not require any passenger flying on its planes, or interacting with its staff, to be vaccinated.  *See* David Koenig, *United Airlines will require US employees to be vaccinated*, AP News (Aug. 6, 2021), https://apnews.com/article/united-airlines-

vaccine-mandate-employees-frontier-e8eef8e8f11d4924b81768484e5401a1.  Nor does it require

its employees from other countries to be vaccinated, even though those employees work and come

in contact with United crews from the United States.  *Id*.  The mandate does not apply to regional

airline partners that fly United customers on shorter routes that feed United's mainlines.  *See*

Josephs, *supra* ¶ 32.  And the mandate does not apply to pilots from other airlines allowed to ride

in the "jumpseat" of the aircraft (in the cockpit) with United flight officers.  *See Jumpseat*

*Committee    Update*,    UNITED    MASTER    EXECUTIVE    COUNCIL    (Sept.    16,    2021)

https://contentsharing.net/actions/email_mobile_web_version.cfm?recipient_id=2940366754&m

essage_id=20802705&user_id=ALPA&jobid=53070823.   And at the same time, United has

relaxed requirements for flight attendants wearing gloves and eye protection during the COVID-19

pandemic, and the company no longer ensures the "deep" cleaning of aircraft after each flight as

it did at the outset of the pandemic.

       **C.**    **Federal law prohibiting religious and disability discrimination and retaliation**

     35.    Title VII prohibits United from discriminating against employees based on their

religion.  This "include[s] all aspects of religious observance and practice, as well as belief, unless

an employer demonstrates that he is unable to reasonably accommodate an employee's . . .

religious observance or practice without undue hardship on the conduct of the employer's

business." 42 U.S.C. § 2000e(j).

     36.    In other words, "[a]n employer has the statutory obligation to make reasonable

accommodations for the religious observances of its employees, but is not required to incur undue

hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000).

     37.    Title VII also prohibits United from retaliating against an employee for engaging

in protected activity.  *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

38.     Similarly, under the ADA, United may not "discriminate against a qualified individual on the basis of disability." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).

39.     Such discrimination includes "fail[ing] to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship.'" *Feist v. Louisiana*, 730 F.3d 430, 432 (5th Cir. 2013).

40.     Additionally, the ADA makes it unlawful to retaliate against an employee for seeking an accommodation.  *See* 42 U.S.C. § 12203(a).

**D.     United's accommodation request system**

41.     United created an online system through its Help Hub, which was the only formal mechanism United offered employees to request accommodations from United's vaccine mandate.

42.     Employees were given the option to request accommodations based on religious beliefs or medical reasons through United's Reasonable Accommodation Process ("RAP").

43.     Employees filling out the online form were not permitted to request both a religious and medical accommodation request.

44.     United required all employees to submit requests for accommodation by August 31, 2021.

45.     After that date, employees were not permitted to submit accommodation requests to United through the RAP.  In fact, religious requests received after August 31, 2021, were automatically denied as untimely.

46.     In other words, any employee who determines that he or she has a religious basis for not receiving the vaccine after August 31, 2021, is left without a mechanism for requesting an

accommodation from United that the company will countenance.  Such employees must either receive the vaccine or be terminated.

      **E.**      **United's responses to accommodation requests**

      47.      Once employees began submitting RAP requests, United followed up with those individuals to determine the legitimacy of either the religious belief or medical condition requiring an accommodation.  For instance, the company asked questions geared to probe and manipulate the beliefs of religious accommodation seekers, including: "Are you aware if any vaccines or medications you have previously received were created, researched, tested or otherwise involved the use of stem cells," and if so, "please explain why receiving such vaccines or medications were not a violation of your sincerely held belief."  Also, United asked: "What about your religious belief prevents you from getting the COVID vaccines, but not taking other types of medicine;" "Have you received vaccinations in the past;" and "Do you currently take or have you taken medications of any kind (over the counter or prescription)?"

      48.      United also asked individuals (on a short 3-day timeline) for pastoral or third-party letters attesting to the employees' beliefs.  The requirement for a pastoral letter as substantiation for an employee's sincerely held religious beliefs was implemented by United early in the review process.  This was later replaced by the requirement for a letter to be provided by a third-party who could attest to an employee's sincerely held religious beliefs.

      49.      United failed to equally apply standards for determining accommodation approval. For those seeking medical accommodations, some applicants were requested to provide additional information, such as medical certifications, while others were not.  Similarly, for those seeking religious accommodations, some applicants were asked to provide additional information, such as a pastoral letter, while others were not.

50.     Where United requested additional information, it required employees to respond in unreasonable timeframes.  United's online portal, Help Hub, oftentimes did not alert employees when additional information was requested.   In fact, employees stopped receiving email notifications when updates were available, causing some employees to miss United's artificially imposed deadlines for providing additional requested information.

51.     Once any questions were answered and any requested documents were submitted, there was no further interaction between United and the employees.  The company did not ask for or suggest that there would be any possible accommodation to the vaccine mandate issued on August 6, 2021.

52.     On September 9, 2021, United began "granting" requests for accommodation, announcing that for any accommodation request it grants, the employee will be placed on indefinite unpaid leave starting October 2, 2021, with no company-paid benefits.  *See* Ailsa Chang, *et al*., *United Airlines CEO On the Decision To Put Unvaccinated Employees On Leave In October*, NPR (Sept. 10, 2021), https://www.npr.org/2021/09/10/1036039856/united-airlines-ceo-on-the-decision-to-put-unvaccinated-employees-on-leave-in-oc.  Other requests for accommodation were denied as being either untimely under United's self-imposed August 31, 2021 submission deadline or due to other arbitrary reasons, such as an employee's failure to respond within 3 or 5 days to requests for substantiation of religious beliefs.

53.     This caused many employees to rescind their accommodation requests out of a fear of lost income.

54.     For customer-facing employees (including pilots, flight attendants, and some customer service representatives), the unpaid leave will last "until the risk of COVID is low enough that [United] deem[s] it safe" or until the pandemic "meaningfully" subsides.

55.     For non-customer-facing employees (including aircraft technicians and other service representatives), the unpaid leave is set to last "for some period of time while [United] work[s] out all the details [and] the logistics" of mitigation measures, which United stated may or may not include testing requirements and requiring unvaccinated employees to wear vaccine identification badges.  *See* Chang, *et al.*, *supra* ¶ 50.

56.     In announcing these rules, United ignored the interactive process.  United did not explain why one group of employees may be able to come back to work with mitigation measures in place, while another group will not be able to do so.  United did not explain why pilots and flight attendants are grouped together, despite having significantly different customer interactions.  The same is true of other types of customer service representatives who may be working remotely or behind plexiglass shields in an airport.  United did not explain why employees in non-customer-facing positions are at less risk of infection despite still interacting with other employees.  United did not explain why its distinctions did not include any consideration for employees who have previously recovered from COVID-19 and therefore possess antibodies that may provide them with protection against future COVID-19 infection at rates similar to (or greater than) vaccination.  United further failed to explain why it would allow pilots from other airlines to ride in the cockpit with United flight officers even though those other pilots would not be required to have a COVID-19 vaccination.  Nor did United explain why its non-U.S. employees are not required to be vaccinated, even though crew members from outside the U.S. will often work together on flights with U.S. crew members.  The same is true for the regional aircrews that fly shorter routes for United.  What United did do was rely on arbitrary line-drawing rather than engaging in the interactive process with each employee who requested an accommodation.

57.     United has not provided any "accommodated" employee with a date by which he or she will be able to return to work.

58.     Rather, United stated that this period of unpaid leave may last up to 72 months (*i.e.*, up to 6 years).

59.     United informed "accommodated" employees that, while on unpaid leave, some may lose company seniority and travel benefits, they may not use accrued sick leave or vacation time, they do not accrue any sick leave or vacation time, and they must pay their own medical insurance premiums—both the employee's share and United's usual share.  Since then, some receiving a medical accommodation have been verbally informed that they may be able to use their own earned sick time pay to offset the loss of income from working their job.

60.     Any employee whose accommodation request was denied must receive the vaccine by September 27, 2021, or be terminated.

**F.     Plaintiffs' accommodation requests**

61.     Plaintiff Sambrano is a Captain with United, where he has worked in varying capacities for approximately 31 years.

62.     As a Captain, Mr. Sambrano is responsible for piloting and commanding aircraft.

63.     In addition to being a Captain, Plaintiff Sambrano has been in training to be a line check airman, which is an instructor of pilots.

64.     On August 26, 2021, Plaintiff Sambrano submitted a request for a religious accommodation through United's online accommodation request portal, Help Hub.

65.     In his accommodation request, Mr. Sambrano explained his belief that the COVID-19 vaccines were developed using aborted fetal tissue and that it is sinful to use anything derived from abortion.  Mr. Sambrano also explained that he believed receiving the vaccine runs

contrary to the Bible's teachings about his body being a temple of the Holy Spirit.  As an adult, Mr. Sambrano regularly elects not to receive vaccines due to his religious beliefs.

66.    Mr. Sambrano also attempted to request a medical accommodation because he previously contracted and recovered from COVID-19 and thus likely possesses antibodies against COVID-19.  In light of the likelihood that he possesses antibodies, Mr. Sambrano is concerned about the risk posed by receiving a vaccine which itself aims to create antibodies.

67.    Mr. Sambrano was unable to submit a request for a medical accommodation because United's accommodation request portal, Help Hub, permitted an employee to request only one type of accommodation.

68.    Mr. Sambrano did not receive any contact from United to discuss his request or possible accommodations.

69.    On September 9, 2021, United informed Mr. Sambrano that his religious accommodation request was "granted," but that he would be "accommodated" by being placed on indefinite unpaid leave.

70.    Being placed on unpaid leave will impact Mr. Sambrano personally and professionally.  For instance, he will lose the ability to participate in and be protected by the long-term disability program that exclusively covers pilots.  He will also lose his medical, dental, and prescription drug benefits, as well as his ability to retire in good standing and receive company travel and life insurance benefits.

71.    Extended unpaid leave will also require Mr. Sambrano to make difficult choices regarding the college education for his children, one of whom is currently in college and two of whom will be starting college soon.  Additionally, the loss of profit sharing and company matched

retirement contributions along with the loss of a regular income will require Mr. Sambrano's family to make other decisions about daily activities.

72.     Mr. Sambrano submitted a charge to the EEOC on September 19, 2021, regarding United's discriminatory and retaliatory actions.

73.     Plaintiff David Castillo is an Aircraft Technician with United.  He has worked for United for 22 years.

74.     In that position, Mr. Castillo is responsible for performing mechanic duties on United airplanes.

75.      On September 17, 2021, Plaintiff Castillo submitted a request for a religious and medical accommodation through an email to his supervisor.  He was unable to submit these accommodation requests through United's accommodation request portal, Help Hub, because United had determined that it would not accept accommodation requests through that portal after August 31, 2021.

76.     In his accommodation request, Mr. Castillo explained his belief that the COVID-19 vaccines were developed using aborted fetal tissue and that it is sinful to use anything derived from abortion.  As an adult, Mr. Castillo does not receive vaccines due to his religious beliefs.

77.     Mr. Castillo also requested a medical accommodation because he previously contracted and recovered from COVID-19 and thus likely possesses antibodies against COVID-19. In light of the likelihood that he possesses antibodies, Mr. Castillo is concerned about the risk posed by receiving a vaccine which itself aims to create antibodies.

78.     On Saturday, September 18, 2021, a representative from United's Human Resources ("HR") department contacted Mr. Castillo's supervisor, informing him that the religious accommodation was untimely and would therefore be ignored.  At the same time, HR instructed

the supervisor to inform Mr. Castillo that he could submit a request for a medical accommodation through United's online Help Hub system.  Mr. Castillo submitted that request on September 19, 2021, and it is now pending.  Assuming that Mr. Castillo's medical request is granted, he will presumably receive the same offer that others in his position have received: unpaid leave for an indefinite period of time.

79.     If placed on unpaid leave, Mr. Castillo will lose his travel benefits, medical, dental, and prescription drug coverage, as well as profit sharing, company matched retirement contributions, and loss of his only income source.  He is dependent on that income stream, and he does not have any savings on which to rely.  If placed on unpaid leave, Mr. Castillo will be unable to afford his housing or his car.  Unable to renew his lease without employment, he will become homeless on October 1, 2021.

80.     As a diabetic with high blood pressure, Mr. Castillo also depends on the insurance coverage he has through his job at United.  If placed on indefinite unpaid leave, Mr. Castillo will not be able to afford his medical coverage, putting his health at serious risk.

81.     Mr. Castillo submitted a charge to the EEOC on September 20, 2021, regarding United's discriminatory and retaliatory actions.

82.     Plaintiff Kimberly Hamilton is a Station Operations Representative with United. She has worked for United for 18 years.

83.     In that role, Ms. Hamilton works in an office setting, handling gate planning and coordinating fueling, mechanics, cleaners, caterers, and other staff matters.

84.     On August 26, 2021, Ms. Hamilton submitted a religious accommodation request through United's online accommodation request portal, Help Hub.

85.     Ms. Hamilton explained that, as a devout Catholic, she cannot abide by any process that relates to or uses aborted cells.  This includes receiving vaccines that she believes were derived using aborted fetal tissue.  Ms. Hamilton also explained that she believes receiving the vaccine is contrary to the Bible's teaching that her body is a temple of the Holy Spirit.

86.     On September 5, 2021, United responded by asking Ms. Hamilton to produce a letter from a third-party supporting her religious views.  Ms. Hamilton's husband provided this letter.

87.     Ms. Hamilton did not receive any other contact from United to discuss the request or possible accommodations.

88.     On September 9, 2021, United informed Ms. Hamilton that her religious accommodation request was "APPROVED," but that she would be "accommodated" by being placed on indefinite unpaid leave without her regular benefits.

89.     Being placed onto unpaid leave will impact Ms. Hamilton personally and professionally.  Ms. Hamilton and her family depend on her regular income from United.  Ms. Hamilton's husband is currently undergoing cancer treatment, which they will be unable to afford if she is placed on unpaid leave, where she must also pay for her insurance coverage.

90.     The threat of being placed on unpaid leave has caused Ms. Hamilton significant stress.  This has been exacerbated as the mandate and United's actions are impacting present decisions regarding what types of cancer treatment Ms. Hamilton's family might be able to afford for her husband if her benefits at United are lost through the current "accommodation" being offered.

91.     Ms. Hamilton submitted a charge to the EEOC on September 20, 2021, regarding United's discriminatory and retaliatory actions.

18

92.     Plaintiff Jonas is a Customer Service Representative assigned to the United Club. She has worked for United (or Continental Airlines, before United acquired Continental) since 1984.

93.     As a United Club Representative, Ms. Jonas is responsible for working in the club lounge, verifying credentials, selling memberships, discussing amenities with clients, and assisting clients with flight issues and upgrades.

94.     On August 29, 2021, Ms. Jonas requested a medical accommodation through United's online accommodation request system, Help Hub.

95.     In her request, Ms. Jonas explained that she was concerned with the safety of the vaccine for her.  She has severe reactions to various allergens, including eggs and penicillin updated that request on September 14, 2021, with a form filled out by her doctor.

96.     Ms. Jonas also contracted and recovered from COVID-19 in August of 2021, and was concerned about the risk posed by receiving a vaccine which aims to create antibodies.  One recent test did not confirm the presence of antibodies for COVID-19, but Ms. Jonas plans to test again in the near future to confirm those results.

97.     Ms. Jonas also wanted to submit a request for a religious accommodation but was unable to do so because United's accommodation request portal, Help Hub, permitted an employee to request only one type of accommodation.

98.     Ms. Jonas did not receive any contact from United to discuss the request or possible accommodations.

99.     On September 15, 2021, United informed Ms. Jonas that her medical accommodation request was "approved," but that she would be accommodated by being placed on indefinite medical leave that would lead to the loss of both her pay and her regular benefits.

100.   Being placed onto medical leave will impact Ms. Jonas personally and professionally.  Ms. Jonas' family depends on her regular salary and has no other income source.  Once her sick pay is depleted, Ms. Jonas will not be able to afford medical care for her family, which will have an immediate negative impact on her husband, who is disabled.  Additionally, Ms. Jonas' family will be unable to pay their bills and she will lose additional money she could be earning from the pension she gained while working at Continental.  United's response and threat of extended unpaid leave has also caused Ms. Jonas significant stress.

101.   Ms. Jonas submitted a charge to the EEOC on September 20, 2021, regarding United's discriminatory and retaliatory actions.

102.   Plaintiff Genise Kincannon is a Flight Attendant for United.  Ms. Kincannon has worked for United for 31 years.

103.   As a Flight Attendant, Ms. Kincannon's responsibilities include helping customers find their seats, serving drinks and food, explaining safety protocols, and handling any emergencies that arise.

104.   On August 18, 2021, Ms. Kincannon submitted a religious accommodation request through United's online accommodation request system, Help Hub.

105.   In her accommodation request, Ms. Kincannon explained her belief that the COVID-19 vaccines were developed using aborted fetal tissue and that it is sinful to use anything derived from abortion.  Throughout her adult life, Ms. Kincannon has elected not to receive vaccines due to her religious beliefs.

106.   Ms. Kincannon also has a medical basis for seeking an accommodation, which has not yet been submitted because Help Hub only permitted employees to submit one accommodation request.  Ms. Kincannon previously contracted and recovered from COVID-19 and thus likely

possesses antibodies against COVID-19.  In light of the likelihood that she possesses antibodies, Ms. Kincannon is concerned about the risk posed by receiving a vaccine which itself aims to create antibodies.

107.    After she submitted her request, Ms. Kincannon did not receive any contact from United to discuss the request or possible accommodations, other than boilerplate questions challenging her religious beliefs and requesting a letter from someone else to verify those beliefs.

108.    On September 9, 2021, United informed Ms. Kincannon that her religious accommodation request was "granted," but that she would be "accommodated" by being placed on indefinite unpaid leave without her regular benefits.

109.    The loss of regular income from United will cause Ms. Kincannon personal and professional harm.  The loss of income will inflict immediate harms on her family's daily lives—affecting transportation, housing, and other financial decisions.  The prospect of being placed on unpaid leave has also caused and continues to cause significant daily stress in Ms. Kincannon's marriage.

110.    Ms. Kincannon submitted a charge to the EEOC on September 17, 2021, regarding United's discriminatory and retaliatory actions.

111.    Plaintiff Seth Turnbough is a Captain with United and is based in Chicago.  He has been with United for 16 years and flies through DFW for work.  He also uses his "ride share" passes to fly into DFW regularly to visit his local family—a benefit that is terminated under United's recent mandate for those not receiving a COVID-19 vaccine, whether or not an "accommodation" is granted.  So long as this benefit is not terminated, Mr. Turnbough plans to continue using his ride share passes to fly into DFW.

112.    As a Captain, Mr. Turnbough is responsible for commanding and flying an aircraft.

113.    On August 6, 2021, Mr. Turnbough submitted a medical accommodation request through United's online accommodation request system.

114.    Mr. Turnbough has relapsing/remitting multiple sclerosis ("MS") and his neurologist has recommended against Mr. Turnbough receiving the COVID-19 vaccine due to a concern that it might trigger a "cytokine storm"—a condition where an individual's immune system is over-stimulated and begins attacking healthy tissue and organs.  Additionally, Mr. Turnbough's physician is concerned about the risk of blood-clotting, which is already an elevated concern for all pilots.

115.    United did not discuss possible accommodations with Mr. Turnbough.

116.    On September 10, 2021, United informed Mr. Turnbough that his accommodation request was "granted," but that he would be "accommodated" by being placed on indefinite unpaid leave.

117.    Being placed on unpaid leave will significantly affect Mr. Turnbough personally and professionally.  In addition to the financial loss, Mr. Turnbough will be unable to participate in and be protected by the long-term disability program that exclusively covers pilots.  He will also lose his medical, dental, and prescription drug benefits, as well as his ability to retire in good standing.  He will no longer have access to company travel and life insurance benefits, and will be unable to participate in company profit sharing and company matched retirement contributions.  Additionally, the threat of being placed on unpaid leave has caused Mr. Turnbough substantial stress, which increases his risk of an MS relapse.

118.    Mr. Turnbough submitted a charge to the EEOC on September 20, 2021, regarding United's discriminatory and retaliatory actions.

22

## CLASS ALLEGATIONS

119.    Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a) and (b).

120.    Through this action, Plaintiffs seek to represent a class of all United employees who have requested or will request accommodations from United's vaccine mandate and who have had those accommodation requests either formally or effectively denied and are thus faced with the decision of either taking a vaccine to which they object, or suffering termination, including the functional equivalent of termination: indefinite unpaid leave.

121.    Plaintiffs anticipate that they will ultimately seek three subclasses when they move for class certification: (1) employees who have sought either a religious or medical accommodation and previously recovered from COVID-19, possess antibodies against COVID-19, and are willing to produce periodic proof to United showing that they remain antibody positive; (2) employees who sought religious accommodations, lack COVID-19 antibodies, and are willing to submit to mitigation measures such as periodic COVID-19 testing and/or wearing masks; and (3) employees who sought medical accommodations, lack COVID-19 antibodies, and are willing to submit to mitigation measures like periodic COVID-19 testing and/or wearing masks.  There may also be separate subclasses for employees who are "customer facing" and those who are "non-customer facing."

122.    By effectively treating all accommodation requesters the same, United's actions are generally applicable to the entire class of United employees for whom United failed to grant reasonable accommodations.  Accordingly, the Court may grant relief to the entire affected class to prevent United's continue violation of federal civil rights laws.

123.    Additionally, the class is so numerous that joinder of all members is impractical. While the exact class size is unknown to Plaintiffs at this time, it is expected to exceed 2,000 employees.  The precise number and identification of the class members will be ascertainable from United's records during discovery.

124.    There are questions of law and fact common to all members of the class.  Those common questions include, but are not limited to, the following:

a.    Did United provide its employees with an adequate mechanism for requesting an accommodation when it required requests to be submitted by an arbitrary date (August 31, 2021) and prevented employees from requesting accommodations for both religious and medical reasons?

b.    Did United comply with its obligations under federal law to engage in the interactive process when responding to each accommodation request?

c.    Did United comply with its obligations under federal law to reasonably accommodate employees with religious or medical objections to the vaccine mandate when the only accommodation offered was indefinite unpaid leave?

d.    Did United comply with federal law when it denied accommodation requests?

e.    Did United retaliate against employees who engaged in protected activity when it responded to each request by formally or effectively terminating their employment or by engaging in coercive conduct to dissuade employees from requesting (or continuing to seek) an accommodation?

125.    Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested accommodations from United's vaccine mandate and United formally or effectively denied those requests without engaging in the interactive process.

126.    For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

127.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims.   Joinder of all members is impracticable.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious discrimination—failure to accommodate
### On behalf of Plaintiffs Sambrano, Castillo, Hamilton, Jonas, and Kincannon, and others similarly situated

128.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

129.    Plaintiffs Sambrano, Castillo, Hamilton, Jonas, and Kincannon hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

130.    Plaintiffs Sambrano, Castillo, Hamilton, Jonas, and Kincannon informed United of those beliefs and requested (or wanted to request) religious accommodations from the vaccine mandate.

131.    United refused to engage in the interactive process with Plaintiffs regarding their religious accommodation requests and instead only responded to Plaintiffs with questions designed to deter Plaintiffs from exercising their religious beliefs.

132.    Irrespective of the interactive process, United failed to provide Plaintiffs with reasonable accommodations for their religious beliefs, as indefinite unpaid leave is not a reasonable accommodation.  Instead, indefinite unpaid leave is an adverse employment action.

133.    United thereby discriminated against Plaintiffs because of their religious beliefs.

134.    United's failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

135.    By failing to engage in the interactive process or offer any reasonable accommodation, United's discriminatory actions were intentional and/or reckless and in violation of Title VII.

136.    Plaintiffs have filed charges with the EEOC complaining of these discriminatory actions.  Although Plaintiffs' EEOC charges remain pending, this Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process.  *See Drew v. Liberty Mut. Ins. Co.*, 480 F.2d 69, 74 (5th Cir. 1973).

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e,** *et seq.*
**Religious discrimination—retaliation**
**On behalf of Plaintiffs Sambrano, Castillo, Hamilton, Jonas, and Kincannon,**
**and others similarly situated**

137.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

138.    Plaintiffs Sambrano, Castillo, Hamilton, Jonas, and Kincannon engaged in protected activity when they requested (or wanted to request) religious accommodations from United's vaccine mandate.

139.     United responded almost immediately by announcing that it would formally or effectively terminating their employment.  This was so even though United has conceded that many of the requests for religious accommodation are legitimate by "granting" those requests.

140.     United's response to Plaintiffs' protected activity with a draconian threat of years of unpaid leave is an adverse employment action intended to force employees to forgo their religious beliefs and receive the COVID-19 vaccine.  When its improper questioning of the employees' religious beliefs failed, United chose to retaliate by giving the employees the false choice between vaccination and effective termination.

141.     Plaintiffs' religious beliefs and protected activity were the causes of United's adverse employment action.  Indeed, United's derisive view of employees with religious beliefs has been documented.  Moreover, United's disparate treatment of religious accommodation requests—arbitrarily cutting off the deadline for submitting religious accommodations, while potentially still accepting requests for medical accommodation (even though the end result is basically the same)—only confirms United's hostility to requests for religious accommodation. United did not bother engaging in an interactive process with accommodation seekers because it never intended to provide them with a reasonable accommodation.

142.     By retaliating against Plaintiffs for engaging in protected activity, United has violated Title VII.  This violation has harmed and continues to harm Plaintiffs.

143.     Plaintiffs have filed charges with the EEOC complaining of these retaliatory actions.  This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process.  *See Drew*, 480 F.2d at 74.

**COUNT III**
**Violation of the ADA, 42 U.S.C. § 12101, *et seq*.**
**Disability discrimination—failure to accommodate**
**On behalf of Plaintiffs Sambrano, Castillo, Jonas, Kincannon, Turnbough,**
**and others similarly situated**

144.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

145.    Plaintiffs Sambrano, Castillo, Jonas, Kincannon, and Turnbough informed United of their disabilities.

146.    Plaintiffs Sambrano, Castillo, Jonas, Kincannon, and Turnbough requested (or wanted to request) reasonable medical accommodations from United's vaccine mandate for their disabilities.

147.    United refused to engage in the interactive process with Plaintiffs regarding their medical accommodation requests.

148.    United violated the ADA when it denied or effectively denied Plaintiffs' accommodation requests.

149.    Where United offered indefinite unpaid leave as an accommodation, it failed to provide a reasonable accommodation.

150.    United thereby discriminated against Plaintiffs because of their disabilities.

151.    United's failure to provide medical accommodations has harmed and continues to harm Plaintiffs.

152.    By failing to engage in the interactive process or offer any reasonable accommodation, United's discriminatory actions were intentional and/or reckless, and in violation of the ADA.

153.    Plaintiffs have filed charges with the EEOC complaining of these discriminatory actions.  This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to

preserve the status quo pending completion of the EEOC's administrative process. *See Drew*, 480 F.2d at 74; *Baily v. Dallas Cnty. Sch.*, No. 3:16-cv-1642-M, 2016 WL 7638146, at *2 n.4 (N.D. Tex. Dec. 9, 2016) ("Exhaustion of administrative remedies in the ADA context is similarly a condition precedent rather than a jurisdictional prerequisite to suit.").

### COUNT IV
### Violation of the ADA, 42 U.S.C. § 12101, *et seq*.
### Disability discrimination—retaliation
### On behalf of Plaintiffs Sambrano, Castillo, Jonas, Kincannon, Turnbough, and others similarly situated

154.   Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

155.   Plaintiffs Sambrano, Castillo, Jonas, Kincannon, and Turnbough engaged in protected activity when they requested (or wanted to request) medical accommodations from United's vaccine mandate.

156.   United responded by taking an adverse employment action against each employee when it announced that it would formally or effectively terminated their employment. This was so even though United has conceded that many of the requests for medical accommodations are legitimate by "granting" those requests.

157.   United's response to Plaintiffs' protected activity with a draconian threat of years of unpaid leave is an adverse employment action intended to force employees to forgo their medical reasons for not receiving the COVID-19 vaccine.

158.   Plaintiffs' medical disability and protected activity were the causes of United's adverse employment action. As discussed above, United's derisive view of employees with disabilities has been documented.

159.   By retaliating against Plaintiffs for engaging in protected activity, United has violated the ADA.

29

160.    Plaintiffs have filed charges with the EEOC complaining of these retaliatory actions.  This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process.  *See Drew*, 480 F.2d at 74; *Baily*, 2016 WL 7638146, at *2 n.4.

**PRAYER FOR RELIEF**

Plaintiffs request that the Court:

a.    Certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

b.    Certify at least three subclasses: (1) employees who have sought either a religious or medical accommodation and previously recovered from COVID-19 and possess antibodies against COVID-19; (2) employees who sought religious accommodations and lack COVID-19 antibodies; and (3) employees who sought medical accommodations and lack COVID-19 antibodies.

c.    Declare that United has violated Title VII and the ADA by failing to engage in the interactive process in response to requests for accommodations to its COVID-19 vaccine mandate.

d.    Declare that United has violated Title VII and the ADA by discriminating against its employees by failing to provide reasonable accommodations to its COVID-19 vaccine mandate.

e.    Declare that United has violated Title VII and the ADA by retaliating against employees who engaged in protected activity.

f.    Issue a temporary restraining order and/or preliminary injunction, *see Drew*, 480 F.2d at 74, followed by a permanent injunction, enjoining United from terminating or placing on indefinite unpaid leave any employee who has a religious or medical basis for seeking an accommodation, and enjoining United from denying as untimely any request for a religious or

30

medical accommodation.  The Court should enjoin such actions until United has completed the interactive process for all employees who request such an accommodation and granted reasonable accommodations as required by federal law—which could include: (i) for those who test positive for antibodies against COVID-19, allowing them to be accommodated through regular antibody testing and mask wearing; and (ii) for those otherwise qualifying for medical and religious accommodations, allowing them to attend work wearing a mask while around others, and submitting to periodic COVID-19 testing.

g.     Award Plaintiffs, and those similarly situated, damages, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

h.     Award Plaintiffs reasonable attorneys' fees and costs.

i.     Grant any other relief that the Court deems just, proper, and equitable.

j.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues upon which there is a federal right to a jury trial.

October 12, 2021                              Respectfully submitted,

                                              */s/ John C. Sullivan*
                                              John C. Sullivan
                                              Texas Bar No. 24083920
                                              john.sullivan@the-sl-lawfirm.com
                                              S|L LAW PLLC
                                              610 Uptown Boulevard, Suite 2000
                                              Cedar Hill, TX 75104
                                              Telephone: (469) 523-1351

                                              */s/ Robert c. Wiegand*
                                              Robert C. Wiegand
                                              Texas Bar No. 00791924
                                              bob.wiegand@swolegal.com
                                              Melissa J. Swindle
                                              Texas Bar No. 24013600
                                              Melissa.swindle@swolegal.com
                                              Stewart Wiegand & Owens PC
                                              325 N. St. Paul Street, Suite 3750
                                              Dallas, TX 75201
                                              Telephone: (469) 899-9800
                                              Facsimile: (469) 899-9810

                                              */s/ Mark R. Paoletta*
                                              Mark R. Paoletta*
                                              D.C. Bar No. 422746
                                              mpaoletta@schaerr-jaffe.com
                                              Gene C. Schaerr*
                                              D.C. Bar No. 416368
                                              Brian J. Field*
                                              D.C. Bar No. 985577
                                              Kenneth A. Klukowski*
                                              D.C. Bar No. 1046093
                                              Annika M. Boone*
                                              Utah Bar No. 17176
                                              SCHAERR | JAFFE LLP
                                              1717 K Street NW, Suite 900
                                              Washington, DC 20006
                                              Telephone: (202) 787-1060
                                              Facsimile: (202) 776-0136

                                              * *Pro hac vice* motions forthcoming

                                              *Counsel for Plaintiffs and the
                                              Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing has been served via the Court's electronic filing system upon all counsel of record.

/s/ Robert C. Wiegand
Robert C. Wiegand