# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

DAVID SAMBRANO, individually and on
behalf of all others similarly situated, *et al.*,

*Plaintiffs,*

v.

UNITED AIRLINES, INC.,

*Defendant.*

Civil Action No.: 4:21-cv-01074-P

# PLAINTIFFS' REPLY IN SUPPORT OF
# MOTION TO EXTEND THE TEMPORARY RESTRAINING ORDER

In response to Plaintiffs' motion to extend the temporary restraining order ("TRO") currently in place, Defendant United Airlines, Inc. ("United") challenges the extension for two primary reasons.  First, United argues that it is incurring significant costs because vaccinated employees allegedly refuse to fly with unvaccinated employees.  Second, extending the current TRO would exceed the maximum period allowed under Federal Rule of Civil Procedure 65.

Both arguments fail, as do United's rote suggestion that the factors for injunctive relief are absent.  Contrary to United's claim (at 3), an extension of the TRO would not be legal error. Rather, extending the TRO is necessary for precisely the reason it was necessary in the first place— because without it "nothing would prevent hundreds of workers from ostensibly either: (1) being compelled to take a vaccination in violation of their religious beliefs or medical restrictions, or (2) being placed on indefinite unpaid leave by United."  ECF No. 66 at 2.  Unless the Court resolves the pending motion for a preliminary injunction before the currently scheduled mediation session, extending the TRO for the first time here is necessary to prevent irreparable harm.

1.  Since COVID-19 vaccines became available, it has never been true that any significant number of vaccinated pilots have refused to fly with unvaccinated pilots, especially those who have already had COVID and have natural immunity, or those who have recently tested negative. United's claim at the hearing that *some* indeterminate number of vaccinated pilots have expressed concern lacked credible support.[1]  Indeed, the claim is easily rebutted by showing the instances of vaccinated and unvaccinated pilots flying together throughout the past nine months.  Moreover,

---

[1] To the extent that United's claim even had any merit, it would solely be the result of a situation created exclusively, and arguably intentionally, by United.  By way of example, in United's most recent bidding reports published for November, the pilots who were granted a religious accommodation have their schedules coded with "ULA," which means Unpaid Leave of Absence. Because ULA is a descriptor that only applies to those who are unvaccinated, this private information is now on public display since these reports are available for all United pilots to see and can be downloaded by any pilot to reference in the future.

the claim is rebutted by the fact that, as witnesses acknowledged at the hearing, any concerned pilot may opt to wear a mask in the cockpit.

Even now, United only claims (at 4) that some "vaccinated pilots in United's workforce refuse to risk their safety flying with unvaccinated pilots." But that of course assumes that the unvaccinated pilots have not recently tested negative. Moreover, United has not explained—because it cannot—whether those pilots realize they are often flying with unvaccinated pilots from both United's regional carriers and other airlines. And United makes no attempt to quantify this concern; it may well be just two pilots who have not realized that they are safer flying with an accommodated, unvaccinated pilot who just tested negative for COVID-19 than with an untested vaccinated pilot.[2] As United's own witness testified at the hearing, he would rather fly with someone who just tested negative for COVID-19 than with someone who was vaccinated months ago and has not taken a test. Hr'g Testimony of B. Quigley. He was correct to say so, and United may protect its employees by implementing one of the accommodations Plaintiffs identified.

Moreover, the entire basis of this argument suggests a concerning action on United's part. Pilots should not know whether they are flying with an unvaccinated pilot and thus they should have no occasion to "refuse to risk their safety flying with unvaccinated pilots." ECF No. 87 at 4. The only reason this issue would arise is if United has been sharing private medical information about its employees, which Plaintiffs have become aware that United has been doing in its attempt to ostracize those seeking accommodations. Rather than sharing private medical information, United should be informing its pilots—as they do the general public—that the risk of contracting COVID-19 on a United airplane is almost zero. Again, the alleged harm to United—$1.4 million

---

[2] As an example, Plaintiffs have recently been made aware that even within the past week, United allowed an unvaccinated pilot to fly his route and there was no issue.

every two weeks—is being caused by United.  United could avoid this cost immediately by implementing the identified accommodations.

The alleged safety argument is also undermined by United CEO Scott Kirby's recent pronouncements regarding customers flying other airlines that do not require vaccines.  His statements reveal that the lack of a reasonable accommodation here is really about advertising— Mr. Kirby has placed profit over United's employees with religious beliefs and disabilities. Evidently referencing Southwest Airlines' recent statement that it would accommodate unvaccinated staff with regular testing, Mr. Kirby said: "Customers can book with confidence on United . . . but if you're booking on an airline that doesn't have a vaccine requirement . . . caveat emptor."  Edward Russell, *United CEO Says Beware Flying Airlines Without a Vaccine Mandate*, Yahoo!  (Oct.  20,  2021),  https://www.yahoo.com/now/united-ceo-warns-travelers-beware-181800161.html.  The same article noted that Mr. Kirby's "comments also set up something of a contradiction for United" because "[w]hile Kirby warned travelers to beware what airline they book flights with, the carrier has not asked nor is [it] requiring its regional affiliates who operate United Express flights"—the majority of United's domestic flights—"to implement the same Covid-19 requirement." *Id.*  If United can accommodate thousands of employees from its regional carriers and employees from overseas who do not have a Title VII or ADA basis for accommodation, United can follow federal law here and do the same.

In sum, extending the TRO is necessary to prevent irreparable harm for all the reasons Plaintiffs have identified in the briefing to date.  And United's alleged safety concerns—which are now clearly just marketing concerns—should not stand in the way of the Court extending the TRO.

2.   Contrary to United's suggestion, extending the TRO is expressly permitted under Rule 65.  The fact that United voluntarily agreed to initially suspend its plans for termination and

unpaid leave is of no legal moment.  The TRO has not yet been in place for 14 days, and it may be

extended for another 14 days without issue.  ECF No. 66 (entering the TRO on October 12, 2021).

Rule 65(b) allows "[t]he court [to] issue a temporary restraining order."  Accordingly, by its terms,

it applies only to *the Court's* entry of a TRO.  It does not have a provision applicable to a voluntary

agreement, such as the one that United entered with the Plaintiffs here, even if that voluntary

agreement is of similar length.  ECF No. 28 (explaining on September 24, 2021, that the Court

was "deferring ruling" on the TRO motion because of a "stipulated agreement" between the

parties).  Moreover, because it was an agreement, United cannot now say that an extension of the

TRO is inequitable.  United entered a voluntary agreement after Plaintiffs filed their complaint and

TRO motion specifically to avoid the Court entering a TRO.  United cannot now pretend that the

action it took to avoid a TRO somehow subjected it to one.  The fact that the Court ultimately

found it necessary to enter the TRO did not magically transform the voluntary agreement between

the parties into the first leg of the TRO the Plaintiffs sought.  United's earlier voluntary actions

have no bearing on the time requirements in Rule 65.[3]  For that reason, the cases United cite (at 6)

---

[3] United also views its voluntary agreement as narrower than the TRO in that it believes the
agreement would allow individuals to be terminated who had not formally sought an
accommodation as of September 23, 2021.  As explained previously, though, it was United's own
actions that caused many of its employees not to participate in the RAP process.  There were thus
employees willing to face formal termination who had not officially applied for a religious
accommodation.  This included Plaintiff David Castillo who, after United told him that he needed
a pastoral letter to confirm his religious beliefs, gave up on the RAP process since his Buddhist
faith does not provide him a specific church in the area.

Although United's counsel suggested at the recent evidentiary hearing that Mr. Castillo was
mistaken in his belief that United required a pastoral letter confirming his beliefs, the document
accompanying this reply confirms that United was indeed informing employees that a pastoral
letter on pastoral letterhead may be required (even though there is no legal basis for such a request).
Attachment A.  This confirms Mr. Castillo's testimony and highlights just a portion of United's
inappropriate pushback against those requesting religious accommodations.  Plaintiffs have also
been made aware of other individuals who experienced difficulties in completing the RAP process
that United is threatening with termination even though they tried to seek a religious exemption

for the claim that a TRO can only be extended once are irrelevant to the motion to extend it for the first time now.[4]

3. Finally, United's merits arguments fail for the same reasons as they failed previously. Plaintiffs' irreparable harm—from facing the impossible choice to which United would put them to the loss of seniority and, separately, bid opportunities for jobs, schedules, and other benefits— has been shown time and again. And it has always focused on the harms caused by United that are more than monetary. While seniority might be replaceable in some cases, United's own witness said it could not be as to the employees involved in this case. Moreover, as Plaintiffs testified repeatedly at the hearing, no amount of money the Court could award can make up for things such as lost bid opportunities. And extending the TRO is necessary for yet another reason: the second the TRO expires, United will terminate any employees—even those who submitted an accommodation request by September 23—that were not "accommodated" with indefinite unpaid leave. That this is the case is amply demonstrated by the fact that United has constantly moved the termination date in each case to the date the TRO expires. While Plaintiffs have actual harm, the only harm to United may be stopped at any time by United itself. But United apparently prefers to inflict that harm on itself for marketing reasons.

---

but were unable to meet United's artificial deadlines or demands for qualification. United's improper actions during what should have been the interactive phase requires injunctive relief broad enough to cover individuals excluded by United's actions from the RAP process initially— like Mr. Castillo who never submitted a request through Help Hub and is likely not under threat of formal termination now only because he is a named Plaintiff.

[4] They also do not support the proposition for which United cites them. The lead case it cites— and the only binding one—is *Connell v. Dulien Steel Products, Inc.,* 240 F.2d 414 (5th Cir. 1957). Rather than saying that an extension beyond 14 days is *immediately* appealable, it says that "if a temporary restraining order is continued for a *substantial length of time* past the period permitted by Rule 65(b)," an appeal would be permitted. *Id.* at 417 (emphasis added).

## CONCLUSION

The motion to extend the TRO should be granted.  Alternatively, as the record supports granting the motion for a preliminary injunction, the Court may resolve the pending motion and the parties could still attend mediation to reach a settlement in the case even with an injunction in place.

October 23, 2021

Respectfully submitted,

*/s/ John C. Sullivan*
John C. Sullivan
Texas Bar No. 24083920
john.sullivan@the-sl-lawfirm.com
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891

*/s/ Robert C. Wiegand*
Robert C. Wiegand
Texas Bar No. 00791924
bob.wiegand@swolegal.com
Melissa J. Swindle
Texas Bar No. 24013600
Melissa.swindle@swolegal.com
Stewart Wiegand & Owens PC
325 N. St. Paul Street, Suite 3750
Dallas, TX 75201
Telephone: (469) 899-9800
Facsimile: (469) 899-9810

*/s/ Mark R. Paoletta*
Mark R. Paoletta*
D.C. Bar No. 422746
mpaoletta@schaerr-jaffe.com
Gene C. Schaerr*
D.C. Bar No. 416368
Brian J. Field*
D.C. Bar No. 985577
Kenneth A. Klukowski*
D.C. Bar No. 1046093
Joshua J. Prince*
D.C. Bar No. 1685532
Annika M. Boone*

6

Utah Bar No. 17176
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136

\* Admitted *pro hac vice*

*Counsel for Plaintiffs and the
Proposed Class*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been served via the Court's electronic filing system upon all counsel of record.

*/s/ Robert C. Wiegand*
Robert C. Wiegand