UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**DAVID SAMBRANO ET AL.,**

   Plaintiffs,

v.                                          No. 4:21-cv-1074-P

**UNITED AIRLINES, INC.,**

   Defendant.

## OPINION & ORDER

Before the Court is Defendant's Partial Motion to Dismiss, filed on October 7, 2021. ECF No. 47. As detailed below, the Court will **GRANT in part** and **DENY in part** Defendant's Motion.

## INTRODUCTION

This is an employment-discrimination case brought by Plaintiffs, and others similarly situated, against Defendant United Airlines, Inc. ("United") for issues related to United's COVID-19 vaccine mandate. Plaintiffs allege United violated Title VII of the Civil Rights Act of 1964 by refusing to engage in an interactive process, by failing to provide reasonable religious accommodations, and by retaliating against Plaintiffs for engaging in a protected activity (i.e., requesting an exemption). Plaintiffs also allege United violated the Americans with Disabilities Act ("ADA") by failing to provide reasonable medical accommodations for qualified employees and for retaliating against those who requested medical exemptions.

United's instant Motion argues that the Court lacks personal jurisdiction over the claims brought by three named Plaintiffs: David Sambrano, Genise Kincannon, and Seth Turnbough. Sambrano is a pilot and Kincannon is a flight attendant; both live in Texas and are based out of New Jersey and San Francisco, respectively. Turnbough, however, neither lives nor works in Texas. United also argues that the Court lacks

jurisdiction over nascent claims brought members of the putative class who work outside Texas.

After considering the Parties' briefing (ECF Nos. 47, 55, 58), oral arguments, evidence, and applicable law, the Court mostly disagrees with United's arguments. As the United States Supreme Court recently clarified, the Court has personal jurisdiction over claims that "arise out of *or relate to* the defendant's forum-state contacts." *Ford Motor Co. v. Mont. Eight Judicial Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (emphasis in original). Here, Sambrano's and Kincannon's claims relate to United's contacts with the forum state of Texas; Turnbough's claims do not. Accordingly, the Court concludes that it has personal jurisdiction over Sambrano's and Kincannon's claims, but not over Turnbough's claims. The Court further concludes that is premature to resolve United's jurisdictional challenge to the putative class members. Thus, the Court will grant United's Motion and dismiss Turnbough's claims, but the Court will deny all other relief sought in United's Motion.

## FACTUAL & PROCEDURAL BACKGROUND

United is one of the nation's largest airlines. Although it is headquartered in Chicago, Illinois and incorporated in Delaware, United maintains a significant presence throughout the country. It employs approximately 68,000 employees domestically and claims to operate the most comprehensive route network among North American carriers. Def.'s App'x ¶¶ 2, 5.

Texas accounts for a large portion of that activity: One of United's seven national hubs is in Houston; over a quarter of United's 1,800 daily flights either land in or take off from Texas; and 16% of United's workforce is employed in Texas. *Id.* ¶¶ 6–7, 10.

On August 6, 2021, United mandated that all its domestic employees receive a COVID-19 vaccination, unless exempted for either religious or medical reasons. But exempted employees face a Hobson's choice: Violate their religious beliefs or medical advice, or endure indefinite, unpaid leave. Although there is a factual dispute regarding where the vaccine-*mandate* policy was conceived, socialized, and issued, the

evidence shows the *accommodation* policy was formulated, socialized, and issued from Chicago.

Regardless of where the accommodation policy was conceived, socialized, or issued, it was directed across United's workforce and felt nationwide. Two Plaintiffs, Sambrano and Kincannon, live within the Northern District of Texas. Before the vaccine mandate, they commuted—through United's flight privileges—from their homes in Texas to their work in Newark, New Jersey and San Francisco, California, respectively. After the vaccine mandate, both requested and received religious accommodations from it. If implemented, however, the accommodation—indefinite, unpaid leave—would prevent them from working or receiving a salary, among other benefits, and essentially stranding them at home. Conversely, Turnbough lives and works in Illinois. PI Hr'g Tr. Vol. II at 139:20–140:11. He claims, however, to regularly use United's ride-share pass to visit family in Texas. ECF No. 7 at 13; PI Hr'g Tr. Vol. II at 139:20–24.

On September 21, 2021, Plaintiffs sued United for violations of Title VII and the Americans with Disabilities Act (ADA), arguing that the "accommodation" was illusory, i.e., an accommodation in name only. Their complaint also sought to represent a class of all United employees who accepted the "accommodation." ECF No. 1.

The Court held a hearing on Plaintiffs' Motion for Temporary Restraining Order on September 24, 2021. *See* Order, ECF No. 10. At this hearing, the Parties reached an agreement that obviated the need for the Court to then rule on that motion. *See* Order Deferring on Ruling, ECF No. 28. Specifically, the Parties stipulated that United would temporarily refrain from placing exempted employees on leave for not complying with United's vaccine mandate. *See id.*

The Court then set Plaintiffs' Motion for Preliminary Injunction and United's Partial Motion to Dismiss for hearing on October 8, 2021. On the eve of these hearings, however, United moved to dismiss Sambrano, Kincannon, Turnbough, and all putative class members that work outside of Texas based on the theory that the Court lacks personal

jurisdiction over United for these Plaintiffs' claims.[1] ECF No. 47. To permit Plaintiffs reasonable time to respond to United's jurisdictional challenge, the Court set an expedited briefing scheduling and reset the hearings on to October 13, 2021. ECF No. 49. After the hearings were reset, on October 12, 2021, the Court issued a Temporary Restraining Order ("TRO"). *See* TRO, ECF No. 66. On October 13, 2021, the Court held evidentiary hearings on the Motion for Preliminary Injunction and Partial Motion to Dismiss. *See* ECF No. 86. At these hearings, both Parties admitted exhibits, offered live witness testimony, cross examined the other Party's witnesses, and orally presented their expert witnesses' opinions.[2] The Court accordingly considers the record and evidence from both hearings to resolve the Partial Motion to Dimiss.

Defendant's Partial Motion to Dismiss is now ripe for review.

## LEGAL STANDARD

"When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When a court holds a pretrial evidentiary hearing on jurisdictional issues and both sides have the opportunity to fully present their cases, the plaintiff must establish personal jurisdiction by the preponderance of the evidence. *Walk Haydel & Ass. Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

---

[1] Although United's Motion includes a parenthetical reference to the venue requirements, United waived any argument that the venue statutes require dismissal. The Motion's title does not mention venue, not one heading mentions venue, and the Motion's prayer does not mention venue. Moreover, United's Motion fails to cite a single case regarding venue. This perfunctory venue reference does not constitute a venue challenge. FED. R. CIV. P. 7(b)(1)(B) (requiring a motion's grounds be stated with particularity).

[2] Because United filed its Partial Motion to Dismiss at the eleventh-hour before the initial Preliminary Injunction Hearing, the Court was forced to reset the hearing to the following week. *See* ECF Nos. 47, 49. Because Plaintiffs' expert witnesses were not available for the new hearing date, Plaintiffs moved to continue the new hearing date. ECF No. 50. The Court held a telephonic hearing to address these issues. *See* EFC No. 53. To avoid potential prejudice, the Court determined that if Plaintiffs' experts were unable to attend the rescheduled hearing, both sides would be required to submit their expert testimony through written declarations or affidavits. *See* ECF No. 54. Counsel for the Parties were permitted to orally summarize their experts' opinion at the Preliminary Injunction Hearing.

4

# ANALYSIS

The Court will analyze United's motion in two parts. *First*, the Court looks at whether it may exercise personal jurisdiction over United regarding the claims brought by the three above-named Plaintiffs. For the reasons below, the Court concludes that it may exercise jurisdiction over United on Sambrano's and Kincannon's claims but not over Turnbough's claims. *Second*, the Court concludes that it is premature to decide whether it may exercise jurisdiction over United for the putative class members claims.

## A. Personal Jurisdiction Over Named Plaintiffs

United argues that it would violate due process for the Court to exercise jurisdiction over it for the claims brought by Turnbough, Sambrano, Kincannon, and the putative class. In a federal-question case, such as this, the Fifth Amendment's Due Process Clause requires, "as a matter of individual liberty," that there must be "a constitutionally sufficient relationship between the defendant and the forum" and that "the procedural requirement of service of summons must be satisfied." *Omni Cap. Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *see also Douglass v. Nippon Yusen Kabushiki Kaisha*, 996 F.3d 289, 2925 (5th Cir. 2021). "[S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Id.* Rule 4 makes service of process effective over a defendant either "when authorized by a federal statute" or where the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k).

In this case, neither Title VII nor the ADA authorized nationwide service of process, so "service can only be effective to the extent a Texas state court of general jurisdiction could exercise jurisdiction over a defendant." *Martinez v. Tyson Foods, Inc.*, No. 4:20-CV-528-P, 2021 WL 1289898, at *2 (N.D. Tex. Apr. 7, 2021). Texas interprets its long-arm statute to extend to the limits of due process. *See, e.g., Kawaski Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985). Thus, "the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be consistent with due process." *Martinez*, 2021 WL 1289898, at *2.

For the Court to have jurisdiction over United, it must "have certain minimum contacts with [Texas] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry is neither "mechanical or quantitative," and instead focuses on the "quality and nature" of the defendant's forum-related activities. *Int'l Shoe Co.*, 326 U.S. at 319. This focus "led [the Supreme Court] to . . . recogniz[e] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford*, 141 S. Ct. at 1024. The Court analyzes both types of personal jurisdiction below.

    1. <u>Under the facts of this case, the Court lacks general jurisdiction.</u>

This Court lacks general, or all-purpose, jurisdiction over United. A Court "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (noting that general jurisdiction "allows for jurisdiction over all claims against the defendant, no matter their connection to the forum").

The "paradigm forum" where a corporation is at home is the "corporation's place of incorporation and its principal place of business." *BNSF Ry. Co.*, 137 S.Ct. at 1558. But the exercise of general jurisdiction is not limited to these forums. *Id.* The Supreme Court has left open the possibility of an "exceptional case" where a "corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.19). The Fifth Circuit, however, has held that establishing these circumstances would be "incredibly difficult." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

6

Although United maintains a constant and significant presence in Texas, binding precedent compels the Court to conclude it remains Texas's guest. United's strong Texas presence includes: one of its seven hubs is in Houston, roughly a quarter of its daily flights take-off or land in Texas, and 16% of its employees work here. *Cf. BNSF Ry. Co.*, 137 S. Ct. at 1549 (holding BNSF not "at home" in Montana despite the state containing 6% (2,061 miles) of its track, hosting 5% (2,100) of its workers, and generating 10% of its revenue). But "general jurisdiction does not lie just because a defendant 'engages in substantial, continuous, and systematic course of business in the forum.'" *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020) (quoting *Daimler*, 571 U.S. at 138–39) (holding United not "at home" in California despite the state hosting two United hubs and "a substantial number of employees"). If it did, then large corporations would be "essentially at home" in many states. *Daimler*, 571 U.S. at 138–39. And a "corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20. For these reasons, the Court concludes that it does not have general jurisdiction over United.

2. The Court has specific personal jurisdiction over Sambrano's and Kincannon's claims.

The Court has specific jurisdiction over United for Sambrano's and Kincannon's claims because they live here, were "accommodated" here, and (absent injunctive relief) will suffer injury here because of United's policy being directed here. In contrast, Turnbough's claim does not relate to any of United's Texas contacts at all. Thus, the Court lacks person jurisdiction over United for his claims.

These conclusions flow from recent holdings of the Supreme Court and Fifth Circuit. "To be subject to specific jurisdiction, the defendant must have acted to 'purposefully avail itself of the privilege of conducting activities within the forum State' and 'there must be an affiliation between the forum and the underlying controversy.'" *Alexander v. Anheuser-Busch, L.L.C.*, No. 19-30993, 2021 WL 3439131, at *2 (5th Cir. Aug. 5, 2021) (quoting *Ford*, 141 F.3d at 1024–25). Courts in the Fifth Circuit apply a three-part test to determine whether specific personal jurisdiction exists:

7

1. defendant purposely directed its activities toward the forum state or purposely availed itself of the privilege of conducting activities there;

2. plaintiff's cause of action arises out of or relates to one of the defendant's contacts with the forum state; and

3. exercise of personal jurisdiction is in accordance with the "traditional notions of fair play and substantial justice.

*Carmona v. Leo Ship Man., Inc.*, 924 F.3d 190, 193 (5th 2019) (cleaned up). If the plaintiff establishes the first two elements, the burden shifts to the defendant to make a "compelling case" that the Court's assertion of jurisdiction is either unfair or unreasonable. *Id.*

### a. *United purposely availed itself of the privilege of conducting activities in Texas.*

"For there to be minimum contacts, a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Id.* at 193. This requirement is the "constitutional touchstone" of personal jurisdiction. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). It "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475. Thus, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Here, United purposefully availed itself of the benefits and protections of Texas by operating a hub and main office here, by flying hundreds of flights per day here, by employing 16% of its employees (about 10,880 employees) here, and—most importantly—by implementing employment policies that govern their workforce here. Indeed, the facts before the Court are akin to the facts in *Ford*. See *Ford*, 141 S. Ct. at 1028. There, although the specific vehicles in the case were designed, manufactured, and bought elsewhere, "Ford had systematically served a market in Montana and Minnesota for the very [model of] vehicles that the plaintiffs allege malfunctioned and injured

8

them in those states." *Ford*, 141 S. Ct. at 1028. Similarly, in addition to operating a hub and main office and employing over 10,000 employees in the state, United systematically executed employment policies—e.g., the challenged accommodation policy—throughout its workforce, which necessarily includes purposefully contacting the forum state. United's substantial Texas presence ensures that any company-wide employee policy would be directed here. This is especially true for the challenged accommodation policy at the center of this dispute. Essentially, United told its employees to get vaccinated or stay home. When those employees' homes are in Texas, the accommodation policy not only reaches their place of work, but it follows them home too.

Given these contacts, United should reasonably anticipate being haled into Texas court for the accommodation policy. Accordingly, the Court concludes that Plaintiffs met this element.

> b. *Sambrano's and Kincannon's claims relate to United's Texas contacts, but Turnbough's claim does not.*

Even if United has sufficient contacts with Texas, this Court can exercise jurisdiction over United only if Plaintiffs' claims "arise out of *or relate t*o" United's contacts with Texas. *See id.* (emphasis in original). *Ford* clarified that this element "contemplates that some relationships will support jurisdiction without a causal showing"—that is, jurisdiction can exist if the claim merely "relates to" the defendant's contacts even if it does not "arise from" those contacts. *Id.* at 1026. Thus, the Court need not find causation to conclude that this element be met. *Id.* at 1026. But even without a causal requirement, there still must be a relationship between United's contacts and Plaintiffs' claims; for "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

Both Sambrano's and Kincannon's claims relate to United's Texas contacts. As detailed above, United's accommodation policy targets, and necessarily affects, an employee at their workplace *and* their home. To that end, United directed the policy towards each employee's workplace by barring them from working—even if accommodated. And United further directed the policy towards each employee's home by

9

"accommodating" them through unpaid, indefinite leave, essentially forcing that employee to stay home by order of their employer. Here, because the leave is unpaid, Sambrano and Kincannon will face difficult financial decisions while being forced out of the workforce and into their home; thus, they will necessarily suffer any resulting injury from the accommodation policy in Texas. And an important part of Plaintiffs' claims is arguing that United's policy violates federal law because it forces them to stay at home without pay under the guise of an accommodation in name only. The place of residence is thus inextricably bound, and related, to the claims before the Court.

Contrasting these relations with those found in *Bristol-Myers Squibb* clarifies the point. That case was a products-liability action against a pharmaceutical company. The non-resident plaintiffs neither bought the drug in the forum state, ingested the drug there, nor suffered injury there. *Id.* at 1781. In fact, "*all* the conduct giving rise to the nonresidents' claims occurred" outside the forum state." *Id.* at 1782. (emphasis added). But here, by accepting United's "accommodation," Sambrano and Kincannon will be forced, per United's policy, to remain at home in Texas without pay or work-related benefits. United thus directed this policy to their employees' homes. Accordingly, the Plaintiffs' claims—alleged violations of federal law rooted in a policy that forces them to go on indefinite, unpaid leave—are necessarily related to United's contacts with Texas stemming from United's policy. Thus, Plaintiffs' claims relate to United's contacts more directly than the plaintiffs' claims to California in *Bristol-Myers Squibb*.

United offers three counter arguments that the Court finds unpersuasive. United first argues that the Plaintiffs' residence alone cannot establish personal jurisdiction. *See Walden*, 571 U.S. 277. True, but that fact is only one brick in the wall; it contributes to the totality while being insufficient alone. United next claims that finding jurisdiction solely because of where the effects of the policy are felt is wrong. *See, e.g.*, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th 2008) ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."). While true, this argument misses the point. Not

10

only are Sambrano's and Kincannon's harms felt in Texas, United created an accommodation policy for employees in Texas and purposefully directed it here, knowing its effects would be felt here. These facts distinguish the cases. United then cites non-binding, distinguishable opinions that predate *Ford*. For instance, United cites a California district court opinion to argue that there is an insufficient connection. *See Coffey v. Mesa Airlines Inc.*, No. 18-CV-3688, 2019 WL 4492952, (C.D. Cal. Apr. 15, 2019). That case also involved a pilot suing his employer–airline for employment-related claims. The plaintiff sued in California, his home, but the airline was based in Arizona and Nevada. Unlike in this case, the airline in *Coffey* had almost no connections with California—*none* of its employees were based in California. And none of the challenged conduct arose or related to actions taken by the corporation in California. Moreover, when analyzing the "arise from or relate to" element, the *Coffey* court relied on a but-for test. *Id.* at *6. In *Ford*, he Supreme Court held that this analysis, and the causal requirement, is wrong.

But while Sambrano's and Kincannon's claims provide jurisdictional hooks—residence, the harm's location, and the accommodation policy itself—Turnbough's claims provide none. Turnbough's sole connection to Texas is that he occasionally travels here on his own time. This is analogous to the non-resident plaintiffs' claims in *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1773. Like the non-resident plaintiffs' claims in that case, Turnbough's claim does not relate to the forum state. If he accepts the "accommodation," he will neither be "accommodated" in Texas nor injured here. Turnbough also argues that he visits Texas using his United "ride-share pass." But this is his unilateral activity, not United's activity. *See Walden*, 571 U.S. at 289 (holding that a similar argument "improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis").

For these reasons, the Court concludes that Sambrano's and Kincannon's claims relate to United's contacts with Texas, but that Turnbough's claim does not. Accordingly, the Court lacks personal jurisdiction over United for Turnbough's claim but must continue its analysis for Sambrano and Kincannon.

> *c. Retaining jurisdiction over United for Sambrano's and Kincannon's claims would be fair and reasonable.*

If the first two elements are met, the Court then asks the defendant to make a "compelling case" that the assertion of jurisdiction would not be fair or reasonable. *Carmona*, 924 F.3d at 193. In making this determination, the Court considers the following factors: (1) the "burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies." *Wilson v. Belin*, 20 F.3d 644, 647 n.3 (5th Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

In this case, United did not argue the Court's exercise of jurisdiction would be unfair or unreasonable. And since United was required to carry the burden for this element, and failed to do so, the Court concludes this factor is no hinderance to the exercise of personal jurisdiction. Moreover, these factors suggest the same result. Importantly, United will be before this Court defending itself regardless of this Motion's resolution—there are three other named plaintiffs' claims whose personal jurisdiction went unchallenged. The burden on United in defending Sambrano's and Kincannon's claims is therefore minimal.

Accordingly, the Court concludes that it has personal jurisdiction over United for Sambrano's and Kincannon's claims.

## B. Personal Jurisdiction Over the Putative Class

United also moved to dismiss all out-of-state putative class members because this Court would lack personal jurisdiction over United for their claims. The Court concludes this is premature at this stage of the case.

Before a Court can dismiss a party, there must be a party to dismiss. "What brings putative class members before the court is certification: 'Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power.'" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) (quoting *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015)). This principle follows logically from the definition of

"putative."[3] *See Molock v. Whole Foods Mkt. Grp. Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) ("[P]utative class members—at issue in this case—are *always* treated as non parties."). The Supreme Court has continued to reaffirm this principle. *See, e.g.*, *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (calling the argument "that a nonnamed class member is a party to the class-action litigation *before the class is certified*" a "novel and surely erroneous argument" (emphasis in original) (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2005) (Scalia, J., dissenting))).

This basic principle requires the Court to deny United's Motion on this point, as premature. *See Molock*, 952 F.3d at 422 ("Because the class in this case has yet to be certified, Whole Foods' motion to dismiss the putative class members is premature."). United advances two arguments to avoid this conclusion. United first argues a new Supreme Court case changes this result. *See generally TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In that case, the plaintiff brought a class action, which the district court *certified*. *Id.* at 2202. On appeal, the Supreme Court held that all class members must have Article III standing. Importantly here, that holding does not affect the principle that putative class members are not before the court. United next argues that this case should follow this Court's holding in *Martinez v. Tyson Foods, Inc.*, 2021 WL 1289898 (N.D. Tex. Apr. 7, 2021) (Pittman, J.). But that case is inapposite. *Tyson Foods* was a Fair Labor Standards Act (FLSA) collective-action case. And as recently noted by the Fifth Circuit, the law regarding collective-action procedure—which proceeds under different procedures than a class action—is nothing short of a mess. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433 (5th Cir. 2021) ("The precision of Rule 23 provides useful guidance for when and how to certify a class; the imprecision of [the FLSA], not so much."). And even after carefully analyzing the procedure governing collective actions, the Fifth Circuit was forced to base its newly announced "framework" on the "bottom line" that a "district court has broad, litigation-management discretion." *Id.* at 443. In contrast, class actions "proceed under well-established procedural safeguards." *Id.* at 433. Those well-established

---

[3]*Putative*, BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "putative" as follows: "Reputed; believed or supposed by most people").

13

safeguards and subsequent caselaw hold that putative class members are always treated as nonparties. As nonparties, the Court cannot dismiss them. If the class is certified, United may then re-urge its Motion as to that class.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's Partial Motion to Dismiss (ECF No. 47) should be and is **GRANTED in part** and **DENIED in part.**

It is accordingly **ORDERED** that Plaintiff Seth Turnbough's claims are **DISMISSED without prejudice**. The remainder of United's Motion is **DENIED.**

**SO ORDERED** on this **8th day** of **November, 2021.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE