IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID SAMBRANO, individually, and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | Civil Action No. |
| v. | § § | 4:21-CV-01074-P |
| UNITED AIRLINES, INC., | § § | |
| Defendant. | § § § | |

# DEFENDANT UNITED AIRLINES INC.'S OPPOSITION
# TO PLAINTIFFS' MOTION FOR LIMITED RECONSIDERATION

## INTRODUCTION

In their Motion for Limited Reconsideration ("Motion"), Plaintiffs contend that the Court "overlooked" one of their central theories of irreparable harm, *i.e.*, that they will "lose the opportunity to bid on various jobs, schedules, and benefits while on unpaid leave." Motion (ECF 105) at 1. They contend that this alleged harm is "distinct from the general harms caused by lost seniority," and cannot be addressed by money damages. *Id.* Plaintiffs are wrong in multiple respects.

*First*, Plaintiffs' motion is not based on any newly discovered evidence. To the contrary, as they openly admit, they already made this same argument. Nor did the Court "overlook" it. Rather, the Court specifically acknowledged the very same testimony upon which they are relying, about "how seniority permeates nearly every aspect of an airline employees' job," which included all of the same points that Plaintiffs are re-emphasizing now. *Sambrano v. United Airlines, Inc.*, No. 4:21-CV-1074-P, 2021 WL 5176691, at *5 (N.D. Tex. Nov. 8, 2021). Plaintiffs are not entitled to relitigate this issue on a motion to reconsider.

*Second*, even if the Court did not specifically consider "lost bidding opportunities" in its Order, it certainly did reject the idea that lost "seniority" is irreparable. *Sambrano*, 2021 WL 5176691, at *5. Seniority and bidding rights are intertwined—indeed, seniority is primarily about defining the right to bid for jobs or work schedules vis-à-vis other employees. Hence, the Court's equitable power to address lost seniority necessarily encompasses the power to restore an employee's bidding rights, including the right to acquire an already-filled position by "bumping" incumbents with less seniority.

*Third*, to the extent that Plaintiffs are referring solely to work they might have done but now will not do while on leave—*e.g.*, that the pilots cannot go back in time and fly routes that they would have flown—that is not a cognizable form of imminent irreparable harm. Aside from the

fact that such "harms" are inherently speculative, every employment discrimination plaintiff who is discharged or suspended would be able to claim irreparable harm based on such routine, trivial consequences. Plaintiffs are, however, unable to cite a single case accepting their argument. To the contrary, courts have repeatedly rejected similar contentions. *See, e.g.*, *Bilyeu, et al. v. UT-Battelle*, LLC, No. 3:21-cv-352, ECF. No. 53, at 9 (E.D. Tenn. Oct. 29, 2021) (no imminent, irreparable harm under Title VII and ADA for "the loss of income and a period of unpaid leave, including benefits, job-specific certifications, and decreased career opportunities") (App. at 9).

*Finally*, any "limited" reconsideration of this narrow aspect of alleged irreparable injury would not, of course, entitle Plaintiffs to a preliminary injunction. They still cannot meet— especially on a class-wide basis—the other elements necessary to obtain a preliminary injunction.

## STANDARD

A motion for reconsideration under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). It should be denied unless the movant "clearly establish[es] either a manifest error of law" or "present[s] **newly discovered evidence**." *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003) (emphasis added).

"Due to its extraordinary nature, Rule 59(e) favors denial of motions to [reconsider], and relief should only be granted where the movant has presented *substantial* reasons for reconsideration." *U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 539 (N.D. Tex. 2012). "A party may not use a Rule 59(e) motion to relitigate issues that were resolved to the movant's dissatisfaction." *Godwin Gruber, P.C. v. Deuschle*, 2003 WL 21283186, at *1 (N.D. Tex. May 28, 2003). For the various independent reasons discussed below, Plaintiffs cannot satisfy this rigorous standard.

## ARGUMENT

**I.      Plaintiffs' "Lost Bidding Opportunities" Claim is Not A New Argument.**

Plaintiffs contend that the Court failed to consider what they call the lost "opportunity to bid on various job benefits." ECF 105 at 3. Their Motion emphasizes that the "expert declaration of Fred Bates addressed this at length" and that, "[a]s Mr. Bates explained, '[i]n airlines, seniority is everything.' Bates Decl. ¶ 57." *Id*.

But this Court expressly addressed that very testimony. The Court's opinion specifically recognizes that the "[t]estimony offered by one of Plaintiffs' experts, Fred Bates, shows how seniority permeates nearly every aspect of an airline employees' job." *Id*. The exact portion of the Bates' Declaration the Court cited—**Bates Decl. ¶¶ 56-60**, *see* Pls' PI Hr'g App'x at 178-80, ECF No. 75—includes the very evidence about "bidding opportunities" that Plaintiffs are now claiming the Court ignored, **Bates Decl. ¶ 57**, *see* ECF 105 at 3. The Court's opinion then details how seniority impacts "flight schedules," "the amount and timing of vacation time-off," "ability to relocate to more desirable terminals," ability to "choose more desirable jobs," and "myriad other aspects of [ ] employment." *Sambrano*, 2021 WL 5176691, at *5 (citing Bates Decl.). Hence, it is not true that this Court left "unaddressed" the arguments that Plaintiffs are repeating in the pending Motion about "job openings, management positions, vacation schedules, and job locations." ECF 105 at 2-3.

In any event, Plaintiffs' Motion can and should be denied because they failed to identify any "new" evidence. At best, their Motion seeks to "relitigate" a point they already made and thus is inappropriate for a motion for reconsideration. *Godwin Gruber*, 2003 WL 21283186, at *1; *see also US Bank N.A. Tr. to LaSalle Bank Nat'l Ass'n v. Parson*, 2021 WL 1760312, at *1 (N.D. Tex. Apr. 12, 2021) (denying motion for reconsideration where the plaintiff "relie[d] on arguments, theories, and evidence already considered by the Court").

3

Nor have they identified any "manifest error of law." Plaintiffs' Motion cites two cases addressing irreparable harm. One of the cases found no irreparable harm, *Traywick v. Collection Tech., Inc.*, No. 3:10-cv-1783-0, 2011 WL 13238308, at *3 (N.D. Tex. May 2, 2011), and the other is entirely unrelated to the harms alleged here, *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 697 (N.D. Tex. 2015) (finding irreparable harm in a case involving alleged trademark violations). In cases involving alleged employment harms, courts routinely reject claims that the alleged harm is irreparable. *See Sims v. City of Dallas*, No. 3:95-CV-177, 1996 WL 722052, at *2 (N.D. Tex. Dec. 5, 1996) (holding that loss of seniority and "other benefits of the rank" did not constitute irreparable harm). In short, there is no reason for the Court to reconsider an issue that it already correctly decided.

## II.     "Lost Bidding Opportunities" Are Not Distinct From Seniority.

Plaintiffs' Motion asserts that there is a distinction between loss of seniority and the loss of "the ability to bid on various job benefits, including schedules, locations, and responsibilities." ECF No. 105 at 6. They argue that restoration of seniority will not allow flight crews to "revert to the more desirable flights, planes, job locations, work schedules, and positions that would have been available to them." *Id.* at 5.

That is incorrect. Plaintiffs fundamentally misconstrue the meaning of seniority, which **is** the "ability to bid on various job benefits." *Id.* at 6. Their own expert makes this point, noting that bids for jobs, location, and schedules are "granted based on seniority." PI Hr'g Tr. Vol. III at 14:11-14. Likewise, numerous cases explain that seniority is inextricably intertwined with employees' ability to obtain desirable jobs, schedules, and locations. *E.g. Franks v. Bowman Transp. Co.*, 424 U.S. 747, 766 (1976) ("[O]ne of [the] major functions [of seniority] is to determine who gets or who keeps an available job.'"); *Addington v. U.S. Airline Pilots Ass'n*, 2009 WL 2169164, at *1

4

(D. Ariz. July 17, 2009) ("Seniority gives pilots priority for bidding on work opportunities—the more senior the pilot, the better the choices.").

As the Court recognized, "42 U.S.C. § 2000e-5(g) gives the Court power to order such affirmative action as it may deem appropriate." *Sambrano*, 2021 WL 5176691 at *5. That includes restoration of seniority rights. *Id.*[1] Because seniority includes bidding rights, the Court's equitable power to restore seniority rights necessarily encompasses the power to grant Plaintiffs the same rights to bid to jobs that they would have had if they had never been on leave. That would also include the right to "bump" an incumbent who would not have been able to bid for the job but for the absence of the more senior employee. *See* ECF No. 78 at 157 (JCBA § 14-A-3), at 562 (UPA § 6-A-2); *cf., e.g.*, *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 392 (5th Cir. 2008) (explaining that "bumping rights" are a process by which an employee may 'bump,' or replace, any person with less seniority for whose job he is qualified.").

### III. Interim Lost Work Opportunities Are Not Irreparable Harm.

Plaintiffs concede that the Court can restore their ability "to make *future* bids with their seniority level intact," but nevertheless assert that does not address the "harm" of losing hypothetical bids they might have made while on leave. ECF 105 at 5. Apart from their failure to account for bumping rights, they are wrong for several reasons.

*First*, the same argument could be made in any employment case by any employee who is suspended or discharged or demoted—such an argument, if accepted, would therefore "convert the 'extraordinary' relief of a preliminary injunction into a standard remedy." *Eli Lilly & Co. v.*

---

[1] Plaintiffs try to cast doubt on this finding by invoking Kirk Limacher's testimony about how United could face union grievances. *See* PI Hr'g Tr. Vol. II at 177:19-22; 177:23-178:7. But as the Supreme Court recognized in *Zipes v. Trans World Airline, Inc.*, 455 U.S. 385, 399 (1982) (cited by ECF 77 at 19), "retroactive seniority contrary to the collective-bargaining agreement [may] be awarded [by a court] over the objection of a union that has not itself been found guilty of discrimination."

5

*Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996) ("If a claim of lost opportunity to conduct research were sufficient to compel a finding of irreparable harm, it is hard to imagine any manufacturer . . . that could not make the same claim and thus be equally entitled to preliminary injunctive relief."). By definition, any employee absent from work misses "opportunities" they might have had if they had been at work. A salesman, for example, would not get to go on sale trips, and could miss out on a big sale. A manager would not get to attend an important meeting, and so could miss the chance to impress senior executives. As this Court noted regarding Plaintiffs' other irreparable harm arguments, "[i]f the Court agreed with Plaintiffs' argument, nearly every skilled professional in employment discrimination cases could make the same claim to obtain injunctive relief." *Sambrano*, 2021 WL 5176691, at *7; *see Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 42 (1st Cir. 2010) ("An asserted injury so ubiquitous cannot serve as the basis for the issuance of a preliminary injunction.").

*Second*, Plaintiffs' asserted harms are too speculative. They have not identified any specific opportunity that even one of them will lose. Nor could they. Take, for example, the claim that a plaintiff might lose the opportunity to change job locations—all of the following things would have to happen: (1) a position in the new location must open up during the plaintiff's unpaid leave; (2) the location must be in the plaintiff's desired location; (3) the plaintiff must be qualified for the opening and want to pursue that position; (4) the plaintiff must have been sufficiently senior to get the opportunity if seniority had not been affected by the leave; and (5) this Court could not provide "make whole" relief by granting injunctive relief requiring United to allow the plaintiff to change locations and providing monetary relief for any harms from the delay in the change. What-if scenarios such as these simply cannot establish the type of concrete harm necessary for a preliminary injunction—let alone for *every* member of the putative class. *See, e.g., Texas Voters*

*All. v. Dallas Cty.*, 495 F. Supp. 3d 441, 470 (E.D. Tex. 2020) (rejecting as non-irreparable, an "assertion [that] includes many 'what ifs'"); *N.F.L Council v. N.F.L. Players Ass'n (Elliott)*, 296 F. Supp. 3d 614, 625 (S.D.N.Y. 2017) ("[A]ny individual honors Elliott might attain absent suspension depend on countless variables—such as the Cowboys' overall offensive performance, his opponents' defensive performance, and Elliott's health—that together render this alleged harm far too speculative to justify injunctive relief.").[2]

*Third*, Plaintiffs have not identified any *imminent* risk of harm, at least for many members of the putative class. The unrebutted record evidence shows that non-customer facing employees are already being accommodated in the workplace. PI Hr'g Tr. Vol. II at 179:20-180:9 (explaining that as of October 18, United would implement a masking-and-testing accommodation for "noncustomer-facing employees within airport operations, as well as within technical operations"). Those employees are, therefore, not missing any work opportunities. Unrebutted record evidence also showed that pilots on leave continue to accrue seniority for up to three years (and flight attendants accrue for six months even while on leave).[3]

**IV.   There Are Still Multiple Other Reasons to Deny Preliminary Injunctive Relief.**

Plaintiffs seem to assume that if the Court agreed that "lost opportunities" constitute irreparable harm, they would be entitled to an injunction. That is not so. The Court has not ruled on the other issues, *Sambrano*, 2021 WL 5176691, at *1, *3, that independently foreclose relief, such as failure to exhaust, impropriety of class-wide relief absent class certification, undue hardship, reasonableness of accommodations provided, and the balance of the equities.

---

[2] Likewise, as for Plaintiffs' assertion that there is "no remedy for pilots who reach mandatory retirement age while on unpaid leave," ECF 105 at 4, this is both speculative and incorrect.  There is no record evidence that any named plaintiff or even any putative absent class member will imminently reach mandatory retirement age and no legal basis to treat such quirks of timing as conferring irreparable-injury on an arbitrary subset of employment-law plaintiffs.

[3] *See* ECF No. 78 at 10 ¶ 23, 160 (JCBA  15(A)(2)(b)), 454 ¶ 32, 624 (UPA §§12-A, 12-B); ECF 76, Ex. 8; ECF 76-1 at 21, 24; PI Hr'g Tr. Vol. II at 92:3-7.

Dated: November 15, 2021                    Respectfully submitted,

                                                        */s/ Jordan M. Matthews*
Jordan M. Matthews
IL Bar No. 6300503
JONES DAY
77 W. Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: jmatthews@jonesday.com

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: dmunro@jonesday.com

Alexander V. Maugeri
NY Bar No. 5062666
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3880
Facsimile: (212) 755-7306
Email: amaugeri@jonesday.com

Russell D. Cawyer
State Bar No. 00793482
**KELLY HART & HALLMAN LLP**
201 Main St., Ste. 2500
Fort Worth, Texas 76102
(817) 878-3562 (telephone)
(817) 335-2820 (facsimile)
Email: russell.cawyer@kellyhart.com

**ATTORNEYS FOR DEFENDANT UNITED AIRLINES, INC.**

8

## **CERTIFICATE OF SERVICE**

      On November 15, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                            */s/ Jordan M. Matthews*
                                            Jordan M. Matthews