IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DAVID SAMBRANO, et al., individually, and on behalf of all others similarly situated, § § § § § Plaintiffs, § § v. § § UNITED AIRLINES, INC., § § Defendant. | Civil Action No. 4:21-CV-01074-P |

**REPORT REGARDING CONTENTS OF SCHEDULING ORDER ("JOINT REPORT")**

Pursuant to the Court's Order ("Order") entered on February 9, 2023, Plaintiffs Sambrano, Castillo, Hamilton, Kincannon, Thal Jonas, Rains, Medlin, and Burk (collectively, "Plaintiffs") and Defendant United Airlines, Inc. ("Defendant" or "United") (collectively, the "Parties") file this Joint Status Report in accordance with the Court's Order (Dkt. No. 157):

1. **A statement detailing the date on which the Scheduling Conference was held, the location of the Scheduling Conference, the names of the attorneys present, a statement regarding whether meaningful progress toward settlement was made, and—without disclosing settlement figures—a statement regarding the prospect of settlement;**

The Parties, by and through their counsel, participated in multiple meet and confer discussions. First, counsel for the Parties engaged in a telephonic conference on February 17, 2023. At that conference, Plaintiffs were represented by Brian Field and John Sullivan, and United was represented by Russell Cawyer and Jordan Matthews. The Parties, again through counsel, also participated in a face-to-face Scheduling Conference on February 21, 2023, at the offices of Kelly, Hart & Hallman LLP in Fort Worth, Texas. For this conference, Plaintiffs were represented by John Sullivan and United was represented by Don Munro, Russell Cawyer, and Taylor Winn. Finally, the Parties conferred on February 28, 2023. For this conference, Plaintiffs were represented by Brian Field and John Sullivan. United was represented by Russell Cawyer, Taylor Winn, and Jordan Matthews.

Counsel discussed settlement and agreed, as communicated to the Court previously, that any further settlement negotiations are not likely to be fruitful until after the Court's

decision on class certification. The Parties did agree to consider and exchange options for mediators in the Fort Worth area so that they would be better prepared to re-start settlement discussions at the appropriate time.

**2.     A brief statement of the claims and defenses;**

**Statement of Plaintiffs:**

This case arises from United's attempt to coerce its employees to abandon their religious beliefs and medical reasons for not being able to receive the COVID-19 vaccine.  As Plaintiffs set forth in their Second Amended Complaint (ECF No. 156), United's actions violate Title VII of the Civil Rights Act and the Americans with Disabilities Act.  Accordingly, Plaintiffs brought this class action to remedy United's pattern of discrimination and retaliation against its employees.   In light of the substantial briefing in this case to date, Plaintiffs respectfully refer the Court to their previous briefs, and the Parties' September 7, 2022 Joint Status Report (ECF No. 144), for a more detailed discussion of the case status and Plaintiffs' claims.

**Statement of Defendant:**

For its entire history, the highest priority and goal of United Airlines ("United") has been the safety of its employees and customers.  Nothing is more important.  So, in the late summer and fall of 2021 – when United's employees were dying at a rate of more than one per week from the Delta variant – United saw an immediate and urgent need to act. Based on the best scientific guidance available at the time, United mandated that all of its employees get the free and readily available vaccines against COVID-19.  And it worked. After the vaccine policy was implemented, the COVID death rate among United employees dropped dramatically.  While it is impossible to say for sure given the number of variables, it is likely that United's vaccine policy saved dozens if not hundreds of lives.

When it implemented the policy, United understood the need to accommodate employees with religious concerns or disabilities.  To that end, the airline allowed any employee to request an exemption from the vaccine policy.  When more than two thousand employees sought an exemption, United took a broad and generous approach to considering those requests.  Unlike the many employers who granted few if any exemptions, United approved 82% of all religious requests and 63% of all medical requests (and in the latter category, United required only a medical reason, not an actual showing of disability).

United also took a nuanced approach to accommodations, taking into account (1) the safety of its employees (both vaccinated and unvaccinated), (2) the job responsibilities that were in play, and (3) the constraints imposed by applicable collective-bargaining agreements and laws.  For administrative staff and "below the wing" (or "non-customer facing") employees, United approved work from home arrangements where possible, and masking and testing protocols for others.  Where possible, it moved customer-facing employees to other positions where they would not be in frequent contact with members of the public.  Where that was not possible – primarily for flight crew – United granted unpaid leave, which historically has been what employees desire when they are temporarily unable to comply with their job requirements. In offering unpaid leave, United was

also guided by EEOC regulations, enforcement guidance and technical assistance, as well as federal case law, all of which expressly identifies unpaid leave as a potential reasonable accommodation. But United did not just grant unpaid leave – it also gave every accommodated employee the option to continue working in alternative non-customer facing positions. Thus, no one was deprived of the ability to continue to earn a paycheck (and keep their benefits) if they wished.

A lot has changed since then. Over the last 18 months, the impact of the pandemic has waned considerably, and the medical community is now far better equipped to handle any resurgence. All of the employees who were on unpaid leave – for a total of about four months, not "years," as plaintiffs insisted would happen – have been asked to return to work. Indeed, all of the residual issues before the Court boil down to whether the plaintiffs are entitled to money.

For a variety of reasons, plaintiffs are not entitled to recover under any of the legal theories set forth in their Second Amended Complaint. Those reasons include, but are not limited to, the following:

- *First*, plaintiffs cannot satisfy the standards for certification under Federal Rule 23 and the law of this circuit, especially given the highly individualized inquiry required under Title VII and the ADA.

- *Second*, the Court lacks personal jurisdiction over the claims of putative class members outside of Texas.

- *Third*, at least some of the plaintiffs' claims are time-barred. While plaintiffs told this Court that they had all filed charges in the early fall of 2021, it now appears that was not true.

- *Fourth*, at least some of the plaintiffs have not pled and/or cannot show any adverse employment action.

- *Fifth*, United's accommodations were reasonable because they were appropriately tailored based on job roles and circumstances.

- *Sixth*, as various other courts have already held, plaintiffs' proposed alternative accommodations were both unreasonable and would have imposed undue hardships in an airline context – they were expensive, logistically impractical or impossible, and would have placed substantial burdens on plaintiffs' co-workers.

- *Seventh*, plaintiffs' ADA claims fail to assert a qualifying disability and/or are subject to undue hardship and/or direct threat defenses.

- *Eighth*, plaintiffs' retaliation claims are frivolous – accommodated workers were treated better than non-accommodated workers.

- *Ninth*, some or all of the plaintiffs failed to mitigate any alleged damages.

United will be prepared to fully address these and other defenses at the appropriate time.

3. **A proposed time limit to amend pleadings and join parties;**

The parties do not anticipate amending pleadings further or joining additional parties in light of prior amendments.[1]

4. **A proposed time limit to file various types of motions, including dispositive motions;**

The Parties agree that the deadline for summary judgment motions should be set following the Court's order on class certification and a subsequent Scheduling Conference. The Parties' proposed framework is outlined in Paragraph 7 below.

Pursuant to the Court's previous Order [Dkts. 145, 146], the deadline for United to file an answer or other responsive pleading is March 13, 2023.

5. **A proposed time limit for initial designation of experts and responsive designation of experts;**

Deadline for initial designation of class-related experts: March 14, 2023

Deadline for responsive designation of class-related experts: March 28, 2023

The Parties agree that a second deadline for designations of experts regarding merit and damage issues should be set following the Court's ruling on class certification and a subsequent Scheduling Conference, as described in Paragraph 7.

6. **A proposed time limit for objections to experts (i.e., Daubert and similar motions);**

Thirty (30) days after designation.

7. **A proposed plan and schedule for discovery, a statement of the subjects on which discovery may be needed, a time limit for completing factual and expert discovery, and a statement of whether discovery should be conducted in phases;**

The Parties propose that discovery should be carried out in two phases, outlined below:

- Phase I: The Parties agree that the first phase of discovery will be limited to issues related to class certification. Plaintiffs propose that this period last for 90 days. Considering the limitation to class-related issues, and United's earlier suggestion that it believed only 60 days was necessary for class discovery, Plaintiffs propose that the Parties limit this initial phase of discovery to 90 days.
- United proposes Phase I discovery period of 120 days. United believes that a 120 day discovery period for Phase I (while still ambitious) is needed for several

---

[1] Except as specifically indicated otherwise, all of the proposals in this Joint Report are the parties' joint proposals.

> reasons. First, Plaintiffs have recently added three new plaintiffs who now inject allegations of co-worker harassment in the Second Amended Complaint. Additionally, United expects that Plaintiffs will seek broad ESI discovery from United that will take substantial time to collect, review for responsiveness and privilege and to produce. Following service of written discovery, parties will have at least 30 days to object and answer. Even assuming full responses are given and full production made on the 31st day (unlikely in most complex cases like this), the parties still need to obtain relevant third party records (e.g., health care records for plaintiffs seeking a reasonable accommodation due to a disability) and then take the depositions both sides desire which include eight named plaintiffs and a representative sampling of putative class members. Fitting this into a 120 discovery period will be a challenge but lessens the chance the parties will seek to extend the Phase I discovery period prior to briefing issue of class certification.

- At the end of Phase I, the Parties will file briefs on the issue of class certification. The proposed briefing schedule is as follows:

  | | |
  |---|---|
  | Plaintiffs' Opening Brief: | 30 days following the close of Phase I discovery |
  | Defendant's Opposition: | 30 days after Opening Brief |
  | Plaintiffs' Reply Brief: | 14 days after Opposition |

- Phase II: For a period of 45 days following the Court's order on class certification, the Parties will engage in a round of mediated settlement discussions and/or a mediation. If they are unable to reach a settlement, the Parties will submit a second Joint Scheduling Report that outlines how they believe the case should proceed through the merits phase, to include a second period of time for discovery as well as briefing on any dispositive motions.

In order to minimize the prospect of discovery disputes during Phase I, the Parties attempted to agree on the scope of discovery that will be conducted in that Phase. The Parties agree that Phase I should be focused on class-related issues. However, the parties disagree regarding what constitutes class discovery.

With respect to the scope of discovery, Plaintiffs agree with United that class-related discovery should be limited to the requirements of Rule 23. While there may be disagreement on specific topics or requests—such as whether mitigation efforts apply to class certification or damages—Plaintiffs believe that it will be most efficient to address such concerns as they arise through meet and confers between the parties.

United's proposed scope includes any issues related to commonality, typicality, numerosity of classes and subclasses, and predominance of named class members' claims compared to the putative class. That scope is illustrated by the interrogatories and requests for production served on the named plaintiffs on Tuesday, February 21, 2023, following the Rule 26(f) conference, and includes, but is not limited to, the following topics:

> Communications with United regarding sincerely held religious beliefs, hostile work environment or harassment, and/or disability; adequacy of alternative accommodations known or proposed by plaintiffs; medical records for those plaintiffs making a claim under the ADA; sincerity of religious beliefs for those plaintiffs making a claim of religious discrimination; efforts to seek other forms of employment and other mitigation efforts while on unpaid leave (including other jobs within United and outside); discussions with medical advisors and/or religious leaders concerning vaccinations; vaccination histories; identification of categories of economic/noneconomic harm allegedly suffered; participation in United's RAP process; lodging of complaints in United's formal system for fielding complaints; job descriptions; interactions/communications with third parties regarding vaccination and United's vaccine mandate; experience of harassment or hostile work environment by coworkers and supervisors; the nature of the adverse employment action experienced, if any; and whether an employee was subject to masking and testing and to what extent.

United also proposes to, during the class discovery period, take the depositions of the eight named plaintiffs, any experts designated by Plaintiffs on class certification issues, and a representative sampling of the non-party putative class members.

8. **A statement on whether any limitations on discovery need to be imposed, and if so, what limitations;**

The Parties agree that the limits on discovery set forth in the Federal Rules of Civil Procedure are acceptable with the exception of depositions.

For the purposes of class discovery, Plaintiffs contend that the limits provided for in the Federal Rules—10 depositions—should be adequate for this phase of discovery. Indeed, that would allow United to depose each Plaintiff and seek two additional depositions. Of course, should United determine during discovery that additional depositions are needed, they may seek leave of Court to conduct additional depositions. But Plaintiffs do not believe there is any reason to provide for additional depositions at this time. Accordingly, Plaintiffs propose that the Parties be permitted to take up to 10 depositions (excluding experts) during class discovery. Plaintiffs further propose that each deposition should be limited to 7 hours on the record, with that limit being cumulative for any witness whose deposition is sought during later discovery phases. Finally, Plaintiffs propose that the Parties revisit deposition limits at a Scheduling Conference after the Court resolves Plaintiffs' class-certification motion.

United agrees that each deposition should be limited to 7 hours on the record, and that this limit should be cumulative of any witness who may be deposed during both Phase I and Phase II (such that no witness will be required to testify on the record for more than 7 hours even if called for more than one deposition). However, United disagrees that 10 depositions per side is adequate for class discovery. As indicated above, with respect to issues such as commonality and typicality, United needs to depose the 8 named plaintiffs plus a small representative sampling of the putative class members in the various sub-

classes alleged in the complaint. Accordingly, United proposes that the limit for each side be increased from 10 to 18 (and that depositions of any experts designated by either side not count toward that limit).

9. **A statement on how to disclose and conduct discovery on electronically stored information ("ESI") and any statement on disputes regarding disclosure and/or discovery of ESI;**

    The Parties are working toward an agreed process for conducting ESI discovery.

    As Plaintiffs have explained to United, they may face technological limitations the make it difficult to engage in traditional ESI discovery. But Plaintiffs are prepared to continue discussing this issue with United to find a mutually agreeable ESI process

    United expects Plaintiffs to search their emails, personal computers, and social media accounts for responsive documents and information. United attempted to confer with Plaintiffs regarding potential search terms for Plaintiffs ESI during the Parties February 28 telephone conference, but Plaintiffs were not prepared to discuss the process at that time.

10. **Any proposals regarding handling and protection of privileged or trial-preparation material that should be reflected in a Court Order;**

    The Parties are working on a Confidentiality Agreement and will not seek a global protective order from the Court. Included in that Confidentiality Agreement are the procedures for handling confidential information and documents and the inadvertent disclosure of privileged information, including a snapback provision providing three (3) days to return or delete privileged information or documents upon request that were inadvertently produced

11. **A proposed trial date, the estimated number of days for trial, and whether a jury has been demanded;**

    A jury has been demanded by Plaintiffs. The Parties propose setting this case for trial following the Court's ruling on class certification and the subsequent Scheduling Conference, at which point the Parties will have a better sense as to what will be necessary to conclude this matter.

12. **A proposed mediation deadline;**

    As indicated above, the Parties believe that a new round of mediation would be most productive following the Court's ruling on class certification. The Parties suggest a mediation deadline of forty-five (45) days following the Court's order on class certification.

13. **A statement as to when and how disclosures under Fed. R. Civ. P. 26(1) were made or will be made;**

    The Parties agree that initial disclosures shall be exchanged on or before March 23, 2023.

14. **A statement as to whether the parties will consent to a trial (jury or bench) before United States Magistrate Judges Cureton or Ray (if all parties consent, please submit the attached consent form);**

    The Parties do not consent to a trial before Magistrate Judges Cureton or Ray.

15. **Whether a conference with the Court is desired, and if so, a brief explanation why.**

    A conference with the Court is requested to resolve the remaining differences of opinion between the parties.

16. **Any other proposals on scheduling and discovery that the parties believe will facilitate expeditious and orderly preparation for trial, and any other orders that should be entered by the Court under Federal Rules of Civil Procedure 16(b), 16(c), and 26(c).**

    The Parties agree to effect service via email in this case.

Dated: February 28, 2023                                         Respectfully submitted,

  /s/ Brian J. Field                                                      /s/ Russell D. Cawyer
John C. Sullivan                                                                   Donald J. Munro
Texas Bar No. 24083920                                                  D.C. Bar No. 453600
**S|L LAW PLLC**                                                               Hashim M. Mooppan
610 Uptown Boulevard, Suite 2000                               D.C. Bar No. 981758
Cedar Hill, TX 75104                                                        **JONES DAY**
Telephone: (469) 523-1351                                              51 Louisiana Avenue, NW
Facsimile: (469) 613-0891                                                Washington, DC 20001
john.sullivan@the-sl-lawfirm.com                               Telephone: (202) 879-3939
                                                                                             Facsimile: (202) 626-1700
Mark R. Paoletta (*Pro Hac Vice*)                              dmunro@jonesday.com
D.C. Bar No. 422746                                                       hmmooppan@jonesday.com
Gene C. Schaerr (*Pro Hac Vice*)
D.C. Bar No. 416368                                                       Russell D. Cawyer
Brian J. Field (*Pro Hac Vice*)                                     Texas Bar No. 00793482
D.C. Bar No. 985577                                                       **KELLY HART & HALLMAN LLP**
Kenneth A. Klukowski (*Pro Hac Vice*)                  201 Main St., Ste. 2500
D.C. Bar No. 1046093                                                    Fort Worth, Texas  76102
Annika M. Boone (*Pro Hac Vice*)                           (817) 878-3562 (telephone)
Utah Bar No. 17176                                                        (817) 335-2820 (facsimile)
**SCHAERR | JAFFE LLP**                                           russell.cawyer@kellyhart.com
1717 K Street NW, Suite 900
Washington, DC 20006                                                Jordan M. Matthews (*Pro Hac Vice*)
Telephone: (202) 787-1060                                           Illinois Bar No. 6300503
Facsimile: (202) 776-0136                                             **JONES DAY**
mpaoletta@schaerr-jaffe.com                                    110 N. Wacker Drive, Suite 4800
gschaerr@schaerr-jaffe.com                                       Chicago, Illinois 60606
bfield@schaerr-jaffe.com                                              Telephone: (312) 782-3939
                                                                                             Facsimile: (312) 782-8585
**COUNSEL FOR PLAINTIFFS**                              jmatthews@jonesday.com
**AND THE PROPOSED CLASS**

Alexander V. Maugeri (*Pro Hac Vice*)
New York Bar No. 5062666
**JONES DAY**
250 Vesey Street
New York, NY  10281-1047
Telephone: (212) 326-3880
Facsimile: (212) 755-7306
amaugeri@jonesday.com

**ATTORNEYS FOR DEFENDANT**
**UNITED AIRLINES, INC.**