**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

DAVID SAMBRANO, *et al.*, individually,
and on behalf of all others similarly situated,

      Plaintiffs,

      v.

UNITED AIRLINES, INC.,

      Defendant.

§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 4:21-CV-01074-P

**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL
<u>OF THE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

**Page**

I.     **The Title VII Reasonable Accommodation Claims by the Plaintiffs Who Were Never Placed on Unpaid Leave Should Be Dismissed.** ................................................. 5

II.    **The ADA Reasonable Accommodation Claims Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Covered Disabilities.** ........................................... 10

III.   **The Retaliation Claims Should Be Dismissed.** ........................................... 12

IV.    **The Interactive Process Claims Under Title VII and the ADA Should Be Dismissed.** ................................................................................... 15

V.     **The Time-Barred and Procedurally Deficient Claims Should Be Dismissed.** .......... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ansonia Bd. of Educ. v. Philbrook*,
  479 U.S. 60 (1986)……………………………..………..………………………8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)………………….…………………………………………5, 7

*Austin v. Davis*,
  876 F.3d 757 (5th Cir. 2017)……………….………………………………………17

*Badii v. Rick's Cabaret Int'l, Inc.*,
  2014 WL 550593 (N.D. Tex. Feb. 11, 2014)……………………………………..7

*Brigham v. Frontier Airlines, Inc.*,
  57 F.4th 1194 (10th Cir. 2023)………………………………..………………16

*Bruff v. North Mississippi Health Services, Inc.*,
   244 F.3d 495 (5th Cir. 2002)…………………………………………...…………9

*Burger v. Cent. Apartment Mgmt., Inc.*,
  168 F.3d 875 (5th Cir. 1999)…………………….…………………………………..6

*Burlington Northern & Santa Fe Ry. v. White*,
  548 U.S. 53 (2006)……………………………………..…………………………...13

*Ciraci v. J.M. Smucker Co.*,
  2021 WL 6064748 (N.D. Ohio Dec. 22, 2021)………………….…………………16

*Crawford v. Metro. Gov't of Nashville*,
  551 U.S. 271 (2009)………………………………………………………………14

*Delaware State College v. Ricks*,
  449 U.S. 250 (1980)…………………….………………………………..……19

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015)……………………………………..………………………5, 7

*EEOC v. Chevron Phillips Chem. Co*,
  570 F.3d 606 (5th Cir. 2009)……………….………………………………………17

*EEOC v. N. Mem'l Health Care*,
  908 F.3d 1098 (8th Cir. 2018)……………………………………..…………………14, 15

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Egelkrout v. Aspirus, Inc.*,
2022 WL 2833961 (W.D. Wis. July 20, 2022)……………………………………………8

*Ernst v. Methodist Hosp. Sys.*,
1 F.4th 333 (5th Cir. 2021)…………………………………………………………………21

*Eversley v. MBank Dallas*,
843 F.2d 172 (5th Cir. 1988)……………………………..…………………………………...9

*Fjellestad v. Pizza Hut of Am., Inc.*,
188 F.3d 944 (8th Cir. 1999)…………………………………………………………………17

*Furnish v. SVI Sys., Inc.*,
270 F.3d 445 (7th Cir. 2001)……………………………………………………………..…10

*Gee v. Principi*,
29 F.3d 342 (5th Cir. 2002)……………………………………………………………..…12

*Griffin v. Am. Zurich Ins. Co.*,
697 F. App'x 793 (5th Cir. 2017)…………………………….……………………..10, 11

*Grubic v. City of Waco*,
262 F. App'x 665 (5th Cir. 2008)……………………………………………………………12

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011)……………………………………………………………....10

*Henson v. Bell Helicopter Textron, Inc.*,
128 F. App'x 387 (5th Cir. 2005)……………………………………………………19, 20

*Hohider v. United Parcel Serv., Inc.*,
574 F.3d 169 (3d Cir. 2009)…………………………………..…………………16, 17

*Johnson v. United Parcel Service, Inc.*,
2020 WL 779459 (D. Md. Feb. 14, 2020)………………………………………….………15

*King v. Life Sch.*,
809 F. Supp. 2d 572 (N.D. Tex. 2011)………………….……………………………...17

*Lawson v. Excel Contractors, L.L.C.*,
2022 WL 1793511 (5th Cir. June 2, 2022)……………………………………...…………12

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Leigh v. Artis-Naples, Inc.*,
  2022 WL 18027780 (M.D. Fla. Dec. 30, 2022)……………………………….…………14, 15

*Leonce v. Callahan*,
  2008 WL 58892 (N.D. Tex. Jan. 3, 2008)………………………………………………………16

*Loulseged v. Akzo Nobel Inc.*,
  178 F.3d 731 (5th Cir. 1999)……………………………………….…………………16, 17

*Madaki v. Am. Airlines, Inc.*,
  2022 WL 227163 (N.D. Tex. Jan. 25, 2022)…………………………………5, 17, 18, 20

*McBride v. BIC Consumer Prods. Mfg. Co., Inc.*,
  583 F.3d 92 (2d Cir. 2009)……………………………………………………………17

*McClain v. Lufkin Indus., Inc.*,
  519 F.3d 264 (5th Cir. 2008)………………………………………………………………20

*McCoy v. City of Shreveport*,
  492 F.3d 551 (5th Cir. 2007)…………………………………………………………6

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)………………………………………………………………18, 19, 20

*Pegram v. Honeywell, Inc.*,
  361 F.3d 272 (5th Cir. 2004)…………………………………………………………..7

*Picard v. St. Tammany Par. Hosp.*,
  423 F. App'x 467 (5th Cir. 2011)………………………………………………...17

*Richards v. JRK Prop. Holdings*,
  405 F. App'x 829 (5th Cir. 2010)……………………………………..…………12, 14

*Sambrano v. United Airlines, Inc.*,
  19 F.4th 839 (5th Cir. 2021)………………………………………………………12

*Sambrano v. United Airlines, Inc.*,
  2022 WL 486610  (5th Cir. 2022)……………………………….………………2, 13

*Silva v. City of Hidalgo, Tex.*,
  575 F. App'x 419 (5th Cir. 2014)………………………………………………...17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Stewart v. Mississippi Transp. Comm'n*,
    586 F.3d 321 (5th Cir. 2009)…………………………………...…………………………..14

*Tagore v. United States*,
    735 F.3d 324 (5th Cir. 2013)…………………………………………………………5, 13

*Thompson v. City of Waco, Texas*,
    764 F.3d 500 (5th Cir. 2014)……………………………...………………5, 6, 7

*Together Emps. v. Mass Gen. Brigham Inc.*,
    573 F. Supp. 3d 412 (D. Mass. 2021)……………………………………………10, 12

*Univ. of Texas Southwestern Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)……………………………………………………………………12

*Vaughn v. Waffle House, Inc.*,
    263 F. Supp. 2d 1075 (N.D. Tex. 2003)………………………………………………9

*Welsh v. Fort Bend Indep. Sch. Dist.*,
    941 F.3d 818 (5th Cir. 2019)………………………….………………………..6

*Wren v. Midwestern State Univ.*,
    2019 WL 3099408 (N.D. Tex. June 25, 2019)…………………………………10, 11

*Wright v. Arlington Indep. Sch. Dist.*,
    2019 WL 6311163 (N.D. Tex. Nov. 25, 2019)……………………………….……..5

**STATUTES**

42 U.S.C. § 2000e……………………………………………………………passim

42 U.S.C. § 12102…………………………………………………………...10

42 U.S.C. § 12112…………………………………………………….………8, 10, 16

42 U.S.C. § 12117……………………………………………………………..18

42 U.S.C. § 12203………………………………………………………………12, 13, 14

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") includes grievances about virtually every aspect of how defendant United Airlines, Inc. ("United") handled the COVID-19 pandemic. In addition to plaintiffs' objections to temporary unpaid leave – the main focus of these proceedings to date –  they also complain about United's masking and testing protocols for accommodated employees who were never placed on leave at all, the system for processing and approving requests for exemptions, "ostracization" and "ridicule[] by [their] co-workers," and even being "needlessly banished" to "eat outdoors." SAC ¶¶ 4, 129, 131. Plaintiffs combine claims of both religious and disability discrimination – allegedly the product of a "marketing campaign" by the airline – from both the "customer-facing" and "non-customer-facing" employee groups. *Id.* ¶¶ 6, 77, 78. They continue to assert that the offer of accommodations constitutes "retaliation," *id.* ¶¶ 207–212, 222–227, and they include claims that were never included in the charges they filed with the Equal Employment Opportunity Commission ("EEOC"). It also appears that – despite repeatedly telling this Court and United in the fall of 2021 that "[e]ach Plaintiff ha[d] a pending charge with the EEOC" (*e.g.*, ECF No. 6 at 6 (citing plaintiffs' affidavits)) – those plaintiffs failed to file their charges until much later.

In this motion, United seeks to substantially narrow the range and complexity of the claims and issues presented in this case. Even taking all of the factual allegations in the SAC as true, there are five specific categories of claims (and/or plaintiffs) that should be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(6):

*First*, Title VII reasonable accommodations claims by accommodated employees who were never placed on unpaid leave should be dismissed. Under long-standing Fifth Circuit law, only plaintiffs subjected to an "ultimate employment decision" – such as termination or demotion

1

– can allege a discrimination claim.  Plaintiffs Castillo, Hamilton, and Jonas admit that they were all accommodated on the job with masking and testing, and so do not and cannot allege an adverse employment action.  *See* Part I.A.  Moreover, their claims fail because, as case law and the EEOC recognize, masking and testing is a lawful accommodation when offered as an alternative to vaccination.  Indeed, in their original complaint, these plaintiffs represented they were "willing to submit to mitigation measures such as periodic COVID-19 testing and/or wearing masks."  ECF No. 1 ¶ 119.[1]  *See* Part I.B.

*Second,* the Court should dismiss plaintiffs' Americans with Disabilities Act ("ADA") claims.  Two of the plaintiffs – Jonas and Rains – allege that United refused to accommodate their "disabilities."  However, they fail to assert that their medical conditions impair any major life activities.  As a matter of law, such allegations are inadequate.  *See* Part II.

*Third*, the plaintiffs' retaliation claims are "incoherent" and should be dismissed.  *See  Sambrano v. United*, 2022 WL 486610, at *32  (5th Cir. 2022) (Smith, J., dissenting).  Among other problems, plaintiffs are conflating whether the accommodations provided were legally adequate with whether United retaliated against them for asking for an accommodation.   As plaintiffs admit, United treated employees who requested an accommodation better than those who did not.  *See* Part III.

*Fourth,* neither Title VII nor the ADA allows for any stand-alone "interactive process" claim.  Both statutes impose a substantive obligation to provide a reasonable accommodation; there is no actionable procedural duty independent of the substantive reasonableness of the accommodation provided.  *See* Part IV.

---

[1] Each of the original plaintiffs who appeared for the preliminary injunction hearing reiterated their willingness to mask and test in that testimony.  *See* Oct. 13, 2021 Hr'g Tr., Vol. 2: Tr. 50:6–13 (Hamilton); 77:25–78:22 (Sambrano); 94:4–13 (Castillo); 111:4–20 (Kincannon).

*Finally*, several of the plaintiffs' claims are procedurally deficient and should be dismissed on that ground alone. In particular, Castillo's and Rains's claims are time-barred in full, and Medlin's claims are time-barred in part. In addition, all five of the original plaintiffs failed to include retaliation claims in their EEOC charges.[2] *See* Part V.

*     *     *     *

United strongly disagrees with plaintiffs' characterization of the events of the last three years. The airline maintains that it took reasonable and prudent steps to address an unprecedented global pandemic. And at the appropriate point, United will be prepared to show that *all* of the plaintiffs' claims lack merit. However, while it may be that some issues must await discovery and summary judgment, none of the issues presented in this Rule 12(b)(6) motion involve contested facts, and so should be addressed now, thus narrowing this case to a more manageable set of claims.

## BACKGROUND

In response to worsening COVID-19 pandemic conditions and after FDA approval of the Pfizer vaccine, United required all of its employees to receive a first dose of the COVID-19 vaccine by September 27, 2021. SAC ¶ 40. United first announced the policy on August 6, 2021 and "required all employees to submit requests for accommodation by August 31, 2021." *Id.* ¶¶ 38, 65. The eight plaintiffs "seek to represent a class of all United employees who have submitted claims of discrimination or retaliation to the EEOC and who requested or attempted to request a medical or religious accommodation" from that vaccine policy. *Id.* ¶ 189.

---

[2] In an earlier ruling, this Court held: (1) United is not subject to general personal jurisdiction in Texas, and (2) the claims of the plaintiff who neither lived nor worked in Texas must be dismissed for lack of specific personal jurisdiction, but (3) that it is premature to address personal jurisdiction as to any putative class members. ECF No. 103 at 6–7, 9–13. United respectfully seeks to preserve its personal jurisdiction arguments to the extent it may be necessary to do so. *See* ECF Nos. 47, 58, 84 (setting out United's personal jurisdiction arguments).

3

This group consists of five of the original six plaintiffs from the 2021 complaint (David Sambrano, Genise Kincannon, David Castillo, Kimberly Hamilton, Debra Jennefer Thal Jonas), and three plaintiffs added to the litigation in the SAC (Jarrad Rains, Alyse Medlin, Charles Burk).

Five of the eight plaintiffs (Sambrano, Kincannon, Rains, Medlin, and Burk) are flight-crew employees. (SAC ¶¶ 16, 20, 21, 22, 23). The other three plaintiffs are ground-based employees: Castillo is an Aircraft Technician who "performs maintenance duties on United airplanes" (*id.* ¶¶ 17, 107); Hamilton is a Station Operations Representative who "handle[s] gate planning and coordinating fueling, mechanics, cleaners, caterers, and other staff matters" (*id.* ¶¶ 18, 122); and Jonas is a Customer Service Representative in the United Club. (*id.* ¶¶ 19, 135).

United granted a religious or medical accommodation to each of the plaintiffs, except Medlin, who did not support her religious request with a third-party letter. *See id.* ¶¶ 17, 93, 127, 140, 154, 163, 175, 182. Castillo, Hamilton, and Jonas—like other ground-based employees— never experienced unpaid leave; instead, each of them was "provided an accommodation to remain at work under . . . masking and testing protocols." *Id.* ¶ 142. Sambrano, Kincannon, Rains, and Burk were given unpaid leave with the option to accept any available alternative positions, though Burk chose to get vaccinated instead. *Id.* ¶¶ 93, 96, 154, 168, 182, and 185.

The SAC pleads four counts. In Count I, each plaintiff alleges that United violated Title VII by "fail[ing] to provide Plaintiffs with reasonable accommodations for their religious beliefs" and "refu[sing] to engage in the interactive process." SAC ¶¶ 202–203. In Count III, two of the plaintiffs (Jonas and Rains) allege that United violated the ADA by failing to accommodate their "disabilities" and engage in the "interactive process." *Id.* ¶¶ 137, 161, 163, 219, 221. Finally, in Counts II and IV, plaintiffs allege United "retaliated" against them for requesting religious and/or medical accommodations. *Id.* ¶¶ 43, 208, 210, 223, 225.

4

**ARGUMENT**

In both Title VII and ADA cases, courts routinely dismiss claims that – even when all of the facts alleged are accepted as true – are nevertheless inadequate as a matter of law. *E.g.*, *Madaki v. Am. Airlines, Inc.*, 2022 WL 227163, at *2 (N.D. Tex. Jan. 25, 2022) (Pittman, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).[3] In this case, plaintiffs' claims are legally deficient in five specific respects.

## I. The Title VII Reasonable Accommodation Claims by the Plaintiffs Who Were Never Placed on Unpaid Leave Should Be Dismissed.

As the SAC concedes, three of the plaintiffs remained at work through the pandemic. Instead of unpaid leave, they were able to work with masking and testing protocols. For two related reasons, these three individuals have failed to plead valid claims.

### A. These Plaintiffs Were Not Subject to Any Adverse Employment Action.

To state a Title VII discrimination claim, a plaintiff must have been "subject to an 'adverse employment action'—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). This rule applies to Title VII claims involving religious accommodations. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771–772 (2015); *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013). As Justice Alito has summarized: "An employer may not take *an adverse employment action* against an applicant or employee because of any aspect of that individual's religious observance or practice unless the employer demonstrates that it is unable to reasonably accommodate that observance or practice without undue hardship." *Abercrombie*, 575 U.S. at 776 (Alito, J., concurring in the judgment) (emphasis added).

---

[3] In applying Rule 12(b)(6), the Court may take judicial notice of the EEOC file. *Wright v. Arlington Indep. Sch. Dist.*, 2019 WL 6311163, at *2 (N.D. Tex. Nov. 25, 2019) (Pittman, J.).

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007)); *see also McCoy*, 492 F.3d at 559 ("We have historically held that, *for all Title VII claims*, adverse employment actions include only ultimate employment decisions . . . ." (emphasis added)); *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) ("Our court has analyzed the 'adverse employment action' element in a stricter sense than some other circuits. We have stated that Title VII was only designed to address 'ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" (citation omitted)). Accordingly, any plaintiff who was not subjected to an "ultimate employment decision" lacks a valid cause of action under Title VII.[4]

In this case, Castillo, Hamilton, and Jonas do not meet this requirement because, as the SAC concedes, they were never placed on unpaid leave and instead remained on-the-job with alternative accommodations. *See* SAC ¶ 115 (Castillo was allowed to work as a mechanic with an N-95 mask and submit regular COVID-19 test results); *id.* ¶ 128 ("Ms. Hamilton was provided an accommodation to remain at work, provided that she wear an N-95 respirator at all times . . . ."); *id.* ¶ 143 ("Because [Ms. Jonas] was in a 'customer facing' role in the United Club, the company relocated Ms. Jonas to a remote 'agent on demand' position."). Nor do they allege that they suffered a demotion, lost out on health care or other benefits, or otherwise were subjected to any "decrease in pay, title, or grade." *Thompson*, 764 F.3d at 503.

---

[4] United acknowledges that the Fifth Circuit heard *en banc* oral argument on January 24, 2023 in *Hamilton v. Dallas County*, No. 21-10133, 50 F.4th 1216 (5th Cir. 2022), in which the question presented is whether the "ultimate employment decision" standard should be discarded or modified.

Castillo and Hamilton object to various aspects of their masking-and-testing accommodation, such as needing to eat outdoors or to a supposed lack of "training" to use an N-95 mask. *id.* ¶¶ 115, 128–31. However, these grievances fall well-short of alleging an actionable ultimate employment action, as they do not make an "objective showing of a loss in compensation, duties or benefits." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004).

As for Jonas's reassignment from the United Club, although "transfer or reassignment can be the equivalent of a demotion" in some circumstances, that is not so where, as here, there is no *objective* loss in compensation, duties, or benefits, and simply a lateral transfer from "a prestigious and desirable position to another position." *Id.* (rejecting claim that "a less prestigious or desirable transfer" constituted "an adverse employment action"); *see also Thompson*, 764 F.3d at 503. While Jonas alleges that her transfer to an agent-on-demand position caused her to lose out on prospective "bonus money," SAC ¶ 146, she fails to identify the amount of this supposed "bonus money," how or why the change disqualified her from receiving it, or to otherwise support her assertion with any well-pleaded facts whatsoever. *Iqbal*, 556 U.S. at 679. These allegations are insufficient to plead any adverse employment action. *See, e.g.*, *Badii v. Rick's Cabaret Int'l, Inc.*, 2014 WL 550593, at *8 (N.D. Tex. Feb. 11, 2014) (collecting authorities) (small financial losses, such as "an employer's failure to pay reimbursements or authorize overtime for an employee [are] not sufficient to constitute adverse employment actions.").

In sum, Castillo and Hamilton do not allege any objective loss whatsoever, and Jonas's allegation of a lost "bonus" is far too vague and conclusory. Accordingly, the three plaintiffs who were accommodated on the job – who were never placed on any form of leave – should be dismissed for failure to plead any adverse employment action.

7

**B.      Masking and Testing Is a Reasonable Accommodation.**

It is well-settled that "an employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986); 42 U.S.C. §§ 2000e(j), 12112(b)(5).   More specifically, courts have repeatedly recognized that masking and testing reasonably accommodate individuals who object to the COVID-19 vaccine.  *See, e.g.*, *Egelkrout v. Aspirus, Inc.*, 2022 WL 2833961, at *3 (W.D. Wis. July 20, 2022) (holding that employer "discharged [its Title VII] obligation by permitting [plaintiff] to submit to biweekly Covid-19 testing . . . Because that option 'eliminate[d] the conflict between [defendant's] employment requirements and [plaintiff's] religious practices,' it was reasonable." (quoting *Ansonia Bd. of Educ.*, 479 U.S. at 70)).  Likewise, the EEOC has specifically found that "a reasonable accommodation" for "employee[s] who [do] not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief . . . (covered by Title VII)," is that they be allowed to "wear a face mask . . . [and] get periodic tests for COVID-19."[5]

In this case, plaintiffs started out by *demanding* masking and testing as an accommodation. ECF No. 1 ¶¶ 25, 119, at p. 30, Prayer for Relief ¶ f.  They now admit that United offered exactly that option for non-customer-facing employees (as well as for employees whose jobs could be adjusted to be non-customer-facing).  SAC ¶¶ 115, 128, 143.  That accommodation enabled them to continue working while eliminating any conflict between their religious beliefs or medical conditions and United's vaccination requirement.

---

[5] *See* U.S. Equal Employment Opportunity Commission, Vaccinations (part K), technical guidance, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.

Plaintiffs insist that certain ancillary aspects of the masking and testing protocols were objectionable – they complain about matters such as being required to report COVID-19 test results on days off, insufficient N-95 mask training, and needing to eat outside. *E.g.*, SAC ¶¶ 115, 116, 128. However, the case law is clear that even significant burdens on an accommodated employee do not suffice to show that the accommodation is unreasonable. *Bruff v. North Mississippi Health Services, Inc.*, 244 F.3d 495, 502 n.23 (5th Cir. 2002) (a religious accommodation that "require[s] [a plaintiff] to take a significant reduction in salary" does not make it unreasonable); *see also Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988) (holding that "simply because the proposed accommodation would involve some cost to the employee does not make it unreasonable"). If an accommodation is reasonable even when it comes with a "significant" reduction in pay, then certainly the comparatively minor inconveniences associated with masking and testing accommodations cannot suffice to establish lack of reasonableness.

It is also worth emphasizing that plaintiffs do not assert any religious or disability-based objection to the masking and testing protocols. Rather, it appears that they were unsatisfied with *any* accommodation. However, "an employee cannot insist upon a specific or more beneficial accommodation, and Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee." *Vaughn v. Waffle House, Inc.*, 263 F. Supp. 2d 1075, 1082–83 (N.D. Tex. 2003). Having specifically sought masking and testing as accommodations – going so far as to offer, during the injunction hearing, frequent regular testing – plaintiffs cannot now complain that these accommodations were unlawful because they were supposedly uncomfortable, inconvenient, or not what they preferred.[6]

---

[6] Indeed, plaintiffs' counsel said the following at the injunction hearing: "United's new testing accommodation, which it applies to under-the-wing employees, requires four tests every 14 days. *We think that's a reasonable accommodation*. . . ." Oct. 14, 2021 Hr'g Tr., Vol. 3:

**II.    The ADA Reasonable Accommodation Claims Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Covered Disabilities.**

The ADA's anti-discrimination protections extend only to individuals who have a "disability."  42 U.S.C. § 12112.  And the ADA defines a disability as "[a] physical or mental impairment *that substantially limits one or more of the major life activities* of such individual." 42 U.S.C. § 12102(1)(A) (emphasis added); *see id.* § 12102(2)(A) (a "major life activity" refers to activities such as "seeing, hearing, eating, sleeping, [or] walking").

"Under the ADA, even a serious illness" or medical condition "does not equate with a disability."  *Hale v. King*, 642 F.3d 492, 501 n.30 (5th Cir. 2011) (quoting *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001)); *see id.* (explaining that Hepatitis B and PTSD are not necessarily disabilities).  Instead, the Fifth Circuit holds that "[w]ithout pleading facts of how his major life activities were limited, [a plaintiff thus] cannot state a sufficient claim under the ADA." *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017); *Hale*, 642 F.3d at 501 ("Absent allegations that [plaintiff's] ailments substantially limited him in the performance of a major life activity, [plaintiff] has failed to state a claim for relief under subsection A of the ADA's definition of disability.").  Courts have dismissed (or otherwise rejected) ADA claims, including in the COVID-19 vaccine context, for precisely this reason.  *E.g.*, *Wren v. Midwestern State Univ.*, 2019 WL 3099408, at *9 (N.D. Tex. June 25, 2019) (granting motion to dismiss for failure to plead qualifying disability on this basis under ADA requirements), *report and recommendation adopted* at 2019 WL 3081849 (N.D. Tex. July 15, 2019) (O'Connor, J.); *Griffin*, 697 F. App'x at 797; *See also Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 429–430 (D. Mass. 2021)

---

Tr. 41:8–12 (emphasis added).  *See also* ECF No. 6 at 13 (plaintiffs' TRO brief arguing that United could offer as "reasonable accommodations . . . mask wearing . . . or periodic COVID-19 testing"); ECF No. 37 at 6–7 (plaintiffs' preliminary injunction brief arguing that, as an alternative to unpaid leave, "United could require mask wearing and periodic testing for COVID-19.").

(denying injunction, in COVID-19 case, for no "likelihood of success on their claims that they are 'disabled' within the meaning of the ADA" with "conclusory statements that their conditions substantially impair their ability to work" even when plaintiffs "alleged physical or mental impairments [such as] PTSD, pregnancy, angio-edema/leukemia, and severe mental anguish").

Here, two plaintiffs – Jonas and Rains – allege that they have "allergies" that qualify as disabilities under the ADA.  SAC ¶¶ 137, 163.  More specifically, Jonas alleges an allergic sensitivity to eggs, penicillin, and wool, and Rains alleges "a history of allergic reactions, including anaphylaxis." *Id.*  However, they "do[] not allege how [their] allergies substantially limit them" as to a major life activity.  *Griffin*, 697 F. App'x at 797.

This Court's reasoning in *Wren* is instructive in this regard.  In that case, the plaintiff alleged that her allergies qualified as a disability under the ADA because they were "severe" and (i) required her to carry a prescribed EpiPen; (ii) were "controlled with medication, diet, and environmental restrictions"; and (iii) "affect[ed] and limit[ed] major life activities," as did her "treatment." 2019 WL 3099408 at *9.  This Court held that "[e]ven assuming that [the plaintiff's] allergies result[ed] in a physical impairment, she has not alleged how her allergies substantially limit[ed] a major life activity."  *Id.*  It was not enough that the plaintiff claimed "severe" allergies and "list[ed] major life activities that [we]re impacted by allergies," because she did "not allege how her allergies substantially limit[ed] them," even under the ADA's broad construction.  *Id.*

Plaintiffs' allegations in this case about their "allergies" are even more threadbare than those held to be insufficient at the pleading stage in *Wren*, as nowhere does the SAC even contend in conclusory terms that their allergies impair a major life activity.  Jonas merely describes her allergies as "severe" and alleges that she has to take allergy medications, carry a rescue inhaler,

11

and carry an EpiPen.[7]  SAC ¶ 137.  Rains's parallel allegations are likewise inadequate, only mentioning "a history of allergic reactions and anaphylaxis." SAC ¶ 163;  *See Together Emps.*, 573 F. Supp. 3d at 429.

Nor does Rains plausibly allege a disability based on his heart condition.  He offers no allegations "showing that his heart condition 'substantially limits' the function of his circulatory system" or any other major life activity.  *Lawson v. Excel Contractors, L.L.C.*, 2022 WL 1793511, at *5 (5th Cir. June 2, 2022) (holding for this reason that "[t]he district court correctly concluded that [plaintiff with a heart condition was] not disabled under the ADA.").  Thus, Jonas's and Rains's ADA claims should be dismissed for failure to allege any "disability."

## III.    The Retaliation Claims Should Be Dismissed.

Title VII and the ADA each prohibits retaliatory "discriminat[ion]" against an individual "because" the individual engaged in a protected activity.  42 U.S.C. §§ 2000e-3(a), 12203(a).  The Fifth Circuit "applies the same analysis to ADA and Title VII retaliation claims."  *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008).  "To state a Title VII retaliation claim, the Plaintiff must allege facts that tend to establish: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action."  *Richards v. JRK Prop. Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010) (quoting *Gee v. Principi*, 29 F.3d 342, 345 (5th Cir. 2002)); *see Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

---

[7] Jonas has been on notice of this infirmity for more than a year.  *See Sambrano v. United Airlines, Inc.,* 19 F.4th 839, 842 (5th Cir. 2021) (Ho, J., dissenting) ("[I]t is unclear to me whether the other employee [*i.e.*, Jonas] has sufficiently alleged a covered disability" under the ADA).

Here, the plaintiffs base their retaliation claims on the theory that they "engaged in protected activity when they requested (or tried to request) religious [or medical] accommodations from United's vaccine mandate"; and that United's response of granting accommodations that included unpaid leave was "retaliatory." *See* SAC ¶¶ 207–212 (Count II – All plaintiffs under Title VII); *id.* ¶¶ 222–227 (Count IV – Jonas and Rains under the ADA).

These retaliation claims are "incoherent," *Sambrano*, 2022 WL 486610, at *32 (Smith, J., dissenting), because they confuse the adequacy of the accommodation with retaliation.  Plaintiffs allege that the accommodations United offered were so inadequate that employees felt punished for having asked for an accommodation and some employees may have felt pressured to get vaccinated instead.  SAC ¶ 186.  But the adequacy of the accommodations goes to the merits of plaintiffs' Title VII reasonable accommodations claim, not retaliation.  *See, e.g., Tagore*, 735 F.3d at 329 (accommodation claim turns on whether the accommodation offered by employer is reasonable).  For a retaliation claim, the court does not ask about the legal sufficiency of the accommodation, but rather whether the employees were treated materially worse than if they had not sought the accommodation at all, such that a reasonable worker would be dissuaded from seeking the accommodation in the first place.  *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).  In other words, to constitute retaliation, the employer must actually "*discriminate against*" the worker – that is, treat him or her more harshly "*because*" he or she requested an accommodation.  42 U.S.C. §§ 2000e-3(a); 12203(a) (emphasis added).

Here, plaintiffs do not plausibly allege that United treated them more harshly because they requested a religious or medical accommodation.  To the contrary, the SAC concedes that United treated the plaintiffs *better* than their counterparts.  Employees who refused vaccination and did not seek any accommodation were terminated.  SAC ¶ 5, 42.  By contrast, accommodated

employees received at least unpaid leave (with the option to take alternative positions), while others received on-the-job accommodations such as masking and testing. *E.g.*, SAC ¶¶ 16, 20, 83 n.2, 143. Indeed, each of the employees who received an accommodation are still working at the company, with those offered unpaid leave having "returned to work on March 28, 2022." *Id.* ¶ 98; *see id.* ¶ 10. They cannot plausibly contend the accommodations offered would "dissuade a reasonable worker" from making an accommodation request, as they all chose, unsurprisingly, to eschew the alternative. *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

If plaintiffs' position were correct – if one could claim retaliation based on the offer of an accommodation that the employee deems inadequate – then every inadequate-accommodation case would automatically become a retaliation case too. Courts have rightly rejected that result. *Cf. EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018) (rejecting a repackaged retaliation claim that sought to challenge the denial of reasonable accommodation of religion claim, explaining that the employee's "exclusive Title VII remedy is an unlawful disparate treatment" claim under §§ 2000e-2(a)(1); 2000e(j)).

Plaintiffs' retaliation claims are also deficient for yet another reason. For "protected activity" – a necessary predicate for a retaliation claim – they rely on the antiretaliation "opposition" clause, but without alleging they "opposed" any "unlawful" "practice." 42 U.S.C. §§ 2000e-3(a); 12203(a). Instead, they allege that United announced its vaccine policy, invited plaintiffs to request an accommodation, and they did so. Their requests for accommodations did not "oppose" anything – that is, plaintiffs did not "resist or antagonize," "contend against," "confront," or "resist" any unlawful practice. *Crawford v. Metro. Gov't of Nashville*, 551 U.S. 271 (2009) (citations omitted). As several courts have found, simply requesting an accommodation in this manner does not constitute protected activity. *See, e.g., Leigh v. Artis-*

*Naples, Inc.*, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022) ("Under the plain meaning of 'opposed' in section 2000e-3(a), the statute does not cover Plaintiffs' initial requests for religious accommodation—a blanket vaccine exemption—even though such requests for religious accommodations were ultimately denied by [defendant]"); *see also Johnson v. United Parcel Service, Inc.*, SAG-17-1771, 2020 WL 779459, at *6 n.9 (D. Md. Feb. 14, 2020); *N. Mem'l Health Care*, 908 F.3d at 1102.[8]

## IV.    The Interactive Process Claims Under Title VII and the ADA Should Be Dismissed.

As an independent and distinct aspect of their reasonable accommodation claims, plaintiffs contend that "United violated Title VII and the ADA by failing to engage in an individualized interactive process" (SAC ¶ 7) and seek a declaration "that United has violated Title VII and the ADA by failing to engage in the interactive process . . . in response to requests for accommodations to its COVID-19 vaccine mandate." SAC at p. 46, Prayer for Relief ¶ c.; *see also id.* ¶¶ 202, 206 (Count I – Title VII) & *id.* ¶¶ 216, 221 (Count III – ADA). This separate claim for relief must be dismissed, because neither Title VII nor the ADA contains a stand-alone requirement to follow an "interactive process," let alone imposes liability for failure to do so regardless of whether the accommodations actually provided are lawful.

As for Title VII, the statutory text imposes only a substantive duty to reasonably accommodate without undue hardship, not any independent procedural duty to engage in an "interactive process." *See* 42 U.S.C. § 2000e(j) (for purposes of the prohibition against discrimination, defining "religion" to include religious practice unless the employer "is unable to reasonably accommodate … without undue hardship on the conduct of the employer's business").

---

[8] In addition, as discussed below, Castillo, Hamilton, Jonas, Sambrano, and Kincannon all failed to raise a retaliation claim in their EEOC charges, and that also requires their retaliation claims be dismissed. *See* Part V.

Consistent with the statutory text, courts in the Fifth Circuit recognize that an employer can *prevail* against Title VII failure-to-accommodate claims, even where the employer "wholly failed to explore, discuss, [or] offer . . . any accommodations whatsoever," so long as the employer actually provided a reasonable accommodation or could not have done so without incurring undue hardship. *E.g.*, *Leonce v. Callahan*, 2008 WL 58892, at *4 (N.D. Tex. Jan. 3, 2008); *see also, e.g.*, *Ciraci v. J.M. Smucker Co.*, 2021 WL 6064748, at *2 (N.D. Ohio Dec. 22, 2021) (concluding that the "Supreme Court has declined to find that an interactive process is required when evaluating religious accommodation requests").

Likewise, the ADA's statutory text imposes only a duty to reasonably accommodate individuals with qualifying disabilities. *See* 42 U.S.C. § 12112(b)(5)(A). Although the EEOC's regulations contemplate an "informal, interactive process," they do not mandate that employers use such a process, let alone purport to impose liability on employers who fail to do so. S*ee* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of accommodation."). Accordingly, the Fifth Circuit has clarified that this "interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations." *See Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

Echoing the Fifth Circuit's conclusion, and collecting case law from various circuits, the Tenth Circuit recently held that "the failure to engage in the interactive process is not independently actionable under the [ADA]." *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1201 (10th Cir. 2023). Simply put, it explained that a defendant "can't incur liability solely for failure to engage in the interactive process." *Id.*; *see also Hohider v. United Parcel Serv., Inc.,*

16

574 F.3d 169, 194 (3d Cir. 2009) (holding that "failure to engage in the interactive process, in itself, does not constitute [ ] a violation" of the ADA); *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 100 (2d Cir. 2009) ("[F]ailure to engage in an interactive process does not form the basis of an [Americans with Disabilities Act] claim . . . "); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999) ("[T]here is no per se liability under the [Americans with Disabilities Act] if an employer fails to engage in an interactive process . . . ").[9]

## V.     The Time-Barred and Procedurally Deficient Claims Should Be Dismissed.

When they filed their original complaint on September 21, 2021, plaintiffs represented to this Court that each of the plaintiffs "submitted a charge to the EEOC" on either September 17, 19, or 20, 2021. ECF No. 1 ¶¶ 70, 79, 89, 99, 108.  The SAC has conspicuously dropped the allegations about when plaintiffs filed their EEOC charges and is now silent as to the matter; this Court, however, can take judicial notice of the charge materials attached to this motion.  *See King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011); *Madaki*, 2022 WL 227163, at *2. Those charges reveal that the *earliest* that any of the five original plaintiffs filed an EEOC charge was February 2022—several months *after* this Court denied the preliminary injunction. Specifically, Hamilton and Kincannon filed their charges on February 18, 2022; Sambrano on March 25, 2022; Jonas on April 12, 2022; and Castillo on September 19, 2022. App. 4-6; 7-11;

---

[9] Plaintiffs previously invoked *EEOC v. Chevron Phillips Chem. Co*, 570 F.3d 606, 621 (5th Cir. 2009), to suggest there is a claim for failure to follow an "interactive process."  But such a reading has been rejected by the Fifth Circuit in subsequent decisions.  *See, e.g.*, *Picard*, 423 F. App'x at 470 (rejecting plaintiffs' reliance "upon our statement regarding the interactive process" in *Chevron Phillips*, and explaining that "the 'interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations'"); *Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 424 n.3 (5th Cir. 2014) (explaining that the "summary statement" on interactive process from *Chevron Phillips* should not be applied literally).  That reading would also violate the rule-of-orderliness, given the contrary earlier decision in *Loulseged*, *supra*.  *See Austin v. Davis*, 876 F.3d 757, 778 (5th Cir. 2017).

12-15; 16-19; 26-30.  At no point during the preliminary injunction proceedings—which included contested arguments about whether a plaintiff who had submitted a charge but not yet received his EEOC right-to-sue notice could obtain relief—did plaintiffs ever correct the record with this Court or in the Fifth Circuit.  The three new plaintiffs submitted their EEOC charges as follows:  Burk on January 28, 2022, and Rains and Medlin on November 3, 2022.  App. 1-3; 20-25.

The date and details of the plaintiffs' EEOC charges reveal that three of the plaintiffs' claims are time-barred in full or in part under the applicable statute-of-limitations period.  Specifically, under Title VII, a charge must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1); *see also* 42 U.S.C. § 12117(a) (ADA incorporates Title VII's procedural requirements).

The Supreme Court held that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" such that a Plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period"—here, 300 days.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  That "300-day time bar begins on the day that the discriminatory act 'happened'; a party who fails to meet that deadline 'lose[s] the ability to recover for it.'"  *Madaki*, 2022 WL 227163, at *3 (quoting *Morgan*, 536 U.S. at 110) (Pittman, J.); *see id.* ("Claims for discrete acts are independent from each other and each trigger their own limitations period.").

    **1.**    ***Rains.***  300 days before Rains's November 3, 2022 EEOC charge is January 7, 2022.  Accordingly, Rains cannot pursue claims for any discrete acts of alleged discrimination before January 7, 2022, yet all of the discrete acts he alleges happened before that date.  In particular, he alleges that his request for medical accommodation was approved by United on September 9, 2021, but that the form of accommodation provided was inadequate.  *See* SAC ¶¶

163–64.  He also alleges that on or about September 8, 2021 he "called Help Hub in an attempt to submit his religious accommodation request but was informed that he could only have one type or the other."  SAC ¶ 163 n.3.  Rains further alleges his unpaid leave accommodation commenced in November 2021.  *Id.* ¶ 168.

Rains alleges no other allegedly unlawful employment action after January 7, 2022.  Nor does he allege any action that qualifies as an ongoing violation.  By the time his period for filing had expired on January 7, United had already (1) denied his request for a religious accommodation, (2) granted his request for the disability accommodation that he claims is inadequate, and (3) placed him on unpaid leave.  Each of these "prior discrete discriminatory acts are untimely filed and no longer actionable."  *Morgan*, 536 U.S. at 115; *see also, e.g.*, *Henson v. Bell Helicopter Textron, Inc*., 128 F. App'x 387, 391 (5th Cir. 2005) (holding that defendant's "failure to provide accommodations" is a "discrete act[] [that] do[es] not qualify under the continuing violation exception").

More specifically, to the extent that Rains argues that his unpaid leave extended to March 2022, that is clearly insufficient.  Discrete acts (such as termination, transfer, or suspension) are easy to identify, independently actionable, and thus not subject to the continuing violation doctrine based on their ongoing *effects*.  *Morgan*, 536 U.S. at 114; *accord Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980) (holding that "the limitations period[] commence[s] to run when [an allegedly unlawful promotion] decision was made and [the employee] was notified").  The same logic applies to United's decision to place Rains on unpaid leave (especially given that Rains himself deems unpaid leave "the functional equivalent of termination").  SAC ¶ 46, Prayer for Relief ¶ b.  As such, Rains cannot allege that the continuation of unpaid leave gave "present effect to the past illegal act."  *Ricks*, 449 U.S. at 258.

    **2.**    ***Castillo.***  The 300 day period prior to Castillo's September 19, 2022 EEOC charge extends to November 23, 2021, but again all his claims predate that.  He objects to the initial determination in mid-September 2021 that his accommodation request was untimely, he further objects to what he claims would have been "unpaid leaving [starting] at the beginning of October" 2021, and he finally objects to the accommodation he nevertheless received that month "to keep getting a paycheck" while adhering to a masking and testing protocol.  App. 4-6;  *See* SAC ¶ 17, 115 (his masking-and-testing started in October 2021).  Despite checking a box on his EEOC charge for a "continuing action," nothing Castillo alleges qualifies for the continuing violation doctrine, as his objections—like Rains's—are discrete acts that needed to be raised with the EEOC within 300 days of their occurrence.  *See Morgan*, 536 U.S. at 114–15.

    **3.**    ***Medlin.***  Medlin's claims are time-barred in part.  Because she filed her charge on November 3, 2022, any discrete acts of alleged discrimination before January 7, 2022 are time-barred.  Accordingly, all of her claims based on the initial denial of her religious accommodation for lack of a "third-party verification" letter are untimely.  SAC ¶ 175 (explaining this occurred "[s]everal weeks" after her August-September 2021 request for a religious accommodation); App. 20-22; *Henson*, 128 F. App'x at 391.  By contrast, United does not seek dismissal of Medlin's claims relating to her March 9, 2022 termination, as that discrete act is timely.  *See* SAC ¶¶ 177–180.

    **4.**    ***Claims Beyond Scope of EEOC Charge.***  "Requiring administrative exhaustion is a 'mainstay of proper enforcement of Title VII remedies'".  *Madaki*, 2022 WL 227163, at *2 (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008)).  As such, "the claims an employee can bring in a lawsuit are limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id.* (citation omitted).

Here, a review of the charges of the original five plaintiffs—each submitted long after they retained counsel—reflects no reference to any retaliation claim, or factual support for one. Thus, there is "no evidence that the EEOC considered [retaliation]" and a retaliation claim does not reasonably grow out of their accommodation claims—accordingly, Castillo, Hamilton, Jonas, Sambrano, and Kincannon's retaliation claims, in addition to failing to allege the elements, must be dismissed as outside "the scope of the EEOC investigation." *Id.*; *see also Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 338–39 (5th Cir. 2021) (because the EEOC charge only included a race-discrimination claim, claims for sex discrimination and retaliation were not exhausted, even though those claims were included in the EEOC intake questionnaire (which did not count as part of the charge because it was not signed and verified)).

## CONCLUSION

United respectfully requests that the Court dismiss (1) the Title VII religious accommodation claims of Castillo, Hamilton, and Jonas; (2) Jonas's and Rains's ADA claims; (3) all plaintiffs' retaliation claims; (4) all plaintiffs' Title VII and ADA interactive process claims; and (5) all claims that are time-barred or that exceed the scope of the EEOC charges filed by the plaintiffs.

Dated: March 13, 2023                    Respectfully submitted,


                                         /s/ *Russell D. Cawyer*
                                         Russell D. Cawyer
                                         Texas Bar No. 00793482
                                         Taylor J. Winn
                                         Texas Bar No. 24115960
                                         KELLY HART & HALLMAN LLP
                                         201 Main Street, Suite 2500
                                         Fort Worth, TX 76102
                                         Telephone: +1.817.878.3562
                                         Facsimile: +1.817.335.2820
                                         Email: russell.cawyer@kellyhart.com
                                         Email: taylor.winn@kellyhart.com

                                         Donald J. Munro
                                         D.C. Bar No. 453600
                                         JONES DAY
                                         51 Louisiana Avenue, NW
                                         Washington, D.C. 20001
                                         Telephone: +1.202.879.3939
                                         Facsimile: +1.202.626-1700
                                         Email: dmunro@jonesday.com

                                         Jordan M. Matthews
                                         IL Bar No. 6300503
                                         JONES DAY
                                         110 North Wacker Drive, Suite 4800
                                         Chicago, IL 60601
                                         Telephone: +1.312.782.3939
                                         Facsimile: +1.312.782.8585
                                         Email: jmatthews@jonesday.com

                                         Alexander V. Maugeri
                                         NY Bar No. 5062666
                                         JONES DAY
                                         250 Vesey Street
                                         New York, NY 10281
                                         Telephone: +1.212.326.3939
                                         Facsimile: +1.212.755.7306
                                         Email: amaugeri@jonesday.com


                                         **ATTORNEYS FOR DEFENDANT
                                         UNITED AIRLINES, INC.**

**CERTIFICATE OF SERVICE**

On March 13, 2023, I electronically submitted the foregoing documents with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


/s/ *Russell D. Cawyer*
Russell D. Cawyer