# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*,<br><br>   *Plaintiffs,*<br><br>   v.<br><br>UNITED AIRLINES, INC.,<br><br>   *Defendant*. | Civil Action No.: 4:21-cv-01074-P |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.   Plaintiffs Have Sufficiently Pled a Campaign of Coercion and Retaliation in
     Violation of Title VII and the ADA. ...................................................................... 4

     A.   Retaliation Allegations Often Overlap with Failure-to-Accommodate
          Allegations. ................................................................................................... 4

     B.   Plaintiffs Have Plausibly Alleged That United's Actions Would Dissuade
          a Reasonable Employee. ................................................................................ 6

     C.   Plaintiffs Have Sufficiently Alleged That They Opposed Unlawful Practices.......... 7

     D.   Plaintiffs' EEOC Charges Contain Retaliation Allegations. ......................... 8

II.  Plaintiffs Castillo, Hamilton, and Jonas Have Pled Sufficient Failure-to-
     Accommodate Claims. ............................................................................................ 10

     A.   United Took Adverse Employment Actions Against Plaintiffs Castillo,
          Hamilton, and Jonas. ..................................................................................... 11

     B.   Masking and Testing are Not Universally Reasonable Accommodations............... 13

III. Plaintiffs Do Not Assert Standalone Interactive-Process Claims. ....................... 15

IV.  Plaintiffs Have Plausibly Alleged Disabilities Under the ADA............................ 16

V.   Plaintiffs' Claims Are Not Time-Barred or Procedurally Deficient. ................... 21

CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Antoine v. First Student, Inc.*,
    713 F.3d 824 (5th Cir. 2013) ................................................. 13

*Badii v. Rick's Cabaret Int'l, Inc.*,
    No. 3:12-cv-4541, 2014 WL 550593 (N.D. Tex. Feb. 11, 2014) ........................................... 13

*Burger v. Cent. Apartment Mgmt., Inc.*,
    168 F.3d 875 (5th Cir. 1999) ................................................. 12

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)................................................................... 6, 7

*Butler v. Exxon Mobil Corp.*,
    838 F. Supp. 2d 473 (M.D. La. 2012)....................................... 19

*Cannon v. Jacobs Field Servs. N. Am. Inc.*,
    813 F.3d 586 (5th Cir. 2016) ................................................. 17

*Carter v. Eagle Railcar Services Longview, Texas, LLC*,
    No. 9:21-cv-00289, 2022 WL 17489167 (E.D. Tex. Dec. 7, 2022) ........................... 18, 20, 21

*Conner v. La. Dep't of Health & Hosps.*,
    247 F. App'x 480 (5th Cir. 2007) ............................................. 23

*Cooper v. AT & T Corp./Lucent Tech.*,
    No. SA97-CA-0628-OG, 1998 WL 1784223 (W.D. Tex. Oct. 22, 1998)............................ 7, 8

*Davies By & Through Davies v. Lackawanna Cnty.*,
    No. 3:15-cv-1183, 2018 WL 924205 (M.D. Pa. Feb. 14, 2018)................................. 5

*Edelman v. Lynchburg College*,
    535 U.S. 106 (2002).................................................................. 22

*EEOC v. N. Mem'l Health Care*,
    908 F.3d 1098 (8th Cir. 2018) ............................................... 5, 8

*EEOC v. U.S. Steel Tubular Prod., Inc.*,
    No. 4:14-cv-02747, 2016 WL 11795815 (S.D. Tex. Aug. 4, 2016)........................... 7

*EEOC v. Vantage Energy Servs., Inc.*,
    954 F.3d 749 (5th Cir. 2020) ................................................. 24

*Fed. Express Corp. v. Holowecki*,
    552 U.S. 389 (2008).................................................................. 22

*Foreman v. Babcock & Wilcox Co.*,
    117 F.3d 800 (5th Cir. 1997) ................................................. 17

*Gatheright v. Clark*,
    680 F. App'x 297 (5th Cir. 2017) ............................................. 13

*Gregory v. Ga. Dep't of Hum. Res.*,
    355 F.3d 1277 (11th Cir. 2004) ................................................ 8

*Griffin v. American Zurich Insurance Co.*,
   697 F. App'x 793 (5th Cir. 2017)..................................................................... 20

*Grubic v. City of Waco*,
   262 F. App'x 665 (5th Cir. 2008) ..................................................................... 8

*Guerra v. United Parcel Serv., Inc.*,
   250 F.3d 739, 2001 WL 274296 (5th Cir. 2001) ..................................................... 16

*Haire v. Bd. of Supervisors*,
   719 F.3d 356 (5th Cir. 2013) ........................................................................... 13

*Hamilton v. Dallas Cnty.*,
   50 F.4th 1216 (5th Cir. 2022) ........................................................................... 13

*Hebert v. CEC Ent., Inc.*,
   No. 6:16-cv-00385, 2016 WL 5003952 (W.D. La. July 6, 2016).................................. 18

*Huge v. Boeing Co.*,
   No. C14-857 RSM, 2015 WL 6626568 (W.D. Wash. Oct. 30, 2015)............................. 5

*Humphrey v. Mem'l Hosp. Ass'n*,
   239 F.3d 1128 (9th Cir. 2001) ........................................................................... 16

*Hustvet v. Allina Health Sys.*,
   283 F. Supp. 3d 734 (D. Minn. 2017)................................................................. 19

*J.D. by Doherty v. Colonial Williamsburg Found.*,
   925 F.3d 663 (4th Cir. 2019) ........................................................................... 18

*Johnson v. United Parcel Serv., Inc.*,
   No. SAG-17-1771, 2020 WL 779459 (D. Md. Feb. 14, 2020)................................... 8

*Leigh v. Artis-Naples, Inc.*,
   No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022) ................ 8

*Love v. City of Dallas*,
   No. 3:96-CV-0532-R, 1997 WL 278126, (N.D. Tex. May 14, 1997)........................... 11

*Madaki v. Am. Airlines, Inc.*,
   No. 4:21-cv-0760-P, 2022 WL 227163 (N.D. Tex. Jan. 25, 2022) ....................... 4, 14

*Mills v. St. Louis Cnty. Gov't*,
   No. 4:17-cv-0257, 2017 WL 3128916 (E.D. Mo. July 24, 2017).............................. 18

*Milton v. Tex. Dep't. of Crim. Just.*,
   707 F.3d 570 (5th Cir. 2013) ........................................................................... 19

*Molina v. McHugh*,
   No. 2:12-CV-280, 2013 WL 4012631 (S.D. Tex. Aug. 5, 2013) ............................. 13

*Picard v. St. Tammany Par. Hosp.*,
   423 F. App'x 467 (5th Cir. 2011) ..................................................................... 16

*Price v. Sw. Bell Tel. Co.*,
   687 F.2d 74 (5th Cir. 1982) ............................................................................ 22

*Sambrano v. United Airlines, Inc.*,
   570 F. Supp. 3d 409, 420 (N.D. Tex. 2021) ................................................... 15

*Sambrano v. United Airlines, Inc.*,
   No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ......................... 3, 6, 7, 11

*Silva v. City of Hidalgo*,
   575 F. App'x 419 (5th Cir. 2014) ................................................................. 16

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007) .......................................................................... 4

*Tagore v. United States*,
   735 F.3d 324 (5th Cir. 2013) .......................................................................... 5

*Texas v. EEOC*,
   933 F.3d 433 (5th Cir. 2019) ........................................................................ 11

*Thompson v. City of Waco*,
   764 F.3d 500 (5th Cir. 2014) .......................................................................... 4

*Together Employees v. Mass. General Brigham Inc.*,
   573 F. Supp. 3d 412 (D. Mass. 2021) ......................................................... 20

*Welsh v. Fort Bend Indep. Sch. Dist.*,
   941 F.3d 818 (5th Cir. 2019) ........................................................................ 11

*Wren v. Midwestern State Univ.*,
   No. 7:18-cv-00060-O-BP, 2019 WL 3099408 (N.D. Tex. June 25, 2019) ............ 19

**Statutes**

42 U.S.C. § 12102 ............................................................................................ 17, 18

42 U.S.C. § 2000e-5 ............................................................................................. 22

**Other Authorities**

CDC, *Monitoring COVID-19 Cases, Hospitalizations, and Deaths by Vaccination Status* (Mar. 21, 2023) ......................................................................................... 15

EEOC, *Filing a Charge of Discrimination With the EEOC* ....................................... 22

**Regulations**

28 C.F.R. § 36.105 ........................................................................................... 17, 18

29 C.F.R. § 1601.12 ......................................................................................... 10, 22

29 C.F.R. § 1630.1 .............................................................................................. 17

## INTRODUCTION

Despite the Fifth Circuit's recent recognition that United has harmed its employees and demonstrated a disdain for those employees who have a religious or medical reason for not receiving a COVID-19 vaccine, United attempts again to escape scrutiny with its most recent motion to dismiss.  Mot. to Dismiss (ECF No. 160) ("Mot.").  However, the Court should deny that motion because it relies on a misunderstanding of the law and facts.

*First*, United incorrectly argues that Plaintiffs' retaliation claims fail as a matter of law because they overlap with Plaintiffs' failure-to-accommodate claims.  Unsurprisingly, United does not identify any binding authority for this argument.  Rather, Plaintiffs' allegations, which must be accepted as true at this stage, give rise to a reasonable inference that United's coercive campaign resulted in retaliation *and* a failure to reasonably accommodate.

*Second*, United argues that its decision to abandon unpaid leave for some employees means those employees' claims must be dismissed.  Not so.  It was United's universal unpaid-leave policy that prompted this lawsuit.  And, while a subsequent decision to reverse course may impact damages, it is not a basis for United to escape liability altogether at the motion-to-dismiss stage.  Plus, United's about-face on unpaid leave for some employees still resulted in draconian so-called "accommodations" that were themselves plausibly unreasonable.

*Third*, United cannot use a motion to dismiss to strike Plaintiffs' factual allegations about the lack of an interactive process.  Contrary to United's argument, Plaintiffs have not alleged a standalone claim for failure to engage in the interactive process.  Rather, Plaintiffs allege that United's undisputed failure to engage in the interactive process is evidence of its discriminatory and retaliatory animus.

*Fourth*, Plaintiffs have sufficiently alleged disabilities under the Americans with Disabilities Act ("ADA").  United's argument to the contrary relies on outdated caselaw, and it

overlooks more recent amendments to the ADA, which confirm that Plaintiffs have stated plausible ADA claims.

*Fifth*, Plaintiffs' claims are timely, and United's attempt to argue otherwise relies on a misunderstanding of the EEOC process and the substance of Plaintiffs' original allegations. Once those misunderstandings are corrected, it is clear that Plaintiffs filed their EEOC claims well within the statute of limitations.

For each of these reasons, the Court should dispose of United's motion quickly, denying it so that the parties may return their focus to class-certification discovery.

## BACKGROUND[1]

After announcing that it would require all United employees to receive a COVID-19 vaccine, United's CEO, Scott Kirby, threatened employees "to be very careful about" requesting any religious or medical accommodations. Second Am. Compl. ¶ 49 (ECF No. 156) ("SAC"). As Mr. Kirby explained, United would allow "few people" to get through the exemption process, and he thus discouraged employees from suddenly deciding they were religious. *Id.* Were that not enough, United decided to employ family members in the efforts to coerce any holdouts, mailing all unvaccinated employees postcards, rather than sealed letters, which broadcast that these employees had not uploaded proof of vaccination and would "be separated from United" if the employees did not receive an exemption. *Id.* ¶ 51.

The efforts to dissuade employees from seeking a religious or medical accommodation continued, as United created an arbitrary deadline by which employees had to submit their requests, subjected those employees to harassing and invasive questions, and announced that every

---

[1] Considering the parties' extensive briefing to date in this Court, Plaintiffs do not attempt to provide a full statement of facts in this opposition.

"accommodated" employee would be placed on indefinite unpaid leave that could last for several years. *Id.* ¶¶ 65–67, 70–72, 75.

In light of those discriminatory and retaliatory actions, Plaintiffs—and many other United employees—filed charges of discrimination and retaliation with the EEOC. And, shortly thereafter, Plaintiffs filed their initial complaint in this Court on September 21, 2021, seeking a temporary restraining order and preliminary injunction. *Id.* ¶ 8. Only after facing Plaintiffs' claims and a preliminary-injunction hearing did United agree to delay implementation of its vaccine mandate. *Id.* ¶ 9. However, United subsequently determined that many employees with religious or medical reasons for not receiving a COVID-19 vaccine would be placed on extended unpaid leave. And, for those employees who United determined could remain working, including several named Plaintiffs, United required them to always wear N-95 respirators, including while they were forced to sit and eat alone outside. *Id.* ¶¶ 115, 131. Through this unreasonable treatment, United created an environment where other United employees felt free to harass and ridicule Plaintiffs and other similarly situated employees. *Id.* ¶¶ 15, 131, 144.

This Court ultimately denied Plaintiffs' motion for a preliminary injunction based solely on the conclusion that Plaintiffs were not suffering irreparable harm. ECF No. 104. The Fifth Circuit reversed and remanded, holding that Plaintiffs "are actively being coerced to violate their religious convictions" and thus that their "harm is irreparable." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *6 (5th Cir. Feb. 17, 2022), *reh'g denied*, 45 F.4th 877 (5th Cir. 2022).

After the case returned to this Court, Plaintiffs filed their Second Amended Complaint, and United has now moved for partial dismissal.

**ARGUMENT**

In each of its arguments, United relies on misunderstandings of the law, inapposite or overturned authority, and misstatements of fact. Rather than follow those misguided arguments, the Court must "accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Madaki v. Am. Airlines, Inc.*, No. 4:21-cv-0760-P, 2022 WL 227163, at *2 (N.D. Tex. Jan. 25, 2022) (citing *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007)). In doing so, the Court is to determine only "whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). Applying these standards, United's motion must be denied.

## I.     Plaintiffs Have Sufficiently Pled a Campaign of Coercion and Retaliation in Violation of Title VII and the ADA.

After Plaintiffs weathered repeated coercion, United retaliated against them by imposing unreasonable and unlawful accommodations. *See* SAC ¶¶ 207–12, 222–27. United argues, however, that Plaintiffs cannot claim retaliation for several reasons: (1) the claims impermissibly overlap with Plaintiffs' failure-to-accommodate claims; (2) Plaintiffs did not allege that they were treated more harshly than other United employees; (3) Plaintiffs failed to allege that they "opposed" any "unlawful" "practice"; and (4) Plaintiffs Castillo, Hamilton, Jonas, Sambrano, and Kincannon did not include a retaliation claim in their EEOC charges. *See* Mot. at 12–15. United is wrong at every turn.

### A.     Retaliation Allegations Often Overlap with Failure-to-Accommodate Allegations.

Contrary to United's understanding, allegations of unreasonable accommodations routinely (and properly) overlap with allegations of retaliation in religious and disability discrimination cases. *See, e.g.*, *Huge v. Boeing Co.*, No. C14-857 RSM, 2015 WL 6626568, at *11 (W.D. Wash.

4

Oct. 30, 2015) (denying the employer's summary judgment motion because fact issues remained as to whether placing plaintiff on unpaid leave after she sought an accommodation was retaliatory and an unlawful accommodation); *Davies By & Through Davies v. Lackawanna Cnty.*, No. 3:15-cv-1183, 2018 WL 924205, at *2 (M.D. Pa. Feb. 14, 2018) ("Here, there are claims of discrimination based on failure to accommodate Plaintiff's disability, which are factually intertwined with the retaliation claim.").  It should thus come as no surprise that United's decision to respond to accommodation requests with draconian "accommodations" also sparked claims of retaliation.

In support of its argument, United relies (at 13–14) on inapposite authority, including *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018), and *Tagore v. United States*, 735 F.3d 324, 332 (5th Cir. 2013).  But *North Memorial Health Care* addressed whether the plaintiff's accommodation request was "oppositional" activity.  *See N. Mem'l*, 908 F.3d at 1103.  The Eighth Circuit's resolution of that question has nothing to do with whether unreasonable accommodations may also be a form of retaliation.  And the Fifth Circuit's decision in *Tagore* is even less relevant, as it had nothing to do with a retaliation claim.  *Tagore*, 735 F.3d at 327 n.3.  United thus points to no case that supports its argument that a plaintiff cannot rely on overlapping allegations for a failure-to-accommodate claim and a retaliation claim.  Yet, as noted above, it is common for such allegations to overlap.

Were United correct, employers could simply disguise their retaliation as harsher-than-necessary accommodations.  But neither Title VII nor the ADA gives employers such a loophole through which to retaliate against employees.  Indeed, it is telling that United asks this Court to bless a view of Title VII and the ADA that would allow it to retaliate against employees.  But that

is not the law, and the Court should reject United's attempt to sidestep scrutiny of its retaliatory actions.

### B.    Plaintiffs Have Plausibly Alleged That United's Actions Would Dissuade a Reasonable Employee.

United also argues (at 13) that Plaintiffs' retaliation claims fail because Plaintiffs were not treated more harshly than those who never requested an accommodation.  In other words, United argues that, because it also *fired* employees who did not receive a COVID-19 vaccine, United's "irreparabl[y]" "harm[ful]" actions against Plaintiffs cannot be retaliatory.  *Sambrano*, 2022 WL 486610, at *6.  But that ignores the Fifth Circuit's conclusion that United's coercive behavior was irreparably harming its employees who requested accommodations.  That United also fired others is no answer.

In all events, were United correct on the law, an employer would be absolved of liability simply by finding at least one class of employees to treat worse than those against whom it wants to retaliate.  Fortunately, the law provides otherwise: Plaintiffs need only plausibly allege that United's actions "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  The SAC does just that, alleging that: (1) Scott Kirby threatened employees to "be very careful about" requesting accommodations and not decide to become religious; (2) United created an environment where employees felt free to harass Plaintiffs after United singled them out as unsafe; and (3) United imposed draconian and arbitrary "accommodations" that required some Plaintiffs to eat alone outside while wearing an N-95 respirator that they must return to their mouths between bites and sips, while also stripping other Plaintiffs of the ability to do their jobs effectively.  *See, e.g.*, SAC ¶¶ 49, 70–72, 94, 98, 100–04, 115–19, 127–31, 143–46, 157–58, 169.  Thus, the SAC plausibly alleges that United demonstrated disdain for Plaintiffs before the vaccine mandate went

into effect and then retaliated against Plaintiffs through unlawful accommodations when they did not acquiesce to United's demands. This would unquestionably dissuade some employees from speaking up about United's violations of the law and requesting accommodations. *Burlington N.*, 548 U.S. at 57.

Indeed, the Fifth Circuit has already recognized as much, concluding that Plaintiffs' allegations show that they "are being subjected to ongoing coercion based on their religious beliefs." *Sambrano*, 2022 WL 486610, at *3. It defies reason to argue that such "ongoing coercion" would not "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57, 69 (explaining that, for allegations of retaliation, "[c]ontext matters"). At the motion-to-dismiss stage, Plaintiffs' allegations are accepted as true, and they are sufficient to state a retaliation claim.

## C.    Plaintiffs Have Sufficiently Alleged That They Opposed Unlawful Practices.

Elsewhere, United attempts to escape Plaintiffs' retaliation claim by arguing (at 14–15) that Plaintiffs did not "alleg[e] they 'opposed' any 'unlawful' 'practice.'" But United can only muster a handful of out-of-circuit cases to argue that requesting an accommodation is not protected activity under Title VII's "opposition" clause. And, while the Fifth Circuit has not addressed this issue, courts within the Fifth Circuit, and the EEOC, have endorsed the opposite view. *See, e.g., EEOC v. U.S. Steel Tubular Prod., Inc.*, No. 4:14-cv-02747, 2016 WL 11795815, at *16 (S.D. Tex. Aug. 4, 2016); *Cooper v. AT & T Corp./Lucent Tech.*, No. SA97-CA-0628-OG, 1998 WL 1784223, at *7 n.104 (W.D. Tex. Oct. 22, 1998), *report and recommendation adopted,* No. SA-97-CA-0628-OG, 1998 WL 1978660 (W.D. Tex. Dec. 8, 1998).

Moreover, United's out-of-circuit cases are inapposite, as none was decided at the motion-to-dismiss stage. Rather, the cases United cites (at 14–15) considered the available evidence during an injunction hearing or following motions for summary judgment to decide whether the

plaintiffs' exemption requests were oppositional activity.  *See Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022) (assessing "the evidence" at the preliminary-injunction stage); *N. Mem'l*, 908 F.3d at 1102 (assessing the EEOC's claims following motion for summary judgment); *Johnson v. United Parcel Serv., Inc.*, No. SAG-17-1771, 2020 WL 779459, at *6 (D. Md. Feb. 14, 2020), *aff'd*, 839 F. App'x 781 (4th Cir. 2021) (assessing plaintiff's claims following discovery and motions for summary judgment). Accordingly, these cases confirm that the question of whether Plaintiffs' actions were oppositional under Title VII is a fact question to be decided at a later stage.

United's argument is further undercut by its own concession (at 12) that "[t]he Fifth Circuit 'applies the same analysis to ADA and Title VII retaliation claims.'"  (quoting *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008)).  And, "[i]n interpreting the ADA, the EEOC considers a request for a reasonable accommodation of a disability to constitute a protected activity."  *Cooper*, 1998 WL 1784223, at *7.  If the "same analysis" applies to retaliation claims under the ADA and Title VII, as United concedes, then "a request for a reasonable accommodation" under Title VII "constitute[s] a protected activity," and United's argument must be rejected.

### D.     Plaintiffs' EEOC Charges Contain Retaliation Allegations.

In one final attempt to sidestep any liability for retaliating against Plaintiffs, United asks the Court (at 15 n.8) to conclude that several Plaintiffs—Castillo, Hamilton, Jonas, Sambrano, and Kincannon—failed to include retaliation claims in their EEOC charges.  United misunderstands the requirements for an EEOC charge.  An employee is not required to check the box for retaliation on her EEOC charge to pursue a retaliation claim.  *See Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).  Provided that "[t]he facts alleged in her EEOC charge could

have reasonably been extended to encompass a claim" for retaliation, an employee may pursue such a claim.  *Id.*

Here, Plaintiffs' EEOC charges explained the facts pertinent to their retaliation claims.  For instance, Plaintiff Castillo stated: "Even though United ended up providing an accommodation for me to keep getting a paycheck, the company continues to prevent me from doing certain jobs." Def.'s App. 4 (ECF No. 161).   Plaintiff Hamilton explained that, after requesting an accommodation, United asked her "discriminatory questions about [her] religion," and then responded by "approv[ing]" the accommodation "with many discriminatory conditions."  *Id.* at 8. Plaintiff Hamilton further described how United responded to her accommodation request by requiring her to wear an N-95 respirator while eating alone outside and only allowing her to remove the mask between bites.  *Id.*  She also explained that, since other employees knew that the respirators were for the unvaccinated, it became her "scarlet letter," which led to "workplace shunning and harassment."  *Id.*  Plaintiffs Jonas, Sambrano, and Kincannon all have similar statements in their EEOC charges.  *Id.* at 12 (explaining that United forced Jonas "to work in a small, closed office" and that she had been discriminated against since requesting an accommodation); *id.* at 16 (explaining that United discriminated against Plaintiff Kincannon after she requested a religious accommodation); *id.* at 26 (explaining that, after requesting an accommodation, United asked Captain Sambrano discriminatory questions and imposed an accommodation that was really a punishment).  These statements undoubtedly made clear that Plaintiffs were also suffering from United's retaliation.

Additionally, United undermines its own argument by arguing earlier (at 13) that Plaintiffs' retaliation claims should be dismissed because they are just repackaged failure-to-accommodate

claims.  If that were true, then Plaintiffs' EEOC charges about their failure-to-accommodate claims necessarily encompass the allegations for their retaliation claims.[2]

In short, Plaintiffs have plausibly alleged a campaign of coercion and retaliation from the moment United announced its vaccine mandate and Mr. Kirby attempted to dissuade anyone from seeking an exemption.  SAC ¶¶ 49–50.  Accordingly, the Court should deny United's request that it dismiss Plaintiffs' retaliation claims.

## II.    Plaintiffs Castillo, Hamilton, and Jonas Have Pled Sufficient Failure-to-Accommodate Claims.

United also asks the Court (at 5–7) to dismiss several of Plaintiffs' failure-to-accommodate claims, relying on two misguided arguments.  First, United suggests that, because it abandoned its unpaid-leave policy for certain employees, the Court should ignore how United treated its employees leading up to and shortly after Plaintiffs filed their Complaint.  Second, United argues (at 7–9) that its masking and testing accommodation, offered only after Plaintiffs were forced to bring this lawsuit, was reasonable and requires the Court to dismiss the failure-to-accommodate claims brought by Plaintiffs Castillo, Hamilton, and Jonas.  Both arguments ignore the governing law, and Plaintiffs have plausibly alleged that United's excessive and unnecessary masking and testing policy was unreasonable.

---

[2] For this same reason, United is incorrect (at 20–21) in claiming that Plaintiffs' retaliation claims are untimely.  *See* 29 C.F.R. § 1601.12(b) ("[A] charge may be amended to cure technical defects or omissions, including ... to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.").

**A.  United Took Adverse Employment Actions Against Plaintiffs Castillo, Hamilton, and Jonas.**

United's argument that it took no adverse employment actions against Plaintiffs Castillo, Hamilton, and Jonas fails for a host of reasons.  First, it fails because United ignores the allegations included in the SAC.  As United acknowledges, "[a]dverse employment actions" include "ultimate employment *decisions*."  Mot. at 6 (emphasis added).  And the SAC alleges that United made the decision to terminate Plaintiff Castillo and to put Plaintiffs Hamilton and Jonas on unpaid leave.  SAC ¶¶ 114, 127, 140.  Each of these decisions was an ultimate employment decision.  *Love v. City of Dallas*, No. 3:96-CV-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997); *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019).

Moreover, the SAC plausibly alleges that those decisions harmed Plaintiffs.  *See, e.g.*, SAC ¶ 132 ("United's initial rejection [of] her request for a reasonable accommodation and the threat of unpaid leave also caused Ms. Hamilton significant stress.  That emotional toll was exacerbated as the mandate and United's actions limited the options her family was able to provide for her husband's cancer treatment.").  The fact that this lawsuit forced United to walk back its universal unpaid-leave plan does not erase United's previous ultimate decisions, which harmed Plaintiffs.[3]  Again, that is the plan that the Fifth Circuit held was irreparably harming United's employees.  *Sambrano*, 2022 WL 486610, at *6.  And were United right, an employer could always escape liability by changing its policy in the middle of litigation, irrespective of any harm caused previously by employment decisions.

---

[3] To the extent United argues that its post-lawsuit decision moots these Plaintiffs' claims, United is wrong.  The voluntary cessation doctrine states that "[a] case does not necessarily become moot when a defendant voluntarily ceases the objectionable conduct."  *Texas v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019).  And a defendant bears a "heavy burden" to demonstrate "that there is no reasonable expectation that the wrong will be repeated."  *Id.*

Regardless, the unpaid-leave decision was not the only adverse employment action here. After Plaintiffs filed this lawsuit, United "relocated Ms. Jonas to a remote 'agent on demand' position." SAC ¶ 143. While United acknowledges that a transfer or reassignment can be an ultimate employment decision, it curiously argues (at 7) that Plaintiff Jonas only experienced a lateral transfer and that her allegations about the losses she experienced are "too vague and conclusory." The SAC alleges far more than a lateral transfer. Plaintiff Jonas pleads that, in this new role, "[s]he felt ostracized" because "her duty station was located away from most other employees," and "United would not allow her to eat meals with other employees." SAC ¶ 144. Additionally, Plaintiff Jonas alleges that her "departmental relocation came without union protection or the ability to work additional or overtime shifts, a benefit only afforded the vaccinated employees." *Id.* And, "once she was relocated, there was no guarantee she would ever be able to return to her lucrative United Club position." *Id.* ¶ 145. Because of this relocation, Plaintiff Jonas "lost out on a significant amount of bonus money." *Id.* ¶ 146.

These allegations are more than sufficient to state a claim. The Fifth Circuit has made clear that a transfer is purely lateral, and not an adverse employment action, when the new position has "the *same* job title, benefits, duties, and responsibilities" as the old position. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (emphasis added). As shown above, Plaintiff Jonas alleged a new job title (from the United Club to an agent on demand), the loss of benefits (union protection and the inability to work overtime shifts), and different duties and responsibilities (being an agent on demand rather than in a customer-facing role). *See* SAC ¶¶ 143–45. What is more, Jonas's inability to work additional or overtime shifts alone "can constitute an adverse employment action." *Molina v. McHugh*, No. 2:12-CV-280, 2013 WL

12

4012631, at *3 (S.D. Tex. Aug. 5, 2013) (citing *Haire v. Bd. of Supervisors*, 719 F.3d 356, n.16 (5th Cir. 2013)).[4]

Finally, as United recognizes (albeit buried in a footnote (n.4)), the Fifth Circuit recently heard en banc arguments on whether to change the rule that only ultimate employment decisions are adverse employment actions. *See Hamilton v. Dallas Cnty.*, 50 F.4th 1216 (5th Cir. 2022) (per curiam). Thus, even the standard on which United principally relies, and misunderstands, may soon not be the standard in this Circuit.[5] Accordingly, for all these reasons, Plaintiffs have sufficiently alleged that they suffered adverse actions.

### B. Masking and Testing are Not Universally Reasonable Accommodations.

United also argues (at 8) that the Court should make the sweeping decision on a motion to dismiss that masking and testing are necessarily reasonable accommodations. And United asks the Court to conclude that Plaintiffs are thus precluded from filing any claims about those accommodations. *Id.* at 8. But this disregards the correct legal standard and Plaintiffs' factual allegations.

As to the legal point, a particular accommodation cannot be reasonable as a matter of law. Rather, "[w]hether an accommodation is reasonable *is a question of fact*." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013) (emphasis added). And, at the motion-to-dismiss stage,

---

[4] Further, the only case on which United relies for this argument about Plaintiff Jonas was decided in a different procedural posture. Mot. at 7 (citing *Badii v. Rick's Cabaret Int'l, Inc.*, 2014 WL 550593, at *8 (N.D. Tex. Feb. 11, 2014)). *Badii* was decided in the summary-judgment context, not at the motion-to-dismiss stage. Thus, the standard applied in *Badii* is inapplicable here. *Gatheright v. Clark*, 680 F. App'x 297, 299 (5th Cir. 2017) ("At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness; on summary judgment, the plaintiff can no longer rest on the pleadings.") (cleaned up).

[5] Should the Court agree with United's understanding of the "ultimate decision" requirement, it should withhold judgment until the Fifth Circuit has issued a decision in *Hamilton*.

"the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Madaki*, 2022 WL 227163, at *2. That is reason enough to reject United's argument.

Here, moreover, Plaintiffs have not alleged that all masking and testing is *unreasonable*. Rather, they allege that the masking and testing protocol United employed here was unreasonable. For instance, Plaintiff Castillo alleges that United forced him to "wear an N-95 respirator at all times while at work, eat his meals alone and outdoors, and provide regular COVID-19 test results, even on days he was not scheduled to work." SAC ¶ 115. Plaintiff Castillo also alleged that United failed to provide him with the required training and oxygenation breaks for using an N-95 respirator. *Id.* ¶ 116. And this rigid and unnecessary protocol "put Mr. Castillo and his co-workers at significant safety risk. Requiring Mr. Castillo to always wear an N-95 respirator—even while working outdoors—limited his ability to communicate with colleagues during important maintenance activities." *Id.* ¶ 117.

Plaintiffs Hamilton and Jonas make similar allegations. *See id.* ¶¶ 128, 144–45. And, in Plaintiff Jonas's case, United made her wear an N-95 respirator at all times and eat alone even though they demoted her to a position where "her duty station was located away from most other employees." *Id.* ¶ 144. While United understandably attempts to keep the question at an abstract level discussing masking and testing in general, Plaintiffs have alleged that the specific masking and testing requirements that United actually implemented were unreasonable, which plausibly states a failure-to-accommodate claim.

Additionally, the EEOC's guidance does not help United, as the guidance only recommends mask wearing "in indoor public places."[6]  In fact, the guidance United identifies states that employers should take into consideration "whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public."[7]  Plaintiffs have plausibly alleged that United did not take these factors into consideration, as United required everyone to wear respirators outdoors and did not consider whether employees were in close contact with each other.  Accordingly, United has not offered any reasonable basis for dismissing Plaintiffs' failure-to-accommodate claims.

## III.   Plaintiffs Do Not Assert Standalone Interactive-Process Claims.

United fares no better with its request (at 15) that the Court dismiss Plaintiffs' interactive-process "claim."  Plaintiffs have not asserted such a claim.  Rather, the SAC mentions the lack of an interactive process as part of several different claims under Title VII and the ADA.  *See* SAC ¶¶ 202, 203, 206, 211, 216, 217, and 221.  Indeed, the lack of an interactive process goes to the unreasonableness of United's accommodations and its "apathy, if not antipathy, for many of its employees' concerns and a dearth of toleration for those expressing diversity of thought." *Sambrano v. United Airlines, Inc.*, 570 F. Supp. 3d 409, 420 (N.D. Tex. 2021), *recons. denied*, No. 4:21-CV-1074-P, 2021 WL 5445463 (N.D. Tex. Nov. 19, 2021), *and rev'd and remanded*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022), *reh'g denied*, 45 F.4th 877 (5th Cir. 2022).

---

[6] CDC, *Monitoring COVID-19 Cases, Hospitalizations, and Deaths by Vaccination Status* (Mar. 21, 2023), https://tinyurl.com/59fznxfd.

[7] U.S. Equal Emp. Opportunity Comm'n, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws: Vaccinations—Title VII Religious Objections to COVID-19 Vaccine Requirements,* at ¶ L.3 (updated Mar. 1, 2022), https://tinyurl.com/yhnjew5y.

Regardless, United is also wrong on the law. United points (at 16) to a Tenth Circuit holding that "the failure to engage in the interactive process is not independently actionable under the ADA." But this holding has no parallel in the Fifth Circuit's cases. To the contrary, the Fifth Circuit has concluded that, "'[w]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.'" *Guerra v. United Parcel Serv., Inc.*, 250 F.3d 739, 2001 WL 274296, at *3 (5th Cir. 2001) (quoting *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)); *see also Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) ("conclud[ing] as a matter of law" that an employer has "an affirmative duty under the ADA to explore further methods of accommodation" because the ADA places a "mandatory obligation" to "engage in an interactive process with the employee"). Although United suggests (at 16 n.9) that this holding has been diluted by two unpublished decisions, those cases do no such thing. One case says only that the interactive process must "be viewed on a case-by-case basis." *Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011) (quoting *Loulseged*, 178 F.3d at 736). And the other held that the interactive-process question was irrelevant because there was "no evidence that a reasonable accommodation was feasible." *Silva v. City of Hidalgo*, 575 F. App'x 419, 424 (5th Cir. 2014).

United cannot avoid the impact of its failure to engage in the interactive process by claiming that those allegations should be dismissed. There are no standalone interactive-process claims to dismiss. And the allegations about the lack of an interactive process go directly to United's lack of good faith and its failure to provide reasonable accommodations.

## IV.   Plaintiffs Have Plausibly Alleged Disabilities Under the ADA.

United also asks the Court to dismiss Plaintiffs' ADA claims, arguing (at 11) that Plaintiffs Jonas and Rains do not suffer any real disabilities because their allergies do not limit any major

life activity.  United further suggests (at 12) that Plaintiff Rains's heart condition is not a real disability because it does not substantially limit the function of his circulatory system or any other major life activity.  Of course, this would come as a surprise to Plaintiffs Jonas and Rains, who deal with these disabilities daily.  Moreover, United's argument is doomed by its failure to account for the ADA Amendments Act ("ADAAA"), which clarified and expanded the "substantially limits a major life activity" standard.  Once the correct standard is applied, it becomes clear that Plaintiffs Jonas and Rains have plausibly alleged disabilities.

The ADA's anti-discrimination protections extend to all individuals with a qualifying "disability," which includes: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 805 (5th Cir. 1997).  In 2008, Congress passed the ADAAA, Pub. L. No. 110-325, 122 Stat. 3553, to "make it easier for people with disabilities to obtain protection under the ADA."  *Cannon v. Jacobs Field Servs. N. Am. Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting 29 C.F.R. § 1630.1(c)(4)).  And, as the Fifth Circuit held, "[a] principal way in which Congress accomplished that goal was to broaden the definition of 'disability.'"  *Id.*  As the applicable regulations make clear, the amendments clarify that "'[s]ubstantially limits' is not meant to be a demanding standard" but should instead "be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA."  28 C.F.R. § 36.105.

In fact, the ADAAA goes on to provide rules of construction for courts to follow when determining whether an impairment qualifies as a disability.  Most relevant here are the commands that: (1) "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," such as

medication and EpiPens; and (2) "an impairment that is episodic" is still a disability if "it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D)–(E); 28 C.F.R. § 36.105(d)(iv), (viii).

Following the ADAAA, various courts have concluded that severe allergies leading to anaphylaxis or hospitalization constitute a disability under the ADA.  For example, in *Carter v. Eagle Railcar Services Longview, Texas, LLC*, the plaintiff alleged that he had experienced several severe allergic reactions that led to restricted swallowing and breathing and required treatment in an emergency room.  No. 9:21-cv-00289, 2022 WL 17489167, at *1 (E.D. Tex. Dec. 7, 2022).  In that case, the district court rejected the defendant's argument that these allergic reactions did not substantially limit a major life activity under the ADA.  *Id.* at *3.  Rather, the court noted that pre-ADAAA caselaw holding that allergies are too "temporary" and "sporadic" to substantially limit a major life activity is "directly at odds" with the ADAAA's "express inclusion of episodic impairments as disabilities."  *Id.*  Rather, the court concluded that the plaintiff's "allegations that the allergic reaction caused his swallowing and breathing to become restricted" is sufficient under the ADAAA to constitute a disability because "[s]wallowing and breathing are undoubtedly major life activities."  *Id.*

Many other decisions are to the same effect.  *E.g., J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 671 (4th Cir. 2019) (holding that there was a genuine dispute of material fact as to whether the plaintiff's gluten sensitivity and diet restrictions were a disability); *Mills v. St. Louis Cnty. Gov't*, No. 4:17-cv-0257, 2017 WL 3128916, at *5 (E.D. Mo. July 24, 2017) (concluding that a severe shellfish allergy that could lead to hospitalization constitutes a disability); *Hebert v. CEC Ent., Inc.*, No. 6:16-cv-00385, 2016 WL 5003952, at *3 (W.D. La. July 6, 2016) (concluding that a severe food allergy that could lead to anaphylaxis is a

disability), *report and recommendation adopted*, No. 6:16-cv-00385, 2016 WL 5081009 (W.D. La. Sept. 16, 2016).

In contrast, courts that have denied disability claims based on severe allergies have relied on outdated, pre-ADAAA authority. *See, e.g.*, *Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 740 & n.3 (D. Minn. 2017) (relying on a 1999 case holding that a severe peanut allergy was not a disability), *aff'd*, 910 F.3d 399 (8th Cir. 2018) (noting that there was "insufficient evidence in the record to support the conclusion" that the allergies "limit[ed] [plaintiff's] ability to perform major life activities," because "[s]he has never been hospitalized due to an allergic … reaction, never seen an allergy specialist, and never been prescribed an EpiPen"); *Milton v. Tex. Dep't. of Crim. Just.*, 707 F.3d 570, 573–74 (5th Cir. 2013) (applying pre-ADAAA case law where the alleged conduct occurred prior to the implementation of the ADAAA); *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 487 (M.D. La. 2012) (applying pre-ADAAA case law because the alleged conduct occurred prior to the effective date of the ADAAA).

And that is also true of the case on which United primarily relies—*Wren v. Midwestern State University*, which applied the same reasoning found in the now-discredited, pre-ADAAA cases. No. 7:18-cv-00060-O-BP, 2019 WL 3099408, at *9 (N.D. Tex. June 25, 2019), *report and recommendation adopted*, 2019 WL 3081849 (N.D. Tex. July 15, 2019). In *Wren*, the plaintiff alleged that her allergies required her to carry an EpiPen, take medication, and submit to diet and environmental restrictions, which affected major life activities. *Id.* at *9. The district court concluded that the plaintiff's allergies did not constitute a disability because she did "not allege how her allergies substantially limit [her major life activities]." *Id.* In reaching this conclusion, the district court relied on pre-ADAAA cases and overlooked the obvious fact that "[s]wallowing

19

and breathing are undoubtedly major life activities." *Carter*, 2022 WL 17489167, at *3.[8] United invites this Court to make this same mistake, and to embrace the reasoning rejected in *Carter*.

Here, under the appropriate, post-ADAAA "broad" definition of disability, Plaintiffs Jonas and Rains have adequately pleaded a qualifying disability under the ADA. At the motion-to-dismiss stage, they need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). And, when reviewing a complaint, the court should "draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).

Under this settled rule and the post-ADAAA definition of disability, Plaintiffs' allegations are more than adequate. For instance, Plaintiff Jonas alleges that "[s]he lives with the threat of severe reactions to various allergens, taking allergy medications each day and constantly carrying a rescue inhaler and epi-pen with her in case she comes into contact with an environmental trigger." SAC ¶ 137. Similarly, Mr. Rains alleges that he has a "history of allergic reactions—including

---

[8] The remaining cases United cites (at 10–11) fail to address the substantive question of when allergies constitute a disability, and thus are not persuasive here. For instance, in *Griffin v. American Zurich Insurance Co.*, the Fifth Circuit addressed a plaintiff's alleged disability involving a neck injury, not allergies, and summarily concluded that the plaintiff's "pleadings ... contain *no facts* about how his impairment affects his major life activities." 697 F. App'x 793, 797 (5th Cir. 2017) (emphasis added). Similarly, the opinion in *Together Employees v. Mass. General Brigham Inc.*, did not address any allegations of allergies, but instead addressed allegations about PTSD, pregnancy, angio-edema/leukemia, and severe mental anguish, all of which affected the major life activity of "working." 573 F. Supp. 3d 412 (D. Mass. 2021), *aff'd* 32 F.4th 82 (1st Cir. 2022). In both instances, these cases do not offer any guidance about when allergies that impair breathing and swallowing amount to a disability under the ADA.

anaphylaxis."[9]  *Id.* ¶ 163.  As in *Carter*, these allegations of anaphylaxis and the need for daily care give rise to the reasonable inference that these Plaintiffs' allergies, when active, interfere with their breathing and swallowing, which are "undoubtedly major life activities."  *Carter*, 2022 WL 17489167, at *3.  Accordingly, Plaintiffs adequately allege a qualifying disability under the ADA.

## V.     Plaintiffs' Claims Are Not Time-Barred or Procedurally Deficient.

Finally, United requests dismissal (at 17–18) of several of Plaintiffs' claims based on a technicality that United itself misunderstands.  Specifically, United suggests that several of Plaintiffs' EEOC charges were untimely or suffered from procedural deficiencies.  For instance, United points (at 17–18) to several EEOC forms that list charge dates in 2022 for the Plaintiffs.  These are the "Form 5" EEOC charges that United attached to its Motion.  *See* Def.'s App. (ECF No. 161).  According to United, those forms suggest that: (1) Plaintiffs should not have previously represented to the Court that they filed charges in September 2021; and (2) some of the charges are untimely.  Both arguments are wrong for the same reason—the date on the EEOC Form 5 is not the date that Plaintiffs first charged United with discriminatory and retaliatory conduct.

Preliminarily, it is important to understand the EEOC's complicated filing system.  When using the EEOC's Public Portal to file a charge of discrimination, the agency requires users to go through a multi-step process that includes: (1) submitting an online inquiry; (2) scheduling an interview with an EEOC representative; (3) participating in the interview; (4) allowing the representative to assist in the preparation of the charge; and, after editing, (5) signing the formal

---

[9] This daily threat of an allergic reaction also presents another serious medical risk for Plaintiff Rains, as anaphylaxis is even more dangerous for him considering that he already suffers from hereditary heart disease, heart stents, and a repaired aorta.  SAC ¶ 161.  And, as Plaintiff Rains has already explained to United in his interrogatory responses, his heart disability substantially affects many aspects of his daily life, making walking difficult, and requiring daily attention to his exercise and diet.

"Form 5" charging document that the employer receives. *See* EEOC, *Filing a Charge of Discrimination With the EEOC*, https://www.eeoc.gov/filing-charge-discrimination; *Edelman v. Lynchburg College*, 535 U.S. 106, 115, n.9 (2002) ("The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify."). While Title VII requires charges to be filed within 300 days "after the alleged unlawful employment practice occurred," *Edelman*, 535 U.S. at 112 (quoting 42 U.S.C. § 2000e-5(e)(1)), United's narrow focus on the Form 5 ignores the entire process leading up to those documents.

Indeed, because Title VII does not define the term "charge," the EEOC and courts routinely view the date an individual reaches out to the EEOC to begin the charge process (step 1, above) as the "charge" date, provided the individual sufficiently identifies the alleged discrimination. *See Edelman*, 535 U.S. at 112–13, 115; 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.").[10]

Similarly, the Fifth Circuit has held that an "intake questionnaire" can function as a charge when it identifies the parties and describes the discriminatory act with enough detail that the agency could issue a charge. *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) ("While neither signed nor sworn, the form completed [at the intake interview] informed the EEOC of the identity of the parties and described the discriminatory conduct in enough detail to enable it to issue an official notice of charge to [the employer], thus setting the administrative machinery in motion."); *accord Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).

---

[10] The Supreme Court has specifically noted that *Edelman* "reject[ed] the argument that a charge is not a charge until the filer satisfies Title VII's oath or affirmation requirement." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 404 (2008) (citing *Edelman*, 535 U.S. at 112–13). In other words, the Supreme Court has explicitly rejected United's argument that the date on the formal "Form 5" is the date by which the filing of a "charge" is calculated.

This authority confirms that the subsequent filing of the Form 5 charge is merely a verification of the initial request for the EEOC to act. Accordingly, if the initial inquiry identifies the "parties and describe[s] the alleged discriminatory conduct in enough detail," the timeliness of the charge relates back to the initial inquiry date. *See Price*, 687 F.2d at 78.

Here, each Plaintiff prepared a statement and filed it with the EEOC soon after United's discriminatory actions began: September 2021 for Plaintiffs Sambrano, Kincannon, Hamilton, Jonas, and Castillo; November 2021 for Plaintiff Burk (after he was coerced into taking the vaccine); December 2021 for Plaintiff Rains; and March 2022 for Plaintiff Medlin (when she attempted to return from maternity leave and learned for the first time that United was planning to terminate her). *See* Pls.' App., Exs. 1–7[11] ("App."), filed concurrently. In those filings, Plaintiffs identified United's discriminatory and retaliatory actions, the dates of those actions, and how the actions violated each Plaintiff's rights.[12] Thus, there can be no dispute that each Plaintiff appropriately and timely raised these claims with the EEOC, and the Court should reject United's disingenuous insinuation (at 17–18) that Plaintiffs have misled the Court.[13]

---

[11] As the EEOC's initial inquiry is competed on a webform, Plaintiff Castillo has been unable to locate a screenshot of that initial form. However, as he stated in his Affidavit in Support of Plaintiffs' Motion for a Preliminary Injunction, he submitted his initial complaint to the EEOC on September 20, 2021. Aff. of D. Castillo ¶ 16 (ECF No. 7 at 22). In fact, contrary to United's attempt to muddy the record, the record already includes sworn testimony from several Plaintiffs showing that they filed their EEOC complaints before Plaintiffs filed their Motion for Preliminary Injunction. *See* Aff. of D. Sambrano ¶ 19 (ECF No. 7 at 6); Aff. of G. Kincannon ¶ 15 (ECF No. 7 at 32); Aff. of D. Jonas ¶ 16 (ECF No. 7 at 27); Aff. of K. Hamilton ¶ 19 (ECF No. 7 at 11).

[12] Contrary to United's suggestion (at 17), Plaintiffs have not "conspicuously dropped" allegations about the specific dates of their initial EEOC contact. Rather, the SAC merely updated the allegations to focus on Plaintiffs' receipt of right to sue letters, which was the basis for filing the SAC. It remains that Plaintiffs initiated the EEOC process shortly after United's discriminatory and retaliatory actions, just as Plaintiffs explained at the outset of this litigation. *See, e.g.*, ECF No. 7.

[13] Similarly, United is mistaken when it challenges (at 18–21) the timeliness of the charges filed by Plaintiffs Castillo, Rains, and Medlin. As noted earlier, the EEOC schedules interviews with investigators after an individual files an initial inquiry form. Likely due to the COVID-19

As explained above, Plaintiffs' initial inquiries alone are sufficient to constitute "charges." And the EEOC has confirmed as much, issuing an "Inquiry Number" to each of the named Plaintiffs in September or November 2021 that subsequently became the "Charge Number" on the Form 5, or, in the case of Plaintiff Medlin, an inquiry number in March 2022 that became her charge number in November 2022. *Compare* Def.'s App. 26–30 (Sambrano Form 5), *with* App. 2 (Sambrano initial charge, which includes the same identifying number). As the Fifth Circuit has noted, the EEOC's assignment of a "charge number" on initial receipt of a questionnaire that is continued without interruption indicates that the initial filing was functionally a charge, even if not a formal verified one. *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020) (per curiam).[14]

Of course, had the EEOC determined that any aspect of Plaintiffs' claims was untimely, it would have indicated as much. But it did not do so, as Plaintiffs' charges are timely, and the Court should reject United's argument to the contrary.

## CONCLUSION

Plaintiffs have now suffered under the effects of United's coercion, discrimination, and retaliation for more than one and a half years. The Court should reject United's most recent attempt

---

pandemic, the EEOC's interview process in 2021 was delayed. Thus, although these Plaintiffs had already filed claims with the EEOC, they were still awaiting interviews when they began to request right-to-sue letters. This resulted in Plaintiff Castillo's Form 5's being dated September 19, 2022, Plaintiff Rains's Form 5's being dated November 3, 2022, and Plaintiff Medlin's Form 5's being dated November 3, 2022. However, each of these Plaintiffs had filed claims with the EEOC months earlier. *See* Aff. of D. Castillo ¶ 16 (ECF No. 7 at 22); App. 29, 36.

[14] Separately—and contrary to United's representation in the Motion (at 20)—Plaintiff Medlin's claims are also timely. That is because those claims are not based on just the initial denial of her religious accommodation request for lack of a third-party letter in August of 2021. While that action started United down its unlawful path, the company could have reversed course at any point prior to firing Plaintiff Medlin in March of 2022 when she returned from maternity leave. Her claims are thus timely even if United were correct in its statute of limitations argument, which it is not.

to avoid liability for its actions, which the Fifth Circuit has already concluded irreparably harmed Plaintiffs.  As demonstrated above, United has not identified a single claim in the SAC that should be dismissed.  Instead, United's Motion is simply the next chapter in its harassment of Plaintiffs, and it should be denied.

April 24, 2023                                     Respectfully submitted,

*/s/ Mark R. Paoletta*                             /s/ John C. Sullivan
Mark R. Paoletta*                                  John C. Sullivan
D.C. Bar No. 422746                                Texas Bar No. 24083920
Gene C. Schaerr*                                   David Austin R. Nimocks
D.C. Bar No. 416368                                Texas Bar No. 24002695
Brian J. Field*                                    S|L LAW PLLC
D.C. Bar No. 985577                                610 Uptown Boulevard, Suite 2000
Cristina Martinez Squiers                          Cedar Hill, TX 75104
Texas Bar No. 24093764                             Telephone: (469) 523-1351
Kenneth A. Klukowski                               Facsimile: (469) 613-0891
D.C. Bar No. 1046093                               john.sullivan@the-sl-lawfirm.com
Joshua J. Prince*
D.C. Bar No. 1685532
Annika M. Barkdull*
Utah Bar No. 17176
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com

* Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing has been served via the Court's electronic filing system upon all counsel of record.

*/s/ Mark R. Paoletta*
Mark R. Paoletta
