IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID SAMBRANO, *et al.*, individually, and on behalf of all others similarly situated, | § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 4:21-CV-01074-P |
| UNITED AIRLINES, INC., | | |
| Defendant. | | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL DISMISSAL OF THE SECOND AMENDED COMPLAINT**

Respectfully submitted,

Russell D. Cawyer
Texas State Bar No. 00793482
Taylor J. Winn
Texas State Bar No. 24115960
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: +1.817.878.3562
Facsimile: +1.817.335.2820
Email: russell.cawyer@kellyhart.com
Email: taylor.winn@kellyhart.com

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626-1700
Email: dmunro@jonesday.com

**ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.**

**TABLE OF CONTENTS**

Page

1. The Fifth Circuit's Adverse Employment Action Requirement Is Not Satisfied By A Mere Decision To Take An Action That Never Actually Occurs ................................. 1

2. Plaintiffs Concede That Castillo And Hamilton Have Not Suffered Any Actual Adverse Action, And Their Arguments About Jonas Are Foreclosed By Precedent ........ 3

3. The Accommodations Offered To Castillo, Hamilton, And Jonas Were Reasonable as a Matter of Law ................................................................................ 4

4. Jonas and Rains Do Not Plausibly Allege a Disability Even Under The ADAAA ........... 5

5. The Retaliation Claims Are Incoherent Because Plaintiffs Were Treated Better Rather Than Worse Because They Requested An Accommodation ................................ 6

6. Plaintiffs Mischaracterize The Law Governing The Timeliness Of EEOC Charges ........ 8

7. Relation-Back Does Not Save The Untimely Charges Of Rains, Castillo, And Medlin ................................................................................................................ 10

8. Plaintiffs Have Abandoned Any Stand-Alone "Interactive Process" Claim ................... 10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Antoine v. First Student, Inc.*,
  713 F.3d 824 (5th Cir. 2013) ..................................................................................................4

*Bostock v. Clayton Cnty., Ga.*,
  140 S.Ct. 1731 (2020) .............................................................................................................6

*Box v. Principi*,
  442 F.3d 692 (8th Cir. 2006) ..................................................................................................3

*Breshears v. Oregon Dep't of Transp.*,
  2023 WL 136550 (D. Or. Jan. 9, 2023) ..................................................................................4

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998) ................................................................................................................2

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ..................................................................................................................6

*Crawford v. Metro. Gov't*,
  555 U.S. 271 (2009) ................................................................................................................8

*Daneshpajouh v. Sage Dental Grp. of Fla.*,
  2021 WL 3674655 (S.D. Fla. Aug. 18, 2021) .........................................................................2

*Daywalker v. Univ. of Tex. Med. Branch at Galveston*,
  2022 WL 17818069 (S.D. Tex. Nov. 14, 2022) .....................................................................2

*EEOC v. Vantage Energy Servs., Inc.*,
  954 F.3d 749 (5th Cir. 2020) ..............................................................................................8, 10

*Egelkrout v. Aspirus, Inc.*,
  2022 WL 2833961 (W.D. Wis. July 20, 2022) .......................................................................4

*Fed. Express Corp. v. Holowecki*,
  552 U.S. 389 (2008) .......................................................................................................8, 9, 10

*Henson v. Bell Helicopter Textron, Inc.*,
  128 F. App'x 387 (5th Cir. 2005) ...........................................................................................8

*Lawson v. Excel Contractors, L.L.C.*,
   2022 WL 1793511 (5th Cir. June 2, 2022) ............................................................................5

*Love v. City of Dallas*,
   1997 WL 278126 (N.D. Tex. May 14, 1997) ........................................................................2

*Maclin v. SBC Ameritech*,
   520 F.3d 781 (7th Cir. 2008) ..................................................................................................3

*Madaki v. Am. Airlines, Inc.*,
   2022 WL 227163 (N.D. Tex. Jan. 25, 2022) ..........................................................................8

*McCullouch v. Educ. Servs. Found.*,
   2005 WL 8172211 (S.D. Miss. July 19, 2005) ......................................................................3

*Molina v. McHugh*,
   2013 WL 4012631 (S.D. Tex. Aug. 5, 2013) ........................................................................3

*Munoz v. Seton Healthcare, Inc.*,
   557 F. App'x 314 (5th Cir. 2014) ...........................................................................................2

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ...............................................................................................................8

*Noakes v. Dep't of Homeland Sec.*,
   2022 WL 11435959 (E.D. La. Oct. 18, 2022) .......................................................................2

*Perkins v. Starbucks Corp.*,
   2022 WL 17069145 (S.D. Tex. Nov. 17, 2022) ...............................................................9, 10

*Price v. Sw. Bell Tel. Co.*,
   687 F.2d 74 (5th Cir. 1982) ..................................................................................................10

*Sambrano v. United Airlines, Inc.*,
   2022 WL 486610 (5th Cir. Feb. 17, 2022) ............................................................................7

*South v. Atlas Air, Inc.*,
   2023 WL 3184346 (Fla. Div. Admin. Hrgs. Apr. 24, 2023) ..................................................2

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ...............................................................................................................6

*Welsh v. Fort Bend Indep. Sch. Dist.*,
   941 F.3d 818 (5th Cir. 2019) ..................................................................................................2

*Wren v. Midwestern State Univ.*,
  2019 WL 3099408 (N.D. Tex. June 25, 2019) ................................................................5

**STATUTES**

29 C.F.R. §1630.2(j)(4)(i)..................................................................................................5

42 U.S.C. § 2000e-2(a) .....................................................................................................2

42 U.S.C. § 2000e-3(a) .....................................................................................................6

42 U.S.C. § 12102(1)(A)...................................................................................................5

42 U.S.C. § 12203(a) ........................................................................................................6

# INTRODUCTION

In their Opposition to United's Motion for Partial Dismissal, Plaintiffs insist that all of their claims are justified by the Fifth Circuit's opinion, despite the fact that the panel majority said almost nothing about the underlying merits. Opp. 1, 25. Accordingly, with the exception of a qualified and partial retreat on the interactive-process issue, Plaintiffs continue to cling to all of their arguments, maintaining complex, sweeping, and multi-faceted allegations similar to what they pled in the fall of 2021.

None of Plaintiffs' arguments defeat United's showing that this lawsuit can and should be narrowed and simplified. As discussed in more detail below, Plaintiffs make a slew of erroneous legal assertions, unsupported by authority, on the following issues: (1) the adverse action requirement; (2) how that requirement applies to non-customer-facing employees; (3) the legal test for measuring reasonableness of accommodations; (4) the requirements for alleging disability under the ADA; (5) the standard for retaliation; (6) the timeliness of an EEOC charge; and (7) the relation-back doctrine. The only claims in this case that should proceed are the Title VII reasonable-accommodation claims by the above-the-wing employees.

# ARGUMENT

**1. The Fifth Circuit's Adverse Employment Action Requirement Is Not Satisfied By A Mere Decision To Take An Action That Never Actually Occurs.**

Plaintiffs do not dispute that, under controlling precedent, an unreasonable accommodation claim requires an adverse employment action that rises to the level of an ultimate employment decision. Opp. 11, 13. Instead, Plaintiffs argue that because "United made the decision to terminate Plaintiff Castillo and to put Plaintiffs Hamilton and Jonas on unpaid leave" (Opp. 11), they suffered an adverse employment action even though those "decisions" were never carried out. This argument is contrary to statutory text and has no support in judicial precedent.

Title VII prohibits discriminatory *employment actions*, not theoretical decisions to take such actions that are never actually implemented. *See* 42 U.S.C. § 2000e-2(a) (making it unlawful "to fail or refuse to hire or to discharge . . . or otherwise to discriminate against"). Accordingly, it is clear that "to be actionable, an employment decision must actually be carried out." *Daneshpajouh v. Sage Dental Grp. of Fla.*, 2021 WL 3674655, at *7 (S.D. Fla. Aug. 18, 2021); *see also South v. Atlas Air, Inc.*, 2023 WL 3184346, at *12 (Fla. Div. Admin. Hrgs. Apr. 24, 2023) (holding that, as to airline's potential unpaid leave COVID-19 accommodation, "an employer's mere 'threat' to take adverse employment action is not actionable under Title VII"); *cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) ("unfulfilled threats" can be challenged only under a "hostile work environment claim"—which Plaintiffs here have not alleged).

Although Plaintiffs emphasize that the Fifth Circuit's standard for an adverse employment action requires an "ultimate employment *decision[]*," Opp. 11, that standard *narrows* the set of completed employment actions that are cognizable. Mot. 6. It does not eliminate the statutory requirement that an employment action actually occur. *See Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 320 (5th Cir. 2014) (Title VII . . . requires the Plaintiff to show he "was *subjected to* an adverse employment action) (emphasis added). Tellingly, in the two cases Plaintiffs cite (Opp. 11), the challenged employment actions had in fact been carried out. *See Love v. City of Dallas*, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997) (defendant had "placed [plaintiffs] on leave without pay and later hired them to different positions"); *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (plaintiff "was placed in a growth plan").[1]

---

[1] Contrary to Plaintiffs' suggestion that the Court wait for the result in *Hamilton*, other district courts in this circuit are enforcing the adverse action requirement despite the pending en banc case. *E.g.*, *Daywalker v. Univ. of Tex. Med. Branch at Galveston*, 2022 WL 17818069, at *5 (S.D. Tex. Nov. 14, 2022); *Noakes v. Dep't of Homeland Sec.*, 2022 WL 11435959, at *10 (E.D. La. Oct. 18, 2022).

**2.	Plaintiffs Concede That Castillo And Hamilton Have Not Suffered Any Actual Adverse Action, And Their Arguments About Jonas Are Foreclosed By Precedent.**

As for Castillo and Hamilton, Plaintiffs do not even try to argue that either one suffered any actual adverse employment action. Each of them indisputably remained in their original jobs without a transfer or any impact on their pay, seniority, or any other factor. Mot. 5–7.

As for Jonas, Plaintiffs primarily emphasize that her accommodation entailed "a new job title (from the United Club to an agent on demand)" and "different duties and responsibilities" (a non-"customer-facing role" with a "duty station . . . located away from most other employees"). Opp. 12. But none of that comes close to satisfying the adverse action standard. *See, e.g.*, *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (holding that "change in title fails to give rise to an adverse employment action"); *Maclin v. SBC Ameritech*, 520 F.3d 781, 789 (7th Cir. 2008) (same for "[e]ven a change in title that deprives an employee of prestige"); *McCullouch v. Educ. Servs. Found.*, 2005 WL 8172211, at *2 (S.D. Miss. July 19, 2005) (for "a change in job responsibilities to qualify as an adverse employment action, [it must have] resulted in significantly diminished material responsibilities"). And while Plaintiffs further note that Jonas alleges that the transfer deprived her of potential "bonus money," "the ability to work additional or overtime shifts," and "union protection," Opp. 12, they fail to refute United's point that these allegations are too conclusory and insignificant to satisfy circuit precedent as a matter of law, *see* Mot. 7. Notably, the *only* case they cite to show what "can constitute an adverse employment action" *rejected* an "allegation of lost overtime," and even an "affidavit offered in support," as "impermissibly conclusory." *Molina v. McHugh*, 2013 WL 4012631, at *3 (S.D. Tex. Aug. 5, 2013). If Jonas had any concrete factual basis to plausibly allege material loss of pay or benefits, the SAC, filed years into the case, surely would have included them.

### 3. The Accommodations Offered To Castillo, Hamilton, And Jonas Were Reasonable as a Matter of Law.

Plaintiffs initially contend that "a particular accommodation cannot be reasonable as a matter of law." Opp. 13. But while *Antoine v. First Student, Inc.*, 713 F.3d 824 (5th Cir. 2013), described the reasonableness of an accommodation as "a question of fact," *id.* at 831, it meant only that there were "genuine disputes of material fact regarding the very nature of the purported accommodation in this case," *id.* at 834. *Antoine* did not remotely suggest that the reasonableness of an accommodation must always go to a jury, or at least make it past the pleadings, even where Plaintiffs have alleged nothing that would permit a fact-finder to conclude that the accommodation was legally unreasonable. Nor can Plaintiffs deny that courts have dismissed Title VII COVID-19 claims on this very basis. *See Egelkrout v. Aspirus, Inc.*, 2022 WL 2833961, at *1, *3 (W.D. Wis. July 20, 2022) (dismissing claim where employer "requir[ed] unvaccinated employees, including those working remotely, to submit to bi-weekly testing for the Covid-19 virus"); *Breshears v. Oregon Dep't of Transp.*, 2023 WL 136550, at *4 (D. Or. Jan. 9, 2023) (dismissing claim where plaintiff was required to wear "an N95 mask").

Castillo, Hamilton, and Jonas do not identify any plausible basis for alleging that their masking-and-testing accommodations were legally unreasonable. Between the three of them, they merely object (1) to wearing an N95 mask in circumstances where they do not think it necessary; (2) to eating meals outdoors; and (3) to providing COVID-19 test results on days off. Opp. 14. Yet they ignore the controlling precedent holding that (1) employees are not entitled to their preferred accommodation; and (2) even significant burdens do not suffice to render unreasonable an accommodation that fully eliminates the religious conflict. Mot. 9. Especially given that they *requested* at the preliminary-injunction hearing the accommodations they received, *id.*, their complaint fails to plausibly allege that those accommodations were unreasonable.

### 4. Jonas and Rains Do Not Plausibly Allege a Disability Even Under The ADAAA.

Plaintiffs primarily contend that United "fail[ed] to account for the ADA Amendments Act ('ADAAA')." Opp. 17. But while that 2008 legislation expanded the ADA's "disability" definition in various ways that are immaterial to United's arguments, *see* Opp. 17–18, it did not alter the fundamental aspect of the definition that the SAC fails to plausibly allege. Namely, even under the ADAAA, it is insufficient to simply allege that an employee suffers from an "impairment" without further alleging how that impairment "substantially limits one or more major life activities of such [employee]." 42 U.S.C. § 12102(1)(A); *accord Lawson v. Excel Contractors, L.L.C.*, 2022 WL 1793511, at *5 (5th Cir. June 2, 2022).

As for Jonas, Plaintiffs can only invoke the SAC's allegation that she "lives with the threat of severe reactions to various allergens." Opp. 20 (citing SAC ¶ 137). But that conclusory allegation does not even identify a "major life activity" that is affected, let alone "substantially limited." This is the precise pleading defect that caused Judge O'Connor to dismiss an allergy-based "disability" claim *notwithstanding* the ADAAA's expanded definition, which the opinion expressly notes. *Wren v. Midwestern State Univ.*, 2019 WL 3099408, at *3, *9 (N.D. Tex. June 25, 2019), *report and recommendation* adopted, 2019 WL 3081849 (N.D. Tex. July 15, 2019).

Rains does not do any better. Although he alleges that his "history of allergic reactions" includes "anaphylaxis," Opp. 20–21 (citing SAC ¶ 163), that is still insufficient because he fails to allege – in the SAC itself – "how [his] allergies substantially limit" any major life activity. *Wren*, 2019 WL 3099408, at *9. Rains has not pled anything about the nature of his condition, its frequency, severity or how it "compare[s] to most people in the general population." 29 C.F.R. §1630.2(j)(4)(i). Nor can Rains bolster his claim by invoking his heart condition. Plaintiffs do not even try to refute United's argument that the SAC's conclusory allegations fall far short of the heart-condition allegations that the Fifth Circuit in *Lawson* rejected as *inadequate* under the

ADAAA. Mot. 12. And while Plaintiffs assert that Rains' heart condition exacerbates the danger from an anaphylactic reaction (Opp. 21 n.9), the cited paragraph of the SAC alleges no such thing: instead, it discusses his heart condition without saying anything at all about the interaction with his allergies. SAC ¶ 161.

5. **The Retaliation Claims Are Incoherent Because Plaintiffs Were Treated Better Rather Than Worse Because They Requested An Accommodation.**

Plaintiffs do not dispute that if they had not sought an accommodation, they would have been fired. Opp. 6; SAC ¶¶ 5, 42. Nor do they deny that because they requested an accommodation, they kept their jobs with masking and testing or unpaid leave. SAC ¶¶ 43 n.1, 145. Their arguments that they nevertheless suffered "retaliation" for seeking accommodations are contrary to statutory text, precedent, and common sense.

*First*, Title VII and the ADA prohibit "discriminat[ing] against" an employee "because he has" engaged in protected activity. 42 U.S.C. § 2000e-3(a); *see also id.* § 12203(a). To "discriminate" means "treating that individual *worse* than others who are similarly situated," *Bostock v. Clayton Cnty. Ga.*, 140 S.Ct. 1731, 1740 (2020) (emphasis added), and thus discriminating "because of" protected activity means treating an employee worse than those who did not engage in protected activity, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013). Plaintiffs ignore the statutory text and never explain how treating employees *better* because they requested accommodations is "discrimination" "because of" protected activity.

*Second*, the Supreme Court holds that discrimination in the retaliation context not only requires worse treatment, but worse treatment that rises to the level of "materially adverse" – *i.e.*, "harmful to the point that [it] could well dissuade a reasonable worker" from engaging in the protected activity in the first place. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). An employer's actions cannot meet this definition if they treated employees better than

they would have been treated if they had never requested an accommodation at all. Plaintiffs emphasize that they view the accommodations as "draconian and arbitrary," were purportedly warned about requesting them, or were allegedly later harassed for doing so. Opp. 6. But they *cannot plausibly argue* that *any* of that would have dissuaded a reasonable employee from *requesting* an accommodation, since the alternative (*termination*) was *unquestionably worse*. Unsurprisingly, Plaintiffs do not cite a single case in the history of Title VII or the ADA that deems a retaliation claim cognizable where the employee was treated better because of the allegedly protected activity. Instead, they solely point to the Fifth Circuit's conclusion in this case that the employees on unpaid leave had shown irreparable harm. Opp. 6. But the point of that holding was that Plaintiffs facing unpaid leave might be entitled to an injunction enabling them to keep their pay (*i.e.*, with an alternative accommodation). The Fifth Circuit did not remotely suggest that a reasonable employee might have been dissuaded from seeking an accommodation at all and thus get fired. *Sambrano v. United Airlines, Inc.*, 2022 WL 486610, at *7 (5th Cir. Feb. 17, 2022) (no injunction for terminated employees). Nor is that at all plausible, as none of these Plaintiffs (or anyone else) chose to rescind their accommodation request and get fired instead.

*Third*, none of this is to say, as Plaintiffs suggest (Opp. 5–6), that employers have free rein to treat employees who have requested accommodations harshly or vindictively. If the accommodation is unreasonable, then the employer will be liable for failure-to-accommodate (which Plaintiffs claim here); likewise, if the employees are harassed, the employer may be liable for a hostile work environment (which Plaintiffs do not even claim). A retaliation claim adds nothing in those circumstances. Conversely, where the accommodations offered are reasonable and the work environment non-discriminatory, it makes no sense to treat the accommodations themselves as "retaliatory" simply because they do not go as far as employees would prefer.

Indeed, employees are *not* entitled to their preferred accommodation, just a reasonable one. *See* Mot. 8–9. Plaintiffs' position is irreconcilable with that black-letter law, because whenever an employer adopts an accommodation that is reasonable but not the employee's preference, the employee could just argue that was "retaliation" on the "harsher-than-necessary" theory.[2] Opp. 5.

**6.      Plaintiffs Mischaracterize The Law Governing The Timeliness Of EEOC Charges.**

On the issue of timeliness, Plaintiffs' primary argument is that "the EEOC and courts routinely view the date an individual reaches out to the EEOC to begin the charge process (step 1 [*i.e.*, "(1) submitting an online inquiry" (Opp. 21)]) as the 'charge' date, provided the individual sufficiently identifies the alleged discrimination." Opp. 22.[3]

Not so. The test for whether a document other than an official "charge" can qualify as such comes from *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008). *See EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 754 (5th Cir. 2020). Under *Holowecki*, "a filing is to be deemed a

---

[2] Additionally, Plaintiffs offer no textual justification for construing their accommodation requests as protected oppositional activity under Title VII or the ADA. As Plaintiffs concede, "the Fifth Circuit has not addressed this issue" (Opp. 7), so this Court should apply the Supreme Court's precedent itself. "The term 'oppose,' being left undefined by the statute, carries its ordinary meaning: '[t]o resist or antagonize . . . to contend against; to confront; resist; withstand[.]'" *Crawford v. Metro. Gov't*, 555 U.S. 271, 276 (2009). Here, "Plaintiffs d[id] not challenge the vaccine mandate itself." ECF No. 6 at 1. Nor can Plaintiffs claim their requests for accommodation were "to contend against; to confront; resist; [or] withstand" United's unpaid leave policy because the SAC alleges that United did not announce that accommodation until after the deadline for submitting requests. SAC ¶¶ 17, 75.

[3] Plaintiffs do not dispute that if the relevant date is the date of the Form 5 charges of discrimination, all of Castillo's and Rains' claims are time barred in full. As for Medlin, Plaintiffs say her accommodation claim is timely because United "could have reversed course" prior to her firing. Opp. 24 n.14. But "prior discrete [allegedly] discriminatory acts" such as United's denial of her accommodation request that occur on a single-day and are "easy to identify" start the limitations clock. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *see* Mot. 19. "[T]he 300-day time bar begins on the day that the discriminatory act 'happened;' a party who fails to meet that deadline 'loses the ability to recover for it.'" *Madaki v. Am. Airlines, Inc.*, 2022 WL 227163, at *3 (N.D. Tex. Jan. 25, 2022) (Pittman, J.) (quoting *Morgan*). *See also Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) (denial of reasonable accommodation a "discrete act[], [that did] not qualify under the continuing violation" doctrine).

charge" if it may be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights." 552 U.S. at 402. Though they cite *Holowecki* for a different issue (Opp. 22 n.10), Plaintiffs never argue how their online inquiries satisfy *Holowecki*'s standard. In any event, Plaintiffs cannot meet the *Holowecki* test because their online inquiry forms—unlike the Intake Questionnaires in *Holowecki* and similar cases—do not objectively manifest a request for the EEOC to take remedial action.

Specifically, Plaintiffs' online inquiries did not create "a duty to investigate on the part of the EEOC." *Perkins v. Starbucks Corp.*, 2022 WL 17069145, at *1 (S.D. Tex. Nov. 17, 2022); *Holowecki*, 552 U.S. at 398. *Holowecki* involved an Intake Questionnaire that "refers to a specific EEOC form that [now] asks employees to check one of two boxes in order to distinguish information requests from enforcement requests." *Perkins*, 2022 WL 17069145, at *1. Plaintiffs' online inquiries are even more preliminary steps during which they advised they had ***not*** filed a charge.[4] Indeed, screenshots from Plaintiffs' online inquiries provide an "Approximate Deadline for Filing a Charge." *E.g.*, ECF No. 170, App. 2, 11. As *Perkins* explains, an "online inquiry form does not constitute a charge" unless it contains a "specific statement that can reasonably be construed as a request for the EEOC to take remedial action," and using the form to schedule an EEOC interview is likewise insufficient. 2022 WL 17069145, at *5. Moreover, in *Holowecki*, the Court held that merely describing the wrongful conduct, including that the plaintiffs "had been the victim[] of [ ] discrimination," was insufficient to be "construed as a request for the agency to act" even on an Intake Questionnaire; instead, what let the plaintiff there proceed was her statement

---

[4] One of the FAQs on the Online Portal for such an inquiry states: "Q. If I submit an online inquiry, does that mean I filed a charge of discrimination? A. No. An inquiry is typically your first contact with the EEOC regarding your concerns about potential employment discrimination[.] . . . Submitting an inquiry is the first step to determine whether you want to proceed with filing a formal charge of discrimination." https://publicportal.eeoc.gov/Portal/Login.aspx  (App. 2).

-9-

"*please force Federal Express to end their age discrimination plan.*" 552 U.S. at 405 (emphasis added). Plaintiffs' inquiry forms here lack any comparable request for EEOC action.

**7. Relation-Back Does Not Save The Untimely Charges Of Rains, Castillo, And Medlin.**

Plaintiffs argue that the charges they eventually filed "relate[] back" to their online inquiry forms. Opp. 23 (*citing Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)). That is incorrect. *Price* involved a "technical defect[]" that the charge was "neither signed nor sworn". 687 F.2d at 77–78. "An untimely EEOC charge can relate back to a timely EEOC filing if the earlier filing itself would have been 'sufficient as a charge' but for a 'technical' defect such as being unverified or unsigned." *Perkins*, 2022 WL 17069145, at *4; *see also Vantage*, 954 F.3d at 756 (Supreme Court's *Edelman* decision (cited Opp. 22 n.10) involved technical defects). *Perkins* ruled the "online inquiry form did not constitute a charge to which [Plaintiff's] late-filed charge can relate back." *Id.* at *5. The same is true here.

**8. Plaintiffs Have Abandoned Any Stand-Alone "Interactive Process" Claim**

Although Plaintiffs continue to assert that United's alleged failure to engage in an individualized interactive process is relevant to proving their unreasonable-accommodation claims, they expressly disavow the SAC's allegations that an interactive-process failure is sufficient to prove a violation of Title VII or the ADA. *Compare* Opp. 15, *with* SAC ¶ 7, *and* SAC at p. 46, Prayer for Relief ¶ c. That disavowal eliminates the need for this Court to resolve which side is correct about the viability of such standalone claims. *Compare* Mot. 15–17, *with* Opp. 16.[5]

**CONCLUSION**

United respectfully requests that the Court grant its Motion to partially dismiss the SAC.

---

[5] It also estops Plaintiffs from later arguing at the class-certification stage, as they previously have (ECF No. 101 at 6, ¶ b; ECF No. 134 at 3), that common liability can be established on a class-wide basis based solely on an alleged interactive-process failure.

Respectfully submitted,

*/s/ Russell D. Cawyer*
Russell D. Cawyer
Texas State Bar No. 00793482
Taylor J. Winn
Texas State Bar No. 24115960
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: +1.817.878.3562
Facsimile: +1.817.335.2820
Email: russell.cawyer@kellyhart.com
Email: taylor.winn@kellyhart.com

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626-1700
Email: dmunro@jonesday.com

Jordan M. Matthews
IL Bar No. 6300503
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Email: jmatthews@jonesday.com

Alexander V. Maugeri
NY Bar No. 5062666
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: +1.212.326.3939
Facsimile: +1.212.755.7306
Email: amaugeri@jonesday.com

**ATTORNEYS FOR DEFENDANT UNITED AIRLINES, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served via e-mail to all counsel of record this 30th day of May, 2023:

| | |
|---|---|
| John C. Sullivan<br>Austin Nimocks<br>SL LAW, PLLC<br>610 Uptown Blvd., Ste. 2000<br>Cedar Hill, Texas 75104<br>john.sullivan@the-sl-lawfirm.com<br>austin.nimocks@the-sl-lawfirm.com | Mark R. Paoletta<br>Gene C. Schaerr<br>Brian J. Field<br>Kenneth A. Klukowski<br>SCHAERR JAFFE, LLP<br>1717 K Street NW, Ste. 900<br>Washington, D.C. 20006<br>mpaoletta@schaerr-jaffe.com<br>gschaerr@schaerr-jaffe.com<br>bfield@schaerr-jaffe.com<br>kklukowski@schaerr-jaffe.com |

                                    */s/ Russell D. Cawyer*
                                    Russell D. Cawyer