**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*,

*Plaintiffs,*

v.

UNITED AIRLINES, INC.,

*Defendant.*

Civil Action No.: 4:21-cv-01074-P

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S AMENDED MOTION TO COMPEL

## TABLE OF CONTENTS

INTRODUCTION .......... 1
ARGUMENT .......... 2
I. United Ignores Binding Authority that Prohibits its Proposed Inquisition into Plaintiffs' Beliefs. .......... 2
II. Plaintiffs Properly Asserted the Clergy-Penitent Privilege. .......... 8
III. United's Behavior During Discovery Warrants an Award of Fees to Plaintiffs to Ensure United Discontinues its Abusive Tactics. .......... 12
CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases**

*Bear Creek Bible Church v. EEOC*,
571 F. Supp. 3d 571 (N.D. Tex. 2021) .......... 6

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) .......... 6

*Davis v. Fort Bend Cnty.*,
765 F.3d 480 (5th Cir. 2014) .......... 1, 2, 3, 7, 8

*Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*,
121 F.R.D. 284 (N.D. Tex. 1988) .......... 12

*Heller v. City of Dallas*,
303 F.R.D. 466 (N.D. Tex. 2014) .......... 9

*Johnson v. Ford Motor Co.*,
309 F.R.D. 226 (S.D.W. Va. 2015) .......... 11

*Jolivet v. Compass Grp. USA, Inc.*,
340 F.R.D. 7 (N.D. Tex. 2021) .......... 9, 12

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010) .......... 4

*MC Asset Recovery, LLC v. Commerzbank AG*,
2015 WL 13730252 (N.D. Tex. Feb. 18, 2015) .......... 10

*Moussazadeh v. Tex. Dep't of Crim. Just.*,
703 F.3d 781 (5th Cir. 2012) .......... 2

*Nguyen v. Excel Corp.*,
197 F.3d 200 (5th Cir. 1999) .......... 10

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*,
321 F.R.D. 250 (N.D. Tex. 2017) .......... 10

*Stevens v. Brigham Young University-Idaho*,
2018 WL 2974388 (D. Idaho June 11, 2018) .......... 8

*Tagore v. United States*,
735 F.3d 324 (5th Cir. 2013) .......... 2

*Talley v. Spillar*,
2017 WL 9288622 (W.D. Tex. Mar. 31, 2017) .......... 9

*Torres v. Sugar-Salem School Dist. #322*,
2018 WL 5621961 (D. Idaho Oct. 30, 2018) .......... 8

*U.S. Navy SEALs 1-26 v. Biden*,
578 F. Supp. 3d 822 (N.D. Tex. 2022) .......... 3, 4

*United States v. Lee*,
455 U.S. 252 (1982) .......... 7

*United States v. Mosley*,
No. 4:23-CR-0041-P, 2023 WL 2777473 (N.D. Tex. Apr. 4, 2023) .......... 4

*Vita Nuova v. Azar*,
No. 4:19-cv-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020) .......... 6

**Other Authorities**

Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ. (3d ed.) .......... 9

**Rules**

Fed. R. Civ. P. 26 .......... 12

Fed. R. Evid. 501 .......... 12

## INTRODUCTION

United still acts like it cannot fathom why any employee would be uncomfortable receiving a COVID-19 vaccine. And United *certainly* cannot imagine that anyone would be deterred from doing so because of sincere religious beliefs. Indeed, as United's CEO Scott Kirby explained, United views such people as "all [of a] sudden decid[ing] 'I'm really religious,'" and irrationally "putting [their] job[s] on the line." Sec. Am. Compl. ¶ 49.

But the Court should not countenance United's ignorance about the crisis of faith it forced upon many of its employees. And the Court should reject United's professed disbelief that any employee wanted to have heartfelt and confidential discussions about these issues with clergy. Rather, it is obvious that many people of faith were anxious to have such discussions. United's inability to understand that faith-based reality is not a reason to throw the clergy-penitent privilege out the window.

Yet that is precisely what United proposes here, as United does not dispute that Plaintiffs engaged in privileged communications. United simply asks the Court to hold that any plaintiff who brings a religious discrimination claim under Title VII waives the clergy-penitent privilege, and that every employer may obtain communications the employee had with clergy to probe the employee's sincerity.

That is a striking proposition, and one for which United fails to identify any authority. Rather, the law in this Circuit is clear that United is pursuing a "forbidden" inquiry. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 486 (5th Cir. 2014). And United's inapposite authority, including an EEOC manual and unpublished decisions from district courts in other circuits, does not offer this Court any reason to ignore binding Fifth Circuit authority. United's other arguments about waiver

and the sufficiency of Plaintiffs' privilege log fare no better, as Plaintiffs objected to United's requests and then promptly produced a privilege log further explaining those objections.

Accordingly, the Court should deny United's amended motion to compel. And, because United has engaged in such unreasonable discovery tactics, the Court should award Plaintiffs reasonable fees for the time spent addressing United's initial and amended motion to compel.

## ARGUMENT

### I. United Ignores Binding Authority that Prohibits its Proposed Inquisition into Plaintiffs' Beliefs.

The Fifth Circuit prohibits United's desired inquiry into Plaintiffs' privileged conversations. And United has not presented any basis for overcoming that privilege.

1. The Fifth Circuit is clear on what inquiry, if any, is appropriate into the religious beliefs of a party who brings a Title VII religious discrimination claim: "[J]udicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" *Davis*, 765 F.3d at 486 (quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)). In *Davis*, the Fifth Circuit considered the same question United poses here: Whether an individual's claimed religious practice in fact "was pursuant to her bona fide religious belief." *Id.* at 485. Yet the Fifth Circuit stated that inquiries into those matters "would stray into the realm of religious inquiry, an area into which we *are forbidden to tread.*" *Id.* (quotation marks omitted; emphasis added). That is why "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged" and is usually "accepted on little more than the plaintiff's credible assertions." *Id.* (quotation marks omitted). Rather, "the important inquiry was what the [individual] claimed was important to him." *Id.* at 486 (quoting *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012)). Once it is determined that the belief is important to the individual, *Davis* makes clear that any further inquiry is inappropriate.

That is fatal to United's motion, as United does not even attempt to argue that Plaintiffs' professed beliefs are not "important to [them]." *Id.* Instead, United suggests (at 9) only that it should still be allowed to invade Plaintiffs' privileged conversations to determine if *others*—members of the clergy—disagreed with Plaintiffs during their private conversations. But that inquiry cannot be squared with the Fifth Circuit's decision in *Davis*, which United fails to cite.[1]

In fact, a recent decision from this District confirms that *Davis* forecloses United's motion. In *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022), the Court considered claims from several plaintiffs who "object[ed] to receiving the COVID-19 vaccine based on their religious beliefs." *Id.* at 827. In that case, the plaintiffs objected to receiving the vaccine because of, among other things, its "use of aborted fetal cell lines" and their "belief that modifying one's body is an afront to the Creator." *Id.* at 827–28. Plaintiffs here hold similar beliefs. *See* 2d Am. Compl. ¶¶ 89, 111, 124, 151, 173. Citing *Davis*, the Court held that "Plaintiffs' beliefs about the vaccine are undisputedly sincere, and *it is not the role of this Court to determine their truthfulness or accuracy*." *U.S. Navy SEALs 1-26*, 578 F. Supp. 3d at 828 (citing *Davis*, 765 F.3d at 487) (emphasis added). Thus, *even if* Plaintiffs' communications reflected that clergy members reached different conclusions than Plaintiffs, the "accuracy" of Plaintiffs' religious beliefs are irrelevant. Only their *sincerity* is relevant, which cannot be in serious dispute here.

Remarkably, United simply ignores this authority and suggests (at 9) that it needs to discover these communications to see if Plaintiffs' "positions on vaccines are not supported by the religious teachings of their church and instead are motivated by political, secular or other reasons

[1] United's failure to discuss *Davis* is surprising, considering that it is directly relevant (and contrary) to United's argument. And United cannot plead ignorance, considering Plaintiffs' counsel raised *Davis* during the parties' meet and confer discussions in advance of United's filing its amended motion.

not protected by Title VII." Of course, such a theological examination is not part of this Court's analysis under Title VII. *See U.S. Navy SEALs 1-26*, 578 F. Supp. 3d at 828.

2. Rather than discuss this authority, United relies on three misguided arguments for why Plaintiffs must sacrifice the confidentiality of their discussions with clergy.

*First*, United points (at 9) to an EEOC manual, suggesting that it allows United to obtain Plaintiffs' privileged conversations. Of course, "this Court is bound by the Fifth Circuit," not an EEOC manual. *United States v. Mosley,* No. 4:23-CR-0041-P, 2023 WL 2777473, at *2 (N.D. Tex. Apr. 4, 2023). But even the EEOC manual falls short of authorizing United to invade Plaintiffs' privilege. Rather, that manual states only that, when an employer already has an "objective basis for questioning the religious nature or the sincerity" of an individual's beliefs, "the employer would be justified in seeking additional supporting information." Mot. at 1 (citing EEOC Compliance Manual).

That statement offers United no support. As the cited portion of the EEOC manual discusses only *employer* investigations in response to a reasonable accommodation request, it has no bearing on litigation privileges.[2] Moreover, United does not even attempt to argue that it has any "objective basis for questioning the religious nature or the sincerity" of Plaintiffs' beliefs.[3] United simply believes it is allowed to make a searching inquiry into religious beliefs irrespective

---

[2] Of course, United also already engaged in an investigation of Plaintiffs' religious beliefs during the accommodation process, albeit one filled with offensive and demeaning inquiries into Plaintiffs' beliefs. 2d Am. Compl. ¶¶ 69, 70, 72, 92, 125, 153, 175. And, after that investigation, United concluded that Plaintiffs' beliefs were sufficiently sincere to merit an accommodation. *See id.* ¶¶ 93, 127, 154.

[3] And, because United did not raise this argument in its amended motion, it may not do so now. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived").

of whether it has an "objective basis" for doing so. Its own authority—the EEOC manual—suggests otherwise.

However, even if United had a basis for seeking such "additional supporting information," Plaintiffs have already provided it.[4] For instance, Plaintiffs answered interrogatories and document requests regarding past receipt of vaccines. *See* United App'x at 232–40 (ECF No. 172) (Plaintiffs' responses to Interrogatories 2 & 4). And Plaintiffs provided United with information about conversations discussing vaccines with physicians. *Id.* Plaintiffs further provided United with any documents or articles on which they relied to formulate their opinion about receiving the COVID-19 vaccine. *See* Pls.' App'x at App.26, filed concurrently (Plaintiffs' supplemental response to RFP 38). Moreover, during the accommodation process, Plaintiffs provided United with detailed explanations about their religious basis for objecting to receiving the COVID-19 vaccine. *See* 2d Am. Compl. ¶¶ 69, 70, 72, 92, 125, 153, 175.

In fact, Plaintiffs have gone even further and agreed to provide United the names of the clergy members with whom they spoke, which addresses the precise concern United has raised. During the meet-and-confer process, United's counsel stated that they needed to receive Plaintiffs' privileged communications to see if Plaintiffs were speaking with "real clergy," or just an "Internet pastor" who was fighting COVID-19 vaccines.[5] Of course, Plaintiffs should not need to respond to this condescending question. Yet, in the interest of compromise, Plaintiffs nonetheless agreed to provide this additional information to underscore that they were engaged in genuine

[4] Plaintiffs provided this information voluntarily in the interest of avoiding additional discovery disputes. But Plaintiffs maintain that these topics are still not appropriate lines of inquiry considering that courts must approach sincerity of religious beliefs with a "light touch."

[5] This question also underscores the improper request for *all* such privileged communications. Even were United permitted to invade Plaintiffs' privilege (it isn't), United *certainly* would have no basis for invading the privilege to obtain communications from 2022 and 2023, which post-date United's vaccine mandate.

correspondence with individuals who even United would agree are "real" clergy members. Thus, United's reliance on the EEOC manual is entirely misplaced.

*Second*, in addition to that misguided reliance, United also misunderstands the issues that are relevant here. Throughout their motion, United argues (at 1–2, 8–9) that they must be able to invade Plaintiffs' privileged conversations because the sincerity of Plaintiffs' religious beliefs is central to whether a class can be certified. In United's estimation, they will be able to defeat certification by arguing that religious beliefs require an individualized assessment, which cannot be accomplished through a class action. And, United further speculates, Plaintiffs' conversations with clergy are relevant to that argument. However, United is mistaken, as courts in this Circuit have rejected the same argument.

For instance, in *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021), the Court "disagree[d] with Defendants that there is a need for individualized assessment of potential members' claims here that precludes certification." *Id.* 606. In that case, this Court rejected the defendants' argument because the "sincerity inquiry under RFRA is generally not an exacting one." *Id.* (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014)). And, considering the similarity between the sincerity standards under RFRA and Title VII, that conclusion is equally applicable here. *See Tagore*, 735 F.3d at 328 (applying a joint sincerity analysis to the plaintiff's Title VII and RFRA claims).

Another judge in this District reached a similar conclusion in *Vita Nuova v. Azar*, No. 4:19-cv-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020), holding that "defining the class based on the religious belief of the class members does not render the class unable to be ascertained." *Id.* at *4. Rather, "[s]o long as … the proposed class [members] contend that compliance with the [challenged rule] violates their sincerely held religious belief, the Court must accept those

contentions." *Id.* (citing *United States v. Lee*, 455 U.S. 252, 257 (1982)). Thus, United has no basis for inquiring into Plaintiffs' beliefs beyond accepting their contention that complying with United's mandate would violate their sincerely held religious beliefs.

Accordingly, United significantly overstates the centrality of assessing Plaintiffs' sincerity in the case. And, because it is not the "essential element" that United claims (at 1), United fails to demonstrate that it has any need to invade Plaintiffs' privilege.[6]

*Third*, United relies on an implausible extension of the "shield and sword doctrine." As United understands that principle, a party may not "put[] information protected by privilege in issue" and also seek to protect that privileged information. Mot. at 7. In that circumstance, United contends, the privilege is waived. *See id.* However, United fails to identify a single case from the Fifth Circuit reaching that conclusion in the context of the clergy-penitent privilege. *See id.* That is unsurprising, as United's position would mean that every plaintiff who brings a religious discrimination claim under Title VII necessarily waives the clergy-penitent privilege. If that were the law in this Circuit, *Davis* would not have discussed "a light touch, or judicial shyness" when considering inquiries "into the sincerity of a person's religious belief[.]" *Davis*, 765 F.3d at 486. Instead, *Davis* would have given the green light to such inquiries, noting that a Title VII plaintiff has waived these matters by "putting religious beliefs in issue," as United puts it. Mot. at 8.

That is no doubt why United could not locate a single case from within the Fifth Circuit applying the "shield and sword" principle to the clergy-penitent privilege. Rather, the few cases United cites (at 7–8) addressed the attorney-client privilege, work product doctrine, and the psychotherapist-patient privilege, which are entirely different privileges, as they do not invade

---

[6] Of course, this assumes United has not already waived this issue by "granting" religious accommodations to Plaintiffs, which included as assessment of sincerity. *See supra*, note 2.

deeply held religious beliefs, which are protected by the First Amendment and which, unsurprisingly, the Fifth Circuit has identified as uniquely protected against intrusive discovery. *See Davis*, 765 F.3d at 486.

United's reliance (at 8) on two unpublished, out-of-circuit district court decisions does not change this analysis, as those two cases are easily distinguishable. For example, in *Stevens v. Brigham Young University-Idaho*, the claims involved an abusive relationship between a student and professor. 2018 WL 2974388, at *1 (D. Idaho June 11, 2018). And the court only found a waiver of the clergy privilege for communications that *were shared with third parties* and may not have even involved clergy. *Id.* at *11. The other case, *Torres v. Sugar-Salem School District #322*, is equally inapposite. 2018 WL 5621961 (D. Idaho Oct. 30, 2018). *Torres* also addressed an abusive relationship, and the court found no implied waiver of the clergy privilege. *Id.* at *3. Neither of these cases involved Title VII (or even RFRA) claims of religious sincerity or the "light touch" or "judicial shyness" that accompanies those claims. *Davis*, 765 F.3d at 486. Thus, United's suggestion (at 8) that the "logic" of these cases "aligns with the general Fifth Circuit 'sword and shield' principles[]" finds no support in Fifth Circuit authority and, moreover, directly conflicts with *Davis*.

For the foregoing reasons, United fails to identify any authority to support its argument that Plaintiffs must sacrifice their confidential and privileged communications with clergy. The law in this Circuit is clear that United's proposed inquiry is forbidden.

## II. Plaintiffs Properly Asserted the Clergy-Penitent Privilege.

The Court should also deny United's motion because Plaintiffs timely asserted the clergy-penitent privilege, and they sufficiently addressed it in their privilege log.

1. Contrary to United's suggestion (at 4–5), Plaintiffs have not waived the privilege by failing to raise it in a timely manner. Plaintiffs responded to the two RFPs at issue (RFPs 7 & 22) by stating that they would produce non-privileged documents responsive to both requests. *See* United App'x at 206, 214 (ECF No. 172). In other words, Plaintiffs objected to the requests to the extent they sought privileged information. And, just days later, Plaintiffs specifically put United on notice that they would assert the clergy-penitent privilege over communications with clergy. *See, e.g.*, United App'x at 235–36 (ECF No. 172) (Plaintiffs' response to Interrogatory 3). Then, shortly after issuing their document production, Plaintiffs sent United a privilege log, indicating that they were withholding 15 documents on the basis of the clergy privilege. *See* United App'x (ECF No. 176). And providing a privilege log is the quintessential way to assert specific privileges. *See* Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.); *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 20 (N.D. Tex. 2021) (explaining that the assertion of specific privileges "is often accomplished through a privilege log."); *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014) ("[A] party may properly raise and preserve an objection to production of documents in response to a specific document request or interrogatory by objecting 'to the extent' that the requests seeks privileged materials or work product, so long as the responding party also provides the information required by Rule 26(b)(5)(A)."). Thus, United's argument that Plaintiffs waived this privilege by not specifically listing it in their initial objections to the RFPs is dead wrong.

Additionally, none of the cases United cites supports a waiver argument. One case involves the complete failure to assert a timely objection. *See Talley v. Spillar*, 2017 WL 9288622, at *3 (W.D. Tex. Mar. 31, 2017) (discussing the withholding party's failure to assert any objections until months later and "for the first time in [a] response brief."). Another case concerns objections to

discovery requests in general and has no meaningful discussion about privilege. *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 300 (N.D. Tex. 2017). And another case deals with a party's refusal to produce discovery responses following a court order. *See MC Asset Recovery, LLC v. Commerzbank AG*, 2015 WL 13730252, at *1 (N.D. Tex. Feb. 18, 2015). Finally, the Fifth Circuit case United relies on, *Nguyen v. Excel Corporation*, 197 F.3d 200, 206–07 (5th Cir. 1999), did not even involve written discovery. Rather, the case concerned waiver due to information disclosed in response to questions at a deposition. *Id.* at 207.

Simply put, United's argument ignores Plaintiffs' privilege objections and privilege log, and it relies on irrelevant cases.

2. Additionally, United's challenge to the sufficiency of Plaintiffs' privilege log is misguided. United first implies (at 6) that Plaintiffs failed to provide a timely privilege log. But Plaintiffs told United they would produce a privilege log within 14 days of their initial production, and that is exactly what Plaintiffs did.[7] That is the same timeline United used when it produced its privilege log, confirming that there is nothing untimely about Plaintiffs' privilege log.

United also claims (at 6) that Plaintiffs' privilege log is inadequate because it does not include the subject line of the communication, "any indication of the contents of the purportedly privileged documents," or "the name or title of the individual to whom the communications were made." These arguments are misguided for several reasons.

[7] United's suggestion (at 3) that Plaintiffs identified this privilege on their privilege only because of United's motion to compel is false. Plaintiffs informed United that they would produce a privilege log within 14 days of their document production, which is precisely what they did. And this is the same schedule United adopted for its privilege logs. United's frivolous motion to compel had nothing to do with motivating Plaintiffs to assert a privilege over their private communications with clergy.

*First*, United fails to inform the Court that Plaintiffs explained their reasoning for omitting certain information from the log, stating that the log "does not include the subject line of the communication or the specific name of the clergy recipient, as divulging that information would reveal privileged information." ECF No. 176 at 4. United also fails to acknowledge that the "Email To" column of the log indicates that the recipient of each communication is "Clergy." Thus, contrary to United's suggestion, the log conveys the "title of the individual to whom the communications were made."

*Second*, United ignores the context of this privilege log. As United's motion acknowledges, the log identifies documents responsive to RFPs 7 and 22, which seek, respectively, "communications with any religious or spiritual advisors regarding vaccines or immunizations," and communications with "religious or spiritual leaders about the subject of United's vaccine policy, the COVID-19 vaccine, [] requests for accommodation, [] placement on unpaid leave, or this Lawsuit itself." United therefore already knows that the log entries relate to either vaccines in general or United's vaccine policy and the repercussions Plaintiffs suffered for not taking the COVID-19 vaccine. In other words, the contents of the privileged documents are not a mystery to United. Unlike most privilege logs, which describe documents responsive to dozens, if not hundreds, of RFPs, this log responded to just two closely related requests on a common subject.

*Third*, while United demands more information, it ignores that "the withholding party must not reveal too much detail for fear that the privileged information itself may seep into the log." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 233 (S.D.W. Va. 2015). Indeed, Federal Rule of Civil Procedure 26 states that a withholding party should describe the nature of the documents in a manner that does not "reveal[] information itself privileged or protected." Fed. R. Civ. P.

26(b)(5)(A)(ii); *see also Jolivet*, 340 F.R.D. at 20 (citing Rule 26(b)(5)(A)(ii)). That is precisely why Plaintiffs explained that they withheld certain descriptions from the privilege log.

Nevertheless, the information Plaintiffs provided was sufficient. To assess the sufficiency of descriptions in a privilege log, a court must first look at the nature of the privilege asserted. Here, Plaintiffs assert the clergy privilege, which is governed by state law. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). In this case, that is Texas law. And, in Texas, communications with clergy are broadly protected. Texas Rule of Evidence 505 states: "A communicant has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication by the communicant to a clergy member in the clergy member's professional capacity as spiritual adviser." Put differently, the rule applies whenever someone confidentially communicates with a clergy member in that member's professional capacity.

Plaintiffs have provided all the necessary information to assert this privilege. The log notes that all the documents are emails, which Plaintiff sent the email, who received the email (*i.e.*, whether the communication was confidential), the date the Plaintiff sent the email, and that the email was sent to a clergy member. Further, as noted above, the nature of the document is evident because the log responds to just two RFPs about clergy communications regarding vaccines and United's vaccine mandate. This information is certainly sufficient for United and the Court to assess the privilege. And, because revealing more information would compromise the privilege, Plaintiffs need not provide any more detail.

## III. United's Behavior During Discovery Warrants an Award of Fees to Plaintiffs.

Finally, United's unreasonable conduct on this issue warrants an award of fees to Plaintiffs. As explained in *Dondi Properties Corp. v. Commerce Savings and Loan Association*, 121 F.R.D. 284 (N.D. Tex. 1988), "[a]busive litigation tactics" improperly consume "valuable judicial and

attorney time." *Id.* at 286. That is why the Court adopted several "standards of practice to be observed by attorneys" in this District. *Id.* at 287. Included in that list are the duties of "courtesy and cooperation," "candor," and the avoidance of discovery being used as a means of "harassing" an opposing party. *Id.* at 287–88. Unfortunately, United's amended motion to compel, like its original motion to compel, fails to abide by these standards.

As to the initial motion to compel, it failed each of the standards noted above. After United sent Plaintiffs a discovery letter setting forth general objections to Plaintiffs' responses, Plaintiffs responded to those generalized concerns on May 1, 2023. *See* United App'x at 280–85 (ECF No. 172). Over the following two weeks, United did not confer further with Plaintiffs about any specific objections or specific discovery requests, or even to inform Plaintiffs that United viewed the parties at an impasse. Rather, United filed a motion to compel on May 15, suggesting that the parties had conferred about the motion. *See* ECF No. 171. As Plaintiffs quickly informed the Court, that was incorrect—the Parties had not even discussed all the items United raised in its motion to compel. *See* ECF No. 173. This raises serious questions about United's adherence to its duty of courtesy and cooperation.

But United's actions also raise questions about United's adherence to its duty of candor. As already noted, United incorrectly stated that the Parties had reached an impasse over the issues raised in the motion to compel. *See* ECF No. 173. However, other aspects of United's initial motion were also inaccurate. For instance, United provided a long list of document requests and interrogatories for which United suggested an order was needed to compel Plaintiffs to respond. *See* ECF No. 171. However, United failed to inform the Court that Plaintiffs had already

responded to *many* of those requests or agreed that they would respond after completing a search.[8] United's apparent desire to hide this fact is made manifest by its failure to include Plaintiffs' May 5 supplemental discovery responses. *See* Pls.' App'x, filed concurrently. In those responses, Plaintiffs provided United with documents responsive to many of the requests that United suggested a court order was required, and those responses identified other requests where Plaintiffs agreed to conduct searches and produce responsive records. Considering that United attached all other requests and correspondence as exhibits to its motion to compel, the failure to include these supplemental responses strongly suggests an intent to present the Court with only half the story. With the full story presented, it becomes clear that Plaintiffs were working to respond to United's excessive and burdensome discovery requests.[9] But United apparently wanted to give the Court

[8] For example, United stated that an order was necessary to compel Plaintiffs to respond to RFP 4, *see* ECF No. 171 at 7, but Plaintiffs had already stated in their initial responses that they "will produce responsive, non-privileged documents" for that request, United App'x at 205 (ECF No. 170). United also stated that an order was necessary to compel Plaintiffs to respond to RFP 27, *see* ECF No. 171 at 7, but Plaintiffs had stated in their initial responses that they "will produce responsive, non-privileged documents" for that request, United App'x at 217 (ECF No. 170). United also stated an order was necessary to compel Plaintiffs to respond to RFP 1, *see* ECF No. 171 at 11, but Plaintiff had already stated that they would conduct searches for responsive records, United App'x at 202 (ECF No. 170). United further stated that an order was necessary to compel Plaintiffs to respond to RFP 7, *see* ECF No. 171 at 11, but Plaintiffs had already begun providing documents responsive to that request, United App'x at 206 (ECF No. 170). And the list goes on.

[9] Indeed, United served discovery requests on Plaintiffs when United was proposing that the parties engage in full merits discovery, rather than first proceeding with narrower class discovery. That is why United propounded such broad requests as RFP 1, which demands "all documents you contend show that United intentionally discriminated against you or retaliated against you." Once the parties agreed to proceed first with narrower class discovery, United did not update its discovery requests to seek only documents relevant to class certification. Rather, it became clear that United believes class discovery to include anything related to the merits. Now, after months of discovery, United has indicated that it doesn't believe it will be possible to complete discovery in the time provided. But that is only a function of United's impermissibly broad approach to discovery, which seeks to harass Plaintiffs and prevent the parties from proceeding to class-certification briefing. United initially sought just "sixty days" for "discovery limited to class certification," ECF No. 144 at 9, then changed that request to 120 days, ECF No. 158 at 4, only to change its mind again days later during the parties' status conference with this Court, where United suggested it would need 150 days. It is thus clear that United is using discovery to draw out this

the misimpression that Plaintiffs were failing to respond to United's discovery requests. Because of United's motion, Plaintiffs' counsel were required to divert their attention away from other discovery tasks to address United's improper motion to compel.

United's amended motion fares no better. In that motion, United unreasonably requests records that are squarely protected by binding Fifth Circuit authority. Despite that clear authority, which United failed to cite, United filed an amended motion to compel. The only conceivable reason for doing so is to harass Plaintiffs. Indeed, United filed its amended motion even after Plaintiffs agreed to provide United with additional information about the clergy members to address United's apparent concerns about whether Plaintiffs were conferring with "real clergy." Yet United's persistence has required Plaintiffs' counsel to divert numerous hours away from completing discovery tasks.

Because United's actions here are unreasonable and lack any justification, the Court should award Plaintiffs attorneys' fees for the time spent responding to United's motions.

## CONCLUSION

As the record in this case makes clear, United cannot accept the notion that anyone might disagree with its demand that all employees receive a COVID-19 vaccine. And the idea that there may be a religious basis for such an objection apparently offends United to its core. That is why United continues its scorched-earth approach to class discovery, demanding to see everything Plaintiffs said about the COVID-19 vaccines to their clergy, despite the Fifth Circuit's confirming that a plaintiff need only provide a "credible assertion" of the belief at issue. Plaintiffs have provided United and this Court with far more than just a "credible assertion," and the Court should

---

case and delay Plaintiffs' ability to receive a decision on certification. Had United abided by its initial representation that it would seek only "discovery limited to class certification," discovery would be complete, and the parties would already be briefing certification.

deny United's motion and direct United to discontinue its attempt to invade the deeply and sincerely held religious beliefs of Plaintiffs. And, because the law is so clear that United's amended motion must be denied, Plaintiffs do not believe a hearing is necessary on the motion. Rather, the Court should deny the motion and allow the parties to return their attention to discovery.

June 12, 2023

Respectfully submitted,

*/s/ Mark R. Paoletta*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Brian J. Field*
D.C. Bar No. 985577
Cristina Martinez Squiers
Texas Bar No. 24093764
Kenneth A. Klukowski
D.C. Bar No. 1046093
Joshua J. Prince*
D.C. Bar No. 1685532
Annika M. Barkdull*
Utah Bar No. 17176
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com

* Admitted *pro hac vice*

/s/ John C. Sullivan
John C. Sullivan
Texas Bar No. 24083920
David Austin R. Nimocks
Texas Bar No. 24002695
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been served via the Court's electronic filing system upon all counsel of record.

*/s/ Brian J. Field*
Brian J. Field