IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID SAMBRANO, et al., individually, and on behalf of all others similarly situated, | § § § § § § § § § § § § | Civil Action No.<br><br>4:21-CV-01074-P-BJ |
| Plaintiffs, | | |
| v. | | |
| UNITED AIRLINES, INC., | | |
| Defendant. | | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S AMENDED MOTION TO COMPEL**

I.      **INTRODUCTION**

This is a discovery dispute in a Title VII employment discrimination and retaliation case. Plaintiffs bring claims for religious discrimination and failure to provide religious accommodation under Title VII. Those claims put the issue of whether Plaintiffs have sincere and bona fide religious beliefs squarely at issue. Indeed, "[t]o establish a prima facie case of religious discrimination under Title VII, [each] plaintiff must establish that he had a *bona fide* religious belief". *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). Plaintiffs feign incredulity at the possibility that not all of over 1,000 employees in the proposed class who requested religious or medical exemption from United's vaccine requirement will be able to establish a bona fide, sincerely held religious belief (or disability). But there are reported examples of individuals who lacked a sincerely held religious belief that warranted exemption from an employer's COVID-19 vaccine requirement and instead purchased vaccine exemption packets from online preachers, doctors and other sources. *E.g., Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-01585 (LJL), 2023 WL 3495091, *5 (S.D.N.Y. May 17, 2023) (ordering plaintiff to produce the vaccine exemption paperwork she purchased for $475 from an alleged founder of the Temple of Healing Spirit). Indeed, Judge Pittman observed earlier in the case that because "it's pretty easy to get ordained as a minister in anything nowadays", that someone might obtain an attestation that "he just doesn't believe in vaccines, that's his sincere belief." ECF 172 at 171.

Despite all of this, Plaintiffs cite almost no discovery cases to justify their arguments, relying instead on summary judgment cases, preliminary injunction cases and cases under federal laws other than Title VII. Applying well-settled principles of discovery to this dispute shows (1) that Plaintiffs waived any privilege objection to the production of communications with their religious or spiritual advisors about vaccines, immunizations, United's vaccine policy, the

COVID-19 vaccine, their requests for accommodation, placement on unpaid leave or the lawsuit ("Covered Communications") in at least three ways, and (2) that discovery on this issue is relevant, namely, reasonably calculated to lead to the discovery of admissible evidence.[1] United seeks the discovery underlying this motion on an essential element of Plaintiffs' religious discrimination claim for two legally permissible reasons—either to reveal the lack of *sincerity* of Plaintiffs' belief or reveal that Plaintiffs' views opposing the COVID-19 vaccine are not "religious", namely, that they arise from "social, political . . . personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine)".[2] *See also Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (explaining that a "request for an accommodation must be sincerely based on a religious belief and *not some other motivation*" (emphasis added)). Discovery related to this line drawing becomes especially important in a case involving COVID-19 vaccines where many Americans objected based on perceived concerns about safety of these vaccines, or based on policy concerns about whether and when governments or private employers should mandate them.

II. **PLAINTIFFS WAIVED ANY CLERGY-PENITENT PRIVILEGE**

    A. *Failure to Timely Assert the Privilege*

Plaintiffs argue that they timely asserted the clergy-penitent privilege in their initial discovery objections when they stated that, subject to and without waiving their objections (which included no specific privilege objection), "they would produce non-privileged documents." Resp. Brf. at 9. Objections to discovery must be made with specificity and the responding party has an

---

[1] Plaintiffs' Response make no effort to support or defend the specific, timely objections they made to Requests for Production 7 and 22 (*i.e.,* that the requests were overbroad, unduly burdensome or premature prior to class certification). Thus, they are waived.

[2] *See* ECF 175 at 9 (Mot. to Compel) (seeking "discovery of communications that might tend to *undermine any claim of sincerity*, *or that may otherwise show* their *positions on vaccines* are *not supported by the religious teachings* of their church and instead are motivated by *political, secular or other reasons* not protected by Title VII") (emphasis added).

obligation to explain and support its objections. *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 578 (N.D. Tex. 2018) (Horan, J.) (stating that a party responding to a request for production must "state with specificity the grounds for objecting to the request, including the reasons."). Objections to requests for production not timely stated within the time to answer discovery are waived absent a showing of good cause. *Id.* at 582 (stating that waiver extends to any grounds not stated in a timely objection)*; In re U.S.*, 864 F.2d 1153, 1156 (5th Cir. 1989) (failure to timely lodge objections results in waiver under Rule 34). Here, it is undisputed that within the agreed time period for Plaintiffs to serve objections and responses to United's Requests for Production, Plaintiffs did not make a timely, specific objection invoking clergy-penitent privilege. *See* ECF 172 App. 206 (making objections to RFP 7 and 22 based on overbreadth, premature and unduly burdensome but not privilege). Stating that a party will produce responsive, non-privileged documents does not equal an assertion of privilege.

Plaintiffs also claim they timely asserted the clergy-penitent privilege when they served a privilege log on May 30, 2023, stating that they withheld certain documents, including communications just before this lawsuit was filed in 2021, due to clergy-penitent privilege. Resp. Brf. at 9-10. First, while a privilege log might be an appropriate way to *support* a privilege objection, it is not the proper way to *assert* the privilege. Second, the privilege log was not served until 42 days after Plaintiffs' responses were due (and not within the time period under Rule 34 or agreement of the parties). Thus, any such assertion was not timely and thus was waived absent a showing of good cause that Plaintiffs have not made or requested. Finally, Plaintiffs' untimely privilege log, which lacked the email subject lines, any indication about the document's contents, or its recipients, lacked sufficient information to support a claim of privilege and to enable United to test its applicability, which independently results in waiver. *See* ECF 175 at 9-10; *see. EEOC*

*v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to "test[ ] the merits of" the privilege claim); *United States v. Dube*, 820 F.2d 886, 889 (7th Cir. 1987) (clergy-penitent privilege inapplicable where plaintiff was "not a penitent seeking spiritual relief from his sins, [buy rather] a citizen seeking relief from his obligation to pay taxes").

    **B.**    *Putting their Religious Beliefs in Issue with Respect to the Claims at Issue*

Plaintiffs also put their Covered Communications with their religious and spiritual advisors into question by bringing this religious discrimination case. A party may not use an assertion of a privilege as both a sword and a shield. This is well-settled in the Fifth Circuit and has been applied in a number of privilege contexts. *See, e.g.*, ECF 175 at 11–12 (citing cases). Plaintiffs are critical that United could cite no Fifth Circuit cases applying this doctrine in the context of the clergy-penitent privilege. *See* Resp. Brf. at 7. However, Plaintiffs also cited no Fifth Circuit cases holding that the sword and shield waiver doctrine was inapplicable to the clergy-penitent privilege.

As United briefed, the specific issue has never been addressed in the Fifth Circuit. It has, however, been applied by the Fifth Circuit in the context of waiver of other important privileges such as the attorney-client, attorney work product and psychotherapist-patient privileges. *See* ECF 175 at 11–14 (and cases cited therein). And United provided authority from other circuits applying the waiver doctrine in the clergy-penitent privilege context. ECF 175 at 12. Plaintiff provided no authority or justification to reject the applicability of the sword and shield waiver doctrine in this context.

There is no reason why this waiver doctrine would not apply in the context of the clergy-penitent privilege just as it does with other important privileges (e.g., attorney-client, attorney work product and psychotherapist-patient privileges). Plaintiffs waived the clergy-penitent privilege by

failing to timely assert it and by putting their religious beliefs about vaccines and COVID-19, at issue by asserting the Title VII religious discrimination claim that depend on their religious sincerity.

### III. NO BINDING FIFTH CIRCUIT AUTHORITY PROHIBITS INQUIRY INTO PLAINTIFFS' RELIGIOUS BELIEFS THAT ARE AN ELEMENT OF THEIR CLAIMS

Plaintiffs inaccurately argue that *Davis v. Fort Bend County*, 765 F.3d 480 (5th Cir. 2014) is binding authority that prohibits United's inquiry into the Plaintiffs' religious beliefs. Resp. Brf. at 2–3. However, *Davis*, like most the cases cited by Plaintiffs, is not a discovery case. None of the cases cited by Plaintiffs adopt a special discovery limitation for religious discrimination cases.

*Davis* is a summary judgment case where the Fifth Circuit reversed the district court for applying the wrong legal standard in granting a motion for summary judgment and holding no genuine issue of material fact existed about the sincerity of the plaintiff's religious beliefs. *See* 765 F.3d 480 (5th Cir. 2014). The Fifth Circuit criticized the district court for not taking the plaintiff's summary judgment evidence as to the sincerity of her religious belief as true. *Davis* specifically noted that its limited inquiry was in the context of a summary judgment and that the court must refrain from making credibility determinations or weighing the evidence. *Id.* at 487; *see also id.* at 486 ("[T]he issue here is whether there exists a genuine dispute of material fact whether [Plaintiff] sincerely felt that was religious compelled to attend and participate in a special service at church . . . ."). As the Fifth Circuit took care to note, a plaintiff must show that she has a bona fide religious belief and that "the sincerity of a person's religious belief is a question of fact unique to each case." *Davis*, 765 F.3d at 485 (stating, "This is doubly true regarding sincerity"). *See also Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) ("The *sincerity* of a plaintiff's belief in a *particular religious practice* is an *essential part* of the plaintiff's prima facie case under

[ ] Title VII." (emphasis added)); *contra* Resp. Brf. at 6 (arguing sincerity "is not the 'essential element' that United claims"). Thus, this issue, unique to each Plaintiff's Title VII claim, is relevant to class certification discovery, *i.e.*, whether for commonality, individualized issues predominate (*i.e.*, FED. R. CIV. P. 23(b)(3)).

Plaintiffs concede in their Response that "their *sincerity* is relevant" but claim it "cannot be in serious dispute here". Resp. Brf. at 3. It is not for Plaintiffs to decide what is in "serious" dispute and block discovery on that basis. United may obtain information reasonably calculated to lead to the discovery of admissible evidence and then the court can adjudicate the issues on a complete record. That means United can obtain information (1) about Plaintiffs' sincerity (or lack thereof) and (2) about whether Plaintiffs' claims arise from *religious* views or from other types of objections to the COVID-19 vaccine (which are not protected, even if sincere). *Davis* confirms that precisely these two inquiries are entirely inbounds, explaining:

> "[A] court's task is to decide whether the individual's beliefs are, in his own scheme of things, religious. In this regard, a belief is 'religious' if it is '[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by God.'" *Davis*, 765 F.3d at 485 (internal citations and marks omitted).

On the other hand—centrality—"whether the belief is central to the religion" is "not open to question." *Id.* Also, while "centrality" is not itself a proper issue for the Court to resolve, *evidence related to centrality* can inform sincerity or whether something is a religious versus a nonreligious belief. Specifically, "[a]lthough sincerity rather than orthodoxy is the touchstone, a [party] still is entitled to give some consideration to an organization's tenets. For the more a person's professed beliefs differ from the orthodox beliefs of his faith, the less likely they are to be sincerely held." *Haight v. Thompson*, 763 F.3d 554, 567 (6th Cir. 2014) (Sutton, J.) (quoting *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) (Easterbrook, J.)). Because this evidence can bear on legitimate areas relevant to the claims asserted, discovery must be allowed.

And finally, the "light judicial touch" the Fifth Circuit referenced in *Davis* and *Tagore* was directed at the *Court's scrutiny* of the plaintiff's evidence of her bona fides and sincerity of religious beliefs <u>at summary judgment</u>, where in each case the district court second guessed and resolved disputed issues of material fact against the non-movant. The Fifth Circuit directs caution to courts when court's evaluate evidence at summary judgment, but these cases impose no limitation on the scope of discovery in a religious discrimination case. And, the discovery sought is relevant to the ultimate factfinder's weighing of evidence and credibility determinations they must make on Plaintiffs' essential element. In sum, Plaintiffs plainly are wrong that United cannot inquire whether "Plaintiffs' 'positions on vaccinations are [ ] supported by the religious teachings of their church and instead motivated by political, secular or other reasons not protected by Title VII". Resp. Brf. at 3.[3]

## IV. <u>PLAINTIFFS OTHER COUNTERARGUMENTS FAIL</u>

Plaintiffs advance two other arguments against providing the discovery sought. First, Plaintiffs argue that United only has a right to discovery on an element of each Plaintiffs' claim (*i.e.*, sincere religious belief) upon a showing that it "already has an objective basis for questioning the religious nature or the sincerity" of their beliefs. Resp. Brf. at 4-5. Second, Plaintiffs appeal to inapt declaratory relief cases to suggest that sincerity will not be an issue relevant to class certification here. Resp. Brfs. 6-7. Both arguments fails.

As to the first issue, the EEOC guidelines United cited help illustrate issues relevant under Title VII, however, they arise as guidelines to help employers *before* litigation. They do not (and

---

[3] *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022) is consistent with United's motion. All it concludes is that—on a preliminary injunction record (where the judge was the factfinder)—those plaintiffs' religious beliefs were "sincere, and it is not the role of this Court to determine their truthfulness or accuracy" (citing *Davis*, 765 F.3d at 487)).

Defendant's Reply to Plaintiffs' Opposition to
Defendant's Amended Motion to Compel - Page 7

cannot) establish preconditions in litigation on discovery as to essential element of Plaintiffs' claims. In any event, there is an "'objective basis for questioning the religious nature or the sincerity' of Plaintiffs' beliefs". Resp. Brf. at 4. For example, shortly before she filed this lawsuit, in August 2021, Plaintiff Kimberly Hamilton sent herself a news article raising concerns about the safety of the vaccines—a non-religious reason—entitled "A Large Percentage of Deaths Have Been Linked to the COVID-19 Vaccine, According to a German Pathologist." (SAMB0000670 [Supp. App. 1]).[4] She also corresponded with U.S. Senator Cruz, in which he took the position that "the Federal government has no legal or constitutional authority to force businesses . . . to mandate that their employees get vaccinated." (SAMB0000719-720 [Supp. App. 2-3]).

As to the second issue, Plaintiffs improperly seek an early ruling on an important dispute relative to class certification that Judge Pittman understood the parties' joined issue on when he ordered class discovery. In the report concerning class discovery, United explained that its class discovery would include "issues related to commonality, typicality" among others under Rule 23 and that discovery would include matters related to the "sincerity of religious beliefs for those plaintiffs making a claim of religious discrimination". ECF No. 158 at 6. Judge Pittman later set the current period of class certification discovery. ECF No. 164. Clear to the Court then was that Plaintiffs likely would maintain the position advanced in their prior round of class briefs that they believe individualized determinations of sincerity do not conflict with commonality. United has briefed that, to the contrary, the Fifth Circuit holds that class certification is inappropriate when there are similar individualized issues under the relevant employment statute that predominate over common issues. For example, in *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993), the Fifth

---

[4] She continued to circulate articles about purported heath consequences of the COVID-19 vaccine as recently as April 24, 2023. (SAMB0000724-730 [Supp. App. 4-10]).

Circuit held that "whether an individual is handicapped or 'otherwise qualified' are necessarily individualized inquiries" and that "class certification and class relief [were] inappropriate." *Id.* at 1396.  This discovery motion is not to place to resolve that issue, which should be resolved when the Court has full briefing after discovery relevant to each parties' arguments under the Rule 23 factors.

Even if those prudential concerns did not apply, the two non-discovery cases on which Plaintiffs rely would not enable Plaintiffs to avoid this discovery here, as somehow irrelevant to class certification.  Resp. Brf. at 6-7.  *Bear Creek* was a class action lawsuit solely under Rule 23(b)(2), not Rule 23(b)(3), by a church against the EEOC seeking a declaratory judgment that certain practices did not violate the Religious Freedom Restoration Act (RFRA) and Title VII's sex discrimination provisions (neither of which are at issue here).  *Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*, 571 F. Supp. 3d 571, 585–86 (N.D. Tex. 2021).  Important to the commonality decision was that "the proposed class seeks only injunctive and declaratory relief regarding enforcement of a statute, and the usual complications of class certification . . . of suits for money damages do not apply".  *Id.* at 606.  *Azar* is not a discovery case, or even a Title VII case.  *Vita Nuova, Inc. v. Azar*, No. 4:19-CV-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020)  Instead, *Azar* is another declaratory judgment-only class action where plaintiff "move[d] for class certification under Rule 23(b)(2) [ ] argu[ing] that a single injunction in this class would stop HHS from enforcing [a family planning program] against each of the class members, an argument unrebutted by HHS".  *Id.* at 2.  As United has explained (ECF No. 129 at 21-25)—but which is not ripe for decision—a key difference here is that Plaintiffs seek certification of monetary relief class with individualized backpay, compensatory and punitive damages claims.  That precludes class certification under Rule 23(b)(2) and raises further obstacles under Rule (b)(3) that

make *Bear Creek* and *Azari* inapt here. Moreover, such district court opinions cannot contravene Fifth Circuit precedent such as *Chandler*.

It is telling that Plaintiffs could not identify a single case holding discovery into the bona fide nature of an employee's sincerely held religious beliefs was beyond the broad scope of discovery in Title VII religious discrimination case. It is further telling that virtually none of the cases cited by Plaintiffs in their briefs mention or discuss the waiver of privilege. In the absence of special rules or limits by the Fifth Circuit, discovery in this case encompasses information reasonably calculated to lead to the discovery of admissible evidence.

## V.   PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED

There is no doubt that United was justified in making its Motion to Compel and then amending its motion to limit it to the areas where the parties were unable to agree. It also cannot be seriously argued that United's Amended Motion to Compel seeking compliance with discovery requests where there was no timely privilege objection lodged nor any binding Fifth Circuit authority rejecting the applicability of sword and shield waiver in the context of the clergy-penitent privilege, that United's motion was made in good faith. Without spilling too much ink on this issue, when United filed its Motion, Plaintiff had United's discovery requests for 83 days. Despite that length of time and that the Court limited class discovery to 154 days, the eight named Plaintiffs had produced only 668 pages of responsive discovery – over 300 pages of which was a Boeing 777 Qualifications Manual with little relevance to the claims. Should the Magistrate Judge desire to dig into the details that compelled United to file its Motion, the parties' negotiations, and the agreements reached only after the Motion was filed, United is prepared to show its compliance with the discovery rules and *Dondi*. Given the limited space for its reply to Plaintiffs' Response, United suggests this be done by separate motions, pleadings and evidence.

Respectfully submitted,

*/s/ Russell D. Cawyer*
Russell D. Cawyer
Texas State Bar No. 00793482
Taylor J. Winn
Texas State Bar No. 24115960
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: +1.817.878.3562
Facsimile: +1.817.335.2820
Email: russell.cawyer@kellyhart.com
Email: taylor.winn@kellyhart.com

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626-1700
Email: dmunro@jonesday.com

Jordan M. Matthews
IL Bar No. 6300503
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Email: jmatthews@jonesday.com

Alexander V. Maugeri
NY Bar No. 5062666
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: +1.212.326.3939
Facsimile: +1.212.755.7306
Email: amaugeri@jonesday.com

**ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.**

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing document was served via e-mail to all counsel of record this 19th day of June, 2023:

| | |
|---|---|
| John C. Sullivan<br>Austin R. Nimocks<br>SL Law, PLLC<br>610 Uptown Blvd., Ste. 2000<br>Cedar Hill, Texas 75104<br>john.sullivan@the-sl-lawfirm.com<br>austin.nimocks@the-sl-lawfirm.com | Mark R. Paoletta<br>Gene C. Schaerr<br>Brian J. Field<br>Cristina Martinez Squiers<br>Kenneth A. Klukowski<br>Joshua J. Prince<br>Annika M. Barkdull<br>Schaerr Jaffe, LLP<br>1717 K Street NW, Ste. 900<br>Washington, D.C. 20006<br>mpaoletta@schaerr-jaffe.com<br>gschaerr@schaerr-jaffe.com<br>bfield@schaerr-jaffe.com<br>csquiers@schaerr-jaffe.com<br>kklukowski@schaerr-jaffe.com<br>jprince@schaerr-jaffe.com<br>abarkdull@schaerr-jaffe.com |

            */s/ Russell D. Cawyer*
            Russell D. Cawyer