**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| DAVID SAMBRANO, *et al.*, individually, and on behalf of all others similarly situated, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 4:21-CV-01074-P |
| UNITED AIRLINES, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT'S RENEWED MOTION FOR PARTIAL DISMISSAL**
**OF THE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.    The Title VII Reasonable Accommodation Claims by the Plaintiffs Who Were Never Placed on Unpaid Leave Should Be Dismissed. ..................................................... 5

    A.    Masking and Testing Is A Reasonable Accommodation. ..................................... 5

    B.    Plaintiffs Are Estopped From Complaining About Masking and Testing. ............ 8

    C.    Castillo and Hamilton Do Not Adequately Allege Any Materially Adverse or More-than-De-Minimis Employment Action. .................................................... 9

II.    Each of the ADA Reasonable Accommodation Claims Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Covered Disabilities. ................................. 10

III.    The Retaliation Claims Should Be Dismissed. ................................................................. 12

IV.    Time-Barred Claims and Claims Beyond the Scope of the EEOC Charge Should Be Dismissed. ..................................................................................................................... 16

V.    The Court Should Dismiss the Now-Abandoned Interactive Process Claims. ................ 21

VI.    Plaintiffs' Permanent Injunction Request Should Be Dismissed. .................................... 22

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)...........................................................................................................22

*Anderson v. United Airlines. Inc.*,
  2023 WL 5721594 (N.D. Ill. Sept. 5, 2023) ..............................................................7

*Ansonia Bd. of Educ. v. Philbrook*,
  479 U.S. 60 (1986)....................................................................................................5, 6, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................5

*Ass'n of Am. Publishers, Inc. v. Frosh*,
  607 F. Supp. 3d 614 (D. Md. 2022) ...........................................................................24

*Bostock v. Clayton County*,
  140 S.Ct. 1731 (2020).........................................................................................................13

*Breshears v. Or. Dep't of Transp.*,
  2023 WL 136550 (D. Or. Jan. 9, 2023) ..................................................................6, 7

*Bruff v. N. Miss. Health Servs., Inc.*,
  244 F.3d 495 (5th Cir. 2001) .........................................................................................7

*Burlington Northern & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)...............................................................................................................13

*Crawford v. Metro. Gov't of Nashville*,
  555 U.S. 271 (2009).............................................................................................................15

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013) .....................................................................................22, 24

*Delaware State College v. Ricks*,
  449 U.S. 250 (1980)............................................................................................................18

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)...........................................................................................................24

*EEOC v. N. Mem'l Health Care*,
   908 F.3d 1098 (8th Cir. 2018) ........................................................................14, 15

*Egelkrout v. Aspirus, Inc.*,
   2022 WL 2833961 (W.D. Wis. July 20, 2022)....................................................5, 7

*Eversley v. MBank Dallas*,
   843 F.2d 172 (5th Cir. 1988) ..................................................................................7

*Federal Express Corp. v. Holowecki*,
   552 U.S. 389 (2008)...............................................................................................19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000)...............................................................................................22

*FTC v. Zaappaaz, LLC*,
   2023 WL 5020618 (S.D. Tex. June 9, 2023) ........................................................23

*Furnish v. SVI Sys., Inc.*,
   270 F.3d 445 (7th Cir. 2001) .................................................................................10

*Griffin v. Am. Zurich Ins. Co.*,
   697 F. App'x 793 (5th Cir. 2017) ..........................................................................10

*Grubic v. City of Waco*,
   262 F. App'x 665 (5th Cir. 2008) ..........................................................................12

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
   484 U.S. 49 (1987).................................................................................................24

*Hale v. King*,
   642 F.3d 492 (5th Cir. 2011) .................................................................................10

*Hall v. GE Plastic Pac. PTE Ltd.*,
   327 F.3d 391 (5th Cir. 2003) ...................................................................................8

*Hamilton v. Dallas County*,
   --- F.4th ----, 2023 WL 5316716 (5th Cir. 2023)............................................1, 2, 9

*Henson v. Bell Helicopter Textron, Inc.*,
   128 F. App'x 387 (5th Cir. 2005) ....................................................................17, 18

*Hernandez v. Metro. Transit Auth. of Harris Cty.*,
   673 Fed. App'x 414 (5th Cir. 2016) ........................................................................9

*In re Gulf Aerospace Corp.*,
 449 F.2d 733 (5th Cir. 1971) ..................................................................................25

*Jackson v. Methodist Health Servs. Corp.*,
 2023 WL 2486599 (C.D. Ill. Feb. 10, 2023)........................................................5, 7

*Johnson v. United Parcel Service, Inc.*,
 2020 WL 779459 (D. Md. Feb. 14, 2020) ...............................................................15

*King v. Life Sch.*,
 809 F. Supp. 2d 572 (N.D. Tex. 2011) ...................................................................16

*Lawson v. Excel Contractors, L.L.C.*,
 2022 WL 1793511 (5th Cir. June 2, 2022) .............................................................12

*Leigh v. Artis-Naples, Inc.*,
 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022)........................................................15

*Leonce v. Callahan*,
 2008 WL 58892 (N.D. Tex. Jan. 3, 2008) ...............................................................21

*Lindsey v. Am. Airlines, Inc.*,
 2023 WL 5807015 (N.D. Tex. Sept. 7, 2023).............................................................9

*Loulseged v. Akzo Nobel Inc.*,
 178 F.3d 731 (5th Cir. 1999) ...................................................................................21

*Madaki v. Am. Airlines, Inc.*,
 2022 WL 227163 (N.D. Tex. Jan. 25, 2022) ......................................................5, 16, 17, 20

*McClain v. Lufkin Indus., Inc.*,
 519 F.3d 264 (5th Cir. 2008) ...................................................................................16

*Meyer v. Brown & Root Constr. Co.*,
 661 F.2d 369 (5th Cir. 1981) ...................................................................................25

*Nat'l R.R. Passenger Corp. v. Morgan*,
 536 U.S. 101 (2002)........................................................................................16, 17, 18

*Perez v. Texas*,
 970 F. Supp. 2d 593 (W.D. Tex. 2013)....................................................................24

*Perkins v. Starbucks Corp.*,
 2022 WL 17069145 (S.D. Tex. Nov. 17, 2022) .................................................19, 20

-iv-

*Picard v. St. Tammany Par. Hosp.*,
   423 F. App'x 467 (5th Cir. 2011) ........................................................21

*Price v. Sw. Bell Tel. Co.*,
   687 F.2d 74 (5th Cir. 1982) ..............................................................20

*Prison Legal News v. Lindsey*,
   2007 WL 9717318 (N.D. Tex. June 18, 2007) ...................................25

*Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*,
   260 F. Supp. 3d 738 (S.D. Tex. 2017) ..............................................22

*Richards v. JRK Prop. Holdings*,
   405 F. App'x 829 (5th Cir. 2010) ......................................................12

*Sambrano v. United*,
   19 F.4th 839 (5th Cir. 2021) .............................................................11

*Sambrano v. United*,
   2022 WL 486610 (5th Cir. 2022) ...........................................2, 13, 14

*Sheely v. MRI Radiology Network, P.A.*,
   505 F.3d 1173 (11th Cir. 2007) ........................................................24

*Stewart v. Miss. Transp. Comm'n*,
   586 F.3d 321 (5th Cir. 2009) ............................................................14

*Tagore v. United States*,
   735 F.3d 324 (5th Cir. 2013) ............................................................13

*Together Emps. v. Mass Gen. Brigham Inc.*,
   573 F. Supp. 3d 412 (D. Mass. 2021) ...........................................10, 11

*United States v. Holy Land Found. for Relief & Dev.*,
   2007 WL 1308383 (N.D. Tex. May 4, 2007) .......................................8

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953)..........................................................................24

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013)..........................................................................12

*Vaughn v. Waffle House, Inc.*,
    263 F. Supp. 2d 1075 (N.D. Tex. 2003) ..................................................................6

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)....................................................................................................24

*Wilson v. Birnberg*,
    667 F.3d 591 (5th Cir. 2012) ....................................................................................22

*Wren v. Midwestern State Univ.*,
    2019 WL 3099408 (N.D. Tex. June 25, 2019) ........................................10, 11, 12

*Wright v. Arlington Indep. Sch. Dist.*,
    2019 WL 6311163 (N.D. Tex. Nov. 25, 2019).........................................................5

## STATUTES

42 U.S.C. §§ 2000e-2................................................................................................14

42 U.S.C. §§ 2000e-3..................................................................................12, 13, 15

42 U.S.C. § 2000e-5.................................................................................................3, 16

42 U.S.C. §§ 2000e(j) ...........................................................................................5, 14, 21

42 U.S.C. § 12102...............................................................................................10, 12

42 U.S.C. § 12112...........................................................................................5, 10, 21

42 U.S.C. § 12117(a) ..............................................................................................3, 16

42 U.S.C. § 12203.........................................................................................12, 13, 15

## OTHER AUTHORITIES

H.J.Res. 7 (Apr. 10, 2023) .......................................................................................23

REHABILITATION ACT, AND OTHER EEO LAWS, https://www.eeoc.gov/wysk/what-
    you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-
    laws#K ........................................................................................................................6

## INTRODUCTION

In its original partial motion to dismiss, United advanced six different arguments with respect to five categories of claims (and/or plaintiffs) that should be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 160.  Only one of those arguments concerned the "ultimate employment decision" doctrine that was recently abrogated by the *en banc* Fifth Circuit in *Hamilton v. Dallas County*, --- F.4th ----, 2023 WL 5316716 (5th Cir. 2023).  The *Hamilton* decision does not bear on any of the other arguments that United has made – and now reasserts – in this renewed motion to dismiss.  And while *Hamilton* left open the precise contours of the new test for "adverse employment action," the kind of masking and testing protocols at issue here – which plaintiffs themselves demanded – fall below "the floor that Title VII's anti-discrimination provision sets for actionable harm."  *Id.* at *7 n.64.

Hence, there are still multiple reasons why this Court can and should substantially narrow the range and complexity of the claims and issues presented in this case prior to a ruling on class certification.  As noted in United's prior motion to dismiss, the main focus of this case to date has been whether United could lawfully place employees on temporary unpaid leave as an accommodation under Title VII and/or the Americans With Disabilities Act ("ADA").  But there are a litany of secondary issues raised in the Second Amended Complaint ("SAC") regarding, for example, accommodations for employees who were never placed on leave, the process for considering and approving requests for exemptions, "ostracization" and "ridicule[] by co-workers," "retaliation," and even being "needlessly banished to eat outdoors."  SAC ¶¶ 4, 129, 131, 207–212, 222–227.  The Court should dismiss these claims for the following reasons, many of which closely track the arguments set out in United's original motion and all of which are discussed in more detail in the Argument below:

*First*, Title VII reasonable accommodations claims by accommodated employees who were never placed on unpaid leave are legally meritless.  While three of the plaintiffs (Castillo, Hamilton, and Jonas) complain about masking and testing, both recent case law and the EEOC recognize that masking and testing rules are a lawful accommodation when offered as an alternative to vaccination.  Indeed, in their original complaint, these plaintiffs represented they were "willing to submit to mitigation measures such as periodic COVID-19 testing and/or wearing masks," and so are estopped from now asserting otherwise.  ECF No. 1 ¶ 119.[1]  Moreover, even under the new *Hamilton* standards, the two plaintiffs (Castillo and Hamilton) who stayed in their original jobs (without alterations to their role, pay or benefits) have failed to allege any adverse employment action under Title VII that is either "material" or more than de minimis.  2023 WL 5316716 at *7.  *See* Part I.

*Second,* the Court should dismiss plaintiffs' ADA claims.  Two of the plaintiffs – Jonas and Rains – allege that United refused to accommodate their "disabilities."  However, they fail to assert that their medical conditions impair any major life activities.  As a matter of law, such allegations are inadequate.  *See* Part II.

*Third*, the plaintiffs' retaliation claims are "incoherent" and should be dismissed.  *See  Sambrano v. United*, 2022 WL 486610, at *32  (5th Cir. 2022) (Smith, J., dissenting).  Among other problems, plaintiffs are conflating whether the accommodations provided were legally adequate with whether United retaliated against them for asking for an accommodation.  As plaintiffs admit, United treated employees who requested an accommodation better than those who did not.  *See* Part III.

---

[1] Each of the original plaintiffs who appeared for the preliminary injunction hearing reiterated their willingness to mask and test in that testimony.  *See* Oct. 13, 2021 Hr'g Tr., Vol. 2: Tr. 50:6–13 (Hamilton); 77:25–78:22 (Sambrano); 94:4–13 (Castillo); 111:4–20 (Kincannon).

*Fourth*, three of the plaintiffs' claims are time-barred because their EEOC charge was not filed within 300 days of "the alleged unlawful employment practice", 42 U.S.C. § 2000e-5(e)(1), § 12117(a), and several other claims are barred as beyond the scope of the charge. *See* Part IV.

*Fifth*, neither Title VII nor the ADA allows for any stand-alone "interactive process" claim. There is no actionable procedural duty independent of the substantive reasonableness of the accommodation provided and the Court should dismiss the "interactive process" claim asserted in the SAC (which plaintiffs have since conceded was not intended to be a stand-alone claim anyway). *See* Part V.

*Finally*, per this Court's recent Order, United seeks dismissal of plaintiffs' "request to enjoin a vaccination policy that is no longer in effect". ECF No. 199. The now-rescinded policy will not recur given the end of the pandemic, meaning that there is no reason for this Court to exercise its equitable jurisdiction. *See* Part VI.

## BACKGROUND

In response to worsening COVID-19 pandemic conditions and after FDA approval of the Pfizer vaccine, United required all of its employees to receive a first dose of the COVID-19 vaccine by September 27, 2021. SAC ¶ 40. United first announced the policy on August 6, 2021 and "required all employees to submit requests for accommodation by August 31, 2021." *Id.* ¶¶ 38, 65. The eight plaintiffs "seek to represent a class of all United employees who have submitted claims of discrimination or retaliation to the EEOC and who requested or attempted to request a medical or religious accommodation" from that vaccine policy. *Id.* ¶ 189.

This group consists of five of the original six plaintiffs from the 2021 complaint (David Sambrano, Genise Kincannon, David Castillo, Kimberly Hamilton, Debra Jennefer Thal Jonas), and three newer plaintiffs (Jarrad Rains, Alyse Medlin, Charles Burk).

3

Five of the eight plaintiffs (Sambrano, Kincannon, Rains, Medlin, and Burk) are flight-crew employees. (SAC ¶¶ 16, 20, 21, 22, 23). The other three plaintiffs are ground-based employees: Castillo is an Aircraft Technician who "perform[s] maintenance duties on United airplanes" (*id.* ¶¶ 17, 107); Hamilton is a Station Operations Representative who "handle[s] gate planning and coordinating fueling, mechanics, cleaners, caterers, and other staff matters" (*id.* ¶¶ 18, 122); and Jonas is a Customer Service Representative in the United Club (*id.* ¶¶ 19, 135).

United granted a religious or medical accommodation to each of the plaintiffs, except Medlin, who did not support her religious request with a third-party letter. *See id.* ¶¶ 17, 93, 127, 140, 154, 164, 175, 182. Castillo, Hamilton, and Jonas—like other ground-based employees—never experienced unpaid leave; instead, each of them was "provided an accommodation to remain at work under . . . masking and testing protocols." *Id.* ¶ 142. Sambrano, Kincannon, Rains, and Burk were given unpaid leave with the option to accept any available alternative positions, though Burk chose to get vaccinated instead. *Id.* ¶¶ 93, 96, 154, 168, 182, and 185.

The SAC pleads four counts. In Count I, each plaintiff alleges that United violated Title VII by "fail[ing] to provide Plaintiffs with reasonable accommodations for their religious beliefs" and "refu[sing] to engage in the interactive process." SAC ¶¶ 202, 203. In Count III, two of the plaintiffs (Jonas and Rains) allege that United violated the ADA by failing to accommodate their "disabilities" and engage in the "interactive process." *Id.* ¶¶ 137, 161, 163, 219, 221. Finally, in Counts II and IV, plaintiffs allege United "retaliated" against them for requesting religious and/or medical accommodations. *Id.* ¶¶ 43, 208, 210, 223, 225. Plaintiffs seek back pay, other compensatory damages, punitive damages, and injunctive relief. *See* SAC, Prayer for Relief.

**ARGUMENT**

In both Title VII and ADA cases, courts routinely dismiss claims that – even when all of the facts alleged are accepted as true – are nevertheless inadequate as a matter of law. *E.g.*, *Madaki v. Am. Airlines, Inc.*, 2022 WL 227163, at *2 (N.D. Tex. Jan. 25, 2022) (Pittman, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).[2]  In this case, several of the plaintiffs' claims are legally deficient in multiple respects.

## I.   The Title VII Reasonable Accommodation Claims by the Plaintiffs Who Were Never Placed on Unpaid Leave Should Be Dismissed.

As the SAC concedes, three of the plaintiffs (Castillo, Hamilton, and Jonas) remained at work throughout the pandemic.  Instead of unpaid leave, they were accommodated with masking and testing.  For three related reasons, these individuals have failed to plead valid claims challenging those accommodations under either Title VII or the ADA.

### A.   Masking and Testing Is A Reasonable Accommodation.

"[A]n employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986); 42 U.S.C. §§ 2000e(j), 12112(b)(5).  Based on that principle, courts have dismissed a number of similar challenges to COVID-19 masking-and-testing accommodations. *See, e.g.*, *Jackson v. Methodist Health Servs. Corp.*, 2023 WL 2486599, at *4 (C.D. Ill. Feb. 10, 2023) (dismissing Title VII claim because "assuming Defendant had a duty to accommodate Plaintiff's religious beliefs, it discharged that obligation by permitting her to submit to weekly Covid-19 testing at one of Defendant's health care facilities").[3]

---

[2] In applying Rule 12(b)(6), the Court may take judicial notice of the EEOC file.  *Wright v. Arlington Indep. Sch. Dist.*, 2019 WL 6311163, at *2 (N.D. Tex. Nov. 25, 2019) (Pittman, J.).

[3] *See also, e.g.*, *Egelkrout v. Aspirus, Inc.*, 2022 WL 2833961, at *3 (W.D. Wis. July 20, 2022) (dismissing claim because employer "discharged [its Title VII] obligation by permitting

The same reasoning applies here.  Plaintiffs admit that United offered masking and testing as an option for non-customer-facing employees (as well as for employees whose jobs could be adjusted to be non-customer-facing).  SAC ¶¶ 115, 128, 143.  That accommodation enabled them to continue working while eliminating any conflict between their religious beliefs and United's vaccination requirement.  While plaintiffs were apparently unsatisfied with *any* accommodation unless it was something they voluntarily elected, "an employee cannot insist upon a specific or more beneficial accommodation, and Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee."  *Vaughn v. Waffle House, Inc.*, 263 F. Supp. 2d 1075, 1082 (N.D. Tex. 2003); *see also Ansonia*, 479 U.S. at 68 (law does not require "an employer to choose any particular reasonable accommodation").  Accordingly, plaintiffs cannot complain that these accommodations were unlawful just because they were supposedly uncomfortable, inconvenient, or involuntary.

To be sure, plaintiffs have suggested that United's masking and testing protocol was more onerous than the accommodations in other cases that have been deemed reasonable.  Specifically, plaintiffs complain about needing to report COVID-19 test results on days off, to wear N95 masks (as opposed to KN95 masks), or to eat outside.  *E.g.*, SAC ¶¶  115, 116, 128.  These details, they argue, made the accommodations too burdensome.

---

[plaintiff] to submit to biweekly Covid-19 testing"); *Breshears v. Or. Dep't of Transp.*, 2023 WL 136550, at *4 (D. Or. Jan. 9, 2023) (dismissing Title VII claim because the employer offered plaintiff "an accommodation—masking—that eliminated the conflict between [defendant's] vaccine requirement and [plaintiff's] religious beliefs [that] was reasonable as a matter of law"). The EEOC, for its part, has specifically directed that "a reasonable accommodation" for "employee[s] who [do] not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief . . . (covered by Title VII)," is that they be allowed to "wear a face mask . . . [and] get periodic tests for COVID-19."  *See* U.S. Equal Employment Opportunity Commission, Vaccinations (part K), technical guidance, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.

That argument fails for two reasons. *First*, case law is clear that even significant burdens on an accommodated employee do not suffice to show that the accommodation is unreasonable. *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 502 n.23 (5th Cir. 2001) (a religious accommodation that "require[s] [a plaintiff] to take a significant reduction in salary" does not make it unreasonable); *see also Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988) (holding that "simply because the proposed accommodation would involve some cost to the employee does not make it unreasonable") (citing *Ansonia*, 479 U.S. at 71). If an accommodation is reasonable even when it comes with a "significant" reduction in pay, then certainly the comparatively minor inconveniences associated with United's masking and testing accommodation cannot suffice to establish lack of reasonableness.

*Second*, the other cases that hold masking and testing are reasonable accommodation cannot be distinguished on the grounds that plaintiffs suggest. In *Egelkrout*, for example, the challenge concerned an obligation to engage in biweekly testing even when the employee was working remotely (a policy that is at least as cautious as the one alleged here). 2022 WL 2833961, at *1. The objection in *Breshears* concerned an obligation to wear an N95 mask. 2023 WL 136550, at *1. In *Jackson*, the plaintiff was both required to wear a mask and engage in regular testing. 2023 WL 2486599, at *1, 4. Yet in all of these cases, the courts easily concluded that the challenged accommodations were lawful. *Cf. also Anderson v. United Airlines. Inc.*, 2023 WL 5721594, at *6–7 (N.D. Ill. Sept. 5, 2023) (rejecting Title VII hostile work environment challenge to United's masking requirement for accommodated employees). Plaintiffs have not pointed to a single case finding – or even suggesting – that masking and testing would not be a reasonable accommodation for employees who object to a vaccine requirement at work.

**B.      Plaintiffs Are Estopped From Complaining About Masking and Testing.**

As a general rule, a party cannot advocate for a particular position and then, in the same proceeding, turn around and argue the opposite. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (noting that a party cannot assert "a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding").  Whether phrased in terms of "judicial estoppel" doctrine or just simple, commonsense equitable principles, courts take a dim view of any outright reversals in position on specific subjects, especially when the party clearly intended that the court would rely on its previous inconsistent position.  *See, e.g.*, *United States v. Holy Land Found. for Relief & Dev.*, 2007 WL 1308383 at *2 (N.D. Tex. May 4, 2007) (prohibiting argument that directly contradicts earlier position).

Plaintiffs started out in this litigation by *demanding* masking and testing as an accommodation.  ECF No. 1 ¶¶ 25, 119, at p. 30, Prayer for Relief ¶ f.  And plaintiffs' counsel subsequently admitted that United's specific protocol was permissible, stating that "United's new testing accommodation, which it applies to under-the-wing employees, requires four tests every 14 days. *We think that's a reasonable accommodation*. . . ."  Oct. 14, 2021 Hr'g Tr., Vol. 3: Tr. 41:8–12 (emphasis added).  Indeed, plaintiffs' expressed willingness to accept masking and testing was one of the core predicates of their argument that the Court should enjoin United from offering other accommodations.  *See* ECF No. 6 at 13 (plaintiffs' TRO brief arguing that United could offer as "reasonable accommodations . . . mask wearing . . . or periodic COVID-19 testing"); ECF No. 37 at 6–7 (plaintiffs' preliminary injunction brief arguing that, as an alternative to unpaid leave, "United could require mask wearing and periodic testing for COVID-19").  Having specifically sought masking and testing as accommodations, plaintiffs cannot now complain that these accommodations were unlawful.

8

**C.      Castillo and Hamilton Do Not Adequately Allege Any Materially Adverse or More-than-De-Minimis Employment Action.**

While *Hamilton* left "for another day the precise level of minimum workplace harm a plaintiff must allege on top of showing discrimination in one's 'terms, conditions, or privileges of employment," it provided a few guideposts for applying that standard. 2023 WL 5316716, at *8. First, "Title VII liability does not extend to 'de minimis' discrimination." *Id.* at *7. Second, *Hamilton* favorably cited other circuits that require the employer action to be "materially adverse" to be actionable under Title VII. *Id.* at *7 & n.62, *12 n.1 (Jones, J., concurring in the judgment); *cf. also Lindsey v. Am. Airlines, Inc.*, 2023 WL 5807015, at *2 (N.D. Tex. Sept. 7, 2023) (Pittman, J.), at *4 (Title VII requires a "tangible, objective, and material" adverse action (quoting *Hamilton*, 2023 WL 5316716, at *8)).

Regardless of whether this Court applies a "de minimis" or "materiality" standard, Castillo and Hamilton's Title VII claims cannot meet that test. Neither of them changed jobs or lost any pay, benefits or opportunities. As explained above, plaintiffs' grievance is with the details of "the masking and testing protocol United employed," such as the use of N-95 masks or having to mask outdoors. ECF No. 169 at 14. Just like Title VII is not "a general civility code for the American workplace," *Hamilton*, 2023 WL 5316716, at *7, courts "regularly 'decline to serve as a super-personnel department.'" *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 Fed. App'x 414, 419 n.5 (5th Cir. 2016). Yet that is what plaintiffs are asking this Court to do – to supervise the details of workplace accommodations. If issues such as the location or types of COVID-19 masks are actionable, Title VII's reach will be virtually limitless, requiring federal courts to adjudicate every "workplace trifle[]." *Hamilton*, 2023 WL 5316716, at *7.[4]

---

[4] United hereby respectfully preserves its position that *Hamilton* incorrectly interprets Title VII.

9

**II.     Each of the ADA Reasonable Accommodation Claims Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege Covered Disabilities.**

The ADA's anti-discrimination protections extend only to individuals who have a "disability." 42 U.S.C. § 12112. And the ADA defines a disability as "a physical or mental impairment *that substantially limits one or more major life activities* of such individual." 42 U.S.C. § 12102(1)(A) (emphasis added); *see id.* § 12102(2)(A) (a "major life activit[y]" refers to activities such as "seeing, hearing, eating, sleeping, [or] walking").

"Under the ADA, even a serious illness" or medical condition "does not equate with a disability." *Hale v. King*, 642 F.3d 492, 501 n.30 (5th Cir. 2011) (quoting *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001)) (explaining that Hepatitis B and PTSD are not necessarily disabilities). Rather, "[w]ithout pleading facts of how his major life activities were limited, [a plaintiff] cannot state a sufficient claim [] under the ADA." *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017); *Hale*, 642 F.3d at 501 ("Absent allegations that [plaintiff's] ailments substantially limited him in the performance of a major life activity, [plaintiff] has failed to state a claim for relief."). Courts have dismissed (or otherwise rejected) ADA claims, including in the COVID-19 vaccine context, for precisely this reason. *E.g.*, *Wren v. Midwestern State Univ.*, 2019 WL 3099408, at *9 (N.D. Tex. June 25, 2019) (failure to plead qualifying disability on this basis under ADA requirements), *report and recommendation adopted* at 2019 WL 3081849 (N.D. Tex. July 15, 2019) (O'Connor, J.); *Griffin*, 697 F. App'x at 797; *see also Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 429,30 (D. Mass. 2021) (denying injunction, in COVID-19 case, for no "likelihood of success on their claims that they are 'disabled' within the meaning of the ADA" with "conclusory statements that their conditions substantially impair their ability to work" even when plaintiffs "alleged physical or mental impairments [such as] PTSD, pregnancy, angio-edema/leukemia, and severe mental anguish").

10

Here, two plaintiffs – Jonas and Rains – allege that they have "allergies" that qualify as disabilities under the ADA.  SAC ¶¶ 137, 163.  More specifically, Jonas alleges an allergic sensitivity to eggs, penicillin, and wool, and Rains alleges "a history of allergic reactions[,] including anaphylaxis."  *Id.*  However, they "do[] not allege how [their] allergies substantially limit them" as to a major life activity.  *Wren*, 2019 WL 3099408, at *9.

The Court's reasoning in *Wren* is instructive in this regard.  In that case, the plaintiff alleged that her allergies qualified as a disability under the ADA because they were "severe" and (i) required her to carry a prescribed EpiPen; (ii) were "controlled with medication, diet, and environmental restrictions;" and (iii) "affect[ed] and limit[ed] major life activities," as did her "treatment."  2019 WL 3099408 at *9.  This Court held that "[e]ven assuming that [the plaintiff's] allergies result[ed] in a physical impairment, she has not alleged how her allergies substantially limit[ed] a major life activity."  *Id.*  It was not enough that the plaintiff claimed "severe" allergies and "list[ed] major life activities that [we]re impacted by her allergies," because she did "not allege how her allergies substantially limit[ed] them," even under the ADA's broad construction.  *Id.*

Plaintiffs' allegations in this case about their "allergies" are even more threadbare than those held to be insufficient at the pleading stage in *Wren*, as the SAC does not even contend in conclusory terms that their allergies impair a major life activity.  Jonas merely describes her allergies as "severe" and alleges that she has to take allergy medications, and carry an inhaler and EpiPen.[5]  SAC ¶ 137.  Rains's similar allegations are likewise inadequate, only mentioning "a history of allergic reactions [and] anaphylaxis." SAC ¶ 163; *see Together Emps.*, 573 F. Supp. 3d at 429.

---

[5] Jonas has been on notice of this infirmity for almost two years. *See Sambrano v. United*, 19 F.4th 839, 842 n.4 (5th Cir. 2021) (Ho, J., dissenting) ("[I]t is unclear to me whether the other employee [*i.e.*, Jonas] has sufficiently alleged a covered disability" under the ADA).

Nor does Rains plausibly allege a disability based on his heart condition. He offers no allegations "showing that his heart condition 'substantially limits' the function of his circulatory system" or any other major life activity. *Lawson v. Excel Contractors, L.L.C.*, 2022 WL 1793511, at *5 (5th Cir. June 2, 2022) (holding for this reason that "[t]he district court correctly concluded that [plaintiff with a heart condition was] not disabled under the ADA").

In the round of briefing on United's previous motion to dismiss, plaintiffs tried to undermine the persuasiveness of *Wren*, arguing that the Court failed to account for the ADA Amendments Act ("ADAAA"). That is not so. The *Wren* opinion expressly notes the ADAAA's revisions multiple times. *See* 2019 WL 3099408, at *3, *8. Moreover, the ADAAA's changes – including the expansion of the ADA's "disability" definition – are immaterial here. Even under the ADAAA, it is insufficient to simply allege that an employee suffers from an "impairment" without further alleging how that impairment "substantially limits one or more major life activities of such [employee]." 42 U.S.C. § 12102(1)(A).

## III.    The Retaliation Claims Should Be Dismissed.

Title VII and the ADA each prohibits retaliatory "discriminat[ion]" against an individual "because" the individual engaged in a protected activity. 42 U.S.C. §§ 2000e-3(a), 12203(a). The Fifth Circuit "applies the same analysis to ADA and Title VII retaliation claims." *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008). "To state a Title VII retaliation claim, the Plaintiff must allege facts that tend to establish: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action." *Richards v. JRK Prop. Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010); *see Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

12

Here, the plaintiffs base their retaliation claims on the theory that they "engaged in protected activity when they requested (or tried to request) religious [or medical] accommodations from United's vaccine mandate," and that United's response of granting accommodations that included unpaid leave was "retaliat[ory]." *See* SAC ¶¶ 207–212 (Count II – All plaintiffs under Title VII); *id.* ¶¶ 222–227 (Count IV – Jonas and Rains under the ADA).

These retaliation claims are "incoherent," *Sambrano*, 2022 WL 486610, at *32 (Smith, J., dissenting), because they confuse the adequacy of the accommodation with retaliation. Plaintiffs allege that the accommodations United offered were so inadequate that employees felt punished for having asked for an accommodation and some employees may have felt pressured to get vaccinated instead. SAC ¶ 186. But the adequacy of the accommodations goes to the merits of plaintiffs' Title VII reasonable accommodations claim, not retaliation. *See, e.g.*, *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (accommodation claim turns on whether the accommodation offered by employer is "reasonable"). For a retaliation claim, the court does not ask about the legal sufficiency of the accommodation, but rather whether the employees were treated materially worse than if they had not sought the accommodation at all, such that a reasonable worker would be dissuaded from seeking the accommodation in the first place. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In other words, to constitute retaliation, the employer must actually "*discriminate against*" the worker – that is, treat him or her more harshly "*because*" he or she requested an accommodation. 42 U.S.C. §§ 2000e-3(a), 12203(a) (emphasis added); *see also Bostock v. Clayton County*, 140 S.Ct. 1731 (2020) (noting that to "discriminate" means "treating that individual *worse* than others who are similarly situated" (emphasis added)).

13

Plaintiffs emphasize that they viewed the accommodations as draconian, but do not and cannot allege that the accommodations were more draconian than the alternative. To the contrary, the SAC concedes that United treated the plaintiffs *better* than their counterparts. It is undisputed that employees who refused vaccination and did not seek any accommodation were terminated. SAC ¶ 5, 42. By contrast, accommodated employees received at least unpaid leave (with the option to work in alternative positions), while others received on-the-job accommodations. *E.g.*, *id.* ¶¶ 16, 20, 83 n.2, 143. Indeed, each one of the plaintiffs who received an accommodation is still working at the company, with those offered unpaid leave having "returned to work on March 28, 2022." *Id.* ¶ 98; *see id.* ¶ 10. They cannot plausibly contend the accommodations offered would "dissuade a reasonable worker" from making an accommodation request, as they all chose, unsurprisingly, to eschew the alternative. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

If plaintiffs' position were correct – if one could claim retaliation based on the offer of an accommodation that the employee deems inadequate – then every inadequate-accommodation case would automatically become a retaliation case too. Courts have rightly rejected that result. *Cf. EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018) (rejecting a repackaged retaliation claim that sought to challenge the denial of reasonable accommodation of religion claim, explaining that the employee's "exclusive Title VII remedy is an unlawful disparate treatment" claim under §§ 2000e-2(a)(1); 2000e(j)).[6]

---

[6] The Fifth Circuit's opinion in this case regarding irreparable harm does not say or even suggest that any harm resulting from a "coercive choice" exceeded termination, and certainly does not imply that reasonable employees would have chosen to forego seeking an accommodation and instead elected to be terminated. If anything, the Fifth Circuit's opinion implies the opposite. *Sambrano*, 2022 WL 486610, at *7 (no injunction for terminated employees).

14

Plaintiffs' retaliation claims are also deficient for yet another reason. For "protected activity" – a necessary predicate for a retaliation claim – they rely on the antiretaliation "opposition" clause, but without alleging they "opposed" any "unlawful" "practice." 42 U.S.C. §§ 2000e-3(a), 12203(a). Instead, they allege that United announced its vaccine policy, invited plaintiffs to request an accommodation, and they did so. Their requests for accommodations did not "oppose" anything – that is, plaintiffs did not "resist or antagonize," "contend against," "confront," or "resist" any unlawful practice. *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009) (citations omitted). As several courts have found, requesting an accommodation in this manner does not constitute protected activity. *See, e.g.*, *Leigh v. Artis-Naples, Inc.*, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022) ("Under the plain meaning of 'opposed' in section 2000e-3(a), the statute does not cover Plaintiffs' initial requests for religious accommodation—a blanket vaccine exemption—even though such requests for religious accommodations were ultimately denied by [defendant]."); *see also Johnson v. United Parcel Service, Inc.*, 2020 WL 779459, at *6 n.9 (D. Md. Feb. 14, 2020); *N. Mem'l Health Care*, 908 F.3d at 1102.

None of this is to say that employers have free rein to treat employees who have requested accommodations harshly or vindictively. If the accommodation is unreasonable, then the employer will be liable for failure-to-accommodate (which plaintiffs claim here); likewise, if the employees are harassed, the employer may be liable for a hostile work environment (which plaintiffs do not even claim). A retaliation claim adds nothing in those circumstances. Conversely, where the accommodations offered are reasonable and the work environment non-discriminatory, it makes no sense to treat the accommodations themselves as "retaliatory" simply because they do not go as far as employees would prefer. Indeed, as noted above, employees are not entitled to their preferred accommodation, just a reasonable one.

**IV.    Time-Barred Claims and Claims Beyond the Scope of the EEOC Charge Should Be Dismissed.**

When they filed their original complaint, plaintiffs represented that each of them "submitted a charge to the EEOC" on either September 17, 19, or 20, 2021.  ECF No. 1 ¶¶ 70, 79, 89, 99, 108.  The SAC is now silent as to the matter; this Court, however, can take judicial notice of the charge materials attached to this motion.  *See King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011); *Madaki*, 2022 WL 227163, at *2.  Those charges reveal that the *earliest* that any of the five original plaintiffs filed an EEOC charge was actually February 2022—several months *after* this Court denied the preliminary injunction.  Specifically, Hamilton and Kincannon filed their charges on February 18, 2022; Sambrano on March 25, 2022; Jonas on April 12, 2022; and Castillo on September 19, 2022.  App. 4-6; 7-11; 12-15; 16-19; 26-30.  The three new plaintiffs submitted their EEOC charges as follows: Burk on January 28, 2022, and Rains and Medlin on November 3, 2022.  App. 1-3; 20-25.

The true date and details of the plaintiffs' EEOC charges reveal that three of the plaintiffs' claims are time-barred in full or in part under the applicable statute-of-limitations.  Specifically, under Title VII, a charge must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred."  *See* 42 U.S.C. § 2000e-5(e)(1); *see also* 42 U.S.C. § 12117(a) (ADA incorporates Title VII's procedural requirements).  Failure to do so is grounds for dismissal of the claim; requiring administrative exhaustion is a "mainstay of proper enforcement of Title VII remedies."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008).

The Supreme Court held that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" such that a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period"—here, 300 days.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

16

114 (2002).  That "300-day time bar begins on the day that the discriminatory act 'happened'; a party who fails to meet that deadline 'lose[s] the ability to recover for it.'"  *Madaki*, 2022 WL 227163, at *3 (quoting *Morgan*, 536 U.S. at 110) (Pittman, J.); *see id.* ("Claims for discrete acts of discrimination are independent from each other and each trigger their own limitations period.").

1.    *Rains.*  300 days before Rains's November 3, 2022 EEOC charge is January 7, 2022.  Thus, Rains cannot pursue claims for any discrete acts of alleged discrimination before January 7, 2022, yet all of the discrete acts he alleges happened before that date.  In particular, he alleges that United approved his medical accommodation on September 9, 2021, but that the form of accommodation provided was inadequate.  *See* SAC ¶¶ 163–64.  He also alleges that on or about September 8, 2021 he "called Help Hub in an attempt to submit his religious accommodation request but was informed that he could only have one type or the other.*"  Id.* ¶ 163 n.3.  Rains further alleges his unpaid leave accommodation commenced in November 2021. *Id.* ¶ 168.

Rains alleges no other allegedly unlawful employment action after January 7, 2022.  Nor does he allege any action that qualifies as an ongoing violation.  By the time his period for filing had expired on January 7, United had already (1) denied his request for a religious accommodation, (2) granted his request for the disability accommodation (which he now says was inadequate), and (3) placed him on unpaid leave.  Each of these "prior discrete discriminatory acts are untimely filed and no longer actionable."  *Morgan*, 536 U.S. at 115; *see also, e.g.*, *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) ( "failure to provide accommodations" is a "discrete act[] [that] do[es] not qualify under the continuing violation exception").  More specifically, to the extent that Rains argues that his unpaid leave extended to March 2022, that is clearly insufficient.  Discrete acts (such as termination, transfer, or suspension) are easy to identify, independently actionable, and thus not subject to the continuing violation doctrine based on their

17

ongoing *effects*.  *Morgan*, 536 U.S. at 114; *accord Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980) (holding that "the limitations period[] commence[s] to run when [an allegedly unlawful promotion] decision was made and [the employee] was notified").  The same logic applies to United's decision to place Rains on unpaid leave (especially since he deems that "the functional equivalent of termination").  SAC ¶ 43, Prayer for Relief ¶ b.

    2.    ***Castillo.***  The 300-day period prior to Castillo's September 19, 2022 EEOC charge extends to November 23, 2021, but again all his claims predate that.  He objects to the initial determination in mid-September 2021 that his accommodation request was untimely, he further objects to what he claims would have been "unpaid leaving [starting] at the beginning of October" 2021, and he finally objects to the accommodation he nevertheless received that month "to keep getting a paycheck" while adhering to a masking and testing protocol.  App. 4-6; *see* SAC ¶ 17, 115 (his masking-and-testing started in October 2021).  Despite checking a box on his EEOC charge for a "continuing action," nothing Castillo alleges qualifies for the continuing violation doctrine, as his objections—like Rains's—are discrete acts that needed to be raised with the EEOC within 300 days of their occurrence.  *See Morgan*, 536 U.S. at 114–15.

    3.    ***Medlin.***  Medlin's claims are time-barred in part.  Because she filed her charge on November 3, 2022, any discrete acts of alleged discrimination before January 7, 2022 are time-barred.  Accordingly, all of her claims based on the initial denial of her religious accommodation for lack of a "third-party verification" letter are untimely.  SAC ¶ 175 (explaining this occurred "[s]everal weeks" after her August-September 2021 request for a religious accommodation); App. 20-22; *Henson*, 128 F. App'x at 391.  By contrast, United does not seek dismissal of Medlin's claims relating to her March 9, 2022 termination, as that discrete act is timely.  *See* SAC ¶¶ 177–180.

    Plaintiffs previously argued that they can avoid dismissal under the limitations rules because "the EEOC and courts routinely view the date an individual reaches out to the EEOC to

begin the charge process ([i.e., "(1) submitting an online inquiry" (ECF No. 169 at 21)]) as the 'charge' date, provided the individual sufficiently identifies the alleged discrimination."  ECF No. 169 at 22.  Not so.  The test for whether a document other than an official "charge" can qualify as such comes from *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). Under *Holowecki*, "a filing is to be deemed a charge" if it may be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights." 552 U.S. at 402.

Plaintiffs cannot meet the *Holowecki* test because their online inquiry forms—unlike the Intake Questionnaires in *Holowecki* and similar cases—do not objectively manifest a request for the EEOC to take remedial action.  Specifically, plaintiffs' online inquiries did not create "a duty to investigate on the part of the EEOC."  *Perkins v. Starbucks Corp.*, 2022 WL 17069145, at *1 (S.D. Tex. Nov. 17, 2022); *Holowecki*, 552 U.S. at 398.  *Holowecki* involved an Intake Questionnaire that "refers to a specific EEOC form that [now] asks employees to check one of two boxes in order to distinguish information requests from enforcement requests."  *Perkins*, 2022 WL 17069145, at *1.  Plaintiffs' online inquiries are even more preliminary steps during which they were advised they had ***not*** filed a charge;  screenshots from plaintiffs' online inquiries provide an "Approximate Deadline for Filing a Charge."[7]  *E.g.*, ECF No. 170, App. 2, 11.  As *Perkins* explains, an "online inquiry form does not constitute a charge" unless it contains a "specific statement that can reasonably be construed as a request for the EEOC to take remedial action," and using the form to schedule an EEOC interview is likewise insufficient.  2022 WL 17069145, at *5. Moreover, in *Holowecki*, the Court held that describing the wrongful conduct, including that the

---

[7] The portal for online inquiries expressly advises that "[s]ubmitting an inquiry is different from filing a charge of discrimination" and that, as relevant here, "[t]he laws enforced by EEOC . . . require you to file a charge before you can file a lawsuit for discrimination." https://publicportal.eeoc.gov/Portal/Forms/NewEditForm.aspx?templateId=160&userKey=

plaintiffs "had been the victim[] of [ ] discrimination," was insufficient to be "construed as a request for the agency to act" even on an Intake Questionnaire; instead, what let the plaintiff proceed was her statement "please force Federal Express to end their age discrimination plan." 552 U.S. at 404–05.  Plaintiffs' inquiry forms here lack any comparable request for EEOC action.

Equally unavailing is plaintiffs' prior argument that that the charges they eventually filed "relate[] back" to their online inquiry forms.  ECF No. 169 at 23 (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)).  *Price* involved a "technical defect[]" that the charge was "neither signed nor sworn".  687 F.2d at 77–78.  "An untimely EEOC charge can relate back to a timely EEOC filing if the earlier filing itself would have been 'sufficient as a charge' but for a 'technical' defect such as being unverified or unsigned."  *Perkins*, 2022 WL 17069145, at *4.  *Perkins* ruled the "online inquiry form did not constitute a charge to which [Plaintiff's] late-filed charge can relate back." *Id.* at *5. The same is true here.

**4.   *Claims Beyond Scope of EEOC Charge.***  "[T]he claims an employee can bring in a lawsuit are limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Madaki*, 2022 WL 227163 at *2.  None of the original five plaintiffs mentioned retaliation or provided factual support for it in their charge and thus such claims are barred.[8]  Moreover, all of Jonas's Title VII claims are barred because her EEOC charge solely mentions the ADA—not anything about religion.  App. 12.

---

[8] Plaintiffs previously argued that if United is correct that their retaliation claims "are just repackaged failure-to-accommodate" claim, then their EEOC charges encompass them.  ECF No. 169 at 9–10.  But they cannot have it both ways.  Either their retaliation claims are factually distinct and barred, or they are factually identical and fail for the reasons in Part III.

**V.     The Court Should Dismiss the Now-Abandoned Interactive Process Claims.**

The SAC alleges that "United violated Title VII and the ADA by failing to engage in an individualized interactive process" (SAC ¶ 7) and seeks a declaration "that United has violated Title VII and the ADA by failing to engage in the interactive process . . . in response to requests for accommodations to its COVID-19 vaccine mandate."  SAC at p. 46, Prayer for Relief ¶ c.; *see also id.* ¶¶ 202, 206 (Count I – Title VII) & *id.* ¶¶ 216, 221 (Count III – ADA).  In its earlier motion, United sought dismissal of this claim because neither statute contains a stand-alone requirement to follow an "interactive process," let alone imposes liability for failure to do so.[9]

Plaintiffs have since expressly disavowed the SAC's allegations that an interactive-process failure is sufficient to prove a violation of Title VII or the ADA. *Compare* ECF No. 169 at 15 (stating that "Plaintiffs have not asserted such a claim"), *with* SAC ¶ 7, and SAC at p. 46, Prayer for Relief ¶ c.  That disavowal eliminates the need for this Court to resolve whether an interactive process claim would be viable.  The Court should enforce plaintiffs' disavowal by dismissing any portion of the SAC that purports to state a claim for violation of interactive process and preclude plaintiffs from subsequently asserting – in class certification briefing or otherwise – that United is liable for failing to engage in a sufficient interactive process.

---

[9] The statutory text of Title VII imposes only a substantive duty to reasonably accommodate, not any independent procedural duty to engage in an "interactive process." *See* 42 U.S.C. § 2000e(j).  Thus, if an employer provided a reasonable accommodation (or could not have done so without incurring undue hardship), whether they engaged in an interactive process is irrelevant. *E.g.*, *Leonce v. Callahan*, 2008 WL 58892, at *4 (N.D. Tex. Jan. 3, 2008).  Likewise, the ADA's statutory text imposes only a duty to reasonably accommodate individuals with qualifying disabilities.  *See* 42 U.S.C. § 12112(b)(5)(A).  Accordingly, the Fifth Circuit has clarified that this "interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations." *See Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

**VI.    Plaintiffs' Permanent Injunction Request Should Be Dismissed.**

Finally, the Court has directed the parties to brief whether "Plaintiffs' request to enjoin a vaccination policy that is no longer in effect" should be dismissed.  ECF No. 199; *see also* SAC, Prayer for Relief (e) (requesting an injunction against "terminating, placing on unpaid leave, or failing to promote/hire any employee who has a religious or medical basis for seeking an accommodation from a COVID-19 vaccine mandate").  The answer is clearly yes, under either one of two related doctrines.

**1.**    First, the mootness doctrine applies "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (courts lack "constitutional authority" to address moot issues).  When the issue is injunctive relief, mootness arises "upon the happening of the event sought to be enjoined."  *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).  Speculation that the event might reoccur again at some point in the future is insufficient.  *See Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*, 260 F. Supp. 3d 738, 776 (S.D. Tex. 2017), *aff'd* 734 F. App'x 916 (5th Cir. 2018) (denying injunction based on speculation about the "threat of [future] flooding).  While there is an exception to mootness for "voluntary cessation," this exception does not apply unless the "*only conceivable basis* for a finding of mootness" is the defendant's voluntary conduct.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (emphasis added).  When the reasons for mootness include factors *other than* the defendant's voluntary choices, the plaintiff must prove "that there is a realistic prospect that the violations alleged in its complaint will continue."  *Ctr. for Biological Diversity*, 704 F.3d 425–26 (where defendant did not act to "stave off litigation," voluntary cessation does not apply).

In this case, it is undisputed that the challenged policies no longer exist.  As the Complaint admits, each of the named plaintiffs who were placed on unpaid leave – along with all other accommodated United employees who wished to return – were put back on active status in March 2022.  SAC ¶ 98, 155, 168.  Moreover, United has unequivocally represented that it "has no intention of reinstating unpaid leave."  ECF No. 144 at 8; *see generally* 5th Cir., ECF 00516232574.  Nor does the airline still require employees to be vaccinated.  Hence, the issue of whether United can continue to require unpaid leave in lieu of vaccination is well and truly moot.

Nor is this a circumstance where the "voluntary cessation" exception applies.  What has changed in this case is not just United's policies, but the entire underlying factual context in which those policies arose.  As the SAC recognizes, United's vaccine policy was "driven by [the] delta variant" surge in 2021.  SAC ¶ 47.  Plaintiffs do not and cannot allege that there is any reason to think that such an event will reoccur in the foreseeable future, if ever.  The idea that the country will experience a repeat of the COVID-19 pandemic is highly implausible given what has happened over the last two years, including the rise of less deadly variants, reduced case counts, new anti-viral treatments, widespread and regular distribution of boosters, better scientific understanding of the virus, and improved readiness in the medical community.  As plaintiffs themselves have argued, the pandemic has entered an "endemic" phase, which means that it is unlikely to cause the sort of disruptions we have seen in the past.  *See* ECF No. 135 at 3 (stating that it has become "more clear since the [October 2021] evidentiary hearing" that, "as government officials have confirmed," COVID-19 "will be endemic in the United States").  In fact, the federal government itself has said that the pandemic is over.  *See* H.J.Res. 7 (Apr. 10, 2023); *cf. also FTC v. Zaappaaz, LLC*, 2023 WL 5020618 at *17 (S.D. Tex. June 9, 2023) (denying request for injunctive relief because, *inter alia*, the "pandemic is over").

23

Because the relevant changed circumstances in this case are not just a function of United's own choices, the "voluntary cessation" doctrine does not apply. *Ctr for Biological Diversity*, 704 F.3d 425–26. There is no plausible argument that the end of the pandemic and termination of related business policies are a strategy to "stave off litigation," or that the airline is just waiting for this case to end so that it can reimpose those policies. *Id.* And even if the voluntary cessation doctrine did apply, it is "absolutely clear" – given all of the undisputed factors outlined above – that the challenged conduct is not likely to reoccur. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987).

**2.** "Even though a case is not moot, that does not mean that injunctive relief follows automatically." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 n.10 (11th Cir. 2007) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). To the contrary, an injunction is an "extraordinary" remedy that is never granted as a matter of right. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–14 (1982) (the "exercise of equitable discretion . . . must include the ability to deny as well as grant injunctive relief"); *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (outlining four-factor equitable test for injunctive relief). Thus, even when voluntary cessation does not moot a case, "the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Perez v. Texas*, 970 F. Supp. 2d 593, 602 (W.D. Tex. 2013) (quoting *W.T. Grant Co.*, 345 U.S. at 633 (affirming refusal to award injunctive relief even though the actions were not moot)). "Abandonment of a challenged practice is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice." *Ass'n of Am. Publishers, Inc. v. Frosh*, 607 F. Supp. 3d 614, 619 (D. Md. 2022) (holding that a permanent

24

injunction is unnecessary even though voluntary cessation did not moot claims); *Prison Legal News v. Lindsey*, 2007 WL 9717318, at *3 (N.D. Tex. June 18, 2007) ("A defendant's statement that it does not intend to revive a discontinued policy is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.").

In this case, even if the Court is not convinced that plaintiffs' claim for injunctive relief is moot, it should still decline to exercise its equitable discretion. There is no "need for a determination by this court" given that "the facts and circumstances have changed substantially[.]" *In re Gulf Aerospace Corp.*, 449 F.2d 733, 734 (5th Cir. 1971). Moreover, the immediate question is just about injunctive relief, not about the case as a whole. If plaintiffs were ultimately able to establish liability, they would have access to the monetary remedies provided under Title VII and/or the ADA. There would be no need to also enjoin a policy that no longer exists. A "general injunction which in essence orders a defendant to obey the law is not permitted," *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981), and in the absence of any existing policy, that is, in effect, what plaintiffs would be seeking. Especially considering the limited powers of the federal judiciary and the obligation to take a measured, conservative approach to supervising the affairs of private business, this Court should find that – regardless of whether mootness applies – injunctive relief is simply no longer necessary or appropriate.

## CONCLUSION

United respectfully requests that the Court dismiss (1) the Title VII religious accommodation claims of Castillo, Hamilton, and Jonas; (2) Jonas's and Rains's ADA claims; (3) all plaintiffs' retaliation claims; (4) all claims that are barred based on plaintiffs' EEOC charges; (5) all plaintiffs' Title VII and ADA interactive process claims; and (6) plaintiffs' request for permanent injunctive relief.

Dated: September 13, 2023                    Respectfully submitted,


                                            /s/ *Russell D. Cawyer*
                                            Russell D. Cawyer
                                            TX Bar No. 00793482
                                            KELLY HART & HALLMAN LLP
                                            201 Main Street, Suite 2500
                                            Fort Worth, TX 76102
                                            Telephone: +1.817.878.3562
                                            Facsimile: +1.817.335.2820
                                            Email: russell.cawyer@kellyhart.com

                                            Donald J. Munro
                                            D.C. Bar No. 453600
                                            JONES DAY
                                            51 Louisiana Avenue, NW
                                            Washington, D.C. 20001
                                            Telephone: +1.202.879.3939
                                            Facsimile: +1.202.626-1700
                                            Email: dmunro@jonesday.com

                                            Jordan M. Matthews
                                            IL Bar No. 6300503
                                            JONES DAY
                                            110 North Wacker Drive, Suite 4800
                                            Chicago, IL 60601
                                            Telephone: +1.312.782.3939
                                            Facsimile: +1.312.782.8585
                                            Email: jmatthews@jonesday.com

                                            Alexander V. Maugeri
                                            NY Bar No. 5062666
                                            JONES DAY
                                            250 Vesey Street
                                            New York, NY 10281
                                            Telephone: +1.212.326.3939
                                            Facsimile: +1.212.755.7306
                                            Email: amaugeri@jonesday.com


                                            **ATTORNEYS FOR DEFENDANT**
                                            **UNITED AIRLINES, INC.**

## CERTIFICATE OF SERVICE

On September 13, 2023, I filed the foregoing documents with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


_/s/ *Russell D. Cawyer*_____
Russell D. Cawyer