# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

DAVID SAMBRANO, individually and on
behalf of all others similarly situated, *et al.*,

        *Plaintiffs,*

      v.

UNITED AIRLINES, INC.,

        *Defendant*.

Civil Action No.: 4:21-cv-01074-P

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR PARTIAL DISMISSAL OF THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.   Plaintiffs Castillo, Hamilton, and Jonas Have Pled Sufficient Failure-to-Accommodate Claims. ............................................................................................... 3

II.  Plaintiffs Have Plausibly Alleged Disabilities Under the ADA. ......................... 8

III. Plaintiffs Have Sufficiently Pled a Campaign of Coercion and Retaliation in Violation of Title VII and the ADA.................................................................. 12

IV.  Plaintiffs' Claims Are Not Time-Barred or Procedurally Deficient. ............... 15

V.   Plaintiffs Do Not Assert Standalone Interactive-Process Claims. .................... 20

VI.  The Court Should Not Dismiss Plaintiffs' Request for a Permanent Injunction. ............. 21

     A.   The Voluntary Cessation Doctrine Prevents Mootness.......................... 21

     B.   United Has Not Met Its Heavy Burden of Showing Impossibility........................ 23

     C.   The Court Should Not Resolve this Question at the Motion-to-Dismiss Stage. .... 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Antoine v. FirstStudent, Inc.*,
   713 F.3d 824 (5th Cir. 2013) ................................................................................. 4, 5

*Ass'n of Am. Pubs. v. Frosh*,
   607 F. Supp. 3d 614 (D. Md. 2022)............................................................................ 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................... 11

*Breshears v. Oregon Department of Transportation*,
   2023 WL 136550 (D. Or. Jan. 9, 2023) ...................................................................... 4

*Bruff v. N. Miss. Health Servs.*,
   244 F.3d 495, 502 (5th Cir. 2001) .......................................................................... 5, 6

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006).............................................................................................. 13, 14

*Butler v. Exxon Mobil Corp.*,
   838 F. Supp. 2d 473 (M.D. La. 2012)........................................................................ 10

*Cannon v. Jacobs Field Servs. N. Am., Inc.*,
   813 F.3d 586 (5th Cir. 2016) ................................................................ 8

*Carter v. Eagle Railcar Servs. Longview, Texas*,
   2022 WL 17489167 (E.D. Tex. Dec. 7, 2022) ................................... 9, 12

*Conner v. La. Dep't of Health & Hosps.*,
   247 F. App'x 480 (5th Cir. 2007) ......................................................... 17

*Cooper v. AT & T Corp./Lucent Tech.*,
   1998 WL 1784223 (W.D. Tex. Oct. 22, 1998) ................................ 14, 15

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
   704 F.3d 413 (5th Cir. 2013) .................................................. 21, 23, 24

*Davies By & Through Davies v. Lackawanna Cnty.*,
   2018 WL 924205 (M.D. Pa. Feb. 14, 2018) ........................................ 12

*Edelman v. Lynchburg Coll.*,
   535 U.S. 106 (2002) .......................................................................... 16, 17

*EEOC v. N. Memorial Health Care*,
   908 F.3d 1098 (8th Cir. 2018) ............................................................ 12, 14

*EEOC v. U.S. Steel Tubular Prods., Inc.*,
   2016 WL 11795815 (S.D. Tex. Aug. 4, 2016) ..................................... 14

*EEOC v. Vantage Energy Servs., Inc.*,
   954 F.3d 749 (5th Cir. 2020) ............................................................... 19

*Egelkrout v. Aspirus, Inc.*,
   2022 WL 2833961 (W.D. Wis. July 20, 2022) ....................................... 4

*Eversley v. MBank Dallas*,
   843 F.2d 172 (5th Cir. 1988) ............................................................. 5, 6

*Fed. Express Corp. v. Holowecki*,
   552 U.S. 389 (2008) .......................................................................... 17, 18

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*,
   528 U.S. 167 (2000) ............................................................................. 22

*Gregory v. Ga. Dep't of Hum. Res.*,
   355 F.3d 1277 (11th Cir. 2004) ........................................................... 20

*Griffin v. American Zurich Insurance Co.*,
   697 F. App'x 793 (5th Cir. 2017) ......................................................... 11

*Grubic v. City of Waco*,
   262 F. App'x 665 (5th Cir. 2008) ......................................................... 15

*Guerra v. United Parcel Serv., Inc.*,
   250 F.3d 739, 2001 WL 274296 (5th Cir. 2001) ................................ 21

*Hall v. GE Plastic Pac. PTE Ltd.*,
   327 F.3d 391 (5th Cir. 2003) ................................................................ 6

*Hamilton v. Dallas Cnty.*,
--F.4th--, 2023 WL 5316716 (5th Cir. Aug. 18, 2023) ........................... 3, 6, 7

*Hebert v. CEC Ent., Inc.*,
2016 WL 5003952 (W.D. La. July 6, 2016) ...................................... 10

*Huge v. Boeing Co.*,
2015 WL 6626568 (W.D. Wash. Oct. 30, 2015) ................................. 12

*Hustvet v. Allina Health Sys.*,
283 F. Supp. 3d 734 (D. Minn. 2017) ............................................ 10

*Iron Arrow Honor Society v. Heckler*,
464 U.S. 67 (1983) ............................................................... 22

*J.D. by Doherty v. Colonial Williamsburg Found.*,
925 F.3d 663 (4th Cir. 2019) .................................................... 9

*Jackson v. Methodist Health Servs.*,
2023 WL 2486599 (C.D. Ill. Feb. 10, 2023) .................................... 4

*Johnson v. United Parcel Serv., Inc.*,
2020 WL 779459 (D. Md. Feb. 14, 2020) ...................................... 15

*Leigh v. Artis-Naples, Inc.*,
2022 WL 18027780 (M.D. Fla. Dec. 30, 2022) ................................. 14

*Leonce v. Callahan*,
No. 7:03-cv-110-KA, 2008 WL 58892 (N.D. Tex. Jan. 3, 2008) .............. 21

*Loulseged v. Akzo Nobel Inc.*,
178 F.3d 731 (5th Cir. 1999) .................................................... 21

*Love v. City of Dallas*,
No. 3:96-cv-0532-R, 1997 WL 278126 (N.D. Tex. May 14, 1997) ............. 7

*Madaki v. Am. Airlines, Inc.*,
No. 4:21-cv-0760-P, 2022 WL 227163 (N.D. Tex. Jan. 25, 2022) ........... 3, 4

*Mills v. St. Louis Cnty. Gov't*,
2017 WL 3128916 (E.D. Mo. July 24, 2017) ................................... 10

*Milton v. Tex. Dep't. of Crim. Just.*,
707 F.3d 570 (5th Cir. 2013) ................................................... 10

*Perez v. Texas*,
970 F. Supp. 2d 593 (W.D. Tex. 2013) ...................................... 24, 25

*Picard v. St. Tammany Par. Hosp.*,
423 F. App'x 467 (5th Cir. 2011) .............................................. 21

*Price v. Sw. Bell Tel. Co.*,
687 F.2d 74 (5th Cir. 1982) .................................................... 16

*Prison Legal News v. Lindsey*,
No. 3:07-cv-0367-P, 2007 WL 9717318 (N.D. Tex. June 18, 2007) .......... 25

iii

*Sambrano v. United Airlines, Inc.*,
   No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ........................................... 2, 13, 14

*SEC v. Gentile*,
   939 F.3d 549 (3d Cir. 2019)......................................................................................... 25

*Tagore v. United States*,
   735 F.3d 324 (5th Cir. 2013) ........................................................................................ 13

*Thompson v. City of Waco*,
   764 F.3d 500 (5th Cir. 2014) ......................................................................................... 3

*Together Employees v. Mass General Brigham Inc.*,
   573 F. Supp. 3d 412 (D. Mass. 2021) ........................................................................ 11

*United States v. Holy Land Found. for Relief & Dev.*,
   No. 3:04-cr-240-G, 2007 WL 1308383 (N.D. Tex. May 4, 2007) ........................................ 6

*United States v. Oregon State Med. Soc'y*,
   343 U.S. 326 (1952).................................................................................................... 24

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953)..................................................................................... 21, 22, 23, 24, 25

*Welsh v. Fort Bend Indep. Sch. Dist.*,
   941 F.3d 818 (5th Cir. 2019) ......................................................................................... 7

*Wren v. Midwestern State University*,
   No. 7:18-cv-00060-O-BP, 2019 WL 3099408 (N.D. Tex. June 25, 2019) ....................... 10, 11

**Statutes**

42 U.S.C. § 12102.............................................................................................................. 9

42 U.S.C. § 2000e-5........................................................................................................... 16

ADAAA, Pub. L. No. 110-325, 122 Stat. 3553 (2008) ...................................................... 8

**Other Authorities**

EEOC, *Filing a Charge of Discrimination With the EEOC* ............................................ 16

EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws: Vaccinations—Title VII Religious Objections to COVID-19 Vaccine Requirements*, at ¶ L.3 (para. Updated Mar. 1, 2022)............................................. 5

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................. 11

**Regulations**

28 C.F.R. § 36.105 ............................................................................................................ 9

29 C.F.R. § 1601.12 .......................................................................................................... 17

29 C.F.R. § 1630.1 ............................................................................................................ 8

After multiple failed attempts, United Airlines is back with its *third* motion to dismiss.  *See* ECF No. 209 ("Mot.").  However, this motion is perhaps United's most surprising, as it quickly followed the Court's expressing "serious concerns regarding the merit of a motion to dismiss this case for failure to state a claim."  ECF No. 199 at 2.  Thus, Plaintiffs are back again, briefing United's latest attempt to escape scrutiny of an accommodation system that the Fifth Circuit already concluded irreparably harmed Plaintiffs.

There are many reasons to deny United's Motion: (i) Plaintiffs have sufficiently alleged facts showing they suffered adverse employment actions; (ii) Plaintiffs Jonas and Rains sufficiently alleged facts showing how their disabilities impact daily life; (iii) United's draconian accommodations and coercion are clearly sufficient to support claims of retaliation; (iv) Plaintiffs exhausted their administrative remedies through timely EEOC filings; (v) United's admitted lack of an interactive process is a key component of Plaintiffs' failure-to-accommodate claim; and (vi) Plaintiffs' request for a permanent injunction is not moot, and, in any event, binding authority confirms that such a mootness determination is a question of fact, and thus it cannot be decided at the motion-to-dismiss stage.  United's Motion therefore must be denied.

## BACKGROUND

After United announced that it would require all employees to receive a COVID-19 vaccine, United's CEO, Scott Kirby, threatened employees "to be very careful about" requesting any religious or medical accommodations.  Second Am. Compl. ¶ 49 (ECF No. 156) ("SAC").  As Mr. Kirby explained, United would allow "few people" to get through the exemption process, and he thus discouraged employees from suddenly deciding they were religious.  *Id.*  Were that not enough, United decided to employ family members to help coerce any holdouts, mailing postcards to all unvaccinated employees, which broadcast the employees' medical information and stated

that they would "be separated from United" if they did not receive an exemption.[1] *Id.* ¶ 51.

Considering those discriminatory and retaliatory actions, Plaintiffs—and many other United employees—filed charges of discrimination and retaliation with the EEOC. And, shortly thereafter, Plaintiffs filed their initial complaint in this Court on September 21, 2021, seeking a temporary restraining order and preliminary injunction. *Id.* ¶ 8. Only after facing Plaintiffs' claims and a preliminary-injunction hearing did United agree to delay terminations under its vaccine mandate. *Id.* ¶ 9. However, United subsequently determined that many employees with religious or medical reasons for not receiving a COVID-19 vaccine would be placed on indefinite unpaid leave (*i.e.*, effectively terminated). And, for those employees who United later determined could remain working, including several named Plaintiffs, United required that they always wear respirators, including while they were forced to sit and eat alone outside. *Id.* ¶¶ 115, 131. Through this unreasonable treatment, United created an environment where other United employees felt free to harass and ridicule Plaintiffs and other similarly situated employees. *Id.* ¶¶ 15, 131, 144.

This Court ultimately denied Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs were not suffering irreparable harm. *See* ECF No. 104. The Fifth Circuit reversed and remanded, holding that Plaintiffs "are actively being coerced to violate their religious convictions" and thus that their "harm is irreparable." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *6 (5th Cir. Feb. 17, 2022), *reh'g denied*, 45 F.4th 877 (5th Cir. 2022).

After the case returned to this Court, Plaintiffs filed the SAC, and United moved for partial dismissal. *See* ECF No. 160. At that time, the parties also began class discovery, which remains

---

[1] The efforts to dissuade employees from seeking a religious or medical accommodation continued, as United created an arbitrary deadline by which employees had to submit their requests, subjected those employees to harassing and invasive questions, and announced that every "accommodated" employee would be placed on indefinite unpaid leave that could last for years. *Id.* ¶¶ 65–67, 70–72, 75.

ongoing.   Thereafter, the Court denied United's motion without prejudice, pending the Fifth Circuit's decision in *Hamilton v. Dallas County*.   *See* ECF No. 181.   Now that the Fifth Circuit has issued its en banc decision in *Hamilton*, --F.4th--, 2023 WL 5316716 (5th Cir. Aug. 18, 2023), the Court set a deadline for United to file a renewed motion to dismiss, "to the extent Defendant intends" to do so.   *See* ECF No. 199.   In doing so, the Court also noted its "serious concerns regarding the merit of a motion to dismiss this case for failure to state a claim."   *Id.*   But United was undeterred and has now filed its third motion to dismiss.

## ARGUMENT

Like its recent motion to dismiss, United's renewed motion misunderstands the law, relies on inapposite or overturned authority, and misstates facts.   Rather than follow those misguided arguments, the Court is to "accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff."   *Madaki v. Am. Airlines, Inc.*, No. 4:21-cv-0760-P, 2022 WL 227163, at *2 (N.D. Tex. Jan. 25, 2022).   In doing so, the Court need only determine "whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."   *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).   Applying these standards, United's Motion must be denied.

## I.   Plaintiffs Castillo, Hamilton, and Jonas Have Pled Sufficient Failure-to-Accommodate Claims.

United asks the Court (at 5–9) to dismiss several of Plaintiffs' failure-to-accommodate claims, relying on numerous misguided arguments.   But each of those arguments fails.

1. United first argues (at 5–7) that masking and testing (no matter how burdensome) is a reasonable accommodation as a matter of law, and thus Plaintiffs cannot challenge United's accommodation.   That is not the law, and the notion that an employer may impose such an "accommodation" with impunity is found nowhere in the authority United cites.   But the Court

3

need not resolve that question now.  Rather, at the motion-to-dismiss stage, "the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff."  *Madaki*, 2022 WL 227163, at *2.  And "[w]hether an accommodation is reasonable is a question of fact."  *Antoine v. FirstStudent, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

While some courts *outside* the Fifth Circuit have approved masking and testing options at the motion-to-dismiss stage, those cases have not applied the binding legal standard from *Antoine*, and their facts are distinguishable.  For example, *Jackson v. Methodist Health Services Corporation*, 2023 WL 2486599, at *1 (C.D. Ill. Feb. 10, 2023), *appeal docketed,* No. 23-1464 (7th Cir. Mar. 13, 2023), involved a healthcare worker who refused to comply with the testing requirements for religious reasons and who was required to wear a mask indoors.  In *Egelkrout v. Aspirus, Inc.*, 2022 WL 2833961, at *3 (W.D. Wis. July 20, 2022), the employer did not even have a vaccine requirement, and thus there was no comparable accommodation to assess.  That court noted, however, that even if it "adopte[d] plaintiff's view of the testing requirement as an 'accommodation,'" the defendant worked with the plaintiff to allow her to "submit a saliva test" at home rather than take tests at the defendant's facilities.  *Id.* And *Breshears v. Oregon Department of Transportation*, 2023 WL 136550 (D. Or. Jan. 9, 2023), concerned an employee who sought a religious exemption but then refused a masking accommodation because of a supposed lung condition.  *Id.* at *3.  Each of these cases is significantly different than this case, but United omits these key facts when asserting that these out-of-circuit cases "cannot be distinguished."  Mot. at 7.[2]  Quite the opposite, they are distinguished with ease.

---

[2] United's reliance on the EEOC guidance (at 5–6 n.3) is equally misguided.  The guidance states that employers should take into consideration whether the employee "works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public."  EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws: Vaccinations—Title VII Religious Objections to COVID-19 Vaccine*

4

Indeed, there is a significant difference between the general requirement to wear a mask or take a test, as was the situation in the cases described above, and United's onerous requirements as alleged in the SAC. *See*, *e.g.*, SAC ¶¶ 83 n.2, 115–17, 128, 131, 142–44. In fact, the history of this case explains the difference. During the COVID-19 pandemic, but before United's vaccine mandate, employees like Plaintiffs were permitted to do their jobs while wearing masks (including surgical masks) and taking periodic temperature checks. *Id.* ¶ 32. Then, United suddenly determined that those standards would no longer work, and it imposed its vaccine mandate. And, as relevant here, it also imposed a draconian rule where "accommodated" employees could no longer wear surgical masks and take periodic tests. Rather, the "accommodated" employees were required to wear respirators between bites of food and produce COVID-19 test results even when not coming to work. *Id.* ¶¶ 115, 118. Placing such a scarlet letter on the "accommodated" employees differs substantially from a run-of-the-mill masking-and-testing regime.

United tries to brush these obvious differences aside by mischaracterizing Plaintiffs' allegations and arguing that even burdensome accommodations can be reasonable. Mot. at 6–7 (citing *Bruff v. N. Miss. Health Servs.*, 244 F.3d 495, 502 n.23 (5th Cir. 2001), and *Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988)). But United again ignores that, in the Fifth Circuit, a factfinder decides whether an accommodation is reasonable. *Antoine*, 713 F.3d at 831. Thus, while some burdensome accommodations may ultimately be found reasonable by a factfinder, Plaintiffs have sufficiently pled at this stage that the particular accommodations they received—onerous masking and testing and isolation during work and mealtimes—were unreasonable and part of United's pattern of trying to coerce employees to sacrifice their faith and

---

*Requirements*, at ¶ L.3 (para. Updated Mar. 1, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L. Plaintiffs have plausibly alleged that United did not take these factors into consideration.

health.  United's only cases for this point, *Bruff* and *Eversley*, were decided after the close of discovery, which further undermines United's argument that its masking-and-testing policy was reasonable as a matter of law.  *See Bruff*, 244 F.3d at 499 (appeal following trial), and *Eversley*, 843 F.2d at 173 (appeal following summary judgment).

2.  United is also misguided when it claims (at 8) that Plaintiffs are estopped from "complaining about masking and testing."  The issue here is not masking and testing in the abstract. Rather, it is the draconian policies United adopted as part of its campaign of coercion.  *See* SAC ¶¶ 115–19, 127–29, 131–32, 140, 143–46, 154–58, 164, 167–70, 179–80, 185–86.  While Plaintiffs did suggest at the outset of litigation that masking and testing may be a reasonable accommodation, they did not agree to United's specific, coercive regime.  And discovery will confirm as much.

Thus, United's cited cases, involving directly contradictory statements by a party, are inapposite, and estoppel does not apply.  *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (applying estoppel because the plaintiff first argued that the one defendant was the manufacturer of the electric cord at issue and then later argued that a different defendant was the manufacturer of the cord); *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-cr-240-G, 2007 WL 1308383, at *1 (N.D. Tex. May 4, 2007) (applying estoppel because the government first argued "that the documents were in its possession" and then later argued that the documents were not within its possession), *modified*, 2007 WL 1599135 (N.D. Tex. June 4, 2007).

3.  Finally, despite *Hamilton*'s clear holding to the contrary, United nonetheless argues (at 9) that Plaintiffs Castillo and Hamilton have not suffered any materially adverse or more-than-de-minimis actions.  This misunderstands *Hamilton* and Plaintiffs' allegations.

Starting with *Hamilton*, United is incorrect (at 9) that the court "favorably cited other circuits that require the employer action to be 'materially adverse.'"  Rather, the Fifth Circuit stated

that the defendant argued the court should adopt a "more than de minimis" and "materially adverse" standard. *Hamilton*, 2023 WL 5316716, at *7–8 (quotation marks omitted). While the Fifth Circuit acknowledged that "nearly every circuit court seems to have adopted one of these limitations," it did not adopt the "materially adverse" standard. *Id.* And the Fifth Circuit only stated that Title VII "does not permit liability for de minimis workplace trifles." *Id.* In other words, the Fifth Circuit has set out a "more than de minimis" standard and nothing more. The Court should reject United's request that it reach beyond *Hamilton*'s holding.

And, taking the allegations as true at this stage, Plaintiffs Castillo and Hamilton easily clear this de minimis hurdle. The SAC alleges that United made the decision to terminate Plaintiff Castillo and to put Plaintiff Hamilton on unpaid leave. SAC ¶¶ 114, 127, 140. Each of these decisions was much more than de minimis. They were ultimate employment decisions. *Love v. City of Dallas*, No. 3:96-cv-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997); *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019).

Moreover, the SAC plausibly alleges that those decisions harmed Plaintiffs. *See, e.g.*, SAC ¶ 132. And, as Plaintiffs will demonstrate at the appropriate time, discovery has already confirmed this in spades. The fact that this lawsuit forced United to walk back portions of its universal unpaid-leave plan does not erase United's previous ultimate decisions, which harmed Plaintiffs.

Regardless, the unpaid-leave decision was not the only adverse employment action. When United changed its mind about terminating Mr. Castillo, it changed the conditions of his employment by requiring that he wear a respirator at all times without proper training or the required oxygenation breaks. SAC ¶¶ 115–16. United also required Mr. Castillo to wear this respirator outdoors, limiting "his ability to communicate with colleagues" and thus putting his coworkers at a "significant safety risk." *Id.* ¶ 117. Because this altered the conditions and terms

of Mr. Castillo's employment, he "experienced tremendous discrimination from his co-workers." *Id.* ¶ 118.[3]  And a motion to dismiss is not the time to assess the merits of these allegations.

As for Mrs. Hamilton, United also altered the conditions of her employment by requiring that she wear a respirator at all times without proper training and oxygenation breaks and that she eat alone, sometimes outdoors.  *Id.* ¶¶ 128, 131.  Because of these conditions, Mrs. Hamilton also experienced harassment from coworkers.  *Id.* ¶ 129.  These allegations of discrimination are more than de minimis, and Mrs. Hamilton and Mr. Castillo have sufficiently pled adverse employment actions.  United's attempt to avoid these issues on a motion to dismiss should be rejected.

## II.    Plaintiffs Have Plausibly Alleged Disabilities Under the ADA.

United also asks the Court to dismiss Plaintiffs' ADA claims, arguing (at 10–12) that Plaintiffs Jonas and Rains do not suffer any real disabilities that limit any major life activity.  Of course, this would come as a surprise to these Plaintiffs, who deal with these disabilities daily. Moreover, United's argument remains doomed by its failure to understand the ADA Amendments Act ("ADAAA"), which expanded the "substantially limits a major life activity" standard.  Under the correct standard, it is clear that Plaintiffs Jonas and Rains have plausibly alleged disabilities.

The ADA's protections extend to all individuals with a qualifying "disability," which includes: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  In 2008, Congress passed the ADAAA, Pub. L. No. 110-325, 122 Stat. 3553 (2008), to "make it easier for people with disabilities to obtain protection under the ADA."  *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting 29 C.F.R. § 1630.1(c)(4)).  And, as the Fifth Circuit held, "[a] principal way in which

---

[3] United's attempt to characterize these complaints (at 9) as the daily travails of the workplace reflects its continued inability to understand (or care about) the impact of its actions.

Congress accomplished that goal was to broaden the definition of 'disability.'" *Id.* As the applicable regulations make clear, the amendments clarify that "'[s]ubstantially limits' is not meant to be a demanding standard" but should instead "be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 36.105(d)(1). That is fatal to United's attempt (at 12) to read the ADAAA as applying the same standard as the ADA for what constitutes an impairment that "substantially limits … major life activities."

In fact, the ADAAA provides rules of construction for determining whether an impairment qualifies as a disability. Most relevant here are the commands that: (1) "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," such as medication and EpiPens; and (2) "[a]n impairment that is episodic" is still a disability if "it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D)–(E); 28 C.F.R. § 36.105(d)(1)(iv), (viii).

Following the ADAAA, courts have concluded that severe allergies leading to anaphylaxis or hospitalization constitute a disability under the ADA. For example, in *Carter v. Eagle Railcar Services Longview, Texas*, the plaintiff alleged experiencing several severe allergic reactions that led to restricted swallowing and breathing and required emergency treatment. 2022 WL 17489167, at *1 (E.D. Tex. Dec. 7, 2022). In that case, the district court rejected the defendant's argument that these allergic reactions did not substantially limit a major life activity under the ADA. *Id.* at *3. Rather, the court noted that pre-ADAAA caselaw holding that allergies are too "temporary" and "sporadic" to substantially limit a major life activity is "directly at odds" with the ADAAA's "express inclusion of episodic impairments as disabilities." *Id.*[4]

---

[4] Many other decisions join that conclusion. *E.g., J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 671 (4th Cir. 2019) (holding that there was a genuine dispute of material fact as to whether the plaintiff's gluten sensitivity and diet restrictions were a disability); *Mills v.*

In contrast, courts that have denied disability claims based on severe allergies have relied on outdated, pre-ADAAA authority. *See, e.g., Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 740 & n.3 (D. Minn. 2017) (relying on a 1999 case holding that a severe peanut allergy was not a disability), *aff'd*, 910 F.3d 399, 411 (8th Cir. 2018) (noting that there was "insufficient evidence in the record to support the conclusion" that the allergies "limit[ed] [plaintiff's] ability to perform major life activities," because "[s]he has never been hospitalized due to an allergic … reaction, never seen an allergy specialist, and never been prescribed an EpiPen"); *Milton v. Tex. Dep't. of Crim. Just.*, 707 F.3d 570, 573–74 (5th Cir. 2013) (applying pre-ADAAA case law where the alleged conduct occurred prior to the implementation of the ADAAA); *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 487 (M.D. La. 2012) (applying pre-ADAAA case law because the alleged conduct occurred prior to the effective date of the ADAAA).

And that is also true of the case on which United primarily relies—*Wren v. Midwestern State University*, which applied the same reasoning found in the now-discredited, pre-ADAAA cases.   No. 7:18-cv-00060-O-BP, 2019 WL 3099408 (N.D. Tex. June 25, 2019), *report and recommendation adopted*, 2019 WL 3081849 (N.D. Tex. July 15, 2019).   In *Wren*, the plaintiff alleged that her allergies required her to carry an EpiPen, take medication, and submit to dietary and environmental restrictions, which affected major life activities. *Id.* at *9.   The district court concluded that the plaintiff's allergies did not constitute a disability because she did "not allege how her allergies substantially limit [her major life activities]." *Id.*   In reaching this conclusion, the district court relied on pre-ADAAA cases and overlooked the obvious fact that "[s]wallowing

---

*St. Louis Cnty. Gov't*, No. 4:17-cv-0257, 2017 WL 3128916, at *5 (E.D. Mo. July 24, 2017) (concluding that a severe shellfish allergy that could lead to hospitalization constitutes a disability); *Hebert v. CEC Ent., Inc.*, No. 6:16-cv-00385, 2016 WL 5003952, at *3 (W.D. La. July 6, 2016) (concluding that a severe food allergy that could lead to anaphylaxis is a disability), *report and recommendation adopted*, No. 6:16-cv-00385, 2016 WL 5081009 (W.D. La. Sept. 16, 2016).

and breathing are undoubtedly major life activities." *Carter*, 2022 WL 17489167, at *3.[5]   That *Wren* also referenced the ADAAA does not overcome that court's reliance on pre-ADAAA cases. Nor does it excuse the court's failure to apply the loosened standard under the ADAAA, which, among other things, provides that "an impairment that is episodic" is still a disability if "it would substantially limit a major life activity when active."   42 U.S.C. § 12102(4)(D).

Here, under the appropriate, post-ADAAA "broad" definition of disability, Plaintiffs Jonas and Rains have adequately alleged a qualifying disability under the ADA.   At the motion-to-dismiss stage, they need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of the claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under this settled rule and the post-ADAAA definition of disability, Plaintiffs' allegations are more than adequate.   For instance, Plaintiff Jonas alleges that "[s]he lives with the threat of severe reactions to various allergens, taking allergy medications each day and constantly carrying a rescue inhaler and epi-pen with her in case she comes into contact with an environmental trigger." SAC ¶ 137.   Similarly, Mr. Rains alleges that he has a "history of allergic reactions—including anaphylaxis."[6]   *Id.* ¶ 163.   As in *Carter*, these allegations of anaphylaxis and the need for daily

---

[5]   The remaining cases United cites (at 10–11) fail to address the question of when allergies constitute a disability. *Griffin v. American Zurich Insurance Co.*, 697 F. App'x 793, 797 (5th Cir. 2017) (addressing a plaintiff's alleged disability involving a neck injury, not allergies, and summarily concluding that the plaintiff's "pleadings ... contain no facts about how his impairment affects his major life activities."); *Together Employees v. Mass General Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021) (addressing allegations about PTSD, pregnancy, and mental anguish, all of which affected the major life activity of "working."), *aff'd*, 32 F.4th 82 (1st Cir. 2022).

[6] This daily threat of an allergic reaction presents another serious medical risk for Plaintiff Rains, as anaphylaxis is even more dangerous for him considering he already suffers from hereditary heart disease, heart stents, and a repaired aorta.  SAC ¶ 161.  And, as Plaintiff Rains has already explained to United in discovery, his heart disability substantially affects many aspects of his daily life, making walking difficult, and requiring daily attention to his exercise and diet.

care give rise to the reasonable inference that these Plaintiffs' allergies, when active, interfere with their breathing and swallowing, which are "undoubtedly major life activities." *Carter*, 2022 WL 17489167, at *3. Accordingly, Plaintiffs adequately allege a qualifying disability under the ADA.

### III. Plaintiffs Have Sufficiently Pled a Campaign of Coercion and Retaliation in Violation of Title VII and the ADA.

United also fails (at 12–15) to provide the Court with any reason to dismiss Plaintiffs' retaliation claims. After Plaintiffs weathered repeated coercion, United retaliated against them by imposing unreasonable and unlawful accommodations. *See* SAC ¶¶ 207–12, 222–27. Each of United's attempts to avoid this conclusion fails.

1. Contrary to United's understanding (at 12–14), allegations of unreasonable accommodations routinely (and properly) overlap with allegations of retaliation in discrimination cases. *See, e.g.*, *Huge v. Boeing Co.*, 2015 WL 6626568, at *11 (W.D. Wash. Oct. 30, 2015) (denying the employer's summary judgment motion because fact issues remained as to whether placing plaintiff on unpaid leave after she sought an accommodation was retaliatory and an unlawful accommodation); *Davies By & Through Davies v. Lackawanna Cnty.*, 2018 WL 924205, at *2 (M.D. Pa. Feb. 14, 2018) ("Here, there are claims of discrimination based on failure to accommodate Plaintiff's disability, which are factually intertwined with the retaliation claim."). It should come as no surprise that United's decision to respond to accommodation requests with draconian "accommodations" sparked retaliation claims.

On this, United's authority (at 13–14) is inapposite. For example, *EEOC v. North Memorial Health Care* addressed whether the plaintiff's accommodation request was "oppositional" activity. 908 F.3d 1098, 1103 (8th Cir. 2018). The Eighth Circuit's resolution of that question has nothing to do with whether unreasonable accommodations may also be a form of retaliation. And the Fifth Circuit's decision in *Tagore v. United States* is even less relevant, as it had nothing to do with a

retaliation claim.  735 F.3d 324, 327 n.3 (5th Cir. 2013).  United thus identifies no support for its argument that a plaintiff cannot rely on overlapping allegations for a failure-to-accommodate claim and a retaliation claim.  To the contrary, such overlap is common.  Were United correct, employers could disguise their retaliation as harsher-than-necessary accommodations.  But that is not the law, and the Court should reject United's attempt to sidestep scrutiny of its retaliatory actions.

2.  Additionally, Plaintiffs have plausibly alleged that United's actions would dissuade a reasonable employee.  But United argues (at 14) that Plaintiffs' retaliation claims fail because United treated other employees even worse.  In other words, United argues that, because it also *fired* employees who did not receive a COVID-19 vaccine, United's "irreparabl[y]" "harm[ful]" actions against Plaintiffs cannot be retaliatory.  *Sambrano*, 2022 WL 486610, at *6.  But that ignores the Fifth Circuit's conclusion that United's coercive behavior was irreparably harming its employees who requested accommodations.  That United also fired others is no answer.

In all events, were United correct on the law, an employer would be absolved of liability simply by finding at least one class of employees to treat worse than those against whom it wants to retaliate.  United's half-hearted attempt to defend this point (at 15) notably lacks any authority.  Fortunately, the law provides otherwise: Plaintiffs need only plausibly allege that United's actions "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  The SAC does just that, alleging that: (1) Scott Kirby threatened employees to "be very careful about" requesting accommodations; (2) United created an environment where employees felt free to harass Plaintiffs; and (3) United imposed draconian and arbitrary "accommodations."  *See, e.g.*, SAC ¶¶ 49, 70–72, 94, 98, 100–04, 115–19, 127–31, 143–46, 157–58, 169.  Thus, the SAC plausibly alleges that United demonstrated disdain for Plaintiffs before the vaccine mandate went into effect and then

retaliated against Plaintiffs through unlawful accommodations when they did not acquiesce to United's demands.  This would unquestionably dissuade some employees from speaking up about United's violations of the law and requesting accommodations.  *Burlington N.*, 548 U.S. at 57.

Indeed, the Fifth Circuit has already recognized as much, concluding that Plaintiffs' allegations show that they "are being subjected to ongoing coercion based on their religious beliefs*." Sambrano*, 2022 WL 486610, at *3.  It defies reason for United to continue arguing (at 14 n.6) that such "ongoing coercion" would not "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N.*, 548 U.S. at 57, 69 (explaining that, for allegations of retaliation, "[c]ontext matters").  At the motion-to-dismiss stage, Plaintiffs' allegations are accepted as true, and they are sufficient to state a retaliation claim.

3.  Finally, Plaintiffs' retaliation claims must survive United's Motion because Plaintiffs have sufficiently alleged that they opposed unlawful practices.  In response, United can only muster (at 15) a handful of out-of-circuit cases to argue that requesting an accommodation is not protected activity under Title VII's "opposition" clause.  And, while the Fifth Circuit has not addressed this issue, courts within the Fifth Circuit, and the EEOC, have endorsed the opposite view.  *See, e.g., EEOC v. U.S. Steel Tubular Prods., Inc.*, 2016 WL 11795815, at *16 (S.D. Tex. Aug. 4, 2016); *Cooper v. AT & T Corp./Lucent Tech.*, 1998 WL 1784223, at *7 n.104 (W.D. Tex. Oct. 22, 1998), *report and recommendation adopted,* 1998 WL 1978660 (W.D. Tex. Dec. 8, 1998).

Moreover, United's out-of-circuit cases are inapposite, as none was decided at the motion-to-dismiss stage.  Rather, the cases United cites (at 14–15) considered the available evidence during an injunction hearing or following motions for summary judgment to decide whether the plaintiffs' exemption requests were oppositional activity.  *See Leigh v. Artis-Naples, Inc.*, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022) (preliminary-injunction stage); *N. Mem'l*, 908

14

F.3d at 1102 (motion for summary judgment); *Johnson v. United Parcel Serv., Inc.*, 2020 WL 779459, at *6 (D. Md. Feb. 14, 2020), *aff'd*, 839 F. App'x 781 (4th Cir. 2021) (motions for summary judgment).  Thus, whether Plaintiffs' actions were oppositional under Title VII is a fact question to be decided later.

United's argument is further undercut by its own concession (at 12) that "[t]he Fifth Circuit 'applies the same analysis to ADA and Title VII retaliation claims.'"  (quoting *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008)).  And, "[i]n interpreting the ADA, the EEOC considers a request for a reasonable accommodation of a disability to constitute a protected activity."  *Cooper*, 1998 WL 1784223, at *7 (citation omitted).  If the "same analysis" applies to retaliation claims under the ADA and Title VII, then "a request for a reasonable accommodation" under Title VII "constitute[s] a protected activity," and United's argument must be rejected.

## IV.    Plaintiffs' Claims Are Not Time-Barred or Procedurally Deficient.

United also requests dismissal (at 16–20) of several of Plaintiffs' claims based on a technicality that United itself misunderstands.  Specifically, United suggests that several of Plaintiffs' EEOC charges were untimely or suffered from procedural deficiencies.  For instance, United points (at 17–18) to the EEOC forms for Plaintiffs Rains, Castillo, and Medlin that list charge dates in 2022 for the Plaintiffs.  These are the "Form 5" EEOC charges that United attached to its Motion.  According to United, those forms suggest that: (1) Plaintiffs should not have previously represented to the Court that they filed charges in September 2021; and (2) some of the charges are untimely.  Both arguments are wrong for the same reason—the date on the EEOC Form 5 is not the date Plaintiffs first charged United with discriminatory and retaliatory conduct.  Understanding the charging process and how the EEOC responds to parties charging their employers of discrimination reveals that no charge here is untimely.

15

Preliminarily, it is important to understand the EEOC's complicated filing system.  When using the EEOC's Public Portal to file a charge of discrimination, the agency requires users to go through a multi-step process that includes: (1) submitting an online inquiry; (2) scheduling an interview with an EEOC representative; (3) participating in the interview; (4) allowing the representative to assist in the preparation of the charge; and, after editing, (5) signing the formal "Form 5" charging document that the employer receives.  *See* EEOC, *Filing a Charge of Discrimination With the EEOC*, https://www.eeoc.gov/filing-charge-discrimination; *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 115, n.9 (2002) ("The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify.").  While Title VII requires charges to be filed within 300 days "after the alleged unlawful employment practice occurred," *Edelman v*, 535 U.S. at 112 (quoting 42 U.S.C. § 2000e-5(e)(1)), United's narrow focus on the Form 5 ignores the entire process leading up to those documents.

Indeed, because Title VII does not define the term "charge," the EEOC and courts will view the date an individual reaches out to the EEOC to begin the charge process (step 1, above) as the "charge" date, provided the individual sufficiently identifies the alleged discrimination.  *See Edelman*, 535 U.S. at 110 n.2, 112–13, 115; 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.").

Similarly, the Fifth Circuit has held that an "intake questionnaire" can function as a charge when it identifies the parties and describes the discriminatory act with enough detail that the agency could issue a charge.  *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) ("While neither signed nor sworn, the form completed [at the intake interview] informed the EEOC of the identity of the parties and described the alleged discriminatory conduct in enough detail to enable

16

it to issue an official notice of charge to [the employer], thus setting the administrative machinery in motion."); *accord Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).   This authority confirms that the subsequent filing of the Form 5 charge is merely a verification of the initial request for the EEOC to act.   Accordingly, if the initial inquiry identifies the "parties and describe[s] the alleged discriminatory conduct in enough detail," the timeliness of the charge relates back to the initial inquiry date.  *See Price*, 687 F.2d at 78.

While United attempts (at 18–20) to answer Plaintiffs' previous arguments regarding the proper understanding of EEOC timeliness, those claims miss the mark.  Indeed, the Supreme Court has specifically noted that *Edelman* "reject[ed] the argument that a charge is not a charge until the filer satisfies Title VII's oath or affirmation requirement." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 404 (2008) (citing *Edelman*, 535 U.S. at 112–13).   While *Holowecki* does look to whether a filing may be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights," *id.* at 402, that standard does not require employees to be as explicit as United tells this Court.  Such an interpretation would be at odds with the EEOC's own guidance concerning what constitutes a charge.  *See* 29 C.F.R. § 1601.12(b).  If it is apparent that the employee is looking for the EEOC to investigate—and not just "asking questions" about whether there was a violation—the inquiry will count as a charge for timeliness purposes.

Here, each Plaintiff prepared a statement and filed it with the EEOC soon after United's discriminatory actions began: September 2021 for Plaintiffs Sambrano, Kincannon, Hamilton, Jonas, and Castillo; November 2021 for Plaintiff Burk (after he was coerced into taking the vaccine); December 2021 for Plaintiff Rains; and March 2022 for Plaintiff Medlin (when she attempted to return from maternity leave and learned for the first time that United was planning to

17

terminate her).  *See* ECF No. 170, Exs. 1–7[7] ("App.").  In those filings, Plaintiffs identified United's discriminatory and retaliatory actions, the dates of those actions, and how the actions violated each Plaintiff's rights.  Thus, there can be no dispute that each Plaintiff appropriately and timely raised these claims with the EEOC, and the Court should reject United's false insinuation (at 16) that Plaintiffs sought to mislead the Court in any way.[8]

As explained above, Plaintiffs' initial inquiries alone are sufficient to constitute "charges." Each submission can reasonably be construed as "request[ing] the agency to activate its machinery and remedial processes."  *Holowecki*, 552 U.S. at 402.  And the EEOC has confirmed as much, issuing an "Inquiry Number" to each of the named Plaintiffs in the Fall of 2021 that subsequently became the "Charge Number" on the Form 5, or, in the case of Plaintiff Medlin, an inquiry number in March 2022 that became her charge number in November 2022.  *Compare* Def.'s App. 26–30 (Sambrano Form 5), *with* App. 2 (Sambrano initial charge, which includes the same identifying number).  As the Fifth Circuit has noted, the EEOC's assignment of a "charge number" on initial receipt of a questionnaire that is continued without interruption indicates that the initial filing was

---

[7] As the EEOC's initial inquiry is competed on a webform, Plaintiff Castillo has been unable to locate a screenshot of that initial form.  However, Castillo submitted his initial complaint to the EEOC on September 20, 2021.  Aff. of D. Castillo ¶ 16 (ECF No. 7 at App.20).  And the record includes sworn testimony from several Plaintiffs showing that they filed their EEOC complaints before their motion for preliminary injunction.  *See* ECF No. 7 at App.4, 9, 25, 30.

[8] Similarly, United is mistaken when it challenges (at 17–20) the timeliness of the charges filed by Plaintiffs Castillo, Rains, and Medlin.  The EEOC schedules interviews with investigators after an individual files an initial inquiry form.  Likely due to the COVID-19 pandemic, the EEOC's interview process in 2021 was delayed.  Although these Plaintiffs had already filed claims with the EEOC, they were still awaiting interviews when they requested right-to-sue letters.  This resulted in Castillo's Form 5's being dated September 19, 2022, Rains's Form 5's being dated November 3, 2022, and Medlin's Form 5's being dated November 3, 2022.  *See* ECF No. 7 at App.20, 29, 36.

functionally a charge, even if not a formal verified one.  *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020) (per curiam).[9]

This continuity with the EEOC's process and how it views online inquiries can be seen in the file from the EEOC regarding Plaintiff David Castillo.  The activity log for his file reflects a continuous string of events working backward from October 25, 2022, to October 18, 2021, for the same inquiry/charge number.  *See* Ex. 1, D. Castillo, EEOC Activity Log (reverse date order Oct. 25, 2022–Oct. 18, 2022), Pls.' App. 1–10, filed concurrently.  Tellingly, while the first entry in the log shows an "[o]nline *inquiry* submitted," after the case is assigned and transferred to Chicago, the EEOC's representative is noted to have "viewed *charge* details" in the submission. Pls.' App. 10 (emphasis added).  Mr. Castillo had not signed the official Form 5 charge at that point or provided any details/statements beyond his initial inquiry.  Nevertheless, the EEOC still referenced his factual details as a "charge."  Of course, had the EEOC determined that any aspect of Plaintiffs' claims was untimely, it would have indicated as much.  But it did not do so, as Plaintiffs' charges are timely.

Finally, it must be noted that it is the EEOC's own process—having the employee submit an online inquiry and instructing them that they cannot sign a formal Form 5 charge until after they obtain an interview with the EEOC, which took place a year or more after filing the inquiry in some instances—that is creating the delay now complained of by United.  This delay by the EEOC would serve as a basis for the equitable tolling of deadlines.  *See, e.g.*, *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003) ("We apply equitable tolling when an employee seeks

---

[9] Separately—and contrary to United's argument (at 18)—Plaintiff Medlin's claims are all timely. As noted previously, United's denial of her religious accommodation request for lack of a third-party letter in August of 2021 was just the first step in a continuous process culminating in her termination in March of 2022 when she returned from maternity leave.  Thus all of her claims are timely even if United were correct in its statute of limitations argument, which it is not.

information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge.").  Thus, even if United were correct about the timeliness—and it is not—the point would be mooted by the EEOC's representations to Plaintiffs that they were not in danger of losing the right to charge United while awaiting an interview.[10]

And, in addition to being timely, Plaintiffs' EEOC filings include retaliation claims.  *See* Mot. at 20.  As Plaintiffs have explained in depth, *see* ECF No. 169 at 8–10, an employee is not required to check the box for retaliation on her EEOC charge to pursue a retaliation claim.  *See Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).  Provided that "[t]he facts alleged in her EEOC charge could have reasonably been extended to encompass a claim" for retaliation, an employee may pursue such a claim.  *Id.*  Here, Plaintiffs' EEOC charges explained the facts pertinent to their retaliation claims.  *See* ECF No. 169 at 8–10 (discussing same); ECF No. 161 at App. 4, 8, 12, 16, 26 (detailing United's retaliatory actions).  Additionally, United undermines its own argument by arguing earlier that Plaintiffs' retaliation claims should be dismissed because they are just repackaged failure-to-accommodate claims.  If that were true, then Plaintiffs' EEOC charges about their failure-to-accommodate claims necessarily encompass the allegations for their retaliation claims.  In short, Plaintiffs have plausibly alleged a campaign of coercion and retaliation from the moment United announced its vaccine mandate and Mr. Kirby attempted to dissuade anyone from seeking an exemption.  SAC ¶¶ 49–50.

## V.   Plaintiffs Do Not Assert Standalone Interactive-Process Claims.

Surprisingly, United still asks the Court (at 21) to dismiss Plaintiffs' interactive-process "claims."  But, as Plaintiffs have repeatedly explained, they have not asserted such a claim.  Rather,

---

[10] Separately, Mr. Castillo's timeline should be tolled because the company and EEOC were both on notice of his charges against United.  Indeed, United had ample notice of Mr. Castillo's claim against the company two years ago when the initial Complaint was filed in this case.

the lack of an interactive process goes to the unreasonableness of United's accommodations.  The Fifth Circuit has concluded that, "'[w]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.'" [11]  *Guerra v. United Parcel Serv., Inc.*, 250 F.3d 739, 2001 WL 274296, at *3 (5th Cir. 2001) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).  Although there is no standalone interactive-process claim to dismiss here, the allegations about the lack of an interactive process go directly to United's lack of good faith and its failure to provide reasonable accommodations.

## VI.   The Court Should Not Dismiss Plaintiffs' Request for a Permanent Injunction.

Finally, the Court should not dismiss Plaintiffs' request for a permanent injunction.  "[T]he court's power to grant injunctive relief survives discontinuance of the [allegedly] illegal conduct," and neither mootness nor the doctrine of equitable discretion warrants dismissal of this request.  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

### A.   The Voluntary Cessation Doctrine Prevents Mootness.

Because United decided unilaterally to change its "accommodation" policy, it cannot claim mootness.  Rather, mootness applies only when "intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff."  *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013).  Under the doctrine of voluntary cessation, meaningful relief is still available "when a defendant [takes] voluntary measures to stop a statutory

---

[11] Although United suggests (at 21 n.9) that this holding has been diluted by two unpublished decisions, those decisions do no such thing. One says only that the interactive process must "be viewed on a case-by-case basis." *Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011).  And the other, *Leonce v. Callahan*, No. 7:03-cv-110-KA, 2008 WL 58892, at *4 (N.D. Tex. Jan. 3, 2008), does not hold, as United suggests, that "whether [an employer] engaged in an interactive process is irrelevant" "if an employer provided a reasonable accommodation."  Rather, the *Leonce* court merely discussed the standards for determining if the employer had shown that accommodating the employee would cause an undue hardship.  *Id.*

violation." *Id.* That is because "[a] controversy may remain to be settled in such circumstances," namely "a dispute over the legality of the challenged practices." *W.T. Grant Co.*, 345 U.S. at 632. Because "[t]he defendant is free to return to his old ways" once the litigation is ended, public interest weighs in favor of "having the legality of the practices settled." *Id.* And thus, when the doctrine of voluntary cessation applies, mootness does not.

Here, United concedes (at 22–23) that the "intervening circumstance" was the company's decision to remove the vaccine mandate and allow employees who were on unpaid leave to return to work. But United does not argue that these changes were involuntary. *Id.* Rather, United asserts that its policy change was not "voluntary enough" to trigger application of the voluntary cessation doctrine because its decision was responsive to some change in "factual context"—COVID-19 numbers United chose to use as markers for when indefinite unpaid leave would end. *Id.* at 23.

United misunderstands the law, as the Supreme Court does not require the defendant's conduct to be the "only conceivable basis" for a finding of mootness. Mot. at 22–23 (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 189 (2000)). Rather, *Laidlaw* merely observed in passing that application of the doctrine of voluntary cessation in that particular case was obvious and easy because the defendant's voluntary conduct was the "only conceivable basis" for its assertion of mootness. 528 U.S. at 189. Such dicta is not a binding legal standard for the voluntary cessation doctrine.

The more instructive precedent is *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67 (1983), where the Supreme Court determined that the voluntary-cessation doctrine applies when there are changes external to the litigating parties. In *Heckler*, the Court distinguished between cases where the defendant retains sole control over its decision and those cases where the "acts of a third-party non-defendant" prevent the challenged conduct from re-occurring. *Id.* at 72. The

Fifth Circuit applied the same standard in *Center for Biological Diversity*, concluding that the doctrine of voluntary cessation did not apply to an oil company's decision to cease operation of an off-shore well because that decision "occurred at the insistence of the federal government acting pursuant to ... extraordinary powers granted to the President." 704 F.3d at 425. Thus, the court noted that this "[was] not the typical case where defendants may ... revert to their old ways upon dismissal of the suit." *Id.* at 426. Thus, the doctrine of voluntary cessation applies when the decision to cease a challenged practice rests solely with the defendant.

That is the case here. United may still determine what viruses warrant a response, and it may determine *how* to respond. United's argument that its actions should not be considered voluntary because the COVID-19 pandemic has meaningfully receded misses the mark. United chose how to define "meaningfully receded," and it may redefine that term as it sees fit. And thus, regardless of whether the federal government declares the pandemic over, or any other statistic related to the pandemic emerges, United may implement a vaccine mandate and discriminatory practice any time it chooses to do so. Thus, United's recent decision to rescind its challenged policy was a voluntary decision that justifies application of the doctrine of voluntary cessation.

### B.   United Has Not Met Its Heavy Burden of Showing Impossibility.

Nor can United invoke impossibility. When a defendant has taken voluntary measures to cease its challenged conduct, "the defendant must bear the heavy burden of showing the impossibility" that he will "revert to the offending conduct once litigation has ended ... in order to prove mootness." *Ctr. for Biological Diversity,* 704 F.3d at 425. United cannot meet this burden.

United alleges (at 23) that Plaintiffs' claims are moot because it "has no intention of reinstating unpaid leave." United also speculates (at 23) that it is "highly implausible" the country will experience another similar pandemic. But a defendant's declaration of intent not to revive a challenged practice "does not suffice to make a case moot." *W.T. Grant Co.*, 345 U.S. at 633.

These assertions of intent, while relevant to the question of the court's equitable discretion, do not prove the "impossibility" of United's "revert[ing] to the offending conduct" in the future. *Ctr. for Biological Diversity*, 704 F.3d at 425. And, where a defendant "has not conceded the illegality of the [challenged] conduct and has steadfastly maintained that its actions did not violate Plaintiffs' rights," there is "no assurance that [the defendant] will not engage in the same conduct" at the next relevant opportunity. *Perez v. Texas*, 970 F. Supp. 2d 593, 602–03 (W.D. Tex. 2013). Of course, if United were willing to make a binding legal commitment that it will not renew the challenged policies, Plaintiffs' claims for injunctive relief might be moot. But without such an assurance, United has not carried its burden of showing impossibility.

This is especially true where, as here, United has previously responded to this litigation by changing its position. In such cases, "it is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit." *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952). United has not carried its "heavy burden" of proving that it is "impossib[le]" or "absolutely clear" that it will not reinstitute the challenged policies. Thus, the voluntary cessation doctrine applies.

However, even if United's revocation of the challenged policies were considered involuntary, this case is still not moot. Rather, in that circumstance, Plaintiffs need only show "that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding." *Ctr. for Biological Diversity*, 704 F.3d at 426. While the prospect of a future violation must be realistic, all that is needed is a "cognizable danger of recurrent violation." *W.T. Grant Co.*, 345 U.S. at 633. For the same reasons that United cannot show impossibility, Plaintiffs easily meet this standard. Although United lists external factors that make the reimplementation of the challenged policies supposedly "implausible," none of those factors prevents United from

24

reinstituting the challenged policies.  Thus, Plaintiffs' claim for injunctive relief is not moot.

### C.    The Court Should Not Resolve this Question at the Motion-to-Dismiss Stage.

Finally, the Court should not exercise its equitable discretion to find the request for injunctive relief moot at this stage.  Rather, only after a violation of rights has been determined can the party seeking injunctive relief "satisfy the court that [such] relief is needed."  *Perez*, 970 F. Supp. 2d at 602 (quoting *W.T. Grant Co.*, 345 U.S. at 633).  And, at that stage, a court's decision about the appropriateness of injunctive relief "depends on the facts and circumstances of each case."  *SEC v. Gentile*, 939 F.3d 549, 564 (3d Cir. 2019).  As a result, courts "should make this determination on a developed record" after a violation of rights has been determined.  *Id.*

That is one reason that the decision to grant or deny injunctive relief should not be made now in the middle of class discovery, when Plaintiffs have not had a full opportunity to probe United's arguments.  Indeed, as the cases United cites confirm, that decision should not be made any earlier than summary judgment.[12]  This Court should similarly decline United's invitation to permanently dismiss any non-moot claim for injunctive relief without an adequate opportunity for discovery and a determination on the merits.

## CONCLUSION

Plaintiffs have suffered under United's coercion, discrimination, and retaliation for two years.  The Court should deny United's newest attempt to avoid liability.

---

[12] For instance, the court in *W.T. Grant Co.*, 345 U.S. at 630–31, converted a motion to dismiss into a motion for summary judgment.  *See, e.g., Perez*, 970 F. Supp. 2d at 599, 601–03 ("express[ing] no opinion" at motion-to-dismiss stage on whether plaintiffs' claims warranted injunctive relief); *Ass'n of Am. Pubs. v. Frosh*, 607 F. Supp. 3d 614, 618 (D. Md. 2022) (deciding not to convert a preliminary injunction into a permanent injunction only after the parties agree that "there is no genuine dispute as to any material fact"); *Prison Legal News v. Lindsey*, No. 3:07-cv-0367-P, 2007 WL 9717318, at *1, *3 (N.D. Tex. June 18, 2007) (exercising equitable discretion to deny a preliminary injunction, but not permanently dismissing any claims).

September 25, 2023

*/s/ Mark R. Paoletta*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Brian J. Field*
D.C. Bar No. 985577
Cristina Martinez Squires
Texas Bar No. 24093764
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com

* Admitted *pro hac vice*

Respectfully submitted,

/s/ John C. Sullivan
John C. Sullivan
Texas Bar No. 24083920
David Austin R. Nimocks
Texas Bar No. 24002695
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

**CERTIFICATE OF SERVICE**

On September 25, 2023, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF System).

*/s/ Brian J. Field*
Brian J. Field