# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>*Defendant*. | Civil Action No.: 4:21-cv-01074-P |

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404 TO THE NORTHERN DISTRICT OF ILLINOIS

# TABLE OF CONTENTS

BACKGROUND ................................................................................................ 1

STANDARD OF REVIEW ............................................................................... 3

ARGUMENT ..................................................................................................... 4

I.   The Private Interest Factors Favor Plaintiffs. ........................................ 5

    A.   United's motion would create many practical problems. ..................... 5

    B.   The remaining private interest factors weigh against United. ............... 10

II.  The Public Interest Factors Favor Plaintiffs. ........................................ 15

CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*BNSF Ry. Co. v. OOCL (USA), Inc.*,
    667 F. Supp. 2d 703 (N.D. Tex. 2009) ............................................. 10, 18

*Engstrom v. Air Lines Pilots Ass'n, Int'l*,
    No. 6:22-cv-02130 (M.D. Fa. Nov. 6, 2023) .................................... 19

*FTC v. Multinet Mktg., LLC*,
    959 F. Supp. 394 (N.D. Tex. 1997) ..................................................... 7

*FUL Inc. v. Unified Sch. Dis. No. 204*,
    839 F. Supp. 1307 (N.D. Ill. 1993) .................................................... 12

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ............................................................................ 16

*Hamilton Int'l Ltd. v. Vortic LLC*,
    414 F. Supp. 3d 612 (S.D.N.Y. 2019) ............................................. 6, 8

*Hassett v. United Airlines, Inc.*,
    No. 4:23-cv-0960-P (N.D. Tex. Oct. 5, 2023) ....................... 7, 8, 16, 17

*Hibbard v. Target Corp.*,
    No. 3:12-cv-0344, 2013 WL 4677831 (S.D. Tex. Aug. 30, 2013) ........ 5, 7

*IBEW-NECA Sw. Health & Ben. Fund v. Duvall Elec., LLC*,
    No. 3:10-cv-1079-B, 2011 WL 711005 (N.D. Tex. Feb. 28, 2011) .......... 8

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ......................................................... 4, 16

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................. 3, 4, 5, 16

*Konami Digit. Ent. Co., Ltd. v. Harmonix Music Sys., Inc.*,
    No. 6:08-cv-0286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ............. 7

*KTAQ of Dallas, LLC v. Simons*,
  No. 3:12-cv-4102-L, 2013 WL 5567146 (N.D. Tex. Oct. 8, 2013)........................................ 8, 13

*Mason v. Corizon, Inc.*,
  No. 6:13-cv-06110-SOH-MEF, 2015 WL 10434528 (W.D. Ark. Dec. 17, 2015) ................... 9

*Mohamed v. Mazda Motor Corp.*,
  90 F. Supp. 2d 757 (E.D. Tex. 2000)........................................................................................ 6

*Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*,
  No. 3:01-cv-2282-L, 2003 WL 298799 (N.D. Tex. Feb. 10, 2003) .......................................... 5

*N2 Consulting, LLC v. Engineered Fastener Co.*,
  No. 3:02-cv-0308-BD, 2002 WL 31246770 (N.D. Tex. Oct. 2, 2002)....................................... 7

*Oka v. United Airlines, Inc.*,
  No. 2:23-cv-00135 (E.D. Ky.) ................................................................................................. 19

*Peteet v. Dow Chem. Co.*,
  868 F.2d 1428 (5th Cir. 1989) ............................................................................................ 6, 14

*Pilkington v. United Airlines, Inc.*,
  855 F. Supp. 1248 (M.D. Fla. 1994)............................................................................... 8, 11, 14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).............................................................................................................. 10

*Ralph v. Exxon Mobil Corp.*,
  No. 05-cv-0655, 2006 WL 2266258 (S.D. Tex. Aug. 8, 2006) ................................................ 5

*Ray Mart, Inc. v. Stock Bldg. Supply of Tex., LP*,
  435 F. Supp. 2d 578 (E.D. Tex. 2006).............................................................................. 11, 12

*Ross Neely Sys., Inc. v. Navistar, Inc.*,
  No. 3:13-cv-1587-M-BN, 2015 WL 1822837 (N.D. Tex. Apr. 22, 2015) ............................... 9

*Salinas v. O'Reilly Auto., Inc.*,
  358 F. Supp. 2d 569 (N.D. Tex. 2005) ................................................................................. 10

*Sambrano v. United Airlines, Inc.*,
  19 F.4th 839 (5th Cir. 2021) .............................................................................................. 9, 17

*Sambrano v. United Airlines, Inc.*,
  570 F. Supp. 3d 409 (N.D. Tex. 2021) ................................................................................... 9

*Sambrano v. United Airlines, Inc.*,
  No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) .................................................. 3, 9

*Sigoloff v. Austin*,
  No. 4:22-cv-00923-P, 2023 WL 2142982 (N.D. Tex. Feb. 21, 2023)................................... 15

*Time, Inc. v. Manning*,
  366 F.2d 690 (5th Cir. 1966) ............................................................................................... 10

*United Galvanizing, Inc. v. Imperial Zinc Corp.*,
  No. H-08-0551, 2010 WL 4393990 (S.D. Tex. Oct. 29, 2010) .............................................. 7

*Utterback v. Trustmark Nat'l Bank*,
  716 F. App'x 241 (5th Cir. 2017) ..................................................................................... 7, 13

*Vargas v. Seamar Divers Int'l, LLC*,
  No. 2:10-cv-0178-TJW, 2011 WL 1980001 (E.D. Tex. May 20, 2011) .................................. 11

**Statutes**

28 U.S.C. § 1404 .................................................................................................................... 1, 3, 4

**Other Authorities**

15 Charles Alan Wright & Arthur R. Miller,
  *Federal Practice and Procedure* (4th ed. 2015) ...................................................................... 10

Admin. Off. U.S. Courts,
  *Federal Court Management Statistics—Profiles* (June 2023) .................................................. 15

After extensively litigating in this Court for more than two years, United Airlines now claims that it would be inconvenient to continue doing so.  Rather, United belatedly asks the Court to transfer this case to the Northern District of Illinois.  *See* Def.'s Mot. to Transfer (ECF No. 216) ("United's Mot.").  But United's motion is misguided.  Indeed, rather than pointing to any newly discovered information supporting transfer, United's motion is a litigation gimmick, filed on the eve of Plaintiffs' deposing United's officials and when Plaintiffs are otherwise preparing their motion for class certification.  But gamesmanship is not a basis for transfer, and the Court should deny the motion on that basis alone.

However, the Court should also deny the motion because United is wrong on the facts and the law—such that the factors under 28 U.S.C. § 1404(a) cut against United.  Most significantly, courts in this District and elsewhere routinely deny transfer motions when the requesting party delayed in seeking transfer.  Considering United's two-year delay here, the Court should deny United's motion for that reason alone.  But § 1404(a)'s private and public interest factors also clearly cut against United, as Plaintiffs' selection of venue is entitled to deference, there is no difficulty in accessing evidence in this District (as confirmed by United's production of documents and witnesses during the pendency of this case in this District), and all practical factors weigh against disrupting this case with a transfer.

Accordingly, due to United's delay, and because the private and public interest factors cut against United, the Court should deny United's motion.

## BACKGROUND

Considering the more than 200 filings on the docket in this case, to say nothing of the extensive briefing in the Fifth Circuit, the Court is no doubt familiar with the facts of this case,

and Plaintiffs will not attempt to rehash the entire history here.  However, a brief recap of the most relevant procedural history is helpful.

As the Court no doubt recalls, Plaintiffs filed their complaint and motion for temporary restraining order and preliminary injunction on September 21 and 22, 2021, respectively.  *See* ECF Nos. 1, 5.  United filed its opposition to Plaintiffs' motion on September 23, 2021.  *See* ECF No. 24.  United failed to argue in that response that this case should be transferred to the Northern District of Illinois.  *See id.* at 7 n.1 (stating only that United preserved objections to venue and jurisdiction).  The parties then filed trial briefs before the Court held an evidentiary hearing, *see* ECF Nos. 37, 41, and United again failed to challenge the appropriateness of Plaintiffs' selected venue, *see* ECF No. 41.

Shortly before the evidentiary hearing, United filed a motion to dismiss, which again failed to address venue beyond a passing parenthetical suggesting that Plaintiffs "cannot establish venue in Texas under the specific venue provision that governs suits brought under Title VII and the ADA."  ECF No. 47 at 4.  In denying United's motion to dismiss in part, the Court correctly explained that such a passing parenthetical "waived any argument that the venue statutes require dismissal."  ECF No. 103 at 4 n.1.  In any event, even that parenthetical did not address venue under § 1404(a).

Plaintiffs subsequently filed an amended complaint on October 12, 2021.  *See* ECF No. 67.  And the parties filed post-hearing briefs on various questions the Court raised.  *See* ECF Nos. 77, 79.  Once again, United's filing was silent on venue.

After the Court denied Plaintiffs' motion for a preliminary injunction, *see* ECF No. 104, Plaintiffs filed a motion for reconsideration, *see* ECF No. 105, which this Court denied, *see* ECF No. 115.  Thereafter, Plaintiffs appealed this Court's denial of the motion for preliminary

injunction, and the parties filed many briefs with the Fifth Circuit, which ultimately overturned this Court's holding that Plaintiffs were not suffering irreparable harm. *See Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022), *reh'g denied*, 45 F.4th 877 (5th Cir. 2022). Once again, United did not argue in the Fifth Circuit that Plaintiffs had sued United in an improper or inconvenient venue.

On remand, Plaintiffs filed a second amended complaint, *see* ECF No. 156, and United filed another motion to dismiss, *see* ECF No. 160. That motion was *again* silent on venue. *See id.* Thereafter, class-certification discovery opened in March 2023, and closed on November 10, 2023. *See* ECF Nos. 164, 211. During those months of discovery, United took the depositions of all eight named Plaintiffs in Fort Worth, Texas. And United produced its expert for a deposition in Houston, Texas. Additionally, United took depositions of several putative class members, none of which took place in Chicago, Illinois. Rather, United conducted those depositions in Texas (Dallas and Austin), Washington, DC, and Reston, Virginia.

Now that class discovery has closed, Plaintiffs are currently drafting their motion for class certification, which is due by December 22, 2023. *See* ECF No. 219. Notwithstanding this extensive procedural history and that critical discovery that took place in Fort Worth, United filed a motion to transfer venue on October 24, 2023. *See* United's Mot.

## STANDARD OF REVIEW

Section 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quotation marks omitted). In assessing a motion to transfer under § 1404(a), the Court first

must determine whether the judicial district to which defendant requests transfer is one where the claim could have originally been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If the claim could have been brought in that forum, the court must then weigh various non-exhaustive private and public interest factors, none of which is given dispositive weight. *In re Volkswagen of Am.*, 545 F.3d at 315 (citations omitted).

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id*. (citation omitted). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted).

## ARGUMENT

Applying the § 1404(a) factors, the Court should deny United's motion.[1] As to the private interest factors, United's delay in requesting a transfer is fatal to its motion. Moreover, United fails to demonstrate that transfer is needed for ease of access to witnesses or documentary evidence. Indeed, this case has progressed in this Court for several years, and United has efficiently produced documents and witnesses without raising any concerns about venue.

The same is true of the public interest factors. United's actions harmed Plaintiffs, and many others, in this District. And Plaintiffs thus reasonably pursued their claim here.

---

[1] Plaintiffs do not dispute the threshold question that this action could have been brought in the Northern District of Illinois.

Additionally, this Court's deep familiarity with the complexities of this case counsels against transfer, which would substantially delay the case as a new district court reviews the extensive record.

For these reasons, the Court should deny United's motion.

## I.      The Private Interest Factors Favor Plaintiffs.

All four private interest factors weigh heavily against transfer.  However, one of the most compelling factors here is also dispositive: United's delay in seeking transfer is fatal under the "all other practical problems" factor.  *In re Volkswagen of Am.*, 545 F.3d at 315.  Courts in this Circuit routinely deny transfer motions based on such delay alone, and this Court should do likewise. However, United fares no better under the other private interest factors, which similarly weigh against United.

### A.      United's motion would create many practical problems.

In this Circuit, a moving party's delay is evaluated "under the *Volkswagen* convenience factor that takes account of 'practical problems that make trial of a case easy, expeditious and inexpensive.'"  *Hibbard v. Target Corp.*, No. 3:12-cv-0344, 2013 WL 4677831, at *1 (S.D. Tex. Aug. 30, 2013) (quoting *In re Volkswagen of Am.*, 545 F.3d at 315).  Thus, courts closely review the circumstances of belated transfer requests because they can impose "practical problems" on the parties and the court by contravening the interests in "expeditious and inexpensive" litigation. *Id*.  And that is why courts routinely conclude that delay is reason alone to deny a transfer motion. *See, e.g.*, *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, No. 3:01-cv-2282-L, 2003 WL 298799, at *5 (N.D. Tex. Feb. 10, 2003) (Kaplan, M.J.) (concluding that the transfer motion "may be denied on th[e] basis [of delay] alone"); *Ralph v. Exxon Mobil Corp.*, No. 05-cv-0655, 2006 WL 2266258, at *4 (S.D. Tex. Aug. 8, 2006) (the defendant's delay not only supported denying the transfer motion, but it outweighed all other factors); *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F. Supp. 3d

5

612, 624 (S.D.N.Y. 2019) (The untimeliness of defendant's transfer motion "outweigh[s] everything else.").

When reviewing the timing of a party's transfer request, the Fifth Circuit explains that a requesting party must make its request "with reasonable promptness."[2] *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (citation and quotation marks omitted). Here, it is beyond dispute that United failed to act with "reasonable promptness." United waited more than *two years* before requesting a transfer. And this case was hardly dormant over those two years. Rather, the parties filed many motions and oppositions over that time, but United failed to request a transfer of venue in any of those filings. For instance, United filed two motions to dismiss. *See* ECF Nos. 47, 209. And, as the Court already noted, United's initial motion to dismiss "waived any argument that the venue statutes require dismissal" because United failed to address venue in its motion.[3] ECF No. 103 at 4 n.1. United's renewed motion to dismiss is equally silent on venue. *See* ECF No. 209.

Similarly, United filed an opposition and trial brief in response to Plaintiffs' motion for a temporary restraining order and for preliminary injunction, failing to argue in any such filing that venue is improper. *See, e.g.*, ECF Nos. 24, 37. And, even after the Court held an evidentiary hearing on Plaintiffs' motion for a preliminary injunction, United filed a post-hearing brief (ECF No. 77) that was silent on transfer. In fact, in over more than 200 docket entries, United never

---

[2] To be sure, a § 1404 motion to transfer "can technically be made at *any* time." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 760 (E.D. Tex. 2000). But that does not absolve the moving party of its obligation to make the motion with "reasonable promptness." *Peteet*, 868 F.2d at 1436.

[3] Although § 1404 transfer requests are not waived by failure to include them in a motion to dismiss filed pursuant to Rule 12(b), United's failure to include a venue argument in its motion to dismiss further demonstrates its lack of diligence in making this request. And the Court's recognition of United's failure to challenge venue then only underscores the unreasonableness of United's delay.

argued that this case should be transferred under § 1404(a), until United's October 24, 2023 motion.

Courts routinely find much shorter delays than United's to weigh against and preclude transfer. *See Hibbard*, 2013 WL 4677831, at *1 (denying motion for transfer filed eight months after answer); *N2 Consulting, LLC v. Engineered Fastener Co.*, No. 3:02-cv-0308-BD, 2002 WL 31246770, at *2 (N.D. Tex. Oct. 2, 2002) (denying motion for transfer filed six months after complaint); *United Galvanizing, Inc. v. Imperial Zinc Corp.*, No. H-08-0551, 2010 WL 4393990, at *3–5 (S.D. Tex. Oct. 29, 2010) (discussing a seven-month delay as "weigh[ing] heavily against granting the motion" when denying transfer); *Konami Digit. Ent. Co., Ltd. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-0286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009) (denying motion to transfer filed six months after complaint was filed). Indeed, where, as here, a case has progressed into discovery, this factor weighs heavily against transfer. *See Hibbard*, 2013 WL 4677831, at *1; *FTC v. Multinet Mktg., LLC*, 959 F. Supp. 394, 395–96 (N.D. Tex. 1997) (noting that transfer after discover would "waste judicial resources"); *N2 Consulting*, 2002 WL 31246770, at *2 (finding a substantial possibility of undue delay when defendant did not file motion to transfer venue until after parties had exchanged initial disclosures and a scheduling order had been set); *see also Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 (5th Cir. 2017) ("[A]fter almost two years of litigation in Mississippi, Utterback has missed his window to litigate in Florida").

Considering United's lack of diligence in making its transfer request, one is left to wonder what motivated United's sudden desire to escape this Court's reach. The answer appears to be this Court's passing reference in *Hassett v. United Airlines, Inc.*, to United's decision not to seek a transfer in this case. *See* Order at 5, *Hassett*, No. 4:23-cv-0960-P (N.D. Tex. Oct. 5, 2023), ECF No. 34 (Def.'s App. 155, ECF No. 217); United's Mot. at 1. In other words, United has not based

7

its request on newly learned facts that support transfer.  Nor has United demonstrated that it recently learned of witnesses for whom the Northern District of Illinois would be more convenient. In fact, each argument United makes in its transfer motion was available to it on day one: United knew the location of its corporate headquarters; United knew Plaintiffs' addresses and work locations; and United knew the location of its employment records.  *See IBEW-NECA Sw. Health & Ben. Fund v. Duvall Elec., LLC*, No. 3:10-cv-1079-B, 2011 WL 711005, at *4 (N.D. Tex. Feb. 28, 2011) (noting that the party seeking transfer failed to act diligently when it had been previously aware of the facts on which it relied when belatedly seeking transfer); *Hamilton Int'l*, 414 F. Supp. 3d at 624 (denying motion to transfer when "[v]irtually all of Defendants' arguments, especially those regarding operative facts, could have been made earlier in this litigation.").  Unsurprisingly, when United belatedly made a similar transfer argument in another case, the Court rejected it for this very reason:

> This Court determines that Defendants [United] have not shown the balance of conveniences is strongly in favor of the transfer of this action to the Northern District of Illinois. Defendants have been aware of this action, and any inconvenience it may cause, for *nearly two years*, yet they have waited until well into the discovery process, close to the start of trial, to make this request.

*Pilkington v. United Airlines, Inc.*, 855 F. Supp. 1248, 1250 (M.D. Fla. 1994) (emphasis added). So too here, where discovery has substantially progressed.

Rather than basing its motion on any newly discovered facts, United appears to believe that this Court's decision in *Hassett* invited United to seek such relief now.  But that hardly demonstrates diligence.  Rather, the "late timing of [United's] motion" reeks of "gamesmanship." *KTAQ of Dallas, LLC v. Simons*, No. 3:12-cv-4102-L, 2013 WL 5567146, at *6 (N.D. Tex. Oct. 8, 2013).  Indeed, United delayed until its actions would have the greatest tactical advantage— filing the motion right as Plaintiffs were preparing to depose United's witnesses, and now requiring

Plaintiffs to respond to this motion rather than devoting their efforts to drafting Plaintiffs' motion for class certification.

Of course, Plaintiffs cannot blame United for wanting to change venue. After all, United has been the subject of many critical judicial statements during this case, and United may hope that a court in the Northern District of Illinois will be more friendly. *See Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021) (Ho., J. dissenting) (stating that United had "obvious[ly] and substantial[ly] burden[ed]" Plaintiffs' religion through "the most horrifying of Hobson's choices"); *Sambrano*, 2022 WL 486610, at *1 n.2 (recognizing that United's "bizarre inquisition into the sincerity of its employees' beliefs is somewhat at odds with our usual approach of taking parties at their word regarding their own religious convictions"); *Sambrano v. United Airlines, Inc.*, 570 F. Supp. 3d 409, 420 (N.D. Tex. 2021) (noting that, in light of CEO Scott Kirby's statements, United's safety rational "may be viewed as merely pretextual"), *rev'd and remanded,* No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022). But blatant forum shopping is not one of the private interest factors favoring transfer. And where, as here, the nonmoving party has shown that the "motion is a dilatory tactic, … then the litigant moving for transfer has failed to show reasonable promptness in bringing [the] transfer motion." *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-cv-1587-M-BN, 2015 WL 1822837, at *8 (N.D. Tex. Apr. 22, 2015), *objections overruled*, No. 3:13-CV-1587-M, 2015 WL 12916404 (N.D. Tex. May 15, 2015).

However, even if the Court were to conclude that there is merit to United's motion (there isn't), United's delay outweighs that conclusion. *See Mason v. Corizon, Inc.*, No. 6:13-cv-06110-SOH-MEF, 2015 WL 10434528, at *10 (W.D. Ark. Dec. 17, 2015) (when a party delays bringing a § 1404(a) motion, the delay "'may cause the district judge to refuse a transfer that otherwise would have been granted had it been sought earlier.'" (quoting 15 Charles Alan Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 3844 (4th ed. 2015))), *report & recommendation adopted*, No. 6:13-cv-6110, 2016 WL 868835 (W.D. Ark. Mar. 7, 2016).  Accordingly, United's failure to request transfer with anything close to reasonable promptness is a sufficient basis to deny United's motion.

**B.      The remaining private interest factors weigh against United.**

But there are also several other reasons to deny United's motion, as United fails to show that *any* private interest factor weighs in its favor.  In analyzing these additional factors, the Court must weigh them against Plaintiffs' choice of forum, which is entitled to substantial deference. *See BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 707 (N.D. Tex. 2009) ("The plaintiff's choice of venue is not an independent factor to be considered in a § 1404(a) analysis" but "[i]nstead … places a significant burden on the movant to show good cause for the transfer.") (cleaned up).  Indeed, unless the other factors "*strongly* favor the party seeking transfer, the plaintiff's choice of forum will seldom be disturbed."  *Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 571 (N.D. Tex. 2005) (quotation marks omitted; emphasis added).  While true that this presumption wanes when the plaintiff is not a resident of the chosen forum, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981), that is irrelevant here where Plaintiffs reside in this District.  In such circumstances, the plaintiff's choice of forum is normally entitled to substantial weight.  *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).  Thus, the Court should deny United's transfer motion because Plaintiffs' choice of venue should receive substantial deference and because United is unable to show that any private interest factors weigh in its favor.[4]

---

[4] It is irrelevant that United is otherwise facing challenges to its vaccine mandate in the Northern District of Illinois.  *See* United's Mot. at 1.  United does not explain how this other litigation, brought by other employees advancing various claims, outweighs the deference appropriate to Plaintiffs' selection of venue.

10

1. As to ease of access to sources of proof, United identifies three sources of evidence (at 11–12) that allegedly support transfer. United is mistaken at each turn. United first states (at 11) that "United's corporate leadership and other relevant corporate personnel are in Chicago." That may be true, but United noticeably fails to include any supporting affidavit demonstrating that the location of these officials in Chicago presents any obstacle to their testifying in Texas. *See Ray Mart, Inc. v. Stock Bldg. Supply of Tex., LP*, 435 F. Supp. 2d 578, 591 (E.D. Tex. 2006) (when claiming that transfer is appropriate for witness convenience, "the moving litigant must make more than a general allegation that the key witnesses are inconveniently located.") (emphasis added). United likely decided against including any such affidavit because, at the risk of stating the obvious, United operates an airline, and it can likely facilitate the travel of its officials to Texas for any proceedings. *See Pilkington*, 855 F. Supp. at 1250 (noting that, "[t]hough litigation in the Northern District of Illinois maybe somewhat more convenient for [United], the improvement would seem minimal in light of the facts that, *being a transportation company*, United can easily transport its witnesses") (emphasis added). United has done so repeatedly throughout this case, as its officials have already participated in and observed many proceedings in this Court. In fact, when this Court asked United's counsel about whether United will be able to produce witnesses in person for hearings, counsel for United stated: "Your Honor, we're an airline, we like people to be here in person." 9/24/21 Tr. of Stip. 8:23–24 (Ex. A, Pls.' App. 8).

United's argument here is further misguided because the location of its officials is irrelevant. Rather, when considering the venue and convenience of witnesses, the court "considers only *non-party witnesses*." *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-cv-0178-TJW, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011) (emphasis added); *Ray Mart*, 435 F. Supp. 2d at 591 (same). As the Northern District of Illinois confirms, "[b]ecause it is generally assumed that

witnesses within the control of the party calling them, such as employees, will appear voluntarily, … the court limits its discussion to potential non-party witnesses." *FUL Inc. v. Unified Sch. Dis. No. 204*, 839 F. Supp. 1307, 1311–12 (N.D. Ill. 1993) (quotation marks omitted).  But United does not provide any evidentiary support to suggest that any non-party witness will be inconvenienced by this case continuing in this Court.  Thus, the location of United's officials is not the relevant question.  But even if it were, United failed to show that it weighs in its favor.

Second, United states (at 11) that "the vast majority of the documentary evidence about [its] accommodation policies and these claims is located" in the Northern District of Illinois.  But United again ignores the procedural posture of this case.  While United's employment records may be housed in Illinois, that has not posed any difficulty in producing to Plaintiffs hundreds of thousands of pages of records in this case.  Accordingly, United's discovery behavior here confirms that the location of its employment records presents no obstacle to continued litigation of this case in the Northern District of Texas.

Third, United's pointing (at 12) to putative class members from "across the United States" similarly fails to support transfer.[5]  United appears to believe that simply mentioning these employees' location is enough to support transfer.  Once again, United misunderstands the law, as such "[c]onclusory allegations are not sufficient—the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Ray Mart*, 435 F. Supp. 2d at 591 (citation omitted).  Similarly, conclusory allegations about the locations of these witnesses will not suffice when United also ignores that these putative class

---

[5] United's representation (at 12) that it "deposed or will depose six absent class members" is mistaken, as United cancelled its deposition of John Schuttloffel days before the deposition was scheduled to take place.  Moreover, United did not depose *any* putative class members in the Northern District of Illinois.  *See* Ex. B (Pls.' App. 12, 15, 18, 21, 24).

members were each able to travel substantial distances for their depositions—including one witness from Los Angeles who voluntarily traveled to Washington, D.C. for a deposition. Thus, United does not come close to showing, as it must, that the locations of these non-parties support transfer. Indeed, the Northern District of Illinois would be no more convenient for these employees who, according to United, are based in locations across the country. *See* United's Mot. at 12.

Thus, it cannot be seriously disputed that the record here—spanning more than two years of United's producing documents and witnesses while the case proceeded in this Court—demonstrates that access to proof does not favor transfer.

2. For similar reasons, United cannot demonstrate that the availability of compulsory process to secure the attendance of witnesses favors transfer. In fact, United hardly musters an effort to explain how this factor supports transfer, baldly stating (at 13) that compulsory process in this Court *might be* difficult "[i]f either side were to seek trial testimony of former United employees or third parties in the Chicago area[.]" That statement shatters under the weight of its speculation—*if* a party seeks testimony of former employees or third parties, *if* those witnesses happen to live in the Chicago area, and *if* those witnesses refuse to appear voluntarily, then witness attendance *might* be difficult. To restate United's argument is to refute it. And, considering that it is United's burden, *see KTAQ of Dallas*, 2013 WL 5567146, at *6, this speculation adds nothing to United's claims. *See Utterback*, 716 F. App'x at 245 n.10 (noting that failure to specify which witnesses would be inaccessible in the current venue only left conclusory assertions that could not be credited as supporting transfer).

3. Similarly, the cost of attendance for witnesses favors Plaintiffs, as United does nothing more than speculate about what a future trial might look like. On this point, United merely wonders (at 13) whether witnesses at trial will be predominantly "United personnel who work or

worked in and around Chicago." Considering that Plaintiffs only deposed five United officials, and United deposed more than a dozen people—none of whom resides in the Chicago area—there is not "every reason to expect" that the majority of witnesses will be from Chicago, as United suggests. *Id.* at 13. Moreover, even for its "personnel who work … in and around Chicago," United ignores that many such officials were already able to attend and testify at proceedings in this Court. United does not even attempt to provide evidence explaining why they would not be able to do so in the future. After all, as "a transportation company," any such statements would invite serious skepticism. *See Pilkington*, 855 F. Supp. at 1250; *see also* 9/24/21 Tr. of Stip. 8:23–24 (Ex. A, Pls.' App. 8) (United counsel stating that it could bring witnesses to this Court because "we're an airline, we like people to be here in person").

In contrast, it is plain that the individual Plaintiffs would face much more significant costs were this case transferred to the Northern District of Illinois, where none lives or works. Plaintiffs do not have the same benefit of corporate travel as United's officials, and traveling to Chicago for trial would clearly impose additional costs and burdens.

*   *   *

Considering that United has the burden of demonstrating that transfer is appropriate, these various shortcomings are fatal to United's motion, particularly when weighed against the deference due to Plaintiffs' selection of venue. But even if they were not fatal, the motion must still be denied due to United's failure to act with "reasonable promptness." *Peteet*, 868 F.2d at 1436. In fact, even if the Court concludes that United's arguments have merit, the Court should nonetheless deny United's motion due to its delay. *See Mason*, 2015 WL 10434528, at *10.

14

## II.      The Public Interest Factors Favor Plaintiffs.

United fares no better under the public interest factors.  In fact, each such factor either favors Plaintiffs or is neutral.

1. As to the court's docket congestion, Plaintiffs appreciate the crowded docket in the Northern District of Texas.  And Plaintiffs have gone to great lengths to minimize the number of times they seek relief from this Court throughout discovery.  But a review of the applicable data shows that the Northern District of Illinois also has a highly congested docket.  Indeed, the data from the Administrative Office of the U.S. Courts show that: (i) there are 616 cases per judge in this District and 425 cases per judge in the Northern District of Illinois; (ii) there are 492 pending cases per judge in this District and 564 pending cases per judge in the Northern District of Illinois; (iii) the median time from filing to disposition in this District for civil cases is 8 months, and in the Northern District of Illinois it is 6.5 months; and (iv) the median time from filing to trial for civil cases in this District is 26.7 months, while it is 58.2 months in the Northern District of Illinois. *See* Admin. Off. U.S. Courts, *Federal Court Management Statistics—Profiles* (June 2023), available at https://tinyurl.com/4pcvmxa3 (N.D. Tex. data found at p. 34 of pdf; N.D. Ill. data found at p. 47 of pdf).  Because both this Court and the Northern District of Illinois face congested dockets, Plaintiffs suggest that this factor is neutral.[6]

On this point, United mistakenly relies (at 5) on this Court's decision in *Sigoloff v. Austin*, No. 4:22-cv-00923-P, 2023 WL 2142982 (N.D. Tex. Feb. 21, 2023), to suggest that a congested

---

[6] This also substantially undercuts United's suggestion (at 2) that transfer "will increase the likelihood of a swift and complete resolution of this matter[.]"  The notion that a case with such a lengthy and complicated history will land in a new court in the Northern District of Illinois and move forward suddenly is fanciful.  Thus, United's statement (at 2) that "[a] transfer will not further delay this case" fails the straight-face test.  Rather, transfer would provide exactly what United has been seeking throughout this case—more delays.

docket supports transfer.  This case is not remotely similar to *Sigoloff*, where "neither Plaintiff nor Defendant presently reside in Texas" and where "none of the events in the suit took place in Texas[.]"  *Id.* at *1.  Under those circumstances, it is unsurprising that the Court noted it had "little capacity to hear cases better suited in another venue."  *Id.* at *4.  Equally misguided is United's attempt (at 5) to equate this case with *Hassett*.  True, this Court noted in *Hassett* that it "cannot think of a more poignant local interest than having [United's] case—as an Illinois resident—decided in Illinois."  *Hassett* Order at 5 (United App. 155).  In *Hassett*, however, neither § 1404 nor § 1406 authorized venue in this Court.  *Id.* at 3 (United App. 153).  It was those unique circumstances that led this Court to note that "[i]t would be a rarity for the Court to encounter a more incorrect choice of forum based on its traditional rules of venue."  *Id.*  But, as demonstrated below, the Plaintiffs here have much greater connections to this District than did the plaintiffs in *Sigoloff* or *Hassett*.

2.  Additionally, the local interest factor substantially favors Plaintiffs.  This factor serves to ensure that juries are not asked to resolve issues where "a community … has *no relation* to the litigation."  *In re Volkswagen AG*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) (emphasis added).  And, according to the Fifth Circuit, transfer is appropriate where none of the operative facts occurred in the district and where the district has no particular local interest in the outcome of the case.  *See In re Volkswagen of Am.*, 545 F.3d at 318.

This is not such a case.  Rather, as Plaintiffs already demonstrated when opposing United's initial motion to dismiss, a substantial portion of United's actions occurred in this District.  *See* ECF No. 55 at 7–12.  Plaintiffs experienced United's discrimination here, as they were threatened with and forced onto unpaid leave *in this district*.  And United has an extensive presence in this district and in Texas more broadly.  After all, as this Court already recognized, United

16

"purposefully availed itself of the privilege of conducting activities in Texas," ECF No. 103 at 8, and it is thus unsurprising that United's actions affected individuals in this District.

On these facts, no comparison can be made to *Hassett*, where "an Arizona citizen working in Houston for an Illinois corporation" sought to challenge United's discriminatory actions in this Court. *See* Order at 3, *Hassett*, No. 4:23-cv-0960-P (N.D. Tex. Oct. 5, 2023) (Def.'s App. 153, ECF No. 317). When two parties from outside this District complain about activity that caused harm outside this District, it is no wonder this Court agreed there was no local interest. *See id.* at 3–4 (Def.'s App. 153–54, ECF No. 317). But Plaintiffs here, who reside in this District, have a much stronger connection to this District, and thus should have their claims heard by a jury from this District.

3. The final two public-interest factors favor Plaintiffs or are neutral.[7] Plaintiffs do not doubt that both this Court and the judges in the Northern District of Illinois are substantially familiar with Title VII of the Civil Rights Act and with the Americans with Disabilities Act ("ADA"). Similarly, Plaintiffs do not foresee any issues with conflicts of law. However, it cannot be understated how much time this Court has already invested in this case and how familiar the Court is with the facts and applicable law.

Thus, while other courts are familiar with Title VII and the ADA, United's actions in this matter have presented unique issues. *See Sambrano*, 19 F.4th at 840 (Ho, J., dissenting) (noting that this is not a "garden variety" employment discrimination lawsuit). Accordingly, United is mistaken in its focus (at 6) on general vaccine-related employment litigation within the Seventh

---

[7] Plaintiffs do not contest United's statement (at 6) that these factors are "inapplicable" in "a federal question case." If they are inapplicable, then they are simply another set of factors that United fails to demonstrate weigh in their favor. And, to the extent these factors are relevant, they cut against United.

Circuit.  This Court's deep familiarity with the nuances of this case far outpaces the knowledge possessed by courts in other districts.

This fact is not undercut by their being multiple cases in the Northern District of Illinois where various employees challenge aspects of United's COVID-19 vaccine mandate.  *See* United's Mot. at 6–8.  Plaintiffs do not dispute that other employees have sued United Airlines, and that some of those cases are pending in the Northern District of Illinois.  But a smattering of cases proceeding in the Northern District of Illinois does not come close to satisfying United's "significant burden … to show good cause for the transfer" away from Plaintiffs' preferred venue.  *BNSF Ry.*, 667 F. Supp. 2d at 707 (citation omitted).

In fact, the cases United cites only confirm that the Court should deny United's motion.  A close review of United's motion shows that there are very few cases currently pending in the Northern District of Illinois related to United's vaccine mandate.  United lists only three— *Anderson*, *Hassett*, *Wickstrom*.[8]  *See* United's Mot. at 6–7.  And, while United attempts to make it appear as though there are more cases pending in the Northern District of Illinois, United has not even filed transfer motions in two of the cases it lists—*Soto* and *Caraffa*.  If United ultimately moves for transfer in those cases, it is equally possible that those courts will reject United's transfer motion.  Additionally, United's reliance on *Oka* is misplaced, as the motion was uncontested.  Thus, there is no basis for suggesting that the Eastern District of Kentucky agrees with the substance of United's arguments.

More significantly, however, the dockets in these cases underscore United's lack of diligence here.  Unlike this case, where United waited more than two years to file its motion to

_____

[8] Since United filed its motion, one additional case has been transferred to the Northern District of Illinois after the plaintiff consented to the motion.  *See* Order, *Oka v. United Airlines, Inc.*, No. 2:23-cv-00135 (E.D. Ky. Nov. 8, 2022), ECF No. 22 (Pls.' App. 31).

transfer venue, United filed its motion in *Oka* four weeks after the complaint was filed.  *See* Ex. C, Docket Sheet, *Oka v. United Airlines, Inc.*, No. 2:23-cv-00135 (E.D. Ky.) (Pls.' App. 31).  And, in *Engstrom*, United filed a motion challenging venue approximately 6 months after the lawsuit was filed, but before discovery began.  *See* Ex. D, Docket Sheet, *Engstrom v. Air Lines Pilots Ass'n, Int'l*, No. 6:22-cv-02130 (M.D. Fa. Nov. 6, 2023) (Pls.' App. 38).  Accordingly, these cases confirm that United knows how to challenge venue in a "reasonab[ly] prompt[ ]" way—it simply chose not to do so here.

Accordingly, United does nothing to carry its burden of demonstrating that the existence of a handful of cases currently pending in the Northern District of Illinois overcomes the deference due Plaintiffs' preferred venue.

## CONCLUSION

As every relevant factor cuts against United or is neutral, the Court should deny this belated attempt to transfer this case to the Northern District of Illinois.  Rather, the Court should see United's motion for what it is—a blatant attempt to delay this case even further.  This case is finally on the verge of class-certification briefing, which all parties have noted will mark a significant step forward.  The Court should quickly deny United's motion and allow the Plaintiffs to continue their lawsuit in the venue of their choice.

November 28, 2023

Respectfully submitted,

*/s/ Mark R. Paoletta*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Brian J. Field*
D.C. Bar No. 985577
Cristina Martinez Squires
Texas Bar No. 24093764
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com

*/s/ John C. Sullivan*
John C. Sullivan
Texas Bar No. 24083920
David Austin R. Nimocks
Texas Bar No. 24002695
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

On November 28, 2023, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF System).

*/s/ Brian J. Field*
Brian J. Field