**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 4:21-01074-P |
| v. | § | |
| | § | |
| UNITED AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**DEFENDANT'S SUPPLEMENT BRIEF REGARDING THE**
**UNTIMELY CHARGES OF PLAINTIFFS RAINS, CASTILLO, AND MEDLIN**

## INTRODUCTION

Both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") require a plaintiff to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). In its Motion to Dismiss (Dkt. 209 at 16-20; Dkt. 215 at 7-9), United argued that the claims of Plaintiffs Rains, Castillo, and Medlin are time-barred – in whole or in part – because they filed their charges of discrimination more than 300 days after some or all of the challenged employment actions. In response, Plaintiffs have argued that their respective initial online inquiries to the EEOC were effectively "charges," and thus that their claims were timely. Dkt. 213 at 17-18.

As this Court has observed, whether or not a communication to the EEOC qualifies as a charge depends on the test set forth in *Federal Express Corporation v. Holowecki*, 552 U.S. 389 (2008). Under *Holowecki*, a filing "*must*," among other criteria, "be reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 552 U.S. at 402 (emphasis added). The Court has ordered the parties to address "whether these plaintiffs' online inquiry forms or other timely submitted EEOC filings contain a 'specific statement indicating a request to act' such that their filings may be deemed a charge under *Holowecki*." Dkt. 220 at 2.

The answer is no, they do not. As discussed in more detail below, nothing that Plaintiffs Rains, Castillo, and Medlin submitted to the EEOC within 300 days of any alleged unlawful employment practice (except for Medlin's discharge) must be construed as a "specific statement indicating a request to act." Nor do they have any valid excuse for failing to file timely charges. Hence, this Court should dismiss Plaintiffs' untimely claims.

## ARGUMENT

### I. A Communication to the EEOC Must Include a Specific Request for Remedial Action to Qualify as a Charge.

The filing of a timely administrative charge with the EEOC is a statutory prerequisite to initiating a lawsuit under Title VII and the ADA. *See* 42 U.S.C. §§ 2000e-5(b), (e)(1) & (f) (Title VII), 12117(a) (ADA, incorporating Title VII pre-suit procedures). This administrative exhaustion requirement triggers the "integrated, multistep enforcement procedure" that enables the agency to fulfill its purpose of detecting and remedying instances of discrimination. *EEOC v. Hearst Corp.*, 103 F.3d 462, 468 (5th Cir. 1997) (quoting *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359 (1977)). Once the EEOC receives a charge, it must provide prompt notice of the charge to the employer, investigate the charge, determine the merit of the charge, and, if the EEOC "determines . . . that there is reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b); 29 C.F.R. §§ 1601.14 & 1601.24.

Not every inquiry to the EEOC triggers this enforcement function. Indeed, as the Supreme Court observed in *Holowecki*, "many filings come from individuals who have questions about their rights and simply want information." 552 U.S. at 401. Congress intended that the EEOC provide guidance to the public by "furnish[ing] to persons subject to [Title VII] such technical assistance as they may request." 42 U.S.C. § 2000e-4(g)(3). "Providing answers to the public's questions is a critical part of the EEOC's mission; and it accounts for a substantial part of the agency's work." *Holowecki*, 552 U.S. at 401. Indeed, the EEOC receives nearly 175,000 inquiries per year, as compared to 76,000 charges. *Id.* Thus, "[f]or efficient operations, and to effect congressional intent, the agency requires some mechanism to separate information requests from enforcement requests." *Id.*

To distinguish between charges (which trigger the EEOC's notice, investigation, determination, and conciliation obligations) and non-charges (such as information inquiries) the Supreme Court established a two-part test to determine whether a particular filing is a "charge." To be a charge, a filing (1) must meet the EEOC's regulatory charge-filing requirements (29 C.F.R. §§ 1601.9, 1601.14) and (2) "it *must* be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402 (emphasis added).[1] This is an objective test. The written submission "*must*" (not "may", not "can", not "might") cause an objective, reasonable observer to determine that "the filer requests the agency to activate its machinery and remedial processes." *Holowecki*, 522 U.S. at 402. The filer's subjective intent is irrelevant. *Id.*

Cases within the Fifth Circuit applying the second prong of the *Holowecki* test make clear that a request for remedial action must be explicit. Simply reporting to the EEOC that the submitting party believes that he or she suffered discrimination, providing all reasons to support that belief, and even invoking the word "charge," without more, does not satisfy *Holowecki*'s request-to-act requirement. *Weathers v. Houston Methodist Hosp.*, 2023 WL 6612509, at *3 (S.D. Tex. Oct. 10, 2023) (email with timeline of discriminatory acts and asking "[d]oes this offer enough information to get started?" insufficient under *Holowecki*); *Freeland v. Coors of Austin, L.P.*, 2015 WL 4744362, at *5, *8 (W.D. Tex. Aug. 10, 2015) ("check[ing] the box for disability discrimination," providing statements about the alleged discrimination, and using the word "charge" in intake questionnaire insufficient under *Holowecki*); *Nadesan v. Texas Oncology PA*, 2011 WL 147570, at *4-5 (N.D. Tex. Jan. 18, 2011) (statement that submitting party "believed

[1] *See also Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) ("*Holowecki*'s holding extends to Title VII" (citations and internal quotations omitted)); *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (extending *Holowecki* to the ADA).

discriminatory action had been taken against her on the basis of National Origin, Sex, and Age" and including a "detailed statement outlining her allegations" insufficient under *Holowecki*); *Evenson v. Sprint/United Mgmt. Co.*, 2008 WL 4107524, at *1, *8 (N.D. Tex. Aug. 21, 2008) (statement in intake questionnaire that submitting party's "position was given to a younger male" insufficient under *Holowecki*). Only a "clear manifestation" of the filer's request that "the EEOC take remedial action" will suffice. *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020) ("I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above" sufficient under *Holowecki*).

## II. None of Plaintiffs' Pre-Charge Inquiries to the EEOC Include a Specific Request to Act.

In this case, Plaintiffs Rains, Castillo, and Medlin each submitted a pre-charge statement or inquiry. None of those materials contain any language that comes close to meeting *Holowecki*'s "request-to-act" requirement

***Rains.*** Rains' claims stem from his allegations that, on September 8, 2021, he was not allowed to request a religious accommodation. Dkt. 156 ("SAC") ¶¶ 163-64. Rains also alleges that he received an inadequate accommodation after his medical exemption request was granted. This accommodation began in November 2021. *Id.* ¶ 168. Rains does not allege he suffered a discriminatory act after this date.[2]

Rains submitted an online inquiry to the EEOC on December 14, 2021. Dkt. 170, Pls.' App. at 29-32. In that form, he provided (1) his contact information, (2) general information about United, (3) the reason for his dispute, and (4) additional information about the unlawful

[2] As United established (Dkt. 209 at 16-19, Dkt. 215 at 8 n.6), Plaintiffs cannot rely on the continuing violation exception to save their respective untimely claims, as each unlawful employment practice complained of constitutes a discrete act with its own statute of limitations period.

employment practice that purportedly occurred. *Id.* ("I was approved for a medical exemption but denied a religious exemption documented by an audio recording. . . . [United] effectively terminated my employment by forced medical leave . . . . I believe this was an act of retaliation from United . . . ."). None of that is sufficient to constitute a charge. *See, e.g.*, *Weathers*, 2023 WL 6612509, at *3; *Freeland*, 2015 WL 4744362, at *5; *Nadesan*, 2011 WL 147570, at *5. Rains never says anything that must be construed as a *specific* statement indicating a request to act – he never asks the EEOC to investigate or issue a right to sue letter or file a lawsuit or anything of that nature. Because he did not ask the EEOC to do anything until he filed his charge on November 3, 2022—338 days after the last alleged act—his claim is untimely. *See* Dkt. 210 at App. 24-25.

***Castillo.*** Castillo's claims stem from his allegations that United initially determined in mid-September 2021 that his accommodation request was untimely. SAC ¶ 17. Castillo also claims he suffered a discriminatory act when he was granted an accommodation in the form of masking and testing protocol in October 2021. *Id.* ¶ 115.

In his original declaration, Castillo avers that he "submitted a charge with the EEOC on September 20, 2021," but now says that he cannot find it. *See* Dkt. 7 at App. 20; Dkt. 213 at 18 n.7. Even if his recollection that he filed something in September of 2021 were accurate, nothing in Castillo's written testimony identifies any specific statement that must be reasonably construed as a request for the EEOC to act.

Moreover, the EEOC's administrative record does not support Castillo's assertion that he filed a "charge" in September of 2021. The earliest notation in the record is an online inquiry dated October 18, 2021. *See* App. in Support of Supp. Br. ("Def.'s App.") at 048; *Hawkins v. AT&T*, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013) ("Documents contained in a Title VII administrative record are public records for which the court can take judicial notice and consider

in a motion to dismiss."). Nor does the administrative record suggest that Castillo's October inquiry included any "specific statement indicating a request to act." *See* Def.'s App. at 039-139. Indeed, there is no indication that Castillo asked the EEOC to do anything until he filed an charge on September 19, 2022, which was 323 days after October 31, 2021. Dkt. 216 at App. 4-6.

"Dismissal of Title VII claims is proper where the plaintiff fails to meet his burden of proving that an administrative charge was timely filed with the EEOC." *Connor v. Harris Cnty.*, 1992 WL 337420, at *5 (S.D. Tex. Sept. 17, 1992) (citing *Crawford v. Western Electric*, 614 F.2d 1300, 1306 (5th Cir. 1980)). Castillo has not satisfied his burden of proving that his charge was timely, and so this Court should dismiss his claims.

***Medlin***. Medlin's allegation is that she was initially denied her religious accommodation, which occurred "several weeks" after her August-September 2021 request. SAC ¶ 175. She also challenges her March 9, 2022 discharge. *Id.* ¶¶ 177-80.

Medlin did not file her EEOC charge until November 3, 2022, more than a year after her religious accommodation request was denied. Medlin submitted an online inquiry to the EEOC on March 12, 2022. *See* Def.'s App. at 150. Like Rains' inquiry, the online form Medlin completed only provides her contact information, general information about United, the reason for Medlin's dispute, and the reason Medlin believed she was terminated. *See* Dkt. 170, Pls.' App. at 34-27 (stating that "I was terminated Wednesday, March 9 because it[']s against my belief to take a Covid vaccine. . . ."). As with Rains' inquiry, none of that constitutes a specific request to act. *See, e.g.*, *Weathers*, 2023 WL 6612509, at *3; *Freeland*, 2015 WL 4744362, at *5; *Nadesan*, 2011 WL 147570, at *5. Nor does Medlin's inquiry include any other explicit statement that "must be reasonably construed as a request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402. Thus, Medlin's charge is untimely, except with respect to her discharge.

## II. Plaintiffs' Ancillary Arguments Ignore *Holowecki*'s Objective Standard And Are Otherwise Misplaced.

### A. Plaintiffs Distort the Charge Standard.

In their earlier argument regarding timeliness, Plaintiffs rely on a number of pre-*Holowecki* cases for the proposition that a written submission only needs to "identif[y] the parties and describe[] the discriminatory act with enough detail that the agency could issue a charge." Dkt. 213 at 16-17 (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74 (5th Cir. 1982), *Conner v. La. Dep't of Health & Hosps*., 247 F. App'x 480 (5th Cir. 2007), and *Edelman v. Lynchburg Coll.*, 535 U.S. 106 (2002)).

There are two problems with that. First, the cases they cite addressed only whether an unverified charge could later be cured. *See* Dkt. 215 at 8-9. Second, Plaintiffs' reading of those cases is foreclosed by the Supreme Court's subsequent adoption of the request-to-act requirement in *Holowecki*. The Supreme Court was quite clear that simply providing background information, like that called for by the agency's online inquiry form, regarding an alleged discriminatory act is not sufficient to trigger the EEOC's enforcement function. *See Holowecki*, 552 U.S. at 402 (an express request to act is "[i]n addition to" factual details about underlying complaint and other regulations governing the form and content of a charge). As the Court recognized, the term "charge" should be interpreted such that the tens of thousands of individuals who seek information from the EEOC each year are not swept into the agency's enforcement machinery unwittingly. *Id.* at 401 ("If an individual knows that reporting this minimal information to the [EEOC] will mandate the agency to notify her employer, she may be discouraged from consulting the agency or wait until her employment situation has become so untenable that conciliation efforts would be futile. The result would be contrary to Congress' expressed desire that the EEOC act as an information provider and try to settle employment disputes through informal means.").

Plaintiffs likewise argue that the EEOC's intent to treat an inquiry as a charge can be divined from (1) the EEOC's assignment of an "Inquiry Number" that becomes a charge number, (2) the handling of an inquiry that "continued without interruptions," and (3) the EEOC's use of the phrase "viewed *charge* details" in its activity log when referring to an inquiry. Dkt. 213 at 18-19. But none of these observations—even if true—are relevant to the *Holowecki* standard. *See, e.g.*, *Weathers*, 2023 WL 6612509, at *3 (inquiry that was "assigned . . . the same case number reflected on her formal Charge of Discrimination" did not meet *Holowecki* standard); *Freeland*, 2015 WL 4744362, at *5 (using the word "charge" in intake questionnaire insufficient).

Moreover, whether the EEOC intended to treat an inquiry as equivalent to a charge is not the question. This Court must make its own assessment of whether Plaintiffs submitted timely charges; the EEOC's view on this point is not entitled to deference. *See, e.g.*, *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1304 (5th Cir. 1979) (affirming court's untimely charge decision despite "EEOC's determination that she had satisfied all of Title VII's jurisdictional prerequisites," explaining "a court must make an independent determination of whether jurisdiction exists rather than deferring to the EEOC").

And, in any event, the EEOC did *not* treat any of Plaintiffs' pre-charge submissions as a charge. If the EEOC had done so, it would have provided notice to United as required by Title VII and its own regulations, 29 C.F.R. § 1601.14. The EEOC did not provide such notice until after it received Plaintiffs' actual charges, many months later. *See* Def.'s App. at 010 (Notice of Rains Charge), 045 (Notice of Castillo Charge uploaded 9/20/2022), 152 (Notice of Medlin Charge). In addition, the EEOC expressly informed Medlin that "[t]he inquiry [she] submitted does not constitute a charge," and likewise asked Rains to contact EEOC about "possibly filing of a charge of discrimination" after the EEOC received his initial inquiry. *Id.* at 224, 026. These statements

are consistent with the guidance the EEOC gives all individuals who submit online inquiries. *See* Dkt. 209 at 19, n.7 (quoting EEOC inquiry portal: "Submitting an inquiry is different from filing a charge of discrimination.").[3]

**B. Plaintiffs Have No Basis for Equitable Tolling.**

Plaintiffs argue that the EEOC's "own process" caused their delayed charge-filing, such that equitable tolling should apply. Dkt. 213 at 19-20. The Fifth Circuit has recognized three bases for equitable tolling: "(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003). The last of these three applies when an "employee seeks information from the EEOC, and the organization gives the individual *incorrect information* that leads the individual to file an untimely charge." *Id.* at 881.

Here, Plaintiffs rely on the third basis for equitable tolling. *See* Dkt. 213 at 19-20. But, as United explained (Dkt. 215 at 8), Plaintiffs have not alleged or identified—either in their operative Complaint or opposition to United's motion to dismiss—any "incorrect information" that they received from the EEOC, let alone any such information that would impact their understanding of the proper time for filing their respective charges.

To the extent Plaintiffs maintain it was the EEOC's normal intake process that led them to file untimely charges, or that the EEOC's intake process was slower than normal due to COVID-

[3] The administrative record also shows that Plaintiffs' respective inquiries did not, in fact, "continue[] without interruption" (Dkt. 223 at 18). The EEOC closed each of Plaintiffs' inquiries for a period due to each Plaintiffs' failure to respond to the EEOC. *See* Def.'s App. at 037 (Activity log for Rains, 3/16/2022: "Inquiry has been closed with reason Unable to contact Charging Party"), at 046-47 (Activity log for Castillo, 6/10/22: "Inquiry has been closed with reason Charging Party failed to Respond."), at 149 (Activity log for Medlin, 11/7/2022: "Inquiry has been closed with reason Charging Party failed to Respond.").

19, Plaintiffs have cited no cases—and United is aware of none—indicating those facts would be sufficient for equitable tolling. Indeed, equitable tolling is limited to "extraordinary" circumstances. *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). Any delay in the EEOC's normal process does not justify equitable tolling, particularly when nothing otherwise prevented Plaintiffs from submitting charges directly to the EEOC. *See Weathers*, 2023 WL 6612509, at *3 (difficulty scheduling EEOC interview "during Covid-19" did not justify equitable tolling); *Nadesan*, 2011 WL 147570, at *5-6 (fact that "EEOC waited approximately 195 days before sending [plaintiff] a formal charge of discrimination to complete and return" did not justify equitable tolling).

Lastly, Plaintiffs' portrayal of the EEOC process as a "complicated filing system" (Dkt. 213 at 16) is disingenuous. The EEOC's procedures are designed so that "laypersons, rather than lawyers" can initiate the process. *Holowecki*, 552 U.S. at 402-03. This argument is particularly problematic with respect to (at least) Castillo, who was represented by counsel in September 2021 (*see* Dkt. 1), when he claims he first contacted the EEOC (Dkt. 7 at App. 20). A plaintiff represented by competent counsel cannot seriously claim that the EEOC's "complicated filing system," designed for laypersons, was the reason the plaintiff submitted an untimely charge.

Because Plaintiffs Rains, Castillo, and Medlin each filed charges more than 300 days after the alleged unlawful practices that, in whole or in part, form the basis of their claims in this lawsuit, their untimely claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should deem Plaintiffs Rains' and Castillo's charges untimely and dismiss their claims. The Court should deem Plaintiff Medlin's charge untimely to the extent it encompasses discriminatory acts that occurred before her termination from United.

Dated: December 8, 2023

Respectfully submitted,

/s/ *Jordan M. Matthews*

Russell D. Cawyer
TX Bar No. 00793482
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: +1.817.878.3562
Facsimile: +1.817.335.2820
Email: russell.cawyer@kellyhart.com

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626-1700
Email: dmunro@jonesday.com

Jordan M. Matthews
IL Bar No. 6300503
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Email: jmatthews@jonesday.com

Alexander V. Maugeri
NY Bar No. 5062666
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: +1.212.326.3939
Facsimile: +1.212.755.7306
Email: amaugeri@jonesday.com

**ATTORNEYS FOR DEFENDANT UNITED AIRLINES, INC.**