**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>*Defendant*. | Civil Action No.: 4:21-cv-01074-P |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**
**REGARDING DEFENDANT'S RENEWED MOTION FOR PARTIAL DISMISSAL OF THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... **1**

**TABLE OF AUTHORITIES** .......... **1**

**RELEVANT FACTS** .......... **2**

**ARGUMENT** .......... **7**

**CONCLUSION** .......... **10**

## TABLE OF AUTHORITIES

**Cases**

*Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480 (5th Cir. 2007) .......... 9

*Edelman v. Lynchburg College*, 535 U.S. 106 (2002) .......... 10

*EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749 (5th Cir. 2020) .......... 1, 8, 9

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333 (5th Cir. 2021) .......... 7, 8

*Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008) .......... 1, 7, 8, 9, 10

*Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) .......... 4

*Freeland v. Coors of Austin, L.P.*, No. A-14-CA-443-SS, 2015 WL 4744362 (W.D. Tex. Aug. 10, 2015) .......... 8, 9

*Manning v. Chevron Chem. Co.*, 332 F.3d 874 (5th Cir. 2003) .......... 8, 9

*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006) .......... 8

*Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) .......... 1, 9, 10

**Statutes**

Tex. Admin. Code § 819.76 .......... 4

**Other Authorities**

*Fair Employment Practices Agencies (FEPAs) and Dual Filing*, EEOC .......... 4

**Regulations**

29 C.F.R. § 1601.12(b) .......... 9, 10

In this Court's Order for Supplemental Briefing regarding the timeliness of EEOC charges (ECF No. 220), the Court asked the parties to identify "specific statement[s] indicating a request to act" by Plaintiffs Castillo, Rains, and Medlin in their "online inquiry forms or other timely submitted EEOC filings." Plaintiffs' EEOC filings satisfy this requirement, which is properly analyzed under the Supreme Court's "reasonably construed" standard of *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008), as read in harmony with Fifth Circuit caselaw addressing this question. Under that authority, the question is whether the individuals' actions sufficiently initiated the EEOC's actions and put the employer on notice. *See EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 756 (5th Cir. 2020) (per curiam) (noting that a court should examine Inquiry Forms "from the standpoint of a reasonable observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes"); *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) ("While neither signed nor sworn, the form completed [at the intake interview] informed the EEOC of the identity of the parties and described the discriminatory conduct in enough detail to enable it to issue an official notice of charge to [the employer], thus setting the administrative machinery in motion.").

The record includes objective evidence showing that Plaintiffs satisfy these standards: (1) specific statements by Mr. Castillo regarding his EEOC charge to both United and this Court—about which the EEOC was aware—that revealed a desire for the agency to engage in remedial activity (which the EEOC did by investigating and then drafting a charge that only lacked Mr. Castillo's signature); (2) specific statements by Mr. Rains in both his Texas Workforce Commission (TWC) and EEOC Inquiry Forms that sought action from those agencies; and (3) a statement from Ms. Medlin to the EEOC that she had been terminated because of her religious beliefs that—reasonably construed—evidences a desire to set the agency's administrative

machinery in motion. In all events, both Rains and Medlin signed charges within 300 days of United's actions against them, *see infra*, rendering United's timeliness arguments moot as to them. But United's other timeliness arguments are also mistaken under a proper reading of binding authority, and the Court should thus deny United's renewed motion to dismiss.

## RELEVANT FACTS

***David Castillo***. David Castillo is a mechanic with United Airlines with a religious objection to taking the COVID-19 vaccine. ECF No. 1 at ¶ 74. Because he could not provide a "pastor's note"—being a Buddhist—Castillo never submitted his request prior to United's deadline. He later emailed his supervisor in mid-September, however, asking for an accommodation after learning that United no longer required a pastor's note. But United's company-imposed deadline had passed and United deemed the request "untimely." PI Hr'g Tr., Vol II, at 88. Castillo was thus scheduled to be terminated on September 28, 2021, but United changed course and provided him a special masking/testing accommodation because of his involvement as a party in this case.

Mr. Castillo first submitted an inquiry to the EEOC on September 20, 2021. *See* Ex. 1. Believing his submission to be a "charge" at that time, Castillo informed the Court and United of his EEOC filing in the original Complaint. ECF No. 1 at ¶ 79. He also referenced his "pending charge" in the Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 6 at 6. Castillo further testified at the preliminary injunction hearing on October 13, 2021 that he had "filed a complaint against United with the EEOC regarding its discrimination." Preliminary Injunction Hearing Transcript, Vol II, at 94.

As Exhibit 1 reflects, the EEOC classified Castillo's first submission on September 20, 2021, as an "INQUIRY." The EEOC informed him when he submitted his request that he was required to schedule an interview. *See* Ex. 2 at 11. The EEOC was not able to conduct his

interview at that time, though, due to scheduling overloads. But even had Castillo scheduled an interview, it would have been cancelled alongside the other interviews in cases involving United that the EEOC cancelled when it consolidated all such cases in a single office. *See, e.g.*, Ex. 2, SAMB0000086. Then, evidently due to an administrative error, Castillo's first inquiry was closed and a second file opened with a submission date of October 18, 2021.[1] The second file—with a new case number—is designated as the "CHARGE" for this case. *See* Ex. 1. Once this new inquiry was transferred to the EEOC office handling United cases, the assignee there is noted to have "viewed charge details" in the submission. UNITED_SAMBRANO_00001888.[2]

After waiting a year without hearing from the EEOC, Castillo reached out through counsel to obtain his right to sue letter. US_00001904. Counsel was then called by Seth Sinclair, the Lead Systemic Investigator for the EEOC, and told to submit a signed Form 5 charge so that the right to sue letter could be issued, which counsel then did. US_00001911. That Form was received by the EEOC on September 19, 2022. *See* US_00001898. The case was closed at the end of September 2022 and the right to sue letter downloaded by Castillo on October 2, 2022. US_00001881.

Castillo's second file—the one opened on October 18, 2021—reveals that the EEOC prepared a charge in this case and sent it to Castillo for signature on April 12, 2022. US_00001887. As noted above, however, he never received that message. Castillo's file was subsequently closed by the EEOC on June 10, 2022, and the "[c]ase status changed from Charge Prepared to Inquiry Closed." US_00001886–1887. In the meantime, United was in communication with the EEOC regarding Castillo's charge, asking on March 16, 2022, if his formal charge had been filed.

---

[1] Counsel has requested a copy of the online Inquiry Form that Mr. Castillo submitted on September 20, 2021, but has been unable to obtain that document from the EEOC.

[2] For clarity, all remaining references to documents with Bates numbers starting with "UNITED_SAMBRANO" have been abbreviated with the prefix "US." All such documents may be found at Exhibit 8.

US_00001950. United also subsequently submitted multiple position statements in April and May of 2022 that were potentially applicable to Castillo, and the EEOC added those to his file. US_00001913–1929. When counsel for Castillo reached out to the EEOC in September 2022, the case was set as "urgent" and reopened by the EEOC. US_00001886. An investigation again took place by the EEOC and a "[c]harge [was] recommended" for Castillo's case. US_00001883.

***Jarrad Rains***. Jarrad Rains is a flight attendant for United with both a religious and disability exemption from taking the COVID-19 vaccine. ECF No. 156 at ¶¶ 21, 161, & 163 and n.3. While he was granted an "accommodation" for his medical condition, it was forced unpaid leave from November 2021 to March 2022. United ignored his religious request. *Id.* at 163 n.3.

After being denied a reasonable accommodation—but before being placed on unpaid leave—Rains submitted a Complaint to the TWC on September 21, 2021. Ex. 4, SAMB0002296–99. These Complaint Forms are the equivalent of an Inquiry Form at the EEOC that can result in a charge, as the EEOC works together with the state agencies (such as the TWC) by having the state agency refer a matter to the EEOC once a charge is drafted and signed by the charging party. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (describing the "worksharing agreement" between the EEOC and state agencies); *see also* Tex. Admin. Code § 819.76 (TWC's worksharing agreement with the EEOC). Such "dual filings" are then handled by either agency as a formal charge of discrimination. *Fair Employment Practices Agencies (FEPAs) and Dual Filing*, EEOC.[3] In other words, the initial inquiry with the state agency is equivalent to an EEOC inquiry and a signed state agency charge is equivalent to the EEOC's Form 5 formal charge.

In his TWC Complaint Form, Rains noted that his "religious beliefs" had been "grossly

[3] https://www.eeoc.gov/fair-employment-practices-agencies-fepas-and-dual-filing (last accessed Dec. 7, 2023).

infringed upon" and attached a document with the Complaint further explaining his position. The document described United's mandate and its effects on him, recounting again the concern Rains had for his "religious moral beliefs." Ex. 4, SAMB0002299. At the conclusion of his attachment, Rains stated: "I hope through my pl[ight] and that of many others that are now suffering from these unconstitutional mandates[,] that to whom it may concern there may be a path to assist us legally and help us return to our jobs quickly and without [any undue delay]." *Id.* In a form email sent to all United employees who submitted a Complaint to the TWC, however, the Commission declined to "file a charge" on his behalf because he had not yet been placed on unpaid leave.[4]

Once Rains was placed on unpaid leave, he again reached out to the TWC, asking how he could update his case or get an EEOC number. Ex. 6, SAMB0001873. Unable to obtain help from the TWC—which should have already allowed his charge to move forward, just like equivalent cases at the EEOC—Rains submitted a separate inquiry form to the EEOC on December 14, 2021. Ex. 7, SAMB0000659–62. In that form, he described the "Adverse Action(s)" taken by United:

> On September 20, 2021 while engaging in a protected activity identifying my medical and faith based objections to United Airlines vaccine mandates. I was approved for a medical exemption but denied a religious exemption documented by an audio recording. UAL FAILED TO ENGAGE in any REASONABLE ACCOMMODATION PROCESS and effectively terminated my employment by a forced medical leave ON NOVEMBER 16. AT THIS TIME MY EMOTIONAL PHYSICAL AND MENTAL HEALTH HAS BEEN GREATLY AFFECTED. THE STRESS, ANXIETY SLEEP DEPRIVATION HAVE EFFECTIVELY MADE ME NON-FUNCTIONAL AT TIMES. The loss of my job and all the privileges and benefits that it affords has deeply grieved me. My mental physical and emotional health have suffered greatly with anxiety stress and sleep deprivation. I often find myself complacent and dysfunctional not knowing what to do next. I believe this was an act of RETALIATION from United Airlines because I requested a reasonable accommodation for my faith and medical situation.

[4] This mistake by the TWC is demonstrated by other named Plaintiffs in this case filing Inquiry Forms with the EEOC prior to being placed on unpaid leave that became the basis for their signed charge. *See, e.g.*, Inquiry Form for D. Jonas, Ex. 5, SAMB0001873–77.

Ex. 7, SAMB0000661 (cleaned up). Rains remained on unpaid leave until March 28, 2022.

After submitting his EEOC inquiry, Rains—as instructed—scheduled an interview for January 4, 2022, but the EEOC cancelled that appointment. US_00007175. He was told to wait for contact from the EEOC but, as Plaintiffs explained previously, the EEOC was backlogged with interview requests (especially for United) and charging parties were waiting for months to be contacted. The EEOC did eventually reach out to Rains on March 16, 2022, but he did not receive the message. US_00007163. That same day, noting that the investigator was unable to reach Rains, the EEOC closed his inquiry. US_00007174.

Mr. Rains was still waiting to be contacted for his EEOC interview when he submitted his EEOC Form 5 formal charge on November 3, 2022. US_00007167–68. The EEOC substituted that document for a normal interview, UNITED_SAMBRANO_00007157, and then sent the charge to United. US_00007166. Due to "administrative limitations affecting [the EEOC's] operations," Rains's charge was not submitted to United until January 10, 2023. US_00007153. As further noted in the transmission letter, the EEOC is given room for such "administrative action" under the laws it enforces so as to not "disadvantage" the employee when the agency has administrative issues. US_00007153. As the EEOC also acknowledged internally, there had been "a lot of back and forth with [Rains's] charge coming from Dallas [and] setting up [the] intake [interview]." US_00007140.

***Alyse Medlin***. Alyse Medlin was a flight attendant for United until March 2022. She was on maternity leave when United announced its vaccine mandate in August 2021, but she learned then that she should submit a request for an accommodation for her sincerely held religious belief against taking the vaccine. ECF No. 156 at ¶ 173. Because she was on leave—and not required to check her company email—Medlin did not see United's follow-up demand that she submit a

"third-party verification" of her religious beliefs within three days. *Id.* ¶ 175. When she saw the demand several weeks later and tried to respond, United's "Help Hub" portal was closed and she could not submit the document. *Id.* United then denied her accommodation request for not having the third-party letter, but she assumed that the issue would be resolved after she returned from leave. *Id.* ¶ 176. When she was told at the beginning of March—just prior to returning—that she would need to upload a vaccination card, Medlin explained to her supervisor that she was exempt from the requirement due to her sincerely held religious belief that prevented her from taking the vaccine. *Id.* She was then called to a virtual meeting and fired on March 9, 2022, the day before United announced it was bringing back unvaccinated employees. *Id.* ¶¶ 178–80.

Medlin filed an inquiry with the EEOC three days after her termination. US_00001642. In that form, she described the "Adverse Action(s)" taken by United as follows: "I was terminated Wednesday, March 9 because it[']s against my belief to take a Covid vaccine." US_00001644. She also stated that she was terminated because of "[her] unwillingness to inject [her]self with a vaccine after providing a religious exemption." US_00001645. The Inquiry Form noted that the deadline for Ms. Medlin to file a charge was January 3, 2023. She signed her EEOC Form 5 formal charge on November 3, 2022. US_00001637.

## ARGUMENT

The record shows many specific statements indicating a request for the EEOC to take remedial action and to initiate the agency's administrative machinery. The "key purpose of an employment-discrimination charge . . . is to give the employer notice of the existence and general substance of the discrimination allegations." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). Against that backdrop is *Holowecki*'s direction to consider whether "the [inquiry], taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." 552 U.S. at 398. Each Plaintiff did so.

To be sure, Judge Sparks reads *Holowecki* more narrowly, demanding a "specific statement indicating a request to act." *Freeland v. Coors of Austin, L.P.*, No. A-14-CA-443-SS, 2015 WL 4744362, at *8 (W.D. Tex. Aug. 10, 2015). But the Supreme Court's text is binding here, not Judge Sparks's gloss. And the Fifth Circuit explained in *Vantage* that a court simply examines the filings "from the standpoint of a reasonable observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." 954 F.3d at 756. When conducting that analysis, courts may look beyond the four corners of a plaintiff's EEOC complaint—"to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Plaintiffs clearly satisfy these requirements.

1. Mr. Castillo—while unable to verify the contents of his initial Inquiry Form—made multiple statements to this Court and United (through repeated filings) that he was seeking a charge of discrimination. The EEOC knew this—after transferring Castillo's file, the EEOC agent explicitly "viewed *charge* details" in Castillo's submission. US_00001888 (emphasis added). And United knew this, as this lawsuit noted a forthcoming charge. US_00001950. The purpose of a charge was thus fulfilled. *Ernst*, 1 F.4th at 337.

Most telling, the EEOC prepared a charge for Castillo to sign. US_00001887. He clearly wanted the agency to take remedial action, and the agency did so. *See Pacheco*, 448 F.3d at 788–89 (examining whether the plaintiff did, in fact, "trigger the investigatory and conciliatory procedures of the EEOC"). Castillo's interactions with the EEOC thus go beyond what *Holowecki* requires, and more than satisfy the "rationale for the charge requirement": to promote fairness for the employer by giving them timely notice and allow the EEOC time to investigate the matter. *Ernst*, 1 F.4th at 337 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003)).

True, there was miscommunication between the EEOC and Castillo. But under Federal

Regulations, EEOC practice, and Fifth Circuit precedent, Castillo is allowed to provide a signature to cure any such technical defects. *See Vantage*, 954 F.3d at 756; *Manning*, 332 F.3d at 878 (citing 29 C.F.R. § 1601.12(b)). Here, the EEOC sent Castillo a charge for signature—showing that it had not only been asked to take remedial action, but it actually did so. Castillo thus easily satisfied the Fifth Circuit's standard by "setting the administrative machinery in motion" through his interactions with the EEOC, regardless of what *Freeland* might imply. *See Price*, 687 F.2d at 78; *accord Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).

2. Mr. Rains—who signed his charge within 300 days of the ongoing violation—made statements to both the TWC and EEOC objectively reflecting a desire for agency action. First, he explicitly told the TWC in his Inquiry Form that he desired the state agency to "assist us legally and help us return to our jobs quickly." Ex. 4, SAMB0002299. While the TWC did not allow Rains to sign a charge, the clear statements on his Inquiry Form remain. Moreover, he offered the same evidence to the TWC that others offered to the EEOC who were then allowed to proceed to a signed charge based on their inquiry. Ex. 5, SAMB0001875. Had the TWC fulfilled its obligations, the Inquiry Form he submitted—legally equivalent to an Inquiry Form submitted to the EEOC—contained an unambiguous request for the agency to take legal action to get their jobs back, and Rains thus satisfied *Holowecki* even under *Freeland*'s crabbed interpretation.

Second, after the TWC incorrectly dismissed his inquiry, Rains filed another Inquiry Form with the EEOC again detailing the actions taken against him by the company. Among these was the charge of "effective termination" that Rains obviously wanted resolved. The repeated "ALL CAPS" accusations against the company and the fact that Rains had been put out of work reasonably indicated "a request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402. Indeed, there is no way to read that Inquiry Form as *not* showing a desire to "set[]the

administrative machinery in motion." *Price*, 687 F.2d at 782.

3. Similarly, Ms. Medlin communicated to the EEOC that she "was terminated" because of her religious beliefs. US_00001644. Applying *Holowecki*'s framework, this statement—while unnecessary for the timeliness of her claims—suffices.[5]

Again, *Holowecki* considers whether the Inquiry Form can be "reasonably construed as a request for the agency to take remedial action." 552 U.S. at 402. When an employee reaches out to the EEOC indicating they have been fired for a religious belief, that is a sure indication they want remedial action—there is no need for talismanic words such as "please sue my employer." To hold otherwise would be at odds with the Supreme Court's direction in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002)—on which *Holowecki* relied—and 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."). So long as a party "describe[s] the alleged discriminatory conduct in enough detail," the timeliness of the charge relates back to the initial inquiry date. *See Price*, 687 F.2d at 78.

## Conclusion

Had the EEOC determined that any aspect of Plaintiffs' claims was untimely, it would have indicated as much. But it did not do so, and Plaintiffs' charges are timely. Accordingly, the Renewed Motion to Dismiss should be denied.

---

[5] As Plaintiffs explained previously, Ms. Medlin did not require an accommodation until March 2022, when she returned to work. The claim that earlier events were "discrete"—so as not to form part of the same charge—is misguided. United's earlier denial of her religious accommodation was the first step in a continuous process, culminating in her termination. Thus, *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005), is inapplicable—the discriminatory acts here were not discrete but related.

December 8, 2023

Respectfully submitted.

*/s/ Mark R. Paoletta*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Brian J. Field*
D.C. Bar No. 985577
Cristina Martinez Squiers
Texas Bar No. 24093764
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com

* Admitted *pro hac vice*

*/s/ John C. Sullivan*
John C. Sullivan
Texas Bar No. 24083920
David Austin R. Nimocks
Texas Bar No. 24002695
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com