## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID SAMBRANO, *et al.*, individually, and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-CV-01074-P |
| UNITED AIRLINES, INC., | § § | |
| Defendant. | § § | |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Defendant United Airlines, Inc. hereby files its Answer and Affirmative and Other Defenses to Plaintiffs' Second Amended Class Action Complaint ("Second Amended Complaint"), and states as follows:

The content of any paragraph or headings are repeated only for the purpose of organizational clarity and do not constitute admissions. United denies any liability to Plaintiffs or any putative Plaintiff class, issue-class, or subclass, and denies that there is any basis for certification. United expressly reserves the right to amend its answer, supplement its defenses, or to assert counterclaims or crossclaims. No response is required for any of the claims dismissed in the Court's December 18, 2023 Opinion & Order granting, in part, United's Renewed Motion form Partial Dismissal ("MTD Order") and to the extent a response is required United denies such allegations.

### ANSWER

1.      Plaintiffs David Sambrano, David Castillo, Kimberly Hamilton, Debra Jennefer Jonas, Genise Kincannon, Jarrad Rains, Alyse Medlin, and Charles Burk (collectively, "Plaintiffs"), on

behalf of themselves and all others similarly situated, complain as follows against Defendant United Airlines, Inc. ("United").

**ANSWER:** Defendant admits that the listed individuals are asserting claims against Defendant, except insofar as the Court dismissed the plaintiff(s) and/or claims in its MTD Order, but Defendant denies any wrongdoing or liability. Defendant denies any remaining allegations contained in Paragraph 1.

2.      This is a class action brought to remedy United's pattern of discrimination and retaliation against those employees who requested religious accommodations, medical accommodations, or both from United's mandate that its employees receive the COVID-19 vaccine (the "Mandate").

**ANSWER:** Defendant admits that Plaintiffs purport to bring such claims and seek such relief, but Defendant denies any wrongdoing or liability and further denies that Plaintiffs are entitled to certify any class action or obtain any relief. Defendant denies any remaining allegations contained in Paragraph 2.

3.      Rather than complying with its obligations under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), United responded uniformly to all employees who requested an accommodation from the Mandate by informing the employees that they would be effectively terminated—placed on indefinite unpaid leave—unless they violated their faith or risked their health by receiving the COVID-19 vaccine.

**ANSWER:** Defendant denies the allegations contained in Paragraph 3.

4.      For those able to navigate United's onerous and flawed online accommodation request system (ironically named "Help Hub"), the reward was functional termination—indefinite unpaid leave, unless one acquiesced to the Mandate.

**ANSWER:** Defendant denies the allegations contained in Paragraph 4.

5.      For those who failed to run United's procedural gauntlet—for any reason, including system failures on United's end—the penalty was actual termination, unless one acquiesced to the Mandate.

**ANSWER:** Defendant denies the allegations contained in Paragraph 5.

6.      There was no legitimate business justification for these actions. Contrary to United's pretextual goal of "safety," the "real reason for the vaccine mandate and indefinite unpaid leave policy [wa]s 'virtue signaling' and 'currying political favor.'" *Sambrano v. United Airlines*, 45

F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring in denial of rehearing en banc). Indeed, it subsequently became clear that United implemented the Mandate as part of a marketing campaign, rather than in pursuit of safety. Of course, United's other goal was to use the threat of termination (functional or actual) to coerce and intimidate its employees to abandon their sincerely held religious beliefs and health concerns by receiving the COVID-19 vaccine.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 6.

7.      United's actions left Plaintiffs, like many other United employees, with the same crisis of conscience creating the impossible choice of either receiving the COVID-19 vaccine at the expense of their religious beliefs and health or losing their livelihoods. In doing so, United violated Title VII and the ADA by failing to engage in an individualized interactive process to provide reasonable accommodations, and also by retaliating against employees who engaged in protected activity.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 7.

8.      As a result of United's actions, Plaintiffs were forced to seek relief from this Court on September 21, 2021, when they filed their initial complaint, and on September 22, 2021, when they requested a temporary restraining order and preliminary injunction blocking United's implementation of the Mandate on behalf of a putative class consisting of "all United employees who have requested or will request accommodations from United's [Mandate] and who have had those accommodation requests either formally or effectively denied[.]" ECF No. 1 at ¶ 118.

**ANSWER:**   Defendant admits that Plaintiffs have brought such claims and sought such relief,

but Defendant denies any wrongdoing or liability and further denies that Plaintiffs are entitled to

relief. Defendant denies any remaining allegations contained in Paragraph 8.

9.      Shortly after Plaintiffs initiated this action, United and Plaintiffs entered an agreement whereby United agreed to delay implementation of the Mandate in order to allow the Parties to participate in a preliminary-injunction hearing. In the interim, United determined that certain employees would be allowed to work with mask-wearing and testing protocols, although they were still subject to severe limitations on their work.

**ANSWER:**   Defendant admits that it agreed to delay implementation of its COVID-19 vaccine

policy to allow the Parties to participate in the preliminary-injunction hearing. Defendant further

admits that it implemented masking and testing protocols for certain employees. Defendant denies

any remaining allegations contained in Paragraph 9.

10.     After that hearing, the Court denied Plaintiffs' request for preliminary injunctive relief, and the United employees who were granted an accommodation were effectively terminated in

November 2021 when United placed them on indefinite unpaid leave with no benefits or access to retirement funds. Many of those employees remained on unpaid leave until March 28, 2022, while some were permitted to return earlier subject to onerous and undue restrictions.

**ANSWER:**    Defendant admits that the Court denied Plaintiffs' request for preliminary injunctive relief. Defendant further admits that some accommodated employees were given the option to take unpaid leave, but avers that they all also had the opportunity to continue working in alternative positions. Defendant further admits that all employees were allowed to return to their regular positions by March 28, 2022. Defendant denies any remaining allegations contained in Paragraph 10.

11.    United's uniform refusal to provide reasonable accommodations caused severe harm. Hundreds of United employees were forced out of work without pay or health insurance for months, beginning just prior to the Thanksgiving and Christmas holidays in 2021. These employees lost not only their income and access to health insurance, but they also lost training cycles, currency, skills, seniority, vacation accrual, sick leave accrual, use of accrued travel privileges, retirement contributions, as well as many other important career and professional benefits to include even their federal law enforcement credentials. And they endured the emotional stress of not knowing if or when they would ever be permitted to return to work.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 11.

12.    Further, hundreds of other United employees, after being threatened repeatedly with indefinite unpaid leave, were forced to give up their positions and accept significantly less lucrative or less senior positions, including positions with no union protections. Like their co-workers who were placed on indefinite, unpaid leave, these employees lost income, schedules, overtime opportunities, and benefits that they had accrued through countless years of working at United.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 12.

13.    Some employees facing indefinite unpaid leave took the drastic step of retiring early to avoid being placed on indefinite unpaid leave or to preserve retirement benefits, while others resigned and gave up years of seniority in order to start over at a different airline.

**ANSWER:**    Defendant admits that some employees elected to retire or resign in lieu of receiving the COVID-19 vaccine. Defendant denies any remaining allegations contained in Paragraph 13.

14.    Others still were forced to violate their faith or risk their health by acquiescing to the Mandate to provide for themselves and their families.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 14.

15.    Through all of these actions, United discriminated and retaliated against those employees whose faith or health precluded them from receiving a COVID-19 vaccine. And, in doing so, United created a work environment where these employees have been subject to continued harassment from colleagues and management because of their faith and health.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 15.

**PARTIES**

16.    Plaintiff David Sambrano is a Captain with United. Mr. Sambrano requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation." Mr. Sambrano also attempted to request a medical accommodation, but United's online accommodation request system, which was the only formal mechanism United offered for employees to submit either a religious or medical accommodation request, prevented him from doing so. Mr. Sambrano is a citizen and resident of Colleyville, Texas.

**ANSWER:**    Defendant admits that Plaintiff Sambrano is a Captain with United, and that Plaintiff Sambrano requested a religious accommodation. Defendant admits, upon information and belief, that Plaintiff Sambrano is a citizen and resident of Colleyville, Texas. Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff Sambrano "attempted" to do therefore denies those allegations. Defendant denies the remaining allegations contained in Paragraph 16.

17.    Plaintiff David Castillo is an Aircraft Technician with United at Dallas Fort Worth International Airport ("DFW"). Mr. Castillo requested both a religious and a medical accommodation from United's vaccine mandate on September 17, 2021. Because United arbitrarily stopped accepting accommodation requests through its online request system on August 31, 2021, Mr. Castillo requested these accommodations through his supervisor. Mr. Castillo's religious accommodation request was deemed untimely, and he was scheduled to be terminated on September 27, 2021. A United Human Resources representative, however, subsequently informed Mr. Castillo that United would accept his medical accommodation request. And, after Plaintiffs filed this lawsuit, United made a special exception for Mr. Castillo that was not made for dozens of other United employees who United accused of failing to submit their accommodation requests "on time" through Help Hub. Because he was a named Plaintiff in this lawsuit, Mr. Castillo was permitted to remain at work under newly developed accommodations that arose once the Parties were in court. Mr. Castillo is a citizen and resident of Fort Worth, Texas.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that Plaintiff Castillo is a Line Technician, and that Plaintiff Castillo's religious request was initially denied. Defendant further admits that Plaintiff Castillo was not terminated from United and ultimately received masking and testing as an accommodation. Defendant denies, upon information and belief, that Plaintiff Castillo lives in Fort Worth, Texas, and that Plaintiff Castillo works at Dallas Fort Worth International Airport ("DFW"). Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff Castillo's citizenship or residency, and therefore denies these allegations. Defendant denies the remaining allegations contained in Paragraph 17.

18.    Plaintiff Kimberly Hamilton is a Station Operations Representative with United. Ms. Hamilton requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation." Ms. Hamilton is a citizen and resident of Colleyville, Texas.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits that Plaintiff Hamilton is a Station Operations Representative with United, and that Plaintiff Hamilton requested a religious accommodation. Defendant further admits, upon information and belief, that Plaintiff Hamilton is a citizen and resident of Colleyville, Texas. Defendant denies the remaining allegations contained in Paragraph 18.

19.    Plaintiff Debra Jennefer Thal Jonas is a Customer Service Representative assigned to the United Club at DFW. Ms. Jonas requested a medical accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation," or she would need to exhaust all her sick leave. Ms. Jonas also sought to request a religious accommodation, but United's online accommodation request system prevented her from requesting a second form of accommodation because employees had no other formal mechanism for submitting another accommodation request. Ms. Jonas is a citizen and resident of Bedford, Texas.

**ANSWER:**   Defendant admits that Plaintiff Jonas is a Premium Services Representative and that Plaintiff Jonas requested a medical accommodation. Defendant further admits, upon

information and belief, that Plaintiff Jonas is a citizen and resident of Bedford, Texas. Defendant

denies any remaining allegations contained in Paragraph 19.

20.     Plaintiff Genise Kincannon is a Flight Attendant for United. Ms. Kincannon requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation." Ms. Kincannon is a citizen and resident of Ft. Worth, Texas.

**ANSWER:**     Defendant admits that Plaintiff Kincannon is a Flight Attendant for United, and that

Plaintiff Kincannon requested a religious accommodation. Defendant admits, upon information

and belief, that Plaintiff Kincannon is a citizen and resident of the Fort Worth area. Defendant

denies any remaining allegations contained in Paragraph 20.


21.     Plaintiff Jarrad Rains is a Flight Attendant for United. Mr. Rains requested a medical accommodation from the Mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation." Mr. Rains also desired a religious accommodation, and his supervisors advised him initially that he could apply for both. He was ultimately prevented from submitting a religious request through Help Hub, however, because he had the medical accommodation request in place. Mr. Rains is a citizen and resident of Weatherford, Texas.

**ANSWER:**     Defendant admits that Plaintiff Rains is a Flight Attendant for United, and that

Plaintiff Rains requested a medical accommodation. Defendant admits, upon information and

belief, that Plaintiff Rains is a resident and citizen of the Weatherford, Texas area. Defendant

denies any remaining allegations contained in Paragraph 21.


22.     Plaintiff Alyse Medlin was a Flight Attendant for United. Ms. Medlin attempted to request a religious accommodation from United's vaccine mandate while on maternity leave, but was denied and then terminated upon her return from leave for failing to comply with United's internal processes for obtaining an exemption. Ms. Medlin is a citizen and resident of Mansfield, Texas.

**ANSWER:**     On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the

extent a response is required, Defendant admits that Plaintiff Medlin was a flight attendant for

United. Defendant further admits that Plaintiff Medlin submitted a religious accommodation

request while on maternity leave and her request was denied because she failed to provide

supporting documentation. Defendant further admits that Plaintiff Medlin was terminated for failing to comply with United's COVID-19 vaccine policy. Defendant admits that Ms. Medlin is a citizen and resident of Mansfield, Texas. Defendant denies the remaining allegations contained in Paragraph 22.

**23.**    Plaintiff Charles Burk is a First Officer with United. Mr. Burk requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation." Facing personal difficulties, Mr. Burk was coerced by United into receiving the vaccine against his sincerely held religious beliefs—beliefs the company already recognized he held. Mr. Burk is a citizen and resident of Fort Worth, Texas.

**ANSWER:**    Defendant admits that Plaintiff Burk is a First Officer for United, and that Plaintiff Burk requested a religious accommodation. Defendant admits, upon information and belief, that Plaintiff Burk is a citizen and resident of the Fort Worth, Texas area. Defendant denies any remaining allegations contained in Paragraph 23.

**24.**    Defendant United is a Delaware corporation with its principal place of business in Chicago, Illinois. United regularly operates flights through DFW and maintains a large workforce at that airport. DFW is located within this judicial district; a substantial portion of which is located in Tarrant County, Texas.

**ANSWER:**    Defendant admits that it is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant admits that it operates flights through DFW, and that DFW is located within this judicial district. Defendant denies any remaining allegations contained in Paragraph 24.

**25.**    This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

**ANSWER:**    Paragraph 25 states legal conclusions and/or statements of what the law provides or should provide, to which no response is required. To the extent a response is required, Defendant denies that personal jurisdiction exists for each and every Plaintiff in this case and denies that were a class action to be certified that personal jurisdiction exists for each member of the putative class.

26.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**     Paragraph 26 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required. To the extent a response is required, Defendant

denies any remaining allegations contained in Paragraph 26.

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events complained of herein occurred in this District and Division.

**ANSWER:**     Paragraph 27 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required. To the extent a response is required, Defendant

denies any remaining allegations contained in Paragraph 27.

28.     This case challenges United's refusal to grant reasonable accommodations to its Mandate as required under Title VII and the ADA. On information and belief, several activities and occurrences related to the development of the Mandate and the determination for how to respond to accommodation requests occurred in this District, and in Texas more broadly. Indeed, United's Chief Executive Officer ("CEO"), Scott Kirby, lives in Dallas, and has at office at DFW. And given the significance of United's vaccine policy, and Mr. Kirby's personal involvement in the development and communication of that policy, it is implausible that Mr. Kirby would not have engaged in that decision making while at his residence in Dallas or elsewhere in Texas. Moreover, one of United's seven hubs is in Houston, Texas. Additionally, United maintains a corporate support office in Houston, Texas.

**ANSWER:**     Defendant admits that Plaintiffs are challenging Defendant's decisions about

whether to grant reasonable accommodations, but denies any wrongdoing or liability. Defendant

further admits that it has a hub and maintains an office in Houston, Texas, and that CEO Scott

Kirby maintains a residence in the Northern District of Texas. Defendant denies that Scott Kirby

has an office at DFW. Defendant denies any remaining allegations contained in Paragraph 28.

29.     Moreover, United's actions are felt by Plaintiffs in this District, and this is where the unlawful employment practices occurred. Each time Plaintiffs who reside in this District accessed United's electronic databases—including Help Hub—they were asked whether they want to withdraw their request for a reasonable accommodation. Similarly, Plaintiffs received United's constant e-mail reminders about the vaccine mandate while located in this District.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to where Plaintiffs are located when they receive email correspondence from United, or access United's electronic databases, and therefore denies these allegations. Defendant further denies that Plaintiffs were asked whether they wanted to withdraw their request for reasonable accommodation "each time … [Plaintiffs] accessed United's electronic database—including Help Hub." Defendant denies any remaining allegations contained in Paragraph 29.

30.    Additionally, United maintains a large corporate footprint in Houston, Texas, including payroll operations, training facilities, and a large maintenance facility.

**ANSWER:**    Defendant admits that it is maintains operations in Houston, Texas. Defendant further admits that it conducts payroll operations and maintains training facilities and a maintenance facility in Houston, Texas. Defendant denies any remaining allegations contained in Paragraph 30.

## FACTUAL ALLEGATIONS

### A.    The COVID-19 Pandemic and Response

31.    By Spring 2020, the novel coronavirus SARS-CoV-2, which can cause the disease COVID-19, spread rapidly around the world.

**ANSWER:**    Defendant admits that the novel coronavirus SARS-CoV-2 causes the disease COVID-19, and that, by Spring 2020, SARS-CoV-2 had spread rapidly around the world.

32.    Around this same time, United began implementing certain mitigation procedures for its workforce, including several of the following requirements for its employees: wear United-issued masks, gloves, and, for some, eye protection; maintain distance from others; and participate in temperature checks prior to starting any shift or work assignment. United also began increasing the cleaning regimens of its aircraft—spraying cabins with an anti-viral spray between flights—and it upgraded its aircraft HEPA filters to prevent the spread of COVID-19.

**ANSWER:**    Defendant admits that around Spring 2020 it began implementing certain COVID-19 mitigation procedures, including the use of masks, gloves, social distancing, and temperature

checks. Defendant admits that around Spring 2020 it also began increasing the cleaning regimens

for its aircrafts. Defendant denies any remaining allegations contained in Paragraph 32.

33.     Since then, at least four separate COVID-19 vaccines have been developed and authorized or licensed for use in the United States. The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 1, 2020. One week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine. The FDA also issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021. And, more recently, the FDA issued an EUA for the Novavax COVID-19 vaccine on July 13, 2022. The Pfizer-BioNTech vaccine received FDA approval for use in a slightly altered form on August 23, 2021, and is said to be produced as Comirnaty—a form legally distinct from the EUA version. The Moderna vaccine, Spikevax, has also since received FDA approval.

**ANSWER:**     Defendant denies that the FDA issued an EUA for the Pfizer-BioNTech vaccine on

December 1, 2020. Defendant admits the remaining allegations contained in Paragraph 33.

34.     Subsequent to the development of the vaccines, the Delta and Omicron variants of COVID-19 spread around the world. Considering those variants, the accompanying increases in transmissibility of the virus, and the significant waning of the vaccines' efficacy, the FDA began recommending booster shots in addition to the initial vaccine regimens proposed.

**ANSWER:**     Defendant admits that the Omicron variant of COVID-19 spread around the world

after the development of the COVID-19 vaccines. Defendant further admits that the FDA

recommended booster shots in addition to initial doses of the vaccine. Defendant denies any

remaining allegations in Paragraph 34.

35.     The CDC also subsequently recognized that a prior COVID-19 infection provides protection superior to a vaccine alone. Tomás M. León et al., *Morbidity & Mortality Wkly. Rep., COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis—California and New York, May–November 2021*, CDC (Jan. 28, 2022) ("CDC Report"), https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1 _w (noting that "[b]y early October [of 2021], persons who survived a previous infection had lower case rates than persons who were vaccinated alone").

**ANSWER:**     Defendant admits that the quote referenced by Plaintiffs appears in the article cited

in Paragraph 35. Defendant denies any remaining allegations contained in Paragraph 35.

36.     Not only has the CDC confirmed this, but additional studies have shown that the effectiveness of the COVID-19 vaccines wane significantly over time. *See* Sarah A. Buchan et al.,

*Estimated Effectiveness of COVID-19 Vaccines Against Omicron or Delta Symptomatic Infection and Severe Outcomes* tbl. 2, JAMA Netw. Open (Sept. 22, 2022), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2796615 (Table 2); Christian Holm Hansen et al., *Vaccine effectiveness against SARS-CoV-2 infection with the Omicron or Delta variants following a two-dose or booster BNT162b2 or mRNA-1273 vaccination series: A Danish cohort study* tbl., medRxiv [preprint] (Dec. 23, 2021), https://www.medrxiv.org/content/10.1101/2021.12.20.21267966v3.

**ANSWER:**   Defendant denies that the effectiveness of COVID-19 vaccines "wane significantly

over time." Defendant denies any remaining allegations contained in Paragraph 36.


37.   According to the CDC, to be "Up to Date" or current with COVID-19 vaccinations, an individual must have received "the most recent booster dose recommended for you by CDC." CDC, *Stay Up to Date with Vaccines: When Are You Up to Date?* (Jan. 25, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html. For adults, this is a two-shot regimen of the Pfizer, Moderna, or Novavax vaccine or a one-shot dosage of the Johnson & Johnson vaccine, followed by a booster after the primary series of either the Pfizer or Moderna vaccine. Previously, CDC recommended adults over 50 years old receive a second booster at least 4 months after the first booster. *Id.*

**ANSWER:**   Defendant admits the allegations contained in Paragraph 37.

###   B.   United's Vaccine Mandate

38.   On August 6, 2021, United's CEO Scott Kirby announced that all employees would be required to receive a COVID-19 vaccine within five weeks of the FDA's granting full approval of a vaccine, or five weeks after September 20, 2021, whichever came first.

**ANSWER:**   Defendant admits that on August 6, 2021, United's CEO Scott Kirby was one of

the individuals who announced that all employees would be required to receive a COVID-19

vaccine within five weeks of the FDA's granting full approval of a vaccine, or five weeks after

September 20, 2021, whichever came first.

39.   As noted, the FDA approved Pfizer's COVID-19 vaccine on August 23, 2021.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 39.

40.   Accordingly, United employees were told they must receive at least the first dose of a COVID-19 Comirnaty vaccine by September 27, 2021.

**ANSWER:**   Defendant admits that it told employees that they must receive at least the first dose

of a designated COVID-19 vaccine or obtain an approved exemption by September 27, 2021.

**41.**     Employees were required to upload a copy of their proof of vaccination to a United database called Flying Together by September 27, 2021. *See* Thomas Pallini, *United is the first US airline to require all employees be vaccinated against COVID-19*, Bus. Insider (Aug. 6, 2021), https://www.businessinsider.com/united-requiring-us-employees-get-covid-19-vaccine-2021-8.

**ANSWER:**     Defendant admits the allegations contained in Paragraph 41.

**42.**     Employees who did not upload a copy of their vaccination record showing a COVID-19 vaccination or who were not granted an "accommodation" by United were terminated.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 42.

**43.**     United's Mandate was absolute and uniform—there was no alternative for periodic testing, mask wearing, or social distancing, even for employees who already had COVID-19 and still enjoyed immunity from the disease, despite EEOC guidance suggesting then and now that these alternatives are appropriate accommodations. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws: Vaccinations-Overview, ADA, Title VII, and GINA*, EEOC (July 12, 2022), https://www.eeoc.gov/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K. Rather, every United employee was forced to choose vaccination or termination. Or, as discussed below, employees who were "accommodated" for religious or medical reasons could choose what they believed would be several years of unpaid leave without benefits: effectively, termination.[1]

**ANSWER:**     Defendant denies the allegations contained in Paragraph 43.

**44.**     United's policy contrasted with the Federal Government's announcement that the Department of Labor was developing a rule to require certain large employers to mandate vaccination *or* periodic testing for its employees in compliance with the EEOC's recommendations. United did not offer the option of periodic testing, either in general or for employees who received an accommodation.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 44.

**45.**     The policy from United also differed substantially from the European Union's digital COVID-19 certificate, which considered the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) a previous recovery from COVID-19. *See EU Digital COVID Certificate*, European Comm'n, https://commission.europa.eu/strategy-and-policy/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en (last visited Feb. 9, 2023).

**ANSWER:**     Defendant denies the allegations contained in Paragraph 45.

---

[1] As it turned out, the unpaid leave lasted approximately four months—ending shortly after the Fifth Circuit's determination that United had irreparably harmed its employees in this case. *Sambrano v. United Airlines, Inc.*, 2022 WL 486610, at *6 (5th Cir. Feb. 17, 2022), *reh'g denied*, 45 F.4th 877 (2022).

46.     Through this policy, United ignored the CDC's recognition that naturally occurring immunity from COVID-19 was at least as strong as vaccine-induced immunity. *See* CDC Report *supra*.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 46.

47.     When United announced its Mandate, it stated that employees could request accommodations for either religious or health reasons. *See* Daniella Genovese, *United Airlines vaccine mandate driven by delta variant, hospitalization data, CEO Scott Kirby says,* FoxBusiness (Aug. 10, 2021), https://www.foxbusiness.com/lifestyle/united-ceo-scott-kirby-pushed-vaccine-mandate-driven-by-hospitalization-data. That was in line with Equal Employment Opportunity Commission ("EEOC") guidance on private employers issuing such mandates. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* §§ K.1 & K.2., EEOC (May 28, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

**ANSWER:**     Defendant admits that its vaccine policy comports with EEOC guidance. Defendant

denies any remaining allegations contained in Paragraph 47.

48.     Under United's mandate, employees were required to receive either the Pfizer, Moderna, or Johnson & Johnson vaccine. As United did not update its Mandate to also require booster shots, many United employees had not received a COVID-19 vaccine in a year or longer while unvaccinated employees were put out of work. Those employees are thus not considered in full compliance with CDC standards. Yet, United still requires initial COVID-19 vaccines for all employees and new hires.

**ANSWER:**     Defendant admits that its employees were required to receive either the Pfizer,

Moderna, or Johnson & Johnson vaccine. Defendant denies any remaining allegations contained

in Paragraph 48.

C.     **United's Campaign to Pressure Employees**

49.     In the days leading up to United's August 31, 2021 deadline for submitting accommodation requests, United's CEO Mr. Kirby threatened employees "to be very careful about" requesting such accommodations. He stated that there would be very "few people that get through the medical and religious exemption process"—describing such employees derisively as "all [of a] sudden decid[ing] 'I'm really religious.'" *Sambrano*, 2022 WL 486610, at *9. Mr. Kirby warned those employees to be very careful because they were "putting [their] job[s] on the line" if they requested such accommodations. *See id.*

**ANSWER:**   Defendant admits that Scott Kirby made statements to United employees regarding

United's COVID-19 vaccine requirement, but denies Plaintiffs' characterization of those

statements. Defendant denies any remaining allegations contained in Paragraph 49.

50.     In addition to Mr. Kirby's threats, United placed substantial and unconscionable pressure
on its employees. For instance, as just one example, in early-September 2021, United mailed
postcards to all employees who had not yet provided proof of vaccination.

**ANSWER:**   Defendant admits that in September 2021, it sent postcards to all employees –

regardless of whether or not they were vaccinated – who had not yet uploaded proof of vaccination.

Defendant denies any remaining allegations contained in Paragraph 50.

51.     Those postcards stated that the employee had not uploaded proof of vaccination and
repeated in bold text: "Unvaccinated employees without a reasonable accommodation will be
separated from United." As these postcards were not sent in an envelope, United effectively
broadcast its employees' medical information to all who saw the postcards, allowing a wide range
of individuals outside United to also exert pressure on the employee.

**ANSWER:**   Defendant admits that the postcards stated, in part, that "[u]nvaccinated employees

without a reasonable accommodation will be separated from United." Defendant denies any

remaining allegations contained in Paragraph 51.

52.     According to United, the Mandate was aimed at increased safety. *See* Leslie Josephs,
*United will require its U.S. employees to be vaccinated, a first for country's major airlines*, CNBC
(Aug.     6,     2021),     https://www.cnbc.com/2021/08/06/united-airlines-vaccine-mandate-
employees.html. Yet United did not require any passenger flying on its planes, or interacting with
its staff, to be vaccinated. *See* David Koenig, *United Airlines will require US employees to be
vaccinated*, AP News (Aug. 6, 2021), https://apnews.com/article/united-airlines-vaccine-mandate-
employees-frontier-e8eef8e8f11d4924b81768484e5401a1. Nor did it require its employees from
other countries to receive the COVID-19 vaccine, even though those employees work alongside
United crews from the United States. *Id*.

**ANSWER:**   Defendant admits that its COVID-19 vaccine policy was primarily implemented for

safety reasons. Defendant further admits that it did not require passengers (who are not employed

by United) to be vaccinated. Defendant denies any remaining allegations contained in Paragraph

52.

53.     The Mandate also did not apply to regional airline partners that fly United customers on shorter routes that feed United's mainlines. Employees from these partners work alongside United employees in the terminals and on the ramp, share employee cafeterias, and their pilots and flight attendants deadhead on United mainline flights. Likewise, United pilots and flight attendants are often scheduled to deadhead on these regional aircraft. *See* Josephs, *supra* ¶ 52.

**ANSWER:**     Defendant admits that its regional airline partners are separate entities and thus its

COVID-19 vaccine policy did not apply to these separate entities. Defendant lacks knowledge or

information sufficient to form a belief as to where employees from regional partners interact with

United employees, and therefore denies any remaining allegations contained in Paragraph 53.

54.     And the Mandate did not apply to pilots or flight attendants from other airlines allowed to ride in the "jumpseats" of United aircraft. In the case of pilots, the jumpseat is located in the cockpit somewhat between the United flight officers' seats in extreme proximity to both United pilots. *See Jumpseat Committee Update*, United Master Executive Council (Sept. 16, 2021) https://contentsharing.net/actions/email_mobile_web_version.cfm?recipient_id=2940366754&message_id=20802705&user_id=ALPA&jobid=53070823. In the case of flight attendants, their jumpseats are generally in the cabin with passengers, and next to seats for the flight attendants who are working the flight. Further, United concurrently relaxed its requirement for flight attendants to wear gloves and eye protection that was introduced early in the COVID-19 pandemic, and United discontinued the "deep" cleaning disinfectant spraying inside the aircraft after each flight, as was the policy at the outset of the pandemic.

**ANSWER:**     Defendant admits that other airlines are separate entities and thus its COVID-19

vaccine policy did not apply to employees from these separate entities. Defendant further admits

that the jumpseat for pilots is generally located in the cockpit of their aircrafts and the jumpseat

for flight attendants is generally located in the cabin of their aircrafts. Defendant further admits

that United's cleaning procedures changed throughout the course of the pandemic. Defendant

denies any remaining allegations contained in Paragraph 54.

55.     Despite United's suggestion that vaccination was necessary to keep its workforce safe, United was simultaneously telling consumers that the inside of a United airplane was one of the safest places to be during the pandemic—not because of vaccines, but because of cabin airflow and pressurization.

**ANSWER:**     Defendant admits that it stated that it was very unlikely for masked individuals to

contract COVID-19 on its planes while the filtration system was running. Defendant denies any

remaining allegations contained in Paragraph 55.

**56.**     United's actions thus confirm that the Mandate is not aimed at safety, but rather at
pressuring employees like Plaintiffs to forsake their religious beliefs and health by receiving the
COVID-19 vaccine to support a marketing campaign.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 56.

> **D.     Federal Law Prohibits Religious and Disability Discrimination and
> Retaliation**

**57.**     Title VII prohibits United from discriminating against employees based on their religion.
This "include[s] all aspects of religious observance and practice, as well as belief, unless an
employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious
observance or practice without undue hardship on the conduct of the employer's business." 42
U.S.C. § 2000e(j).

**ANSWER:**     Paragraph 57 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required.

**58.**     In other words, "[a]n employer has the statutory obligation to make reasonable
accommodations for the religious observances of its employees, but is not required to incur undue
hardship." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

**ANSWER:**     Paragraph 58 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required.

**59.**     Title VII also prohibits United from retaliating against an employee for engaging in
protected activity. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

**ANSWER:**     Paragraph 59 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required.

**60.**     Similarly, under the ADA, United may not "discriminate against a qualified individual on
the basis of disability." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).

**ANSWER:**     Paragraph 60 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required.

61.     Such discrimination includes "fail[ing] to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship.'" *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

**ANSWER:**     Paragraph 61 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required.

62.     Additionally, the ADA makes it unlawful to retaliate against an employee for seeking an accommodation. *See* 42 U.S.C. § 12203(a).

**ANSWER:**     Paragraph 62 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required.

### E.     United's Accommodation Request System

63.     As part of its so-called Reasonable Accommodation Process ("RAP"), United created an online system through its "Help Hub" to allow employees to request accommodations from the Mandate based on religious beliefs or medical reasons.

**ANSWER:**     Defendant admits that it directed employees to complete accommodation requests

through Help Hub, which is an online system. Defendant denies any remaining allegations

contained in Paragraph 63.

64.     However, United did not allow employees to submit requests based on both religious and medical reasons.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 64.

65.     United required all employees to submit requests for accommodation by August 31, 2021.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 65.

66.     After that date, employees were not permitted to submit accommodation requests to United through Help Hub. In fact, religious requests received after August 31, 2021, were automatically denied as untimely. However, United subsequently granted certain medical accommodation requests that were submitted after the company's arbitrary deadline.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 66.

67.     In other words, any employee with a religious basis for not receiving the vaccine after August 31, 2021, or who was unable to complete the process by August 31, 2021, was left without

a mechanism to request an accommodation from United. Such employees were forced either to receive the vaccine or be terminated.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 67.

### F.    United's Responses to Accommodation Requests

**68.**    Once employees were able to submit RAP requests, United continued its campaign to dissuade employees from completing the RAP process. This pressure came from co-workers, managers, and company leadership.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 68.

**69.**    For instance, once an employee submitted a RAP request, United subjected the employee to probing questions about the legitimacy of either the religious belief or medical condition requiring an accommodation.

**ANSWER:**    Defendant admits that it engaged in an interactive process that included following up with employees who submitted RAP requests. Defendant denies any remaining allegations contained in Paragraph 69.

**70.**    This included questions aimed at harassing and manipulating employees requesting religious accommodations, including: "Are you aware if any vaccines or medications you have previously received were created, researched, tested or otherwise involved the use of stem cells," and if so, "please explain why receiving such vaccines or medications were not a violation of your sincerely held belief." Also, United asked: "What about your religious belief prevents you from getting the COVID vaccines, but not taking other types of medicine;" "Have you received vaccinations in the past;" and "Do you currently take or have you taken medications of any kind (over the counter or prescription)?"

**ANSWER:**    Defendant admits that it engaged in an interactive process that included following up with employees who submitted RAP requests and that its inquiries in some instances included the quoted language. Defendant denies any remaining allegations contained in Paragraph 70.

**71.**    Similarly, for employees requesting medical accommodations, United subjected them to repeated and invasive requests for medical records and supporting statements from medical providers.

**ANSWER:**    Defendant admits that it engaged in an interactive process that included following up with employees who submitted RAP requests. Defendant denies any remaining allegations contained in Paragraph 71.

72.     In a further effort to dissuade employees from requesting accommodations, United also asked individuals (on a short 3-day timeline, often over holidays or weekends, or while employees were out of the country without Internet access) for pastoral or third-party letters attesting to the employees' religious beliefs. The requirement for a pastoral letter as substantiation for an employee's sincerely held religious beliefs was implemented by United early in the review process. This was later replaced by the requirement for a letter to be provided by a third party who could attest to an employee's sincerely held religious beliefs. However, United failed to announce this revised attestation policy widely, and many employees were dissuaded from submitting religious accommodation requests out of a fear that they would not be able to obtain a formal letter from a pastor.

**ANSWER:**     Defendant admits that it initially required employees to submit a letter from a religious leader who could attest to the employee's religious beliefs. Defendant further admits that it revised its process for requesting religious accommodations and allowed employees to submit a statement from any third party who knew the employee well enough that the person could attest to the employee's beliefs (in lieu of a letter from a religious leader). Defendant denies any remaining allegations contained in Paragraph 72.

73.     As noted, when United requested additional information, it often did so with unreasonable timeframes. United's online portal, Help Hub, oftentimes did not alert employees when additional information was requested. In fact, employees stopped receiving email notifications when updates were available, causing some employees to miss United's artificially imposed deadlines for providing additional requested information. Moreover, many United employees are not required to check their United email while they are not working. Further, many United employees fly international routes where they lack reliable internet access during the trip. These factors limited the ability of many United employees to respond to United's questions on United's accelerated and arbitrary timeline.

**ANSWER:**     Defendant denies that additional information was requested "with unreasonable timeframes." Defendant lacks knowledge or information sufficient to form a belief as to the circumstances in which employees accessed the Help Hub portal, and otherwise denies any remaining allegations contained in Paragraph 73.

74.     Once any questions were answered and any requested documents were submitted, United failed to engage further with the employee. The company did not ask for or suggest that there would be any possible accommodation to the Mandate issued on August 6, 2021. Some United employees assumed that United's silence meant that their requests were denied and, due to fear of lost income, they felt compelled to betray their faith and/or health by receiving the COVID-19 vaccine.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 74.

**75.**     On September 9, 2021, United began "granting" requests for accommodation, announcing that for any accommodation request it granted, the employee would be placed on indefinite unpaid leave starting October 2, 2021, with no company-paid benefits, no access to their retirement accounts, and no planned return date. *See* Ailsa Chang *et al.*, *United Airlines CEO On the Decision To Put Unvaccinated Employees On Leave In October*, NPR (Sept. 10, 2021), https://www.npr.org/2021/09/10/1036039856/united-airlines-ceo-on-the-decision-to-put-unvaccinated-employees-on-leave-in-oc. This announcement caused many United employees to rescind their accommodation requests out of a fear of lost income and health insurance.

**ANSWER:**     Defendant admits that it began granting accommodation requests on or about

September 9, 2021. Defendant denies any remaining allegations contained in Paragraph 75.

**76.**     Other requests for accommodation were denied as being either untimely under United's self-imposed August 31, 2021 submission deadline or due to other arbitrary reasons, such as an employee's failure to respond within 3 or 5 days to requests for substantiation of religious beliefs or additional medical documentation.

**ANSWER:**     Defendant admits that it began granting accommodation requests on or about

September 9, 2021, and that it denied some requests for accommodation. Defendant denies any

remaining allegations contained in Paragraph 76.

**77.**     For customer-facing employees (including pilots, flight attendants, and some customer service representatives), United stated that the period of unpaid leave would last "until the risk of COVID is low enough that [United] deem[s] it safe" or until the pandemic "meaningfully" subsides.

**ANSWER:**     Defendant admits that it informed any customer-facing employees who were on

unpaid leave that they would be welcomed back to their job on active status once the pandemic

meaningfully receded and offered these employees the option to apply for alternative, non-

customer facing roles within the company. Defendant denies any remaining allegations contained

in Paragraph 77.

**78.**     For non-customer-facing employees (including aircraft technicians, ramp personnel, employees who performed their jobs from home, and other service representatives), the period of unpaid leave was set to last "for some period of time while [United] work[s] out all the details [and] the logistics" of mitigation measures, which United stated may or may not include testing requirements and requiring unvaccinated employees to wear vaccine identification badges. *See* Chang *et al.*, *supra* ¶ 75.

**ANSWER:**   Defendant admits that it initially informed certain non-customer facing employees that they would be accommodated with a temporary period of unpaid leave until new testing and safety procedures were put in place. Defendant denies any remaining allegations contained in Paragraph 78.

79.    In announcing these rules, United ignored the interactive process. United did not explain why one group of employees may be able to come back to work with mitigation measures in place, while another group would not be able to do so. For example, United did not explain why employees in non-customer-facing positions are at less risk of infection despite still interacting with other employees. The same is true for other types of customer service representatives who could have worked remotely or behind plexiglass shields in an airport.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 79.

80.    United likewise did not explain why pilots and flight attendants could not be accommodated even though they fly in an environment that United's CEO Mr. Kirby boasted to a congressional committee "is the safest place that you can be indoors," including places like an intensive care unit or operating room. S. Comm. on Com., Sci., & Transp., Airline Oversight Hr'g, C-SPAN, at 56:24 (Dec. 15, 2021) ("Oversight Hr'g"), https://www.c-span.org/video/?516667-1/airline-oversight-hearing. Further, Mr. Kirby explained that, because of the airflow within planes, sitting next to a passenger in a United plane is equivalent to sitting 15 feet from the person in a typical building. *Id*. at 56:42. United itself boasted of the advanced air filtration system in its planes that make it "virtually impossible for one person to transmit COVID to another" on a United flight. ROA.3646–47.

**ANSWER:**   Defendant admits that the quotes highlighted by Plaintiffs appear in the video cited in Paragraph 80. Defendant denies any remaining allegations contained in Paragraph 80.

81.    As United explained in its marketing materials, it partnered with the Cleveland Clinic to study the safety of its aircraft during the COVID-19 pandemic. ROA.3791–92, 3802, 3809, 4290. And United points its customers to the results of that study, as well as a Department of Defense study, "showing that aircraft cabins are among the safest of public indoor environments." ROA.3807. In fact, United tells its customers that, "even when the plane is full, on average only 0.003% of infected air particles could enter the breathing zone of seated, masked passengers[.]" *Id*.

**ANSWER:**   Defendant admits that it partnered with the Cleveland Clinic during the COVID-19 pandemic. Defendant further admits that the quotes cited by Plaintiffs appear in the

communications in Paragraph 81. Defendant denies any remaining allegations contained in Paragraph 81.

**82.**     United also did not explain why its distinctions did not include any consideration for employees who have previously recovered from COVID-19 and therefore possess antibodies that may provide them with protection against future COVID-19 infection at rates similar to (or greater than) vaccination. United further failed to explain why it would allow pilots from other airlines to ride in the cockpit with United flight officers even though those other pilots would not be required to have a COVID-19 vaccination. Nor did United explain why its non-U.S. employees were not required to be vaccinated, even though crew members from outside the U.S. often work together on flights with U.S. crew members. The same is true for the regional aircrews that fly shorter routes for United. What United did do was rely on arbitrary line-drawing rather than engaging in the interactive process with each employee who requested an accommodation.

**ANSWER:**     Defendant admits that employees who previously recovered from COVID-19 were still subject to United's COVID-19 vaccine policy. Defendant further admits that its regional airline partners are separate entities and thus its COVID-19 vaccine policy did not apply to these separate entities. Defendant further admits that it did not require vaccination for some non-U.S. employees. Defendant denies any remaining allegations contained in Paragraph 82.

**83.**     Instead, United promised unpaid leave to any "accommodated" employee with no end date in sight. Further intending to coerce employees to abandon their faith and risk their health by receiving the COVID-19 vaccine, United stated that the period of unpaid leave could last up to 72 months (*i.e.*, up to 6 years).[2]

**ANSWER:**     Defendant denies the allegations contained in Paragraph 83 and the accompanying footnote.

**84.**     United informed "accommodated" employees that, while on unpaid leave, some may lose company seniority and accrued travel benefits, they may not use accrued sick leave or vacation time, they do not accrue any sick leave or vacation time, and they must pay their own medical insurance premiums—both the employee's share and United's usual share. Subsequently, those

---

[2] After the initial filing of this lawsuit, during an agreed-upon stay of injunctive relief taking place prior to a scheduled preliminary injunction hearing, United determined that the non-customer facing employees could be returned to work under a rigid masking and testing protocol, while the customer-facing service representatives were given some opportunities for work, but their normal schedules and ability to work overtime were severely altered. Moreover, many of these customer-facing service representatives were removed from union jobs, and union protections, and placed into new roles where they worked alone in small offices. Yet, they were still subject to the rigid masking and testing protocols. The lack of union representation in these new roles created a significant fear of retaliation.

receiving a medical accommodation were allowed to use their own earned sick time pay to offset the loss of income from working their job.

**ANSWER:**   Defendant admits that benefits available for employees accommodated with unpaid

leave were dependent on the terms of collective bargaining agreements with employees' unions.

Defendant denies any remaining allegations contained in Paragraph 84.

85.   Any employee whose accommodation request was denied and who did not take the vaccine was terminated. This included those prevented from having their request approved because of United's faulty process, even though the company was on notice of the employee's need for an accommodation.

**ANSWER:**   Defendant admits that it terminated employees whose accommodation request were

denied and who did not receive a COVID-19 vaccination. Defendant denies any remaining

allegations contained in Paragraph 85.

### G.   Plaintiffs' Accommodation Requests

**David Sambrano**

86.   Plaintiff David Sambrano is a Captain with United, where he has worked in varying capacities for approximately 32 years.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 86.

87.   As a Captain, he is responsible for piloting and commanding aircraft. Additionally, at the

time he submitted his accommodation request, Captain Sambrano had been in training to be a Line

Check Airman, which is an instructor and evaluator of pilots, and a Federal Flight Deck Officer

authorized to carry a service weapon to defend United's cockpits during domestic flights.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 87, and therefore denies the same.

88.   On August 26, 2021, Captain Sambrano submitted a request for a religious accommodation through United's online accommodation request portal, Help Hub.

**ANSWER:**   Defendant admits that Plaintiff Sambrano submitted a request for a religious accommodation through Help Hub on August 26, 2021. Defendant denies any remaining allegations contained in Paragraph 88.

89.     In his accommodation request, Captain Sambrano explained his belief that the COVID-19 vaccines were developed using aborted fetal tissue and that it is sinful to use anything derived from abortion. He also explained that he believed receiving the vaccine runs contrary to the Bible's teachings about his body being a temple of the Holy Spirit. As an adult, Captain Sambrano regularly elects not to receive vaccines due to his religious beliefs.

**ANSWER:**   Defendant admits that Plaintiff Sambrano's accommodation request explained his reasons for refusing the vaccine. Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff Sambrano "regularly elects not to receive vaccines due to his religious beliefs," and therefore denies the allegation. Defendant denies any remaining allegations contained in Paragraph 89.

90.     Captain Sambrano also attempted to request a medical accommodation because he previously contracted and recovered from COVID-19 and thus likely possesses antibodies against COVID-19. In light of the likelihood that he possesses antibodies, Captain Sambrano was concerned about the risk posed by receiving a vaccine which itself aims to create antibodies.

**ANSWER:**   Defendant admits that Captain Sambrano claims that he attempted to request a medical accommodation based on his recovery and alleged antibodies from COVID-19. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90, and therefore denies the same.

91.     Captain Sambrano was unable to submit a request for a medical accommodation because United's Help Hub system would only permit him to request one type of accommodation.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 91.

92.     Despite his understanding that accommodation requests would be granted, Captain Sambrano did not receive any contact from United to discuss his request or possible accommodations. Rather, Captain Sambrano received only a series of hostile questions from United questioning his religious beliefs.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 92.

93.     On September 9, 2021, United informed Captain Sambrano that his religious accommodation request was "granted," but that he would be "accommodated" by being placed on indefinite unpaid leave.

**ANSWER:**   Defendant admits that it informed Plaintiff Sambrano that his religious

accommodation request was granted, and that he would be placed on temporary unpaid leave with

the option to apply for alternative positions. Defendant denies any remaining allegations contained

in Paragraph 93.

94.     Being placed on unpaid leave impacted Captain Sambrano in both tangible and intangible ways. He was forced out of work over the Thanksgiving and Christmas holidays. He also lost out on pay, vacation accrual, sick leave, pilot currency, and accrued travel privileges. Moreover, since United categorized pilots like Captain Sambrano as active pilots, despite being forced onto indefinite unpaid leave, United prevented Captain Sambrano from having access to his retirement account.

**ANSWER:**   Defendant admits that benefits available for employees accommodated with unpaid

leave were dependent on the terms of collective bargaining agreements with employees' unions.

Defendant denies any remaining allegations contained in Paragraph 94.

95.     Captain Sambrano was also a volunteer Federal Flight Deck officer when he submitted his accommodation request. This was a prestigious position, which required Captain Sambrano to maintain his pilot currency and employment, as well as his firearm proficiency. When Captain Sambrano was removed from his active pilot status, he was forced to surrender his badge and firearm. When he was eventually able to return to work, Captain Sambrano was required to complete a requalification event at his own expense.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 95, and therefore denies the same.

96.     At this same time, United purported to inform "accommodated" pilots that they could apply for non-flying positions. Many pilots attempted to do so, only to receive immediate denials of such applications.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 96.

97.     Captain Sambrano was subsequently contacted by United while on unpaid leave about a special accommodation offer that was not made available to others in the class—likely due solely to Captain Sambrano's role as a named Plaintiff in this action. He was not, however, qualified for

the position—according to United's standards—and could not engage in that opportunity because of other personal circumstances at the time.

**ANSWER:**   Defendant admits that it contacted Plaintiff Sambrano about an alternate accommodation and avers that Plaintiff Sambrano declined the offer. Defendant denies any remaining allegations contained in Paragraph 97.

98.   Captain Sambrano eventually returned to work on March 28, 2022. Even then, however, United continued to punish Captain Sambrano for his faith, arbitrarily restricting the locations to which he was permitted to fly due to his lack of a COVID-19 vaccine. This continued the financial and professional harm United was causing Captain Sambrano. And it left Captain Sambrano, and others like him, easily identifiable to his co-workers, and subject to continued discrimination and harassment.

**ANSWER:**   Defendant admits that Plaintiff Sambrano returned to work on March 28, 2022. Defendant denies any remaining allegations contained in Paragraph 98.

99.   Indeed, Captain Sambrano—like other flight crew—is prohibited from flying many routes that he previously flew and that are open to unvaccinated individuals. Under threat of discipline, United's restricted-city list forces employees like Captain Sambrano to bid for schedules and routes they would not normally fly given their seniority.

**ANSWER:**   Defendant admits that unvaccinated employees were restricted from traveling to certain destinations based on local COVID-19 regulations and/or related foreign rules or requirements. Defendant denies the remaining allegations contained in Paragraph 99.

100.   While United suggests that it is simply following vaccine restrictions imposed by other countries, the vast majority of those countries imposed no such limitations on unvaccinated aircrew or passengers. Rather, Plaintiffs can travel to nearly every city on United's restricted-city list today as tourists on United planes and non-revenue pass riders. And that is precisely why unvaccinated pilots, flight attendants, and mechanics on official business for other airlines fly to those same cities every day.

**ANSWER:**   Defendant admits that it restricted unvaccinated employees from traveling to certain destinations based on local COVID-19 regulations and/or related foreign rules or requirements. Defendant denies any remaining allegations contained in Paragraph 100.

101.   In what appears to be further retaliation against employees like Captain Sambrano, United's restricted-city list prevents him from flying to many of the most lucrative routes that

would otherwise be available to him, including Tokyo. Through its arbitrary restrictions, United continues to discriminate against those with sincerely held religious beliefs and medical reasons that prevent them from receiving the COVID-19 vaccine.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 101.

102.   In addition, United continues to threaten such pilots with discipline should they, through no fault of their own, be awarded a restricted city during their monthly bid preferencing.

**ANSWER:**   Defendant admits that unvaccinated pilots were informed that they could be subject to discipline for failure to follow instructions if they knowingly bid to fly to a restricted destination. Defendant denies any remaining allegations contained in Paragraph 102.

103.   Additionally, due to United's actions, Captain Sambrano chose to bid for flights on a different aircraft (the B777, rather than the B787) to have greater seniority, considering the many ways that United was restricting his flights. This further cost Captain Sambrano income.

**ANSWER:**   Defendant admits that Plaintiff Sambrano bid for flights on the B777 but otherwise denies the allegations contained in Paragraph 103.

104.   Further, upon his return, Captain Sambrano suffered additional financial losses when United arbitrarily prevented him from picking up overtime trips for routes included on United's restricted-city list, which are compensated as a substantially higher rate.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 104.

105.   Captain Sambrano submitted a claim of discrimination to the Equal Employment Opportunity Commission ("EEOC"), and he received a right to sue letter on September 30, 2022.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 105.

**David Castillo**

106.   Plaintiff David Castillo is an Aircraft Technician with United. He has worked for United for 23 years.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits Plaintiff Castillo is a Line Technician and admits the remaining allegations contained in Paragraph 106.

**107.**    In that position, Mr. Castillo is responsible for performing maintenance duties on United airplanes.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 107.

**108.**    After United implemented the Mandate, Mr. Castillo learned more about the process for applying for an accommodation. As a Buddhist, Mr. Castillo had sincerely held religious beliefs that prevented him from taking the vaccine. He did not, however, have a clergy person in Fort Worth who would have been able to complete the religious attestation form that United initially stated that it would require.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that Mr. Castillo claims that he is a Buddhist. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 108, and therefore denies the same.

**109.**    Because he would be unable to provide United with the documentation the company said would be needed to avoid termination, Mr. Castillo determined that he would lose his job over the Mandate. Later, however, he learned that United had changed its attestation requirement to a third-party letter rather than a clergy letter. By that point, however, Mr. Castillo had missed United's self-imposed deadline of August 31, 2021, and thus Help Hub would no longer accept his application for an accommodation.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that Mr. Castillo did not submit the required supporting documentation for a religious accommodation request by August 31, 2021. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 109, and therefore denies the same.

**110.**    A few weeks later—after learning that accommodation requests can be made to the company in any way reasonably calculated to provide the employer with notice—Mr. Castillo submitted a request for a religious and medical accommodation through an email to his supervisor.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that Plaintiff Castillo submitted an untimely

religious accommodation request through an email to his supervisor on November 20, 2021. Defendant denies any remaining allegations contained in Paragraph 110.

**111.**    In his accommodation request, Mr. Castillo explained his understanding that the COVID-19 vaccines were developed using aborted fetal tissue and that it is sinful to use anything derived from abortion. As an adult, Mr. Castillo does not receive vaccines due to his religious beliefs.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that Plaintiff Castillo's accommodation request explained his reasons for refusing the vaccine. Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff Castillo "does not receive vaccines [as an adult] due to his religious beliefs," and therefore denies this allegation. Defendant denies any remaining allegations contained in Paragraph 111.

**112.**    Mr. Castillo also requested a medical accommodation because he previously contracted and recovered from COVID-19 and thus likely possesses antibodies against COVID-19. In light of the likelihood that he possesses antibodies, Mr. Castillo is concerned about the risk posed by receiving a vaccine which itself aims to create antibodies.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that Plaintiff Castillo requested an untimely medical accommodation and that his request explained his reasons for refusing the vaccine. Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 112, and therefore denies the same.

**113.**    The day after he submitted his accommodation email request, a representative from United's Human Resources ("HR") department contacted Mr. Castillo's supervisor, informing him that the religious accommodation request was untimely and would therefore be ignored. At the same time, HR instructed the supervisor to inform Mr. Castillo that he would be able to submit a request for a medical accommodation through United's online Help Hub system.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits that it permitted Plaintiff Castillo to submit a request for a medical accommodation through Help Hub after August 31, 2021. Defendant further

admits that Plaintiff Castillo submitted that request on September 19, 2021. Defendant denies any

remaining allegations contained in Paragraph 113.

**114.**   Mr. Castillo was scheduled to be terminated on September 27, 2021. In the meantime, however, he became a named Plaintiff in this lawsuit. Apparently unwilling to terminate someone who would soon be in Court, United provided Mr. Castillo with a special accommodation that was not made available to others who had missed United's arbitrary deadlines for submitting their exemption paperwork.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the

extent a response is required, Defendant admits that Mr. Castillo became a Plaintiff in this lawsuit.

Defendant denies any remaining allegations contained in Paragraph 114.

**115.**   Then, like the other non-customer facing employees United determined it could accommodate once litigation had been filed, Mr. Castillo was allowed to return to work at the beginning of October 2021 with the requirements that he wear an N-95 respirator at all times while at work, eat his meals alone and outdoors, and provide regular COVID-19 test results, even on days he was not scheduled to work.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the

extent a response is required, Defendant admits that non-customer facing employees were never

placed on unpaid leave. Defendant denies any remaining allegations contained in Paragraph 115.

**116.**   Despite the requirement that Mr. Castillo wear an N-95 respirator at all times, United failed to provide Mr. Castillo the required training and oxygenation breaks.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the

extent a response is required, Defendant denies the allegations contained in Paragraph 116.

**117.**   In doing so, United put Mr. Castillo and his co-workers at significant safety risk. Requiring Mr. Castillo to wear an N-95 respirator at all times—even while working outdoors—limited his ability to communicate with colleagues during important maintenance activities.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the

extent a response is required, Defendant denies the allegations contained in Paragraph 117.

**118.**   Since that time, and because of the ways United has singled him out, Mr. Castillo has experienced tremendous discrimination from his co-workers. The problem was created when United continually told its employees not only that they should take the vaccine but also pushed

the false narrative that unvaccinated employees like Mr. Castillo were dangerous. In truth, given his prior COVID infection and his twice-weekly testing, Mr. Castillo was safer than his co-workers. United's efforts were successful, though, in creating an environment where Mr. Castillo's co-workers were emboldened to ostracize and persecute him.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant denies the allegations contained in Paragraph 118.

119.    While he previously planned to work for United until retirement, the discrimination he has faced at work is causing him to reconsider that decision as co-workers now disrespect him continually and refer to him derogatorily because his religious beliefs prevent him from receiving the COVID-19 vaccine.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 119, and therefore denies the same.

120.    Mr. Castillo submitted a claim of discrimination to the EEOC, and he received a right to sue letter on September 30, 2022.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Castillo's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 120.

**Kimberly Hamilton**

121.    Plaintiff Kimberly Hamilton is a Station Operations Representative with United. She has worked for United for 19 years.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 121.

122.    In that role, Ms. Hamilton works in an office setting, handling gate planning and coordinating fueling, mechanics, cleaners, caterers, and other staff matters.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 122.

**123.**   On August 26, 2021, Ms. Hamilton submitted a religious accommodation request through United's online accommodation request portal, Help Hub.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits that on August 25, 2021, Plaintiff Hamilton submitted a religious accommodation request through Help Hub. Defendant denies any remaining allegations contained in Paragraph 123.

**124.**   Ms. Hamilton explained that, as a devout Catholic, she cannot abide by any product that relies on fetal stem cell lines, including vaccines derived from using aborted fetal tissue. Ms. Hamilton also explained that she believes receiving the vaccine is contrary to the Bible's teaching and the Catechism of the Catholic Church that her body is a temple of the Holy Spirit. Following the Catechism, Ms. Hamilton concluded that she must follow her conscience, whereby she concluded that she could not receive the vaccine. Indeed, as the Catechism explains, it is "[d]eep within [a man's] conscience" where "he is alone with God whose voice echoes in his depths." Catechism of the Catholic Church, No. 1776 (2d ed. 2019). And it is one's conscience, the Catechism explains, that "enjoins [a man] ... to avoid evil." *Id.*, No. 1777.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits that Ms. Hamilton included an explanation of her religious beliefs as part of her religious accommodation request. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 124, and therefore denies the same.

**125.**   On September 5, 2021, United responded by requiring Ms. Hamilton to produce a letter from a third-party supporting her religious views. Ms. Hamilton's husband provided this letter.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 125.

**126.**   Ms. Hamilton did not receive any other contact from United to discuss the request or possible accommodations.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant denies the allegations contained in Paragraph 126.

**127.**   On September 9, 2021, United informed Ms. Hamilton that her religious accommodation request was "APPROVED," but that she would be "accommodated" by being placed on indefinite

unpaid leave without her regular benefits. This imposed a particularly significant harm on Ms. Hamilton, as her husband had been recently diagnosed with cancer. United's actions would cause loss of access to health insurance, which caused Ms. Hamilton's husband to choose the fastest available treatment, but not necessarily the treatment that they thought might be best. The impact of that decision is yet to be determined, and it continues to be a significant source of stress for Ms. Hamilton.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits that it informed Plaintiff Hamilton that her religious accommodation request was approved on September 21, 2021. Defendant denies any remaining allegations contained in Paragraph 127.

128.    After this lawsuit was filed, Ms. Hamilton was provided an accommodation to remain at work, provided that she wear an N-95 respirator at all times, despite United's failure to provide Ms. Hamilton the requisite training and oxygenation breaks necessary for such a respirator.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits that Ms. Hamilton was provided an accommodation that required masking and testing. Defendant denies any remaining allegations contained in Paragraph 128.

129.    Because of the ways that United singled her out, Ms. Hamilton faced tremendous ostracization from her co-workers and supervisors. Indeed, United's continued messaging to its employees that becoming vaccinated is the only way to show that you truly care about your co-workers emboldened other United employees to harass Ms. Hamilton.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant denies the allegations contained in Paragraph 129.

130.    This messaging has continued, as United recently advertised on December 15, 2022, through its "Flying Together" website that: "As the end-of-year holidays approach and large gatherings become ever more frequent, there's no better time than now to educated yourself on life-saving flu and COVID-19 vaccines. Tune in on Dec. 15 for a vaccine webinar."

**ANSWER:**    Defendant admits that the language quoted in this Paragraph, in part, was published on United's Flying Together website. Defendant denies any remaining allegations contained in Paragraph 130.

**131.**    Because of United's actions, other employees repeatedly harassed Ms. Hamilton, doing things such as spraying Lysol into her area making it hard for her to breathe. She was also needlessly banished to eat outdoors, irrespective of the weather. Moreover, United forced her to live under the daily threat of termination if she did not return her respirator to her face between bites of food and sips of water. Additionally, Ms. Hamilton was ridiculed by her co-workers for being unvaccinated.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant denies the allegations contained in Paragraph 131.

**132.**    United's initial rejection her request for a reasonable accommodation and the threat of unpaid leave also caused Ms. Hamilton significant stress. That emotional toll was exacerbated as the mandate and United's actions limited the options her family was able to provide for her husband's cancer treatment.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 132, and therefore denies the same.

**133.**    Ms. Hamilton submitted a claim of discrimination to the EEOC, and she received a right to sue letter on September 30, 2022.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Hamilton's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 133.

**Debra Jonas**

**134.**    Plaintiff Jonas is a Customer Service Representative assigned to the United Club. She has worked for United (or Continental Airlines, before United acquired Continental) since 1984.

**ANSWER:**    Defendant admits that Plaintiff Jonas is a Premium Services Representative working at the United Club and that Plaintiff Jonas has worked for United and/or Continental Airlines since 1984.

**135.**    As a United Club Representative, Ms. Jonas is responsible for working in the club lounge, verifying credentials, selling memberships, discussing amenities with clients, and assisting clients with flight issues and upgrades.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 135.

**136.**    On August 29, 2021, Ms. Jonas requested a medical accommodation [sic] Help Hub.

**ANSWER:**    Defendant admits that Plaintiff Jonas requested a medical accommodation through Help Hub on August 29, 2021.

137.    In her request, Ms. Jonas explained that she was concerned with the safety of the vaccine because of her severe allergy disability. She lives with the threat of severe reactions to various allergens, taking allergy medications each day and constantly carrying a rescue inhaler and epi-pen with her in case she comes into contact with an environmental trigger. Ms. Jonas cannot take medicines such as penicillin and has severe reactions to foods such as eggs and materials such as wool. United already provides Ms. Jonas with a special uniform because of her wool allergy. She updated that request on September 14, 2021, with a form filled out by her doctor outlining her allergy disability and recommending that she not take the vaccine.

**ANSWER:**    Defendant admits that in Plaintiff Jonas's medical accommodation request she explained the reasons for her request. Defendant lacks knowledge or information to form a belief as to existence and/or the severity of Plaintiff Jonas's alleged allergies, and therefore denies this allegation. Defendant denies any remaining allegations contained in Paragraph 137.

138.    Ms. Jonas also wanted to submit a request for a religious accommodation but was unable to do so because Help Hub permitted an employee to request only one type of accommodation.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to requests Plaintiff Jonas "wanted to submit," and therefore denies this allegation. Defendant denies any remaining allegations contained in Paragraph 138.

139.    Ms. Jonas did not receive any contact from United to discuss the request or possible accommodations.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 139.

140.    On September 15, 2021, United informed Ms. Jonas that her medical accommodation request was "approved," but that she would be accommodated by being placed on indefinite medical leave that would lead to the loss of both her pay and her regular benefits.

**ANSWER:**    Defendant admits that on September 15, 2021, it informed Plaintiff Jonas that her medical accommodation request was approved. Defendant denies any remaining allegations contained in Paragraph 140.

141.    Yet, in August and October of 2021, Ms. Jonas contracted and recovered from COVID-19, thereby providing her with significant antibody protection.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 141, and therefore denies the same.

**142.**    After this lawsuit was filed, Ms. Jonas was provided an accommodation to remain at work under the same masking and testing protocols required of Mr. Castillo and Ms. Hamilton.

**ANSWER:**    Defendant admits that Plaintiff Jonas was provided an accommodation that required her to comply with a masking and testing protocol. Defendant denies any remaining allegations contained in Paragraph 142.

**143.**    Because she was in a "customer-facing" role in the United Club, the company relocated Ms. Jonas to a remote "agent on demand" position. This was so even though her job in the United Club could be performed safely with mitigation measures (such as masking and testing) and with little to no contact with customers. Moreover, United allowed outside vendors to work in the United Club in close proximity with customers and employees while not requiring those vendors to be vaccinated. In fact, United subsequently installed plastic shields in the United Club between passengers and agents, which, along with mask wearing and periodic testing, would have allowed Ms. Jonas to continue working in her position.

**ANSWER:**    Defendant admits that Ms. Hamilton was provided with an accommodation of an alternate Agent on Demand position and required masking and testing. Defendant further admits that its vendors are separate entities and thus its COVID-19 vaccine policy did not apply to these separate entities. Defendant denies any remaining allegations contained in Paragraph 143.

**144.**    Ms. Jonas was also subject to harassment from other United employees and supervisors. She felt ostracized in the role of agent on demand because her duty station was located away from most other employees. United would not allow her to eat meals with other employees. Moreover, Ms. Jonas' departmental relocation came without union protection or the ability to work additional or overtime shifts, a benefit only afforded the vaccinated employees.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff Jonas "felt ostracized." Defendant denies any remaining allegations contained in Paragraph 144.

**145.**    Further, United informed Ms. Jonas that once she was relocated, there was no guarantee she would ever be able to return to her lucrative United Club position.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 145, and therefore denies the same.

**146.**    United's response and threat of extended unpaid leave caused Ms. Jonas significant stress. She was also forced out of her normal position and lost out on a significant amount of bonus money that she could have earned if she had been allowed to continue working in the United Club last Fall and Winter.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to whether

Plaintiff Jonas suffered "significant stress," and therefore denies this allegation. Defendant denies

any remaining allegations contained in Paragraph 146.

**147.**    Ms. Jonas submitted a claim of discrimination to the EEOC, and she received a right to sue letter on September 30, 2022.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 147.

### Genise Kincannon

**148.**    Plaintiff Genise Kincannon is a Flight Attendant for United. Ms. Kincannon has worked for United for 32 years.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 148.

**149.**    As a Flight Attendant, Ms. Kincannon performs important safety responsibilities during flights, including providing security support for pilots and maintaining control of the cabin. Additionally, Ms. Kincannon's responsibilities include helping customers find their seats and ensuring a comfortable flight, while also performing other duties assigned by the captain.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 149.

**150.**    On August 18, 2021, Ms. Kincannon submitted a religious accommodation request through Help Hub.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 150.

**151.**    In her accommodation request, Ms. Kincannon explained her understanding that the COVID-19 vaccines were developed using fetal stem cell lines and that it is sinful to use anything derived from abortion. Additionally, throughout her adult life, Ms. Kincannon has elected not to receive vaccines due to her religious beliefs.

**ANSWER:**    Defendant admits that Plaintiff Kincannon's accommodation request detailed her

reasons for not taking the COVID-19 vaccine. Defendant lacks knowledge or information

sufficient to form a belief as to whether Plaintiff Kincannon "has elected not to receive vaccines [throughout her adult life] due to her religious beliefs," and therefore denies this allegation. Defendant denies any remaining allegations contained in Paragraph 151.

**152.**   Ms. Kincannon also previously contracted and recovered from COVID-19 and thus likely possesses antibodies against COVID-19.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 152, and therefore denies the same.

**153.**   After she submitted her request, Ms. Kincannon did not receive any contact from United to discuss the request or possible accommodations, other than boilerplate questions challenging her religious beliefs and requesting a letter from someone else to verify those beliefs.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 153.

**154.**   On September 9, 2021, United informed Ms. Kincannon that her religious accommodation request was "granted," but that she would be "accommodated" by being placed on indefinite unpaid leave without her regular benefits.

**ANSWER:**   Defendant admits that on September 9, 2021, it informed Plaintiff Kincannon that her religious accommodation request was granted. Defendant denies any remaining allegations contained in Paragraph 154.

**155.**   After this lawsuit was filed, Ms. Kincannon was able to work until November 16, 2021. She was then placed on unpaid leave until United brought flight crews back to work at the end of March 2022.

**ANSWER:**   Defendant admits that in November 2021 Plaintiff Kincannon was placed on a temporary unpaid leave with the ability to apply for alternative positions. Defendant further admits that Ms. Kincannon returned to her position at United in March 2022. Defendant denies any remaining allegations contained in Paragraph 155.

**156.**   Being placed on unpaid leave impacted Ms. Kincannon in both tangible and intangible ways. She was forced out of work over the Thanksgiving and Christmas holidays last year, punished financially and professionally for choosing her faith over her employment. Not only did Ms. Kincannon lose income, she lost training cycles, currency, skills, vacation and sick leave accrual, use of accrued flight benefits, retirement contributions, and many other important career

and professional benefits. United's actions also caused significant stress in Ms. Kincannon's marriage.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 156, and therefore denies the same

157.    Ms. Kincannon has also continued to be discriminated against since United returned exempt flight attendants to work from their unpaid leave. Her schedule has remained restricted by the company's policies, where she has been prevented from flying to countries such as Japan for work due to her lack of a COVID-19 vaccine—even though she could fly to those same destinations on United Airlines as a passenger or non-revenue pass rider. Being prevented from flying those lucrative routes—unlike the accommodated flight attendants from other airlines—has continued to contribute to her financial distress by costing her money each month she works.

**ANSWER:**    Defendant admits that unvaccinated employees were restricted from traveling to certain destinations based on those destination's COVID-19 regulations and/or related foreign rules or requirements. Defendant denies any remaining allegations contained in Paragraph 157.

158.    Additionally, these arbitrary flight restrictions include the threat of discipline. United uses a point system to determine the level of discipline for a violation of United policy. Each month, when she submits bids for her schedule, Ms. Kincannon attempts to use her seniority to ensure that she does not bid for any of the cities included on United's arbitrary restricted-city list. However, if she is nonetheless awarded a flight to one of these cities, despite not bidding for it, United removes her from the trip and assigns her a "missed trip," which causes her to receive disciplinary points. These points carry various levels of punishment, including termination.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 158.

159.    Ms. Kincannon submitted a claim of discrimination to the EEOC, and she received a right to sue letter on September 30, 2022.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 159.

### Jarrad Rains

160.    Plaintiff Jarrad Rains is a Flight Attendant for United.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 160.

**161.**     On August 31, 2021, he submitted a medical accommodation request through Help Hub. He has hereditary heart disease as well as heart stents and a repaired aorta from a rupture in 2019. In consultation with his doctor, it was determined that his heart disease prevented him from receiving the vaccine.

**ANSWER:**     On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant admits that Plaintiff Rains submitted a medical accommodation request on August 31, 2021. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 161, and therefore denies the same.

**162.**     Mr. Rains also likely contracted and recovered from COVID in Summer of 2021. He was thus likely to possess the same antibodies that the vaccine was intended to create, and which the CDC has acknowledged are superior to those from vaccination.

**ANSWER:**     On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 162, and therefore denies the same.

**163.**     Mr. Rains updated his accommodation request on September 8, 2021, with a form completed by his doctor, noting a history of allergic reactions—including anaphylaxis—and stating that he could not take the vaccine.[3]

**ANSWER:**     On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant admits that Mr. Rains submitted a form completed by his doctor on September 8, 2021. Defendant denies the remaining allegations contained in Paragraph 163 and the related footnote.

**164.**     The following day, Mr. Rains was told that his medical request was "approved," but that he would be placed on indefinite medical leave. Although he could use his earned sick pay until it

---

[3] Mr. Rains additionally has sincerely held religious beliefs that prevented him from taking the vaccine but was not allowed to submit a request with the company because of his medical exemption request. He called Help Hub in an attempt to submit his religious accommodation request but was informed that he could only have one type or the other.

ran out, United would not extend any pay or benefits beyond that point. He would then be required to pay his medical insurance premiums (both his portion and United's potion).

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant admits that it informed Plaintiff Rains that his medical accommodation request was granted on September 15, 2021. Defendant denies any remaining allegations contained in Paragraph 164.

**165.**    Mr. Rains would have happily continued working for United with basic accommodations like mask wearing and periodic testing. He also would have been willing to pay for any testing and to work around difficulties in scheduling that could have resulted from his vaccination status.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 165, and therefore denies the same.

**166.**    Separately, Mr. Rains would have been willing to provide United with proof of his COVID antibodies, earned just a few months prior to the company putting him on involuntary unpaid leave. Because that form of immunity is superior to vaccine-induced immunity, his accommodation could have been simply to not take the vaccine.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 166, and therefore denies the same.

**167.**    Because of United's refusal to provide any reasonable accommodation, Mr. Rains suffered physically, emotionally, and economically from United's actions. He was forced to withdraw money from his 401k (with a penalty) to pay his bills when placed on unpaid leave. The increased stress from dealing with the mandate and false accommodation also caused his blood pressure to rise and took a toll on his mental health.

**ANSWER:**    On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 167, and therefore denies the same.

**168.**   Ultimately, Mr. Rains was forced onto indefinite unpaid leave from November 2021 to March 2022.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant admits that Mr. Rains was accommodated with an unpaid leave with the ability to apply for alternative positions from November 2021 to March 2022. Defendant denies any remaining allegations contained in Paragraph 168.

**169.**   Mr. Rains has also been subjected to continued discrimination since he was permitted to return to work. His schedule has remained restricted by the company's arbitrary route restrictions due to his lack of a COVID-19 vaccine—even though he could fly to those same destinations on United Airlines as a passenger or a non-revenue pass rider. Being prevented from flying those lucrative routes—unlike the accommodated flight attendants from other airlines—has continued to contribute to his financial distress by costing him money each month he works.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant admits that some unvaccinated employees were restricted from traveling to certain destinations based on local COVID-19 regulations and/or related foreign rules or requirements. Defendant denies any remaining allegations contained in Paragraph 169.

**170.**   Like Ms. Kincannon, Mr. Rains is subject to the same point-based discipline risks when he submits bids for flights.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains's claims. To the extent a response is required, Defendant denies the allegations contained in Paragraph 170.

**171.**   Mr. Rains submitted a claim of discrimination to the EEOC, and he received a right to sue letter on January 27, 2022.

**ANSWER:**   Defendant denies that allegations contained in Paragraph 171.

**Alyse Medlin**

**172.**   Plaintiff Alyse Medlin was a Flight Attendant for United and was on maternity leave when the Mandate was issued at the beginning of August 2021.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 172.

173.   After hearing about the Mandate, she submitted a religious accommodation request before the August 31, 2021 deadline, explaining that, as a devout Christian, she has a sincerely held religious belief against taking the COVID-19 vaccines based on the vaccines' links to aborted fetal stem cells.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the extent a response is required, Defendant admits that Plaintiff Medlin submitted a religious accommodation request through Help Hub on August 30, 2021.

174.   While on maternity leave, Ms. Medlin was not required to fill out forms or check her United email. However, she wanted to get her accommodation request submitted so that it was in place when she returned to work.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the extent a response is required, Defendant admits that Plaintiff Medlin submitted a religious accommodation request through Help Hub on August 30, 2021. Defendant denies any remaining allegations contained in Paragraph 174.

175.   Ms. Medlin regularly checked Help Hub for a week awaiting a response to her accommodation request. As she received no response, she assumed the request was approved. Several weeks later, Ms. Medlin checked Help Hub again and saw that United had requested a third-party verification of her beliefs a week prior, to be submitted within three days. Because she was on leave and had no access to her company internet device, Ms. Medlin did not receive any notification of this United's demand for a letter verifying her beliefs. Ms. Medlin immediately tried to submit the requested letter. But the Help Hub portal was closed by that point, and she was unable to do so.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 175, and therefore denies the same.

176.   Ms. Medlin's request was subsequently denied for a lack of third-party verification, despite no such letter being required by law. She assumed, though, that the issue could be resolved after she returned from maternity leave.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the

extent a response is required, Defendant admits that Plaintiff Medlin's religious accommodation

request was denied on September 16, 2021, because Plaintiff Medlin failed to provide the required

documentation for her request. Defendant denies any remaining allegations contained in Paragraph

176.

**177.**   United called Ms. Medlin at the beginning of March 2022 to begin the process of coming
back to work. She was told then that she needed to upload proof of vaccination to return, but Ms.
Medlin explained that she was exempt from the requirement due to her sincerely held religious
beliefs for which she had submitted an accommodation request prior to United's arbitrary August
31, 2021 deadline.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the

extent a response is required, Defendant lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 177, and therefore denies the same.

**178.**   A supervisor then emailed Ms. Medlin to inform her that she would be subject to a
mandatory investigatory meeting via Microsoft Teams on March 9, 2022. Just minutes before that
meeting, the supervisor sent Ms. Medlin the paperwork indicating that the meeting was called to
investigate her vaccination status. It was too late at that point, though, for Ms. Medlin to seek any
type of representation during the meeting.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the

extent a response is required, Defendant admits that Plaintiff Medlin was subject to a mandatory

investigatory meeting via Microsoft Teams on March 9, 2022. Defendant denies any remaining

allegations contained in Paragraph 178.

**179.**   During the virtual meeting, Ms. Medlin was told that she would be terminated immediately
because she was not vaccinated, even though she had informed her employer of a need for an
accommodation that was within the employer's ability to provide with no cost.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the

extent a response is required, Defendant admits that at her investigatory meeting, Plaintiff Medlin

was informed that she would be terminated for failing to comply with United's vaccine policy. Defendant denies any remaining allegations contained in Paragraph 179.

**180.**   Despite being able to accommodate her sincerely held religious belief, United terminated Ms. Medlin on March 9, 2022—the day before United announced that all unvaccinated employees with an accommodation of unpaid leave would be returning to work. *See* Leslie Josephs, *United Airlines will let unvaccinated employees return to their jobs this month*, CNBC (Mar. 10, 2022), https://www.cnbc.com/2022/03/10/united-airlines-unvaccinated-workers-can-return-to-their-jobs.html. This has caused Ms. Medlin serious financial, mental, and professional hardship.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the extent a response is required, Defendant admits that Plaintiff Medlin was terminated on March 9, 2022, for failure to comply with United's COVID-19 vaccine policy. Defendant further admits that on March 10, 2022, it announced that all unvaccinated employees with an accommodation of unpaid leave would be permitted to return to work. Defendant denies any remaining allegations contained in Paragraph 180.

**181.**   Ms. Medlin submitted a claim of discrimination to the EEOC, and she received a right to sue letter on January 4, 2023.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Medlin's claims. To the extent a response is required, Defendant admits the allegations contained in Paragraph 181.

**Charles Burk**

**182.**   Plaintiff Charles Burk is a First Officer with United. He requested a religious accommodation from United's vaccine mandate, to which United responded by offering only an indefinite period of unpaid leave as a "reasonable accommodation."

**ANSWER:**   Defendant admits Plaintiff Burk is a First Officer with United. Defendant further admits that that Plaintiff Burk requested a religious accommodation and his request was granted. Defendant denies any remaining allegations contained in Paragraph 182.

**183.**   The filing of the present lawsuit temporarily stayed United from taking direct action against pilots such as Mr. Burk. Nevertheless, United continued to apply pressure to its employees, promising that unpaid leave would begin as soon as legally allowed.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 183.

**184.**   United used additional coercive tactics on its unvaccinated employees, informing them that vaccination was the right thing to do for the safety of everyone and that they would take the vaccine if they really cared about their co-workers and passengers.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 184.

**185.**   In the meantime, Mr. Burk knew that the temporary restraining order would soon be expiring and that he needed several weeks to complete the multiple shot regimen for COVID-19. He could not afford to be out of a job for even a brief period due to personal difficulties (including the impending death of his mother). This created an intense crisis of conscience for Mr. Burk. He ultimately conceded his religious belief concerning the vaccine for his religious belief to provide for his family and received the COVID-19 vaccine.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 185, and therefore denies the same.

**186.**   The coercion and stress inflicted by United's unlawful actions caused Mr. Burk to acquiesce and take the vaccine, violating his sincerely held religious beliefs—beliefs the company had already recognized.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 186, and therefore denies the same.

**187.**   Mr. Burk submitted a claim of discrimination to the EEOC, and he received a right to sue letter on November 17, 2022.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 187, and therefore denies the same.

## CLASS ALLEGATIONS

**188.**   Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a) and (b).

**ANSWER:**   Defendant admits that Plaintiffs purport to "bring this class action under Federal Rules of Civil Procedure 23(a) and (b)," but Defendant denies that any such action is appropriate.

**189.**   Through this action, Plaintiffs seek to represent a class of all United employees who have submitted claims of discrimination or retaliation to the EEOC and who requested or attempted to request a medical or religious accommodation from United's Mandate and, because of United's

response, were put to the decision of either taking a vaccine to which they object, or suffering termination, including the functional equivalent of termination: indefinite unpaid leave. Plaintiffs may also request certification of separate subclasses for employees who were "customer facing," those who were "non-customer facing," those who were terminated, or other potential subclasses as deemed necessary through the class discovery process.

**ANSWER:**     Defendant admits that Plaintiffs purport to seek such class treatment, but Defendant

denies that such treatment is appropriate. Defendant denies any remaining allegations contained in

Paragraph 189.

**190.**     By determining there would be no reasonable accommodations for any employee requesting an exemption from the vaccine mandate, United effectively treated all accommodation requesters the same, irrespective of the job-title, location, age, medical condition, or other circumstances or characteristics.

**ANSWER:**     Defendant denies the allegations in Paragraph 190.

**191.**     United's actions were thus generally applicable to the entire class of United employees who sought reasonable accommodations from the Mandate. This is so despite United's determining after the initial filing of this lawsuit that it would be able to accommodate several employee groups beyond unpaid leave.

**ANSWER:**     Defendant denies the allegations in Paragraph 191.

**192.**     Accordingly, the Court may grant relief to the entire affected class to remedy United's violation of federal civil rights laws.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 192.

**193.**     Additionally, the class is so numerous that joinder of all members is impractical. While the exact class size is unknown to Plaintiffs at this time, it is expected to approach 2,000 employees. The precise number and identification of the class members will be ascertainable from United's records during discovery.

**ANSWER:**     Paragraph 193 states legal conclusions and/or statements of what the law provides

or should provide, to which no response is required. To the extent a response is required, Defendant

denies the allegations contained in Paragraph 193.

**194.**     There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

(a)     Did United provide its employees with an adequate mechanism for requesting an accommodation when it required requests to be submitted only through Help Hub

by an arbitrary date (August 31, 2021) and prevented employees from requesting accommodations for both religious and medical reasons?

(b)    Did United comply with its obligations under federal law to engage in the interactive process when responding to each individual accommodation request?

(c)    Did United comply with its obligations under federal law to reasonably accommodate employees with religious or medical objections to the vaccine mandate when the only "accommodation" offered was indefinite unpaid leave?

(d)    Did United comply with federal law when it denied accommodation requests?

(e)    Did United retaliate against employees who engaged in protected activity when it responded to each request by formally or effectively terminating their employment or by engaging in coercive conduct to dissuade employees from requesting (or continuing to seek) an accommodation?

**ANSWER:**    Paragraph 194 states legal conclusions and/or statements of what the law provides or should provide, to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 194.

195.    Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested accommodations from United's vaccine mandate and United formally or effectively denied those requests without engaging in the interactive process.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 195.

196.    For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

**ANSWER:**    Paragraph 196 states legal conclusions and/or statements of what the law provides or should provide, to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 196.

197.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

**ANSWER:**    Paragraph 197 states legal conclusions and/or statements of what the law provides or should provide, to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 197.

**198.**   As explained above, United has taken at least one relevant act that affects all members of the class as represented by the named Plaintiffs harmed in this District.

**ANSWER:**   Defendant denies the allegations in Paragraph 198.

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious discrimination—failure to accommodate**
**On behalf of Plaintiffs Sambrano, Castillo, Hamilton, Jonas,**
**Kincannon, Rains, Medlin, and Burk,**
**and others similarly situated**

**199.**   Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

**ANSWER:**   Defendant incorporates by reference its responses to the foregoing allegations as though set forth fully herein.

**200.**   Plaintiffs Sambrano, Castillo, Hamilton, Jonas, Kincannon, Rains, Medlin, and Burk hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton, Plaintiff Medlin, Plaintiff Rains, Plaintiff Jonas, and Plaintiff Castillo's failure to accommodate claims under Title VII, 42 U.S.C. .§ 2000e, and as such, no response is required as to Plaintiff Hamilton, Plaintiff Medlin, Plaintiff Rains, Plaintiff Jonas, and Plaintiff Castillo. As to the remaining allegations in Paragraph 200, Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiffs hold "sincere religious beliefs that preclude them from receiving a COVID-19 vaccine," and therefore denies this allegation.

**201.**   Plaintiffs Sambrano, Castillo, Hamilton, Jonas, Kincannon, Medlin, and Burk informed United of those beliefs and requested (or tried to request) religious accommodations from the vaccine mandate.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Hamilton, Plaintiff Medlin, Plaintiff Rains, Plaintiff Jonas, and Plaintiff Castillo's failure to accommodate claims under Title VII, 42 U.S.C. .§ 2000e, and as such, no response is required as to Plaintiff Hamilton, Plaintiff Medlin, Plaintiff Rains, Plaintiff Jonas, and Plaintiff Castillo. As to the remaining allegations in

Paragraph 201, Defendant admits that Plaintiffs Sambrano and Burk filed religious accommodation requests. Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiffs "tried to request," and therefore denies this allegation.

**202.**   United refused to engage in the interactive process with Plaintiffs regarding their religious accommodation requests and instead only responded to Plaintiffs with invasive questions or processes designed to deter Plaintiffs from exercising their religious beliefs. Indeed, United never intended to provide a reasonable accommodation for any sincerely held religious beliefs. Thus, whether the company "granted" the request for an accommodation or found a convenient way to dismiss the request was ultimately irrelevant for United's purposes—the company was determined to coerce any unvaccinated employee no matter what their status was with the company. This made the interactive process irrelevant as well.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 202.

**203.**   Irrespective of the interactive process, United failed to provide Plaintiffs with reasonable accommodations for their religious beliefs, as indefinite unpaid leave is not a reasonable accommodation. Instead, indefinite unpaid leave is an adverse employment action. Additionally, Plaintiff Medlin was terminated for her vaccination status even though she had made known to the company her sincerely held religious belief that prevented her from taking the vaccine.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 203.

**204.**   United thereby discriminated against Plaintiffs because of their religious beliefs.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 204.

**205.**   United's failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 205.

**206.**   By failing to engage in the interactive process or offer any reasonable accommodation, United's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 206.

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious discrimination—retaliation**
**On behalf of Plaintiffs Sambrano, Castillo, Hamilton, Jonas,**
**Kincannon, Rains, Medlin, and Burk,**
**and others similarly situated**

**207.**   Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

**ANSWER:**   Defendant incorporates by reference its responses to the foregoing allegations as though set forth fully herein.

208.   Plaintiffs Sambrano, Castillo, Hamilton, Jonas, Kincannon, Medlin, and Burk engaged in protected activity when they requested (or tried to request) religious accommodations from United's vaccine mandate.

**ANSWER:**   On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under Title VII, 42 U.S.C. § 2000e-3(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 208.

209.   United responded almost immediately by announcing that it would [sic] formally or effectively terminate their employment. This was so even though United has conceded that many of the requests for religious accommodation are legitimate by "granting" those requests.

**ANSWER:**   On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under Title VII, 42 U.S.C. § 2000e-3(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 209.

210.   United's response to Plaintiffs' protected activity a draconian threat of years of unpaid leave was an adverse employment action intended to force employees to forgo their religious beliefs and receive the COVID-19 vaccine. When its improper questioning of the employees' religious beliefs failed, United chose to retaliate by giving the employees the false choice between vaccination and effective termination.

**ANSWER:**   On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under Title VII, 42 U.S.C. § 2000e-3(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 210.

211.   Plaintiffs' religious beliefs and protected activity were the causes of United's adverse employment action. Indeed, United's derisive view of employees with religious beliefs has been documented. Moreover, United's disparate treatment of religious accommodation requests—arbitrarily cutting off the deadline for submitting religious accommodations, while potentially still accepting requests for medical accommodation (even though the end result is basically the same)—only confirms United's hostility to requests for religious accommodation. United did not bother engaging in an interactive process with accommodation seekers because it never intended to provide them with a reasonable accommodation.

**ANSWER:**   On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under Title VII, 42 U.S.C. § 2000e-3(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 211.

**212.**   By retaliating against Plaintiffs for engaging in protected activity, United has violated Title VII. This violation has harmed and continues to harm Plaintiffs.

**ANSWER:**   On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under Title VII, 42 U.S.C. § 2000e-3(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 212.

**COUNT III**
**Violation of the ADA, 42 U.S.C. § 12101, *et seq.***
**Disability discrimination—failure to accommodate**
**On behalf of Plaintiffs Jonas and Rains,**
**and others similarly situated**

**213.**   Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

**ANSWER:**   Defendant incorporates by reference its responses to the foregoing allegations as though set forth fully herein.

**214.**   Plaintiffs Jonas and Rains informed United of their disabilities.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains's failure to accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as to Plaintiff Rains' claims. As to the remaining allegations in Paragraph 214, the allegations state legal conclusions and/or statements of what the law provides or should provide, to which no response is required. To the extent a response is required, Defendant admits that Plaintiff Jonas and Plaintiff Rains claimed they had medical conditions that they believed prevented them from receiving the COVID-19 vaccine. Defendant denies the remaining allegations contained in Paragraph 214.

**215.**   Plaintiffs Jonas and Rains requested reasonable medical accommodations from United's vaccine mandate for their disabilities.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as to Plaintiff Rains' claims. As to the remaining allegations in Paragraph 215, the allegations state legal conclusions and/or statements of what the law provides or should provide, to which no response is required. To the extent a response is required, Defendant admits that Plaintiffs Jonas and Rains submitted requests for a medical accommodations. Defendant denies the remaining allegations contained in Paragraph 215.

216.   United refused to engage in the interactive process with Plaintiffs regarding their medical accommodation requests.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as to Plaintiff Rains' claims. Defendant denies the remaining allegations contained in Paragraph 216.

217.   United violated the ADA when it denied or effectively denied Plaintiffs' accommodation requests.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as to Plaintiff Rains' claims. Defendant denies the remaining allegations contained in Paragraph 217.

218.   Where United offered indefinite unpaid leave as an accommodation, it failed to provide a reasonable accommodation.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as to Plaintiff Rains' claims. Defendant denies the remaining allegations contained in Paragraph 218.

219.   United thereby discriminated against Plaintiffs because of their disabilities.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as

to Plaintiff Rains' claims. As to the remaining allegations in Paragraph 219, the allegations state

legal conclusions and/or statements of what the law provides or should provide, to which no

response is required. To the extent a response is required, Defendant denies the remaining

allegations contained in Paragraph 219.

**220.**   United's failure to provide medical accommodations harmed and continues to harm
Plaintiffs.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to

accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as

to Plaintiff Rains' claims. Defendant denies the remaining allegations contained in Paragraph 220.

**221.**   By failing to engage in the interactive process or offer any reasonable accommodation,
United's discriminatory actions were intentional and/or reckless, and in violation of the ADA.

**ANSWER:**   On December 18, 2023, the Court dismissed Plaintiff Rains' failure to

accommodate claims under the ADA, 42 U.S.C. § 12101, and as such, no response is required as

to Plaintiff Rains' claims. Defendant denies the remaining allegations contained in Paragraph 221.

**COUNT IV**
**Violation of the ADA, 42 U.S.C. § 12101, *et seq.***
**Disability discrimination—retaliation**
**On behalf of Plaintiffs Jonas and Rains,**
**and others similarly situated**

**222.**   Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

**ANSWER:**   Defendant incorporates by reference its responses to the foregoing allegations as

though set forth fully herein.

**223.**   Plaintiffs Jonas and Rains engaged in protected activity when they requested medical
accommodations from United's vaccine mandate.

**ANSWER:**   On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under

the ADA, 42 U.S.C. § 12203(a), and as such, no response is required. To the extent a response is

required, Defendant denies the allegations contained in Paragraph 223.

**224.**     United responded by taking an adverse employment action against each employee when it announced that it would formally or effectively terminate their employment. This was so even though United has conceded that many of the requests for medical accommodations are legitimate by "granting" those requests.

**ANSWER:**     On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under the ADA, 42 U.S.C. § 12203(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 224.

**225.**     United's response to Plaintiffs' protected activity with a draconian threat of years of unpaid leave, and a threat of denied access to insurance or benefits, was an adverse employment action intended to force employees to forgo their medical reasons for not receiving the COVID-19 vaccine.

**ANSWER:**     On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under the ADA, 42 U.S.C. § 12203(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 225.

**226.**     Plaintiffs' medical disability and protected activity were the causes of United's adverse employment action. As discussed above, United's derisive view of employees with disabilities has been documented.

**ANSWER:**     On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under the ADA, 42 U.S.C. § 12203(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 226.

**227.**     By retaliating against Plaintiffs for engaging in protected activity, United has violated the ADA.

**ANSWER:**     On December 18, 2023, the Court dismissed all Plaintiffs' retaliation claims under the ADA, 42 U.S.C. § 12203(a), and as such, no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 227.

**PRAYER FOR RELIEF**

Plaintiffs request that the Court:

a.      Certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

b.      Certify a class of all United employees who submitted EEOC claims of discrimination or retaliation and who requested or attempted to request a medical or religious accommodation from United's Mandate and, because of United's response, were put to the decision of either taking a vaccine to which they object, or suffering termination, including the functional equivalent of termination: indefinite unpaid leave.

c.      Declare that United has violated Title VII and the ADA by failing to engage in the interactive process and provide reasonable accommodations in response to requests for accommodations to its COVID-19 vaccine mandate.

d.      Declare that United has violated Title VII and the ADA by retaliating against employees who engaged in protected activity.

e.      Issue a permanent injunction, enjoining United from terminating, placing on unpaid leave, or failing to promote/hire any employee who has a religious or medical basis for seeking an accommodation from a COVID-19 vaccine mandate.

f.      Award Plaintiffs, and those similarly situated, damages, including back pay, reinstatement or front pay, lost seniority credit, accrued benefits, retirement contributions, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

g.      Award Plaintiffs reasonable attorneys' fees and costs.

h.      Grant any other relief that the Court deems just, proper, and equitable.

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues upon which there is a federal right to a jury trial.

**ANSWER:**   Defendant denies that Plaintiffs are entitled to the relief sought, or to any relief at all. Defendant denies that it has violated any law set forth under "Prayer for Relief." Defendant further denies, generally and specifically, each and every allegation contained in Plaintiff's "Prayer for Relief." Defendant further denies that class treatment of any claims is appropriate.

## AFFIRMATIVE AND OTHER DEFENSES

Subject to and without waiving the foregoing, Defendant asserts the following affirmative and other defenses to the allegations in Plaintiffs' Second Amended Complaint. In asserting these defenses, Defendant does not assume the burden of proof as to matters that, as a matter of law, are the Plaintiffs' burden to prove. Nothing stated herein constitutes a concession as to whether or not Plaintiffs or Defendant bear the burden of proof on any issue. All defenses asserted herein are pleaded in the alternative. Defendant may also assert other defenses that become available or appear during the course of additional investigation or discovery in this case.

1.      The Court lacks personal jurisdiction over Defendant concerning claims asserted by one or more named Plaintiffs and members of the putative class.

2.      Plaintiffs are barred from pursuing their claims in the Northern District of Texas because venue is improper.

3.      Plaintiffs' claims are barred to the extent Plaintiffs failed to exhaust their administrative remedies, or other prerequisites to bringing suit.

4.      Plaintiffs' claims are barred to the extent they were not included in Plaintiffs' respective charges filed with the Texas Workforce Commission and/or the U.S. Equal Employment Opportunity Commission ("EEOC"), or could not be reasonably expected to grow from those respective charges.

5.      Plaintiffs' claims are barred to the extent they are based on decisions, conduct, or events that occurred more than 180 or 300 days prior to the filing of Plaintiffs' respective charges with the Texas Workforce Commission and/or EEOC.

6.      Plaintiffs' claims are barred, in whole or in part, because they seek relief for non-victims. See, *e.g.*, 42 U.S.C. 2000e-5(g)(2)(A).

7.      Plaintiffs' claims for damages are barred, in whole or in part, by constitutional and statutory limitations, including, but not limited to, 42 U.S.C. § 1981a.

8.      Plaintiffs' claims for damages are barred, in whole or in part, because Defendant made good faith efforts, in consultation with particular Plaintiffs, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business. Accordingly, 42 U.S.C. § 1981a(a) bars such damages.

9.      Plaintiffs' claims are barred, in whole or in part, because any requested accommodation beyond that which was provided would have imposed an undue burden or hardship on Defendant.

10.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' unvaccinated status posed a direct threat to themselves and others and because any requested accommodation beyond that which was provided to Plaintiffs would pose a direct threat to themselves and others. 42 U.S.C. § 12111(3) & 12113(b), 29 C.F.R. § 1630.2(r), 1630.15(b)(2).

11.     Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs are responsible for any breakdown in the interactive process that resulted in any failure to provide a reasonable accommodation.

12.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs challenge actions that were required or necessitated by another Federal law or regulation. 29 C.F.R. § 1630.15(e).

13.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs challenge actions that are required or necessitated by various collective bargaining agreements to which Defendant is a party.

14.     Plaintiffs' claims are barred, in whole or in part, to the extent that any acts or omissions complained of by Plaintiffs and attributed to Defendant were taken in good faith and in conformity

with, and in reliance on, an administrative regulation, order, ruling, approval, or interpretation of applicable federal law. *See* 42 U.S.C. § 2000e-12.

**15.**     Assuming, *arguendo*, that Plaintiffs could demonstrate an adverse employment action, Plaintiffs' claims are barred, in whole or in part, by the doctrine of after-acquired evidence, to the extent Defendant learns of wrongdoing by Plaintiffs that would have led to the same actions.

**16.**     Punitive damages are barred on the grounds that Defendant took no action with malice, conscious or reckless indifference, to Plaintiffs' protected rights; did not authorize or ratify any such act; at all times, endeavored in good faith to comply with the provisions of applicable law, and had reasonable grounds to believe its actions were not a violation of applicable law.

**17.**     Plaintiffs' claims for damages are barred, in whole or in part, by their failure to mitigate damages.

**18.**     Plaintiffs' claims for damages are barred, in whole or in part, to the extent that Plaintiffs have been, or will be, compensated from collateral sources.

WHEREFORE, Defendant denies that Plaintiffs are entitled to any relief requested in the Second Amended Complaint. Defendant respectfully requests that the Court dismiss Plaintiffs' claims with prejudice and enter judgment for Defendant; deny Plaintiffs' prayer for relief; and grant such other and further relief as the Court deems just and proper.

Dated: January 8, 2024                      Respectfully submitted,


                                            /s/ *Jordan M. Matthews*
                                            Donald J. Munro
                                            D.C. Bar No. 453600
                                            **JONES DAY**
                                            51 Louisiana Avenue, NW
                                            Washington, D.C. 20001
                                            Telephone: +1.202.879.3939
                                            Facsimile: +1.202.626-1700
                                            Email: dmunro@jonesday.com

                                            Jordan M. Matthews
                                            IL Bar No. 6300503
                                            **JONES DAY**
                                            110 North Wacker Drive, Suite 4800
                                            Chicago, IL 60606
                                            Telephone: +1.312.782.3939
                                            Facsimile: +1.312.782.8585
                                            Email: jmatthews@jonesday.com

                                            Alexander V. Maugeri
                                            NY Bar No. 5062666
                                            **JONES DAY**
                                            250 Vesey Street
                                            New York, NY 10281
                                            Telephone: +1.212.326.3939
                                            Facsimile: +1.212.755.7306
                                            Email: amaugeri@jonesday.com

                                            Russell D. Cawyer
                                            TX Bar No. 00793482
                                            **KELLY HART & HALLMAN LLP**
                                            201 Main Street, Suite 2500
                                            Fort Worth, TX 76102
                                            Telephone: +1.817.878.3562
                                            Facsimile: +1.817.335.2820
                                            Email: russell.cawyer@kellyhart.com

                                            **ATTORNEYS FOR DEFENDANT**
                                            **UNITED AIRLINES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

On January 8, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jordan M. Matthews*