# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED AIRLINES, INC., <br><br> *Defendant*. | Civil Action No.: 4:21-cv-01074-P |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... I

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 4

I.     The Court Applied the Incorrect Standard for a Motion to Dismiss.................... 5

II.    The Court Incorrectly Dismissed Plaintiffs' Retaliation Claims. ....................... 6

       A.    Plaintiffs Plausibly Alleged an Adverse Employment Action. ..................... 7

       B.    Plaintiffs Plausibly Alleged a Causal Link................................................. 12

III.   The Court Also Incorrectly Dismissed Hamilton's and Castillo's Failure-to-
       Accommodate Claims........................................................................................ 15

IV.    The Court Incorrectly Held that Castillo's, Rains's, and Medlin's Claims Were
       Time Barred. ..................................................................................................... 20

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Houston Indep. Sch. Dist.*,
    689 F. App'x 238 (5th Cir. 2017) ......................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................... 5

*Brandon v. Sage Corp.*,
    808 F.3d 266 (5th Cir. 2015) ................................................................................. 9

*Brooks v. City of Utica*,
    275 F. Supp. 3d 370 (N.D.N.Y. 2017).................................................................. 19

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)............................................................................................ 8, 14

*Chhim v. Univ. of Tex. at Austin*,
    836 F.3d 467 (5th Cir. 2016) ................................................................................. 5

*Cicalese v. Univ. of Tex. Med. Branch*,
    924 F.3d 762 (5th Cir. 2019) ........................................................................... 5, 16

*Davies By & Through Davies v. Lackawanna Cnty.*,
    No. 3:15-cv-1183, 2018 WL 924205 (M.D. Pa. Feb. 14, 2018)............................ 12

*EEOC v. Abercrombie & Fitch Stores,*
  575 U.S. 768 (2015) ............................................................................................ 19

*EEOC v. Vantage Energy Servs.,*
  954 F.3d 749 (5th Cir. 2020) ............................................................................ 25

*Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.,*
  745 F. App'x 209 (5th Cir. 2018) ..................................................................... 20

*Fed. Exp. Corp. v. Holowecki,*
  552 U.S. 389 (2008) ............................................................................... 23, 24, 25

*Fin. Acquisition Partners LP v. Blackwell,*
  440 F.3d 278 (5th Cir. 2006) ............................................................................... 6

*Fort Bend Cnty. v. Davis,*
  139 S. Ct. 1843 (2019) ....................................................................................... 23

*Groff v. DeJoy,*
  600 U.S. 447 (2023) ......................................................................... 4, 7, 16, 17

*Hamilton v. Dall. Cnty.,*
  79 F.4th 494 (5th Cir. 2023) ..................................................... 4, 15, 16, 20

*Harrison v. Brookhaven Sch. Dist.,*
  82 F.4th 427 (5th Cir. 2023) ...................................................................... 16, 17

*Henson v. Bell Helicopter Textron, Inc.,*
  128 F. App'x 387 (5th Cir. 2005) ..................................................................... 22

*Hockman v. Westward Commc'ns, LLC,*
  122 F. App'x 734 (5th Cir. 2004) ..................................................................... 12

*Huge v. Boeing Co.,*
  No. C14-857, 2015 WL 6626568 (W.D. Wash. Oct. 30, 2015) ............................ 11

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,*
  920 F.3d 890 (5th Cir. 2019) .................................................................. 8, 17, 19

*Jurach v. Safety Vision, LLC,*
  72 F. Supp. 3d 698 (S.D. Tex. 2014) ................................................................ 22

*Lewis v. New York City Transit Authority,*
  12 F. Supp. 3d 418 (E.D.N.Y. 2014) ................................................................ 11

*Manning v. Chevron Chem. Co.,*
  332 F.3d 874 (5th Cir. 2003) ............................................................................ 25

*Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co.,*
  542 F.3d 1053 (5th Cir. 2008) ......................................................................... 5, 6

*McClain v. Lufkin Indus.,*
  519 F.3d 264 (5th Cir. 2008) ............................................................................ 25

*McClendon-Lemman v. Tarrant Cnty. Coll.,*
  No. 4:21-cv-1338-P, 2022 WL 4396275 (N.D. Tex. Sept. 23, 2022)..................... 12

*McNeill v. Tyson Fresh Meats, Inc.*,
   No. 2:23-cv-041-Z, 2023 WL 8532408 (N.D. Tex. Dec. 8, 2023) .................................. *passim*

*Melvin v. Barr Roofing Co.*,
   806 F. App'x 301 (5th Cir. 2020) ........................................................................... 12

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ................................................................................................ 21

*Ohio v. Roberts*,
   448 U.S. 56 (1980) .................................................................................................. 25

*Sambrano v. United Airlines, Inc.*,
   No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ..................................... 23

*Seaman v. CSPH, Inc.*,
   179 F.3d 297 (5th Cir. 1999) .................................................................................... 8

*Taylor v. Books A Million, Inc.*,
   296 F.3d 376 (5th Cir. 2002) ................................................................................... 13

*United States v. Davenport*,
   No. 3:09-cv-2455-L, 2013 WL 2109966 (N.D. Tex. May 16, 2013) ....................... 5

**Statutes**

Americans with Disabilities Act .................................................................................. 3, 6

TEX. ADMIN. CODE § 819.76 ......................................................................................... 23

Title VII of the Civil Rights Act of 1964 ..................................................................... 3, 6

**Other Authorities**

5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* (3d ed. 2023) ............ 6

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .... 12

**Regulations**

29 C.F.R. § 1601.12 ...................................................................................................... 25

## INTRODUCTION

Plaintiffs respectfully request that the Court reconsider certain aspects of its recent motion-to-dismiss decision, which misapplied precedent and overlooked key facts. Most significantly, that decision applied the incorrect legal standard, asking whether Plaintiffs had "shown" the elements of their claims. But neither the Fifth Circuit nor the Supreme Court imposes such a heavy burden at the pleading stage. Rather, under the correct legal standard—asking whether Plaintiffs plausibly alleged their claims—it is clear that Plaintiffs sufficiently alleged that United violated their civil rights by refusing to provide any reasonable accommodations to its COVID-19 vaccine mandate. And, were there a question about the sufficiency of the allegations, Plaintiffs should have been permitted to amend their complaint to bolster those allegations.

Additionally, the Court erred in concluding that certain Plaintiffs did not suffer, as a matter of law, any adverse employment action or retaliation. In dismissing their claims, the Court misapplied the Supreme Court's seminal case on retaliation, *Burlington Northern*, and the Fifth Circuit's recent and watershed case on adverse employment actions, *Hamilton*. Those errors are made clear by reviewing Judge Kaczmaryk's recent decision in *McNeill v. Tyson Fresh Meats, Inc.*, issued just days before this Court's decision. No. 2:23-cv-041-Z, 2023 WL 8532408 (N.D. Tex. Dec. 8, 2023). That case involved nearly identical failure-to-accommodate and retaliation claims and, after applying *Burlington Northern* and *Hamilton*, the court denied the defendant's motion to dismiss. *McNeill*'s faithful analysis and application of precedent underscores the need for reconsideration of this Court's decision granting United's motion to dismiss.

Aside from these errors, the Court also overlooked key factual allegations concerning United's punitive masking-and-testing regime and the harms that onerous accommodation caused. Indeed, the Court misunderstood Plaintiffs' claims as complaining about run-of-the-mill masking-and-testing requirements. But the Second Amended Complaint ("SAC"), and the record developed

through discovery, confirm that United subjected the "accommodated" employees to much more draconian requirements. And the Court misapplied the law when concluding that a plaintiff cannot claim retaliation based on facts that also underlie a failure-to-accommodate claim. Finally, the Court misapplied the law and facts when concluding that several claims are time barred.

Accordingly, the Court should reconsider its decision by either denying United's motion to dismiss or permitting Plaintiffs to seek leave to amend their complaint.

## BACKGROUND[1]

From the moment United announced its COVID-19 vaccine mandate, United implemented a plan to coerce employees to abandon their faith and health. This involved United's CEO publicly disparaging employees and threatening their jobs if they requested an accommodation. Doc. 239 at 13. And the coercion included creating a "purposefully vague" accommodation process with arbitrary and unreasonable deadlines. Doc. 239 at 13–20; Doc. 240 at 135, 137–38, 104–07, 154–57, 188; Doc. 240-1 at 69–70. United also used offensive and condescending questions during the accommodation process to convince employees to abandon their accommodation requests. Doc. 239 at 18–19; Doc. 240 at 74, 197; Doc. 240-1 at 211–212. And United even attempted to coerce behavior by sending postcards to employees' houses with conspicuous text designed to ensure that the employees' families knew the employees were facing termination. Doc. 239 at 15.

For those who persevered through that pressure, United used the accommodations themselves to coerce employees. Shortly after the deadline to submit accommodation requests, United announced that *every* accommodated employee would be placed on indefinite, unpaid leave. Doc. 239 at 20–21; Doc. 240 at 104–07. For many, that meant potentially years without

---

[1] Plaintiffs respectfully refer the Court to their thorough discussion of United's COVID-19 vaccine mandate and its discriminatory and retaliatory implementation provided in the motion for class certification, which Plaintiffs incorporate here. *See* Doc. 239.

health benefits.  Doc. 240 at 109.  That plan immediately caused serious harm.  It caused some to violate their faith, SAC ¶¶ 185–86, others to make hurried decisions about medical care, *id.* ¶ 127, and others retired out of duress or were harassed, Doc. 239 at 15–16, 22–23.

Recognizing that indefinite, unpaid leave is effectively termination, Plaintiffs filed this lawsuit seeking relief under both Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA") for United's unlawful accommodation plan.  Only then did United reverse course for a subset of employees who United subjected to a harsh and punitive masking-and-testing accommodation.  Doc. 239 at 23–25.  Under that accommodation, employees could not wear the cloth or surgical masks they had been wearing since the beginning of the pandemic and that others were still wearing.  Rather, United required them (and only them) to wear respirators, which allowed other employees to easily identify those with accommodations.[2]  And, to increase the pressure, United also directed employees to find isolated areas (including outside) to eat.  Doc. 239 at 24.  United also created an unreasonably harsh disciplinary scheme where small infractions would lead quickly to termination.[3]  Doc. 239 at 25–26; Doc. 240 at 140; Doc. 240-1 at 88.  And, beyond the respirator requirement, United also imposed an unreasonable testing regime where employees were required to take multiple COVID-19 tests each week, even while on vacation.  Doc. 239 at 24–26; Doc. 240 at 82–83, 104, 116–17.  Even United's HR employees thought this was an unreasonable requirement.  Doc. 239 at 26 ("If someone's camping, we're really going to require them to test?").

Despite this intentional discrimination and retaliation, United has moved to dismiss

---

[2] It was thus no small thing to be required to work with a clear and obvious indicator of their accommodation.  Yet this was exactly what United's CEO wanted—to institute a plan to mark and easily identify unvaccinated, accommodated employees in the workplace.  Doc. 239 at 13–14.

[3] Once again, that stands in stark contrast to non-accommodated employees for whom United *removed* disciplinary points for mask-related infractions.  Doc. 239 at 49.

Plaintiffs' claims three times.  Docs. 47, 160, 209.  Although each motion has been misguided, the facts have developed, and the law has changed substantially, since United's first motion.

As to the facts, the parties have completed almost a year of discovery, with thousands of documents exchanged and dozens of depositions taken.  Based on that record, Plaintiffs filed a motion for class certification that confirms the truth of the SAC's allegations.  Doc. 156.

As for the law, important Fifth Circuit and Supreme Court precedent have recently changed—each in Plaintiffs' favor.  The Fifth Circuit expanded the definition of "adverse employment action" beyond an "ultimate employment decision."  *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023) (en banc).  In doing so, the Fifth Circuit emphasized that "to plead an adverse employment action, a plaintiff *need only allege* facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment."  *Id.* at 502–03 (emphasis added).  Further, the Fifth Circuit explained that the phrase "terms, conditions, or privileges" is "broad," "not limited to economic or tangible discrimination," "covers more than terms and conditions in the narrow contractual sense," and can even include "a discriminatory and hostile work environment."  *Id.*  Similarly, the Supreme Court substantially heightened the standard for what an employer must show to justify denying an accommodation.  *Groff v. DeJoy*, 600 U.S. 447, 469 (2023).

Despite this updated factual record and the change in law, the Court granted United's latest motion to dismiss in part, dismissing: (1) Plaintiffs' retaliation claims; (2) Castillo's and Hamilton's failure to accommodate claims; and (3) Castillo's, Rains's, and Medlin's claims for being time barred.  Doc. 231 ("Op.").

## ARGUMENT

Reconsideration is appropriate because the Court's motion-to-dismiss decision relied on manifest errors of law and fact.  Under Federal Rule of Civil Procedure 59(e), that is reason enough

to grant reconsideration. *Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co.,* 542 F.3d 1053, 1058 (5th Cir. 2008) (citation omitted).    Accordingly, the Court should apply its "considerable discretion" to grant this motion. *United States v. Davenport*, No. 3:09-cv-2455-L, 2013 WL 2109966, at *4 (N.D. Tex. May 16, 2013) (citations and quotation marks omitted).

In addition to applying the incorrect legal standard, the Court also misapplied the law and facts when it concluded that: (1) Plaintiffs could not claim retaliation for United's responses to accommodation requests; (2) Plaintiffs could not challenge United's draconian masking-and-testing accommodation; and (3) Plaintiffs' claims are time barred.

## I.    The Court Applied the Incorrect Standard for a Motion to Dismiss.

On a motion to dismiss, Plaintiffs are only required to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That does not require "detailed factual allegations." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019).  And courts must "take the well-pleaded factual allegations in the complaint as true." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).  The question is simply whether the complaint includes sufficient factual allegations "to raise a right to relief above the speculative level." *Cicalese*, 924 F.3d at 765.

Rather than applying this standard, the Court held Plaintiffs to a substantially higher standard—asking repeatedly whether Plaintiffs have "shown" that they have a right to relief.  *See* Op. at 3, 14, 16.  In fact, the Court's decision did not address the plausibility standard even once when discussing the contents of the SAC.  *See generally* Op.  To be sure, it is easy to lose sight of the procedural posture of this case, considering United filed its motion to dismiss several years after Plaintiffs filed their complaint.  But despite years having passed and dozens of briefs having been filed in this Court and the Fifth Circuit, Plaintiffs' SAC was only subject to the pleading standard requiring them to allege sufficient facts making their claims "plausible." *Twombly*, 550

U.S. at 570.   Under that standard, as discussed in the following sections, Plaintiffs plausibly alleged that United violated Title VII and the ADA.

However, if the Court were unsure whether Plaintiffs' allegations crossed the threshold "from conceivable to plausible," Op. at 2, it should have dismissed Plaintiffs' claims without prejudice, 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2023) (explaining that "dismissal under Rule 12(b)(6) generally is not with prejudice" because of the "federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities" and thus plaintiffs should "be given every opportunity to cure a formal defect in the pleading.").   There is now abundant evidence of additional facts strengthening Plaintiffs' allegations, and Plaintiffs should have the opportunity to move for leave to amend to add additional allegations.[4] *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006) ("[T]here is a strong presumption in favor of granting leave to amend; to this end, a district court may be reversed for failing to provide an adequate explanation for denying it.").

Accordingly, the Court should reconsider its decision and deny United's motion to dismiss because Plaintiffs plausibly alleged violations of Title VII or the ADA.   *Marseilles Homeowners,* 542 F.3d at 1058 (explaining that a motion to reconsider should be granted when there is "newly discovered evidence").   Alternatively, the Court should reconsider its decision and convert its dismissal to being without prejudice to allow Plaintiffs to seek leave to amend.

## II.   The Court Incorrectly Dismissed Plaintiffs' Retaliation Claims.

The Court also misapplied the law when dismissing Plaintiffs' retaliation claims.   In doing

---

[4] Plaintiffs appreciate the Court's interest in this case moving forward.   And Plaintiffs recognize that they have filed three complaints already.   But that underscores the uniqueness of this case, where the lengthy procedural record has necessitated multiple amendments.   Allowing an opportunity to amend is much more expedient than an appeal followed by remand.

so, the Court made two fundamental errors: (1) concluding that Plaintiffs had not sufficiently alleged an adverse employment action; and (2) concluding that there was no causal connection alleged between the protected activity and the adverse employment action.  In each instance, the Court misapplied binding precedent and overlooked critical factual allegations.

These errors are highlighted by reviewing the recent *McNeill* decision, where the court denied a motion to dismiss a plaintiff's nearly identical retaliation claim concerning a COVID-19 vaccine mandate and a religious "accommodation" of indefinite, unpaid leave.  2023 WL 8532408, at *1.  In doing so, Judge Kacsmaryk was one of the first judges to apply *Hamilton*, *Harrison* (the Fifth Circuit's first opportunity to expand on *Hamilton*), and *Groff* to failure-to-accommodate and retaliation claims—and the decision is particularly persuasive for its faithful application of these precedents.  Moreover, *McNeill* demonstrates that Plaintiffs sufficiently alleged an adverse action and the causal link between the adverse action and Plaintiffs' protected activity.  Accordingly, the Court should reconsider its dismissal of Plaintiffs' retaliation claims.

### A.      Plaintiffs Plausibly Alleged an Adverse Employment Action.

The Court held that Plaintiffs "did not suffer an adverse employment action" because: (1) the alleged retaliation was the "accommodation" of unpaid leave, but the alternative to unpaid leave was termination, and thus no reasonable worker would be dissuaded from seeking an accommodation when they would otherwise be fired; and (2) Plaintiffs' complaints about unpaid leave are the basis for their failure-to-accommodate claims and cannot also be the basis of a retaliation claim.  Op. at 15–16.  Each conclusion overlooked binding authority and facts.

1.  First, the definition of an adverse employment action is intentionally "broader" for retaliation claims than it is for discrimination claims, as the retaliation standard extends to any action that is "materially adverse," meaning the employer's action "well might have dissuaded a

reasonable worker" from engaging in the protected conduct. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66–68 (2006) (cleaned up). That is because the purpose of Title VII's and the ADA's anti-retaliation provisions is to "secure [the statute's] primary [anti-discrimination] objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id.* at 63; *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (confirming that in this Circuit, courts apply the same analysis to ADA and Title VII retaliation claims).

The Court did not apply this test. Instead, the Court held that "the question is whether employees were treated materially worse than if they had not sought the accommodation at all, such that they would be deterred from seeking an accommodation." Op. at 15. But *Burlington Northern* does not set forth a "treated materially worse" standard. Rather, the Supreme Court only articulated the "reasonable worker" standard identified above. *Burlington Northern*, 548 U.S. at 57. Further, the Court overlooked the Supreme Court's admonition that the standard for retaliation is laid out "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Were there any ambiguity about what *Burlington Northern* requires, the Court should have "resolve[d]" those "ambiguities … in the plaintiff's favor." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). But the Court failed to do so.

Under the correct standard, the relevant question is whether, taking into consideration the entire context, Plaintiffs sufficiently alleged that United's actions "well might have dissuaded a reasonable worker" from seeking an accommodation. *Burlington N.*, 548 U.S. at 68. The answer to that question is a definitive "yes." The core of the SAC's allegations is that United used an unreasonable accommodation process and then unreasonable accommodations (unpaid leave and

intentionally punitive masking and testing) to coerce employees to get vaccinated or terminated rather than seek an accommodation.  SAC ¶¶ 63–85.[5]

And the Supreme Court and the Fifth Circuit have already concluded that the threat of unpaid leave is itself sufficient to state a claim of retaliation.  As the Supreme Court explained, "[m]any reasonable employees would find a month without a paycheck to be a serious hardship." *Burlington N.*, 548 U.S. at 72.  As a result, "[a] reasonable employee facing the choice between retaining her job (and paycheck) and [engaging in a protected activity] might well choose the former.  That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay." *Id.* at 73.  Similarly, the Fifth Circuit has stated that "a realistic, drastic pay cut threat might deter someone from supporting a discrimination charge in certain circumstances," which could give rise to an actionable retaliation claim. *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015).

Indeed, that is precisely the conclusion Judge Kacsmaryk reached after correctly applying the precedent above. *McNeill*, 2023 WL 8532408.  The plaintiff in *McNeill* was a maintenance employee of Tyson Fresh Meats who sought a religious accommodation to his employer's COVID-19 vaccine mandate. *Id.* at *1.  Tyson offered the plaintiff a predetermined "accommodation" of "unpaid leave for up to one year" or "immediate termination." *Id.*  Under the threat of lost income, the plaintiff capitulated and received the vaccine. *Id.* at *2.  The plaintiff then filed suit claiming both retaliation and failure to accommodate, and, at the motion-to-dismiss stage, the court upheld

---

[5] Discovery confirmed that United's actions dissuaded employees from seeking accommodations. Doc. 239 at 18 (HR supervisors celebrating an employee withdrawing request in the face of the unreasonable process); Doc. 239 at 22–23 (noting that, after announcing the only accommodation was unpaid leave, many employees withdrew their accommodation requests, retired under duress, or resigned due to financial strain).  Thus, at a minimum, the Court should have permitted Plaintiffs to amend their complaint to include such allegations.

both claims.  *Id.* at *1–2.

As to retaliation, the court in *McNeill* reasoned that the accommodation Tyson offered created a scheme where "[t]he most viable option for a religious objector ... was to accept a complete reduction in pay and *hope* Defendant rescinded the policy."  *Id.* at *6.  The court concluded, relying on the Supreme Court's decision in *Burlington* and the Fifth Circuit's decisions in *Brandon* and this case, that just the prospect of a "realistic, drastic pay cut threat" was materially adverse enough to deter the assertion of religious objections and thus satisfied the "adverse employment action" element of the plaintiff's retaliation claim.  *Id.* at *6–7.

Thus, the *McNeill* court applied the correct standard for "adverse employment action" in a case with strikingly similar allegations as this case and yet reached the opposite conclusion as this Court.  This Court should follow the Supreme Court, the Fifth Circuit, and *McNeill*, and hold that Plaintiffs have alleged a sufficient adverse employment action for their retaliation claim.[6]

2.  Next, this Court erred in holding that Plaintiffs cannot maintain a retaliation claim that relies on facts that also give rise to a failure-to-accommodate claim.  Once again, *McNeill* is instructive.  Like Plaintiffs in this case who allege that United's unreasonable accommodation process and policy give rise to both a failure-to-accommodate and retaliation claim, the plaintiff in *McNeill* alleged that Tyson's unpaid leave scheme was both discriminatory and retaliatory under Title VII.  *McNeill*, 2023 WL 8532408, at *12.  And the court in *McNeill* took no issue with this approach, noting that "a realistic, drastic pay cut *threat*" is an adverse employment action for purposes of both a retaliation and failure-to-accommodate claim.  *Id.* (emphasis added).

This conclusion is in harmony with the purposes and structure of Title VII and does not, as

---

[6] Alternatively, the Court should reconsider its decision to apply the correct standard from this authority.  Even if the Court's ultimate conclusion remains unchanged, the record on appeal will substantially benefit from the Court's analysis of the correct standards from this authority.

this Court feared, "erode the difference between a failure-to-accommodate claim and a retaliation claim." Op. at 16. The reasons for this are best explained in *Lewis v. New York City Transit Authority*, another case where a district court upheld both a retaliation and a failure-to-accommodate claim arising from the same facts. 12 F. Supp. 3d 418 (E.D.N.Y. 2014).

The plaintiff in *Lewis* was a practicing Muslim who was unable, for religious reasons, to remove her khimar as required by the defendant's uniform policy. *Id.* at 427–28. In response, the defendant reassigned the plaintiff to work in a position where the headgear policy did not apply. *Id.* The plaintiff presented evidence that this new position was less desirable in many ways. *Id.* at 429. But the defendant claimed that its decision to transfer the plaintiff was for the purpose of "provid[ing] a religious accommodation ... and in so doing avoid disciplining her as the [defendant] normally would do ... for secular non-compliance with [the headgear] policy." *Id.* at 451. After the plaintiff filed claims for both failure-to-accommodate and retaliation, *id.* 433–34, the district court upheld both claims on summary judgment, reasoning that "[a] materially adverse' action in the context of Title VII's anti-retaliation provision is broader than an adverse employment action in the context of Title VII's anti-discrimination provisions," *id.* at 450. The court then concluded that the same reasons the transfer could not be deemed reasonable also rendered the transfer materially adverse for the retaliation claim. *Id.*

Numerous other courts have similarly concluded that factual allegations can simultaneously support claims of retaliation and failure to accommodate. *See, e.g.*, *Huge v. Boeing Co.*, No. C14-857, 2015 WL 6626568, at *11 (W.D. Wash. Oct. 30, 2015) (denying the employer's summary judgment motion because fact issues remained as to whether placing plaintiff on unpaid leave after she sought an accommodation was retaliatory and an unlawful accommodation); *Davies By & Through Davies v. Lackawanna Cnty.*, No. 3:15-cv-1183, 2018 WL 924205, at *2 (M.D. Pa.

11

Feb. 14, 2018) ("Here, there are claims of discrimination based on failure to accommodate Plaintiff's disability, which are factually intertwined with the retaliation claim.").

Additionally, the cannon of *lex specialis*, does not, as this Court held, require a different conclusion. Op. at 16. The cannon of *lex specialis* applies "*[i]f there is a conflict* between a general provision and a specific provision" of a statute. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) (emphasis added). But the Court did not identify any conflict between Title VII's failure-to-accommodate and anti-retaliation provisions. Rather, the Court implied that only one statutory provision—the most specific—can govern any one factual situation. Were that true, a plaintiff could not vindicate their rights through more than one statutory provision at a time. Yet plaintiffs routinely bring actions alleging violations of Title VII, the ADA, and other statutes based on the same facts.[7]

Simply put, where a defendant's actions violate multiple statutes or multiple statutory provisions, it is common and appropriate for one factual situation to give rise to multiple claims.

### B. Plaintiffs Plausibly Alleged a Causal Link.

The Court also misapplied the law when it held that Plaintiffs had not identified a causal link between their protected activity and the adverse employment action. Op. at 16. According to the Court, "United's unpaid leave policy preceded Plaintiffs' request for an accommodation, so their request for an accommodation could not have 'caused' the unpaid leave policy to be instituted in retaliation for Plaintiffs engaging in a protected activity." *Id*. But that misunderstands the facts

---

[7] *See, e.g.*, *McClendon-Lemman v. Tarrant Cnty. Coll.*, No. 4:21-cv-1338-P, 2022 WL 4396275, at *3 (N.D. Tex. Sept. 23, 2022) (denying motion to dismiss retaliation and discrimination claims based on same facts); *Allen v. Houston Indep. Sch. Dist.*, 689 F. App'x 238, 240 (5th Cir. 2017) (plaintiff's claims "based on the same predicate facts"); *Hockman v. Westward Commc'ns, LLC*, 122 F. App'x 734, 748 (5th Cir. 2004) (the plaintiff's claims for harassment, retaliation, and constructive discharge were based on "the same facts"); *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 305 (5th Cir. 2020) (per curiam) (same).

alleged in the complaint and is inconsistent with *McNeill*.

When considering a motion to dismiss, "the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The SAC alleges that United announced on August 6, 2021, that "all employees would be required to receive a COVID-19 vaccine within five weeks of the FDA's granting full approval of a vaccine, or five weeks after September 20, 2021." SAC ¶ 38. And, "[w]hen United announced its Mandate, it stated that employees could request accommodations for either religious or health reasons" by August 31, 2021. *Id.* ¶¶ 47, 49. Then, "[o]n September 9, 2021, United began 'granting' requests for accommodation, announcing that for any accommodation request it granted, the employee would be placed on indefinite unpaid leave starting October 2, 2021, with no company-paid benefits, no access to their retirement accounts, and no planned return date." *Id.* ¶ 75. After this announcement, "many United employees … rescind[ed] their accommodation requests out of a fear of lost income and health insurance." *Id.* Thus, accepting as true Plaintiffs' factual allegations, Plaintiffs (except Castillo) submitted their accommodation requests by August 31, and United did not announce its unpaid leave policy until nine days later on September 9, 2021. *Id.* ¶¶ 88, 93, 123, 127, 136, 140, 150, 154, 161, 164, 173. It is unclear why the Court concluded the opposite. *See* Op. at 16 ("United's unpaid leave policy preceded Plaintiffs' request for an accommodation.").

Moreover, even if United's unpaid-leave plan had preceded Plaintiffs' accommodation requests, that fact does not automatically destroy a causal link between the requests and United's retaliatory accommodation.[8] Such a rule would allow employers to avoid retaliation claims by

---

[8] In fact, it appears that United planned to put accommodated employees on indefinite leave months before the vaccine mandate went into effect. Doc. 239 at 21. Nevertheless, for the reasons explained above, that fact does not mean Plaintiffs' retaliation claims fail as a matter of law. It

getting ahead of their employees and publicly announcing policies meant to discourage certain protected conduct.  Then, when employees nonetheless had the courage to engage in protected activity, employers could implement these policies without fear of retaliation claims.  Such a rule undermines the purpose of Title VII's and the ADA's anti-retaliation provisions, which is to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [these statutes'] basic guarantees." *Burlington N.*, 548 U.S. at 63.

That is no doubt why the court in *McNeill* reached the opposite conclusion as this Court. There, as here, the plaintiff alleged that Tyson adopted a "blanket approach" of offering only unpaid leave to every religious accommodation request and that the "Defendant's accommodation framework was a 'predetermined illegal punishment for requesting a religious exemption.'" 2023 WL 8532408, at *7.  Indeed, Tyson's HR manager told the plaintiff that the company "knew what his accommodation would be before he asked." *Id.*  Although the company had predetermined the accommodation, the court nevertheless concluded that the plaintiff had sufficiently established a causal link between his protected conduct and the defendant's alleged retaliation. *Id.*  And, contrary to concluding that Tyson's "predetermined" accommodation destroyed causation, the court emphasized the defendant's scheme as an additional factor "*support[ing]* the causal link." *Id.* (emphasis added).  Thus, the creation of a company policy meant to deter protected conduct from ever occurring in the first place is in fact *stronger*, rather than weaker, evidence of causation. And that is precisely what Plaintiffs have alleged here, where United's CEO disparaged accommodation requesters before requests were even due by threatening their jobs.  SAC ¶ 49.

Moreover, the allegations about unpaid leave are not the only ones supporting Plaintiffs'

---

was equally possible that United would abandon its unreasonable plan to put employees onto unpaid leave.  But it was only after receiving the accommodation requests that United formally implemented the unpaid leave accommodation.

retaliation claim.  As the SAC notes, one of the common questions to the class is whether "United retaliate[d] against employees who engaged in protected activity ... by engaging in coercive conduct to dissuade employees from requesting (or continuing to seek) an accommodation." *Id.* ¶ 194(e).  The SAC also explains how the masking-and-testing accommodation was punitive and retaliatory.  *Id.* ¶¶ 115–118, 128–131.  Plaintiffs also alleged that the entire RAP process, as well as the masking-and-testing accommodation, were retaliatory.  The Court overlooked these allegations and the other portions of the SAC detailing how United's conduct sought to punish those who needed an accommodation.  *Id.* ¶¶ 49–56, 63–85, 101, 102, 116–117, 128–129, 142–43, 145, 157–58, 169–70.  The Court should have accepted these allegations as true at this stage of the litigation.  For that reason, and the reasons explained above, the Court should reverse its decision on Plaintiffs' retaliation claims.

**III.    The Court Also Incorrectly Dismissed Hamilton's and Castillo's Failure-to-Accommodate Claims.**

The Court also erred in dismissing Castillo's and Hamilton's failure-to-accommodate claims.  In holding that Castillo and Hamilton failed to allege more than a *de minimis* adverse employment action, the Court misapplied the *McDonnell Douglas* standard and the Fifth Circuit's *Hamilton* and *Harrison* decisions and disregarded key factual allegations in the SAC about the onerous masking-and-testing requirements these Plaintiffs had to endure.

Starting with the law, while the Court noted that the burden-shifting framework of *McDonnell Douglas* applies to a failure-to-accommodate claim, the Court misapplied how *McDonnell Douglas* operates at the pleading stage.  The Fifth Circuit recently explained that, "[a]t the pleading stage, a plaintiff *need not plead* a prima facie case under the *McDonnell Douglas Corp. v. Green* framework."  *Hamilton*, 79 F.4th at 502 n. 45 (emphasis added).  That is because *McDonnell Douglas* is an *evidentiary standard* used "for assessing claims, typically at summary

15

judgment." *Id.* The Fifth Circuit confirmed that "[a] court thus inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese*, 924 F.3d at 767 (The *McDonnell Douglas* "inquiries are better suited to summary judgment."). That authority stands in direct conflict with this Court's conclusion that Plaintiffs must "*establish* a prima facie case of religious discrimination" or "show" they meet the elements of a prima facie case at this stage of the litigation. Op. at 4 (emphasis added). In fact, the Fifth Circuit confirms that this is reversible error: "A district court therefore errs by requiring 'a showing of each prong of the prima facie test for disparate treatment at the pleading stage.'" *Cicalese*, 924 F.3d at 766.

Rather, a plaintiff "need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the '*terms, conditions, or privileges*' of his or her employment." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023). And, while the Court is correct that a plaintiff must allege "more than *de minimis* discrimination in the terms, conditions, or privileges of employment," neither *Hamilton* nor *Harrison* created a *de minimis* standard that Plaintiffs failed to meet at this stage. Op. at 5–6.

In *Hamilton*, the Fifth Circuit left "for another day the precise level of minimum workplace harm a plaintiff must allege," 79 F.4th at 505, but it need only be more than *de minimis*, a term the Supreme Court recently confirmed means "very small or trifling," *Groff*, 600 U.S. at 469. Further, "the statutory phrase, 'terms, conditions, or privileges of employment,' is broad." *Hamilton*, 79 F.4th at 503. The phrase "'is not limited to "economic" or "tangible" discrimination,' and 'it covers more than "terms" and "conditions"' in the narrow contractual sense." *Id.* And "even a discriminatory and hostile work environment—when sufficiently severe or pervasive—can rise to the level of altering the terms, conditions, or privileges of employment for Title VII purposes." *Id.*

16

Thus, non-economic and intangible discrimination or a hostile work environment can clear the *de minimis* hurdle if the harm resulting from this discrimination is not "very small."

About a month after *Hamilton*, the Fifth Circuit revisited the *de minimis* standard in *Harrison*. 82 F.4th 427 (5th Cir. 2023). But that decision did not, as the Court stated, paint "a clear picture of the *de minimis* standard in action." Op. at 6. In *Harrison*, the plaintiff alleged a loss of $2,000, which the Fifth Circuit held was not a *de minimis* out-of-pocket injury. *Harrison*, 82 F.4th at 432. The allegation of a $2,000 financial loss, however, is not a proper comparator to this case nor does it create any sort of baseline for *de minimis* injury. As noted above, discrimination is "not limited to 'economically adverse employment actions'" like the one in *Harrison*. *Id.* at 430. In other words, *Harrison* only provided an *example* of when an economic injury is not *de minimis*. It said nothing about situations involving non-economic and intangible discrimination or hostile work environments.

Thus, the takeaway from *Hamilton* and *Harrison* is that whether alleged discrimination results in more than a *de minimis* injury depends on the specific allegations in each case. And any question about the reach of these decisions should have been resolved in Plaintiffs' favor. *Inclusive Cmtys. Project*, 920 F.3d at 899. Plaintiffs need only plausibly allege that an employer altered any "terms, conditions, or privileges" in more than a "very small" way. *Groff*, 600 U.S. at 469.

Under this authority, the Court erred in concluding that Hamilton and Castillo have only pleaded *de minimis* harm from United's coercion and discrimination.

First, the Court's holding that the decision to put Hamilton on unpaid leave and terminate Castillo caused no harm because "these decisions were never carried out," Op. at 8, conflicts with Fifth Circuit authority and *McNeill*'s proper application of that authority. The plaintiff in *McNeill* did not go on unpaid leave, but succumbed to the employer's coercion and chose vaccination over

17

unpaid leave.[9]  2023 WL 8532048, at *2.  Yet, "the leave of absence scheme amounted to a realistic, drastic pay cut threat such that it was an adverse employment action."  *Id.* at *12.

Here, United told Hamilton that she would be put on unpaid leave.  SAC ¶ 127.  And Hamilton was directly harmed by that decision by having "to choose the fastest available treatment" for her husband's cancer rather than "the treatment that they thought might be best." *Id.*  As the SAC explains, "[t]he impact of that decision is yet to be determined" and "continues to be a significant source of stress for Ms. Hamilton."  *Id.*  As for Castillo, United decided to terminate him and thus he faced not just a "realistic, drastic pay cut threat," but the loss of his paycheck and benefits entirely.  *Id.* ¶ 114.  Harm from a drastic pay cut threat is not "very small." And thus, the fact that United reversed course (after this lawsuit was filed) is irrelevant.

Second, the Court mistakenly held that Hamilton's and Castillo's allegations about their masking-and-testing accommodation only amounted to *de minimis* harm.  For this, the Court looked only at the allegations that Plaintiffs had to "provide regular COVID-19 test results, their workstations were sprayed with Lysol 'making it hard for [them] to breathe,' they were 'needlessly banished to eat outdoors,' and they were required to 'wear an N-95 respirator' as opposed to a KN-95 or cloth mask.'"  Op. at 6–7.  And the Court largely equated this accommodation with the general mask-wearing and testing rules that were in place during the COVID-19 pandemic.  *Id.*

But that is not what the SAC alleges, and it is not what the record reflects.  The Court overlooked that both Hamilton and Castillo alleged that United required them to wear respirators (not masks) without "training and oxygenation breaks."  SAC ¶¶ 116, 128.  Further, Castillo noted that this respirator requirement put him "and his co-workers at significant safety risk" by limiting

_____

[9] This highlights that the choice Plaintiffs faced was not only between unpaid leave or termination. Rather, United forced employees to decide whether to violate their faith or forsake their health.

"his ability to communicate with colleagues during important maintenance activities." *Id.* ¶ 117. Courts have found that when an employer makes an employee's working conditions dangerous, that action may constitute an adverse employment action. *See, e.g.*, *Brooks v. City of Utica*, 275 F. Supp. 3d 370, 378 (N.D.N.Y. 2017) (collecting cases).

The Court also overlooked the context of the allegations concerning discrimination against those with religious accommodations. The SAC states that United waged a campaign of coercion to pressure employees to abandon their religious beliefs. SAC ¶¶ 49–56, 63–79. More specifically, United's CEO warned employees "to be very careful about" requesting an accommodation and that very "few people" would receive an accommodation. *Id.* ¶ 49. United also subjected religious employees to harassing questions about their faith, demanded documentation about their faith in unreasonable timeframes, and then announced (not just threatened) that all accommodated employees would be put on indefinite, unpaid leave. *Id.* ¶ 70, 72–73, 78, 83. Such a harassing environment cannot be, as a matter of law, a "*de minimis* workplace trifle." Op. at 5.

Relatedly, the Court unfairly chalked United's masking-and-testing regime up to issues of "personnel management in" the "extraordinary circumstances" of the COVID-19 pandemic. *Id.* at 7. That misses the totality of Plaintiffs' allegations and fails to view those allegations and their inferences "in the light most favorable" to Plaintiffs. *Inclusive Cmtys. Project*, 920 F.3d at 899. The Court's decision did just the opposite—it viewed the allegations in United's favor as simply describing run-of-the-mill COVID policies.[10]

Indeed, class discovery has confirmed why the law requires Plaintiffs to be able to proceed

---

[10] The Court's stance on United's "personnel management" also overlooks that "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment." *EEOC v. Abercrombie & Fitch Stores*, 575 U.S. 768, 775 (2015). Regardless, Plaintiffs have alleged that that these policies were intentionally harassing, punitive, and retaliatory.

with their claims.  Discovery has painted an even grimmer picture of United's hostility toward religious employees and employees with disabilities, demonstrating that United wanted to punish those with masking and testing accommodations by making the policy sound "very serious" and automatically terminating anyone who had more than one testing or masking infraction.  *See* Doc. 239 at 23–26; Doc. 240 at 82–83, 104, 140, 175; Doc. 240-1 at 54, 88.

Finally, the Court's opinion is internally inconsistent regarding Hamilton's and Castillo's failure-to-accommodate claims.  Within one paragraph of stating that these claims are dismissed with prejudice, the Court rightly stated that it would *not* hold that masking and testing is a reasonable accommodation as a matter of law and thus these same exact claims (Hamilton's and Castillo's failure-to-accommodate claims) were *not dismissed* "at [this] stage."  Op. at 9. Reconsideration is necessary for Plaintiffs, and potentially the Fifth Circuit, to understand what standard the Court applied, and whether the Court intended to dismiss these claims.

Letting Hamilton and Castillo proceed with their failure-to-accommodate claims at this stage is thus not turning the Court into a "super-personnel department."  Op. at 7.[11]  It is simply recognizing that *Hamilton* expanded the scope of adverse employment actions and emphasized the fact-specific nature of whether an employer's actions altered the "terms, conditions, and privileges" of an employee's job in a way that was not just "very small."  Plaintiffs' allegations are more than sufficient to proceed on that question.

## IV. The Court Incorrectly Held that Castillo's, Rains's, and Medlin's Claims Were Time Barred.

Finally, the Court erred on the law and facts by dismissing as time barred the claims of

---

[11] Notably, the case the Court cited for this point was decided at *summary judgment*, not following a motion to dismiss.  *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 210, 214 (5th Cir. 2018) (per curiam).

Alyse Medlin, Jarrad Rains, and David Castillo.

1.      With respect to Ms. Medlin, the Court concluded that her failure-to-accommodate claim and wrongful termination claim were based on "discrete discriminatory acts," and thus her "failure-to-accommodate claim is time-barred" because "United's denial of her [accommodation] request [in September 2021] occurred well before the 300-day window of her EEOC charge."  Op. at 23.  The Court should reconsider that holding because it is based on a mistaken application of the law to the facts in this case.  Ms. Medlin filed her EEOC charge well within the 300-day window of her termination, and her termination was inextricably linked to her accommodation request.

While "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," this rule only applies to actions that are "independently discriminatory." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Here, United's failure to accommodate and unlawful termination of Ms. Medlin were not independently discriminatory—her termination flowed directly from the failure to accommodate.

Because Ms. Medlin was on maternity leave when United denied her accommodation request in September 2021, the denial did not trigger any action regarding her employment.  In other words, Ms. Medlin did not need to be accommodated until she returned from work, and thus she assumed her accommodation request could be resolved when she did return.  SAC ¶ 176.  In fact, United *told* its employees to address accommodation requests when returning to work from leave.  Doc. 239 at 27–28.  When United called Ms. Medlin in March 2022 to begin the process of bringing her back to work, Ms. Medlin explained that she needed an accommodation because of her sincerely held religious beliefs.  SAC ¶ 177.  United then scheduled an investigatory meeting where Ms. Medlin again asked for an accommodation to the vaccine mandate.  SAC ¶ 179; Doc.

239 at 27.  United refused and terminated Ms. Medlin on the spot—the day before announcing that accommodated flight attendants could return to work.   SAC ¶ 180; Doc. 239 at 27.  Thus, United denied Ms. Medlin's accommodation request and terminated her on the same day in March 2022, a date well within the 300-day window of Ms. Medlin's EEOC charge, which was filed in November 2022.[12]

The Court overlooked these factual allegations and instead relied on an unpublished Fifth Circuit decision, *Henson v. Bell Helicopter Textron, Inc.*, to hold that a failure to accommodate is *always* a discrete action.  Op. at 22 (citing *Henson*, 128 F. App'x 387, 391 (5th Cir. 2005) (per curiam)).  But *Henson* did not establish such a black-and-white rule.  Rather, *Henson* only noted that the failure to accommodate in that particular case was discrete from the other allegedly discriminatory acts.  *Id.*; *see also Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 707 (S.D. Tex. 2014), *aff'd*, 642 F. App'x 313 (5th Cir. 2016) (*Henson* did not establish "that the continuing violation doctrine could never apply to failure-to-accommodate claims" and finding that the defendant's failure to accommodate was a continuing violation).  Here, where United expressly directed employees to address accommodation requests upon return from leave, the failure to accommodate and the termination were inextricably connected, and there was no basis in law or fact for holding that Ms. Medlin's failure-to-accommodate claim is time barred.

2.      The Court also committed two errors when concluding that Mr. Rains's claims are time barred because: (1) a filing with the Texas Workforce Commission ("TWC") is equivalent to a filing with the EEOC; and (2) United's failure-to-accommodate violation extended each day that Mr. Rains was on unpaid leave.

First, while the Court acknowledged Mr. Rains's request for remedial action with the TWC,

---

[12] Again, if not entirely clear in the SAC, Plaintiffs should be permitted to amend their complaint.

it focused on Mr. Rains not later filing a document with the EEOC including the same language. Op. at 24.  But the TWC filing is sufficient to trigger all administrative review, both state and federal, because the TWC and EEOC have a work-sharing agreement.  TEX. ADMIN. CODE § 819.76; *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies.").  Because Mr. Rains's TWC request asked for remedial action and such a request sets the administrative machinery into motion, his claims are timely.

Second, the Court erred by again incorrectly holding that *Henson* established as a matter of law that failure-to-accommodate claims are discrete actions.  Op. at 24.  As noted above, *Henson* did not establish that rule, and United's failure to accommodate Mr. Rains continued for the entire time Mr. Rains was on unpaid leave.  As the Fifth Circuit already held, United's actions created irreparable harm precisely because Plaintiffs were subjected "to ongoing coercion based on their religious beliefs."  *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *3 (5th Cir. Feb. 17, 2022).  Put differently, United's coercive unpaid-leave scheme was not a discrete act of discrimination but a daily, ongoing discriminatory process.

Mr. Rains was on unpaid leave through March 2022, facing United's coercion every day. SAC ¶ 168.  And January 7, 2022, is 300 days before Mr. Rains's November 3, 2022 EEOC filing. Because Mr. Rains was being harmed each day he was on unpaid leave, and his unpaid leave extended beyond January 7, 2022, his claims are timely.

3.      Finally, the Court mistakenly concluded that Mr. Castillo's charge should be dismissed as untimely because "the record does not show that Castillo filed any materials that can be deemed a charge under *Holowecki*."  Op. at 25.  Once again, the Court committed two significant errors that require reconsideration: (1) it overlooked *Holowecki*'s goal of ensuring that

filed materials express a desire for the administrative machinery to be set into motion; and (2) *Holowecki* is irrelevant in Mr. Castillo's case because a charge was prepared for his case, and United issued a response.

Starting with the relevant law, *Holowecki* established the rule for determining whether an employee has triggered (or should have triggered) the EEOC's administrative machinery and remedial processes. *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).  That rule states that any filing is a "charge" for timeliness purposes if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.*  In adopting this rule, the Supreme Court rejected the employer's suggested rule, which would have "condition[ed] the definition of charge ... upon the EEOC's fulfilling its mandatory duty to notify the charged party and initiate a conciliation process."  552 U.S. at 403.  The Supreme Court held this was too high a bar.  *Id.*

The Court did not properly apply *Holowecki* to Mr. Castillo's EEOC filings.  First, Mr. Castillo has pointed out that the EEOC, based on his filings, prepared a charge for him to sign. Op. at 25.  The EEOC clearly understood Mr. Castillo's pre-charge filings as requesting relief. Yet the Court held that the EEOC's actions were insufficient because "[w]hat constitutes a charge is determined by objective criteria." *Id.* at 25.  In other words, the Court held that objectively, Mr. Castillo's pre-charge filings could not be construed as a request for the EEOC to take action despite the fact that the EEOC itself reached the opposite conclusion.  This holding cannot be reconciled with *Holowecki*, where the Supreme Court said a rule requiring the EEOC to act was too high a bar to determine what was a "charge."   If Mr. Castillo's pre-charge filings meet even that higher standard—in that they triggered the EEOC's fulfilling its mandatory duties—it is incorrect to hold that Mr. Castillo somehow did not meet the lower standard set out in *Holowecki*.

Second, the *Holowecki* inquiry is irrelevant for Mr. Castillo because *Holowecki* concerns whether EEOC filings are a "charge" irrespective of how the EEOC responds. 552 U.S. at 403–04 ("The statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action."). Here, the EEOC took action, and United responded. The EEOC's preparation of a charge is not just objective evidence of what Castillo communicated to the EEOC (for *Holowecki*)—it is a stand-alone reason to believe that the charge requirement was fulfilled. After all, it is well known that "[t]he law does not require the doing of a futile act." *Ohio v. Roberts*, 448 U.S. 56, 74 (1980). If the EEOC already prepared a charge and the employer already submitted a response applicable to the employee, only wooden formalism would require a specific form to be signed asking the EEOC to take action.[13]

## CONCLUSION

In dismissing some of Plaintiffs' claims, the Court applied incorrect legal standards and overlooked critical facts alleged in the SAC. To correct those errors, the Court should reconsider its decision and deny United's motion. Alternatively, the Court should reconsider its decision and allow Plaintiffs to seek leave to amend their complaint to update the factual allegations.

---

[13] *Holowecki* is irrelevant for another reason—it does not matter what Castillo's inquiry said. Federal Regulations, EEOC practice, and Fifth Circuit precedent all allow Castillo to provide a signature to an existing charge prepared by the EEOC to cure a technical defect. *EEOC v. Vantage Energy Servs.*, 954 F.3d 749, 756 (5th Cir. 2020); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (citing 29 C.F.R. § 1601.12(b)). The EEOC was on notice of the claims and the lawsuit—it drafted a Form 5 charge. And so was United. The only thing missing, then, was a signature on an already-prepared formal charge document. The Fifth Circuit allows Mr. Castillo to add his signature to the charge after the fact without forfeiting his claims. Moreover, while dismissal of a charge that is merely unsigned would be a "procedural 'gotcha' issue" in any case, *McClain v. Lufkin Indus.*, 519 F.3d 264, 272 (5th Cir. 2008), it would be the ultimate "gotcha" here, where Mr. Castillo had filed with the EEOC, filed a federal lawsuit, sought a preliminary injunction, and testified at a hearing.

January 16, 2024

Respectfully submitted,

*/s/ Mark R. Paoletta*
Mark R. Paoletta*
D.C. Bar No. 422746
Gene C. Schaerr*
D.C. Bar No. 416368
Brian J. Field*
D.C. Bar No. 985577
Cristina Martinez Squiers
Texas Bar No. 24093764
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
mpaoletta@schaerr-jaffe.com

/s/ John C. Sullivan
John C. Sullivan
Texas Bar No. 24083920
David Austin R. Nimocks
Texas Bar No. 24002695
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

* Admitted *pro hac vice*

*Counsel for Plaintiffs and the Proposed Class*

26

## CERTIFICATE OF SERVICE

On January 16, 2024, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF System).

*/s/ Brian J. Field*
Brian J. Field