**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| DAVID SAMBRANO, *et al.*, individually, and on behalf of all others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-CV-01074-P |
| UNITED AIRLINES, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>RECONSIDERATION OF ORDER PARTIALLY GRANTING MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

LEGAL STANDARDS ............................................................................................. 2

ARGUMENT ............................................................................................................ 3

I.      The Court Did Not Err in the Legal Standards it Applied. ......................... 4

II.     The Court Correctly Dismissed Plaintiffs' Retaliation Claims................... 6

III.    The Court Correctly Ruled That Castillo and Hamilton Did Not Suffer an Adverse Employment Action. ..................................................................... 10

IV.     The Court Correctly Ruled That Castillo's, Medlin's and Rains' Claims Are Time-Barred. ......................................................................................... 14

        A.      Ms. Medlin's Failure-To-Accommodate Claim Is Untimely. ............ 15

        B.      Mr. Castillo's Claims Are Untimely................................................ 17

        C.      Mr. Rains' Claims Are Untimely...................................................... 19

V.      Further Amendments to the Pleadings Would be Futile and Inequitable. ....................... 21

CONCLUSION........................................................................................................ 22

## TABLE OF AUTHORITIES

CASES                                                                           Page

*Allen v. Envirogreen Landscape Prof'ls, Inc.*,
   721 F. App'x 322 (5th Cir. 2017) ............................................................2

*Brandon v. Sage Corp.*,
   808 F.3d 266 (5th Cir. 2015) ................................................................7

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006).............................................................................6, 7

*Cicalese v. Univ. of Tex. Med. Branch*,
   924 F.3d 762 (5th Cir. 2019) ..............................................................11

*Connor v. Harris Cnty.*,
   1992 WL 337420 (S.D. Tex. Sept. 17, 1992) ....................................19

*Cooper v. Dall. Police Ass'n*,
   609 F. App'x 213 (5th Cir. 2015) .......................................................18

*Das v. Am. Airlines, Inc.*,
   2020 WL 364264 (N.D. Tex. Jan. 21, 2020) .....................................17

*Delaware State Coll. v. Ricks*,
   449 U.S. 250 (1980)......................................................................15, 17

*Delhomme v. Caremark Rx Inc.*,
   232 F.R.D. 573 (N.D. Tex. 2005) .........................................................5

*Dixon v. Garland*,
   2024 WL 150509 (N.D. Tex. Jan. 12, 2024) .....................................11

*EEOC v. Vantage Energy Servs., Inc.*,
   954 F.3d 749 (5th Cir. 2020) ..............................................................18

*Fed. Exp. Corp. v. Holowecki*,
   552 U.S. 389 (2008)................................................................... passim

*Godwin Gruber, P.C. v. Deuschle*,
   2003 WL 21283186 (N.D. Tex. May 28, 2003) ...............................2, 3

*Gonzales v. Pan Am. Labs., L.L.C.*,
   2017 WL 4758672 (N.D. Tex. Oct. 20, 2017).....................................20

*Greer v. Fowler*,
  2022 WL 394762 (N.D. Tex. Feb. 8, 2022)........................................................................3, 21

*Groff v. DeJoy*,
  600 U.S. 447 (2023).........................................................................................................11

*Hamilton v. Dall. Cnty.*,
  79 F.4th 494 (5th Cir. 2023) .......................................................................................10, 11

*Harrison v. Brookhaven Sch. Dist.*,
  82 F.4th 427 (5th Cir. 2023) .......................................................................................10, 11

*Henson v. Bell Helicopter Textron, Inc.*,
  128 F. App'x 387 (5th Cir. 2005) .....................................................................................16

*In re Gulf States Long Term Acute Care of Covington, L.L.C.*,
  2014 WL 107870 (E.D. La. Jan. 9, 2014)..........................................................................21

*Jennings v. Towers Watson*,
  11 F.4th 335 (5th Cir. 2021) ...........................................................................................2, 14

*Jurach v. Safety Vision, LLC*,
  72 F. Supp. 3d 698 (S.D. Tex. 2014) ................................................................................16

*Koeppel v. Hartford Accident & Indem. Co.*,
  608 F. Supp. 3d 398 (E.D. La. 2022) .................................................................................3

*LeClerc v. Webb*,
  419 F.3d 405 (5th Cir. 2005) ...........................................................................................2, 3

*Lewis v. New York City Transit Auth.*,
  12 F. Supp. 3d 418 (E.D.N.Y. 2014) ...............................................................................9, 10

*Lindsey v. American Airlines*,
  2023 WL 5807015 (N.D. Tex. Sept. 7, 2023)......................................................................11

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) .............................................................................................5

*McNeill v. Tyson Fresh Meats, Inc.*,
  2023 WL 8532408 (N.D. Tex. Dec. 8, 2023) .............................................................8, 9, 13

*Ojedis v. JetBlue Airways Corp.*,
  2008 WL 961884 (W.D. Tex. Apr. 9, 2008).......................................................................20

*Residents Against Flooding v. Reinvestment Zone No. Seventeen*,
260 F. Supp. 3d 738 (S.D. Tex. 2017) ........................................................................5

*Sambrano v. United Airlines, Inc.*,
2022 WL 486610 (5th Cir. Feb. 17, 2022) .............................................................13

*Schiller v. Physicians Res. Grp. Inc.*,
342 F.3d 563 (5th Cir. 2003) .....................................................................................3

*Simmons v. Sabine River Auth. La.*,
732 F.3d 469 (5th Cir. 2013) ...............................................................................3, 21

*Simotas v. Kelsey-Seybold*,
211 F. App'x 273 (5th Cir. 2006) ...........................................................................15

*Tagore v. United States*,
735 F.3d 324 (5th Cir. 2013) ...................................................................................14

*Taubenfeld v. Hotels.com*,
385 F. Supp. 2d 587 (N.D. Tex. 2004) ....................................................................21

*Univ. of Tex. at El Paso v. Isaac*,
568 S.W.3d 175 (Tex. App. 2018)...........................................................................20

*Vetcher v. Sessions*,
2018 WL 4006813 (N.D. Tex. Aug. 7, 2018)............................................................3

**STATUTES**

42 U.S.C. § 2000e-3............................................................................................................9

42 U.S.C. § 2000e-5....................................................................................................14, 18

42 U.S.C. § 2000e(j) ..........................................................................................................9

42 U.S.C. § 12112(b) .........................................................................................................9

42 U.S.C. § 12117(a) ........................................................................................................14

42 U.S.C. § 12203(a) .....................................................................................................9, 14

Tex. Labor Code § 21.201 ................................................................................................19

## INTRODUCTION

Plaintiffs' motion for reconsideration seeks an almost total do-over of the Court's decision on United's partial motion to dismiss. Their motion does not allege a discrete error on some particular point. Instead, according to the Plaintiffs, the Court did not get *anything* right – it supposedly "overlooked" facts, misread the allegations in the Second Amended Complaint, and misapplied the law on virtually every issue. Indeed, the Plaintiffs even accuse the Court of misunderstanding the elementary principles governing the standard of review under Rule 12(b)(6). They ask the Court to perform a complete 180, or failing that, to allow them to start over with yet another amended complaint.

Nothing in their motion provides any valid basis for reconsideration. As explained in detail below, Plaintiffs did not and cannot show the Court made any legal or factual error that undermines (1) the dismissal of their ill-conceived retaliation claims; (2) the dismissal of failure-to-accommodate claims by Plaintiffs who were never placed on unpaid leave and did not suffer an adverse action; or (3) the dismissal of the time-barred Title VII claims.

The Court should be particularly wary of granting reconsideration given the timing of Plaintiffs' request. Because they waited until the very last moment to seek reconsideration, Plaintiffs' proposed relief would, in effect, require redoing the class certification briefing, thereby delaying these proceedings yet again. Likewise, Plaintiffs' alternative proposal to file a *third* amended complaint would not only be futile, but would be prejudicial to United given how far along we are in this case.

For the better part of a year, Plaintiffs complained about how long this litigation has dragged on. But apparently Plaintiffs are only interested in expeditious resolution if they prevail. This Court should not condone dilatory and wasteful relitigation of its well-reasoned decision, especially at this point in the case.

1

## BACKGROUND

Plaintiffs have filed three complaints in this lawsuit, most recently the February 2023 Second Amended Complaint ("SAC").  ECF Nos. 1, 67, 156.  In its December 18, 2023 decision on United's motion to partially dismiss the SAC ("MTD Order"), the Court "agree[d] with United that (1) Hamilton and Castillo have not suffered an adverse employment action, (2) United did not retaliate against Plaintiffs for seeking an accommodation, (3) Medlin, Rains, and Castillo's claims are time-barred in full or in part, and (4) Jonas's Title VII claim is beyond the scope of her EEOC charge."  MTD Order at 3.  The Court denied the remainder of the motion to dismiss.  Plaintiffs filed their motion for class certification on January 12, 2024, based on just the remaining Plaintiffs' claims, and without mentioning the possibility of reconsideration.  But then, on January 16, the final day to file for reconsideration of the Court's December 18 order, Plaintiffs asked this Court to reverse itself on the first three rulings above (but do not seek reconsideration of the fourth ruling).  ECF Nos. 241, 242 at 4–5.

## LEGAL STANDARDS

***Reconsideration.***  "A party may not use a Rule 59(e) motion to relitigate issues that were resolved to the movant's dissatisfaction."  *Godwin Gruber, P.C. v. Deuschle*, 2003 WL 21283186, at *1 (N.D. Tex. May 28, 2003); *see Jennings v. Towers Watson*, 11 F.4th 335, 345 (5th Cir. 2021) (affirming denial of 59(e) motion because it "presented neither an error that undermined the correctness of the judgment nor newly discovered evidence nor an intervening change in law"); *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005) ("A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments.").  Instead, a motion for reconsideration "is an extraordinary remedy that should be used sparingly."  *Allen v. Envirogreen Landscape Prof'ls, Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017).  It should be denied unless the

movant "clearly establish[es] either a manifest error of law" or "present[s] newly discovered evidence." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).[1]

 ***Leave to Amend.*** Rule 15 provides for amendment as of right, at the latest, twenty-one days after the defendant files a motion to dismiss. *See* FED. R. CIV. P. 15(a). After that, Rule 15(a)(2) requires consent or the court's leave, and "leave to amend is 'by no means automatic.'" *Greer v. Fowler*, 2022 WL 394762, at *7 (N.D. Tex. Feb. 8, 2022) (Pittman, J.). The Court may exercise its discretion to deny leave "for undue delay, [or] bad faith," as well as "undue prejudice to the opposing party, or futility of a proposed amendment." *Id.* (quoting *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013)). A complaint is futile if it would still be "subject to dismissal" with the amendment. *Simmons*, 732 F.3d at 478.

## ARGUMENT

 Plaintiffs' Motion (ECF No. 242 ("Mot.")) seeks to repackage arguments this Court properly rejected, to raise arguments they could have raised but did not – either in their opposition brief (ECF No. 213) or their supplemental brief (ECF No. 227) – and does not identify any change in controlling law. Because these are not proper uses of a reconsideration motion, the Court may deny Plaintiffs' effort to revive the dismissed claims and parties on this basis alone. *LeClerc*, 419 F.3d at 412 n.13; *Deuschle*, 2003 WL 21283186, at *1. As described below, Plaintiffs' arguments are also unavailing on the merits.

---

[1]  Courts follow a similar approach when a party seeks reconsideration under Rule 54(b). *See Vetcher v. Sessions*, 2018 WL 4006813, at *1 (N.D. Tex. Aug. 7, 2018) (explaining that "[i]n determining a motion under Rule 54(b), courts in this circuit have looked to the standards of Rule 59(e)"); *see also Koeppel v. Hartford Accident & Indem. Co.*, 608 F. Supp. 398, 402–03 (E.D. La. 2022) (although reconsideration under Rule 54(b) is "less stringent" than under Rule 59(e), regardless of the rule cited, a "motion to reconsider is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before").

I.     **The Court Did Not Err in the Legal Standards it Applied.**

Plaintiffs begin by claiming that the Court confused the motion-to-dismiss standard with the merits standard because it required Plaintiffs to prove or "show" the elements of their claims rather than just plausibly allege them.  Mot. at 5.  In making that argument, they fixate on a few cherry-picked words and phrases in the Court's decision.  *Id.*

A fair reading of this Court's entire decision clearly demonstrates otherwise.  For example, the heading of the section in the decision addressing the adverse-action element explains that "Castillo and Hamilton *do not allege* more than a *de minimis* adverse employment action."  MTD Order at 4 (emphasis added).  The Court goes on to analyze at length why the various things that "Hamilton and Castillo *allege*" did not exceed "the *de minimis* standard" for adverse action that the Fifth Circuit has adopted.  *Id.* at 6–7 (emphasis added).  Likewise, as to retaliation, this Court relied on a fact that was "undisputed" in the Second Amended Complaint – *i.e.* that unvaccinated employees who did not seek an accommodation were terminated, MTD Order 15 (citing ECF No. 156 at 2) – to support its purely legal conclusion that "[n]o *reasonable* worker" would have been deterred from seeking an accommodation.  *Id.* (emphasis added).  As to timeliness, the Court's dismissal rested on the interpretation and application of *Holowecki* and the other controlling legal standards.  *Id.* at 17–26.

Plaintiffs nevertheless complain that "the Court's decision did not address the plausibility standard even once when discussing the contents of the SAC."  Mot. at 5.  But this Court clearly acknowledged and articulated "the plausibility standard" that governed its review.  MTD Order at 2.  Likewise, it refused to dismiss the ADA failure-to-accommodate claims because it concluded that Jonas and Rains "ha[d] sufficiently pleaded disabilities within the meaning of the ADA—at least at the motion to dismiss stage."  *Id.* at 12.

4

The Court's verbiage makes clear that it was not "ignoring" the plausibility standard with respect to the claims it dismissed.  Rather, it recognized that the problem with Plaintiffs' allegations was legal sufficiency, *i.e.*, whether there is some insuperable legal barrier to relief.  *See, e.g.*, MTD Order at 2, 6–7, 15; *see also, e.g.*, *Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 260 F. Supp. 3d 738, 756 (S.D. Tex. 2017) (explaining that "[d]ismissal is appropriate when the plaintiff [either (i)] fails to allege enough facts to state a claim to relief that is plausible on its face" or (ii) where a complaint is based on a "meritless legal theory or a violation of a legal interest that does not exist").

On a related note, it is somewhat ironic that – in the midst of complaining about the Court's articulation of the standard of review – Plaintiffs themselves ignore the Rule 12(b)(6) standards, pointing to all manner of new factual material from outside of the complaint.  *See, e.g.*, Mot. at 2–3, 9, 13 n.8, 20.  In doing so, Plaintiffs are selectively quoting or otherwise mischaracterizing snippets of the factual record on a number of hotly contested propositions.[2]  But even if Plaintiffs' characterizations of these additional facts were accurate, "[i]n ruling on a Rule 12(b)(6), 'courts must limit their inquiry to the facts stated in the complaint.'"  *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 577 (N.D. Tex. 2005) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  And, as explained below, even assuming the truth of everything Plaintiffs want to add, this Court's order should still stand.

---

[2]      To provide just one example, Plaintiffs assert that United made the masking policy "very serious" to punish employees.  Mot. 20.  But that is flatly contradicted by testimony that United emphasized compliance due to safety concerns and TSA requirements.  App. 6.  At the same time, Plaintiffs ignore where discovery undermined their allegations.  For example, Mr. Rains testified that the SAC allegations about his medical condition – which the Court noted in its MTD Order (at 11–12) – are incorrect.  Mr. Rains does not, in fact, assert any "allergic reaction as a basis for [his] medical RAP" or ADA claims.  App. 10–12.  United will be addressing Plaintiffs' factual mischaracterizations in more detail in its forthcoming Opposition to Plaintiffs' Motion for Class Certification.

## II.     The Court Correctly Dismissed Plaintiffs' Retaliation Claims.

This Court held that Plaintiffs' retaliation claims "attempt to fit a square peg into a round hole," by "cry[ing] retaliation for United's supposed failure to reasonably accommodate."  MTD Order 17.  As to the facts, the Court emphasized that it was "undisputed that unvaccinated employees who did not seek an accommodation were terminated for failing to comply with United's vaccine mandate."  *Id.* at 15.  As to the law, the Court concluded that United's "unpaid leave policy" was not "an adverse employment action" for purposes of Plaintiffs' retaliation claim, because "[n]o reasonable worker would be deterred by United's unpaid leave policy from seeking an accommodation if they knew the alternative was termination."  *Id.*  Plaintiffs' Motion does not (and cannot) dispute the factual premise, and its objections to the legal conclusion mischaracterize this Court's decision and antiretaliation law.

Plaintiffs principally assert that "[t]he Court did not apply th[e] test" that, for purposes of retaliation claims, an "adverse employment action" is one that "'well might have dissuaded a reasonable worker' from engaging in the protected conduct."  Mot. at 7–8 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66–68 (2006)).  That is plainly false.  This Court expressly articulated and applied that very test:  "In the retaliation context, an adverse employment action is one that might dissuade a reasonable worker from engaging in a protected activity[.] . . . Thus, the question is whether United's indefinite unpaid leave policy would have dissuaded a reasonable worker from seeking an accommodation, given that failure [to] get vaccinated or seek an accommodation would result in termination."  MTD Order at 14–15.  Plaintiffs' objection is that this Court paraphrased that standard as whether they were "'treated materially worse'" because they requested an accommodation.  Mot. at 8.  But as they acknowledge on the previous page, *Burlington Northern* itself said it was adopting a "'materially adverse'" standard, *id.* at 7 (quoting 548 U.S. at 68), and "worse" is just a synonym for "adverse."

6

Plaintiffs additionally insist that "the Supreme Court and the Fifth Circuit have already concluded that the threat of unpaid leave is itself sufficient to state a claim of retaliation." Mot. at 9. Again, not true. Indeed, Plaintiffs did not make this argument when opposing dismissal, *see* ECF No. 213 at 13–14, and for good reason: Neither of the cases they cite, *see* Mot. at 9, holds that unpaid leave satisfies the "materially adverse" retaliation standard when it is *offered as an accommodation from termination* for non-compliance with company policy.

*Burlington Northern* merely held that a "suspension without pay" imposed as a penalty for "filing a discrimination complaint" about a hostile work environment "could well act as a deterrent," precisely because the temporary loss of pay made the employee much worse off than if she had not filed the complaint and thus had *retained* her job and pay. 548 U.S. at 72–73. Moreover, in *Brandon v. Sage Corp.*, 808 F.3d 266 (5th Cir. 2015), while the court "d[id] *not reject the possibility*" that a realistic, drastic pay cut threat might deter someone from supporting a discrimination charge *in certain circumstances*," it held that "no reasonable jury would find that to be the case [t]here," because the threat was made "by someone outside [the employee's] chain of command and who she knew had no final decision-making authority." *Id.* at 271 (emphasis added). Plaintiffs' retaliation claims are *far weaker* than the one rejected in *Brandon*: rather than threatening to penalize Plaintiffs for protected activity, United treated Plaintiffs better, not worse, because they requested accommodations. In short, as this Court correctly held, even if some employees viewed the unpaid-leave accommodation as "unreasonable," both law and logic compel the conclusion that "reasonable employees would (and did) seek [that] accommodation to avoid termination." MTD Order at 15–16.[3]

---

[3]     As this Court recognized, the same rationale applies to Plaintiffs' ancillary objections that the "accommodation process" was "unreasonable." *See* Mot. at 8–9. Plaintiffs identify no way in which they were *treated worse* because of the accommodation process than the termination that

Lacking any argument under controlling precedent, Plaintiffs emphasize a non-binding decision by another district court. *See* Mot. at 1, 7, 9–10 (citing *McNeill v. Tyson Fresh Meats, Inc.*, 2023 WL 8532408 (N.D. Tex. Dec. 8, 2023)).  But *McNeill* is unpersuasive because it failed to grapple with the critical issue that this Court identified.  The *McNeill* decision's discussion of the "materially adverse" standard never explained how an unpaid-leave accommodation would dissuade a reasonable employee from seeking an accommodation when the alternative was termination. *See id.* at *5–6.  To the contrary, the *McNeill* decision acknowledged that "[t]he most viable option for a religious objector . . . was to accept a complete reduction in pay and *hope* [the employer] rescinded the policy," *id.* at *6, which confirms that reasonable employees seeking to avoid termination would *not* be dissuaded from requesting that accommodation, however unreasonable they may deem it.  Simply put, the *McNeill* court conflated the question of whether unpaid leave "is not a reasonable accommodation" (the standard for a failure-to-accommodate claim) with the question of whether it is a materially "adverse employment action" compared to termination (the standard for a retaliation claim based on the allegedly protected activity of requesting an accommodation from termination). *Id.*[4]

---

they would have suffered if they had not requested an accommodation at all.  So while some employees may have been dissatisfied with the accommodation process and result, as a matter of law, "[n]o reasonable worker would be deterred . . . from seeking accommodation" in these circumstances.  MTD Order 15.

[4]     *McNeill* is also factually distinguishable.  There, the accommodation provided was "up to *one-year* unpaid leave until either the policy was rescinded, the employee complied, or the leave period expired — *culminating in termination*."  2023 WL 8532408, at *6 (emphasis added).  Accordingly, the *McNeill* court viewed that accommodation as merely "delaying eventual termination." *Id.*  Whether or not that characterization was appropriate there, it certainly does not apply here.  Rather than a delayed termination, United provided what Plaintiffs characterize as "indefinite" unpaid leave to accommodated employees until the pandemic subsided, *see* MTD Order 15; SAC ¶ 77.  And, as it turned out, United employees returned to work after only about four months, SAC ¶ 43 n.1.  Plaintiffs also ignore the further distinction that all United employees had the option to remain employed in alternative positions.

Relatedly, Plaintiffs try to relitigate their argument that they can "maintain a retaliation claim that relies on facts that also give rise to a failure-to-accommodate claim." Mot. at 10. But they have no persuasive response to this Court's explanation that treating the alleged unreasonableness of an accommodation as itself retaliatory "would erode the difference between a failure-to-accommodate claim and a retaliation claim." MTD Order at 16. Plaintiffs contend that doing so would not "conflict" with the statutory scheme, Mot. at 12, but that is clearly wrong: their position would eviscerate the undue-hardship defense, which applies to failure-to-accommodate claims but not retaliation claims. *Compare* 42 U.S.C. § 2000e(j), *and id.* § 12112(b)(5), *with id.* § 2000e-3(a), *and id.* § 12203(a). Under Plaintiffs' theory, even if providing a reasonable accommodation would impose an undue hardship on an employer—thus defeating a failure-to-accommodate claim—an employee could simply allege that the employer's refusal to provide a desired accommodation was prohibited retaliation, on the rationale that the company's announced decision to deny the accommodation, and the resulting threat of discipline for non-compliance with the company policy, "coerce[d] employees to get [in compliance] . . . rather than seek an accommodation." Mot. at 8–9. As this Court recognized, "any arguably unreasonable accommodation could be said to 'dissuade' workers from seeking it," but that does not establish adverse employment action for purposes of a retaliation claim. MTD Order at 16.

Plaintiffs still cannot cite any authority in support of their flawed theory. They mostly invoke the same inapposite cases they unsuccessfully cited when opposing dismissal. *Compare* Mot. at 11–12, *and* ECF No. 213 at 12, *with* ECF No. 215 at 6 n.3. And the only new case they cite other than *McNeill* – namely, *Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418 (E.D.N.Y. 2014) – says the exact opposite of what they assert. They say the *Lewis* court "concluded that the same reasons [a] transfer could not be deemed reasonable also rendered the

transfer materially adverse for the retaliation claim." Mot. at 11. But the transfer in *Lewis* was not an accommodation at all. As that court explained, "secular bus drivers who violated the Transit Authority's headgear policy – such as drivers who wore FDNY hats in solidarity with the fire department after 9/11 – were not disciplined." 12 F. Supp. 3d at 451. Thus, transferring *only* a bus driver who objected to the policy on *religious* grounds was not accommodating her by treating her *better*, but rather discriminating against her by treating her *worse*. *See id.* Here, by contrast, "it is undisputed that unvaccinated employees who did not seek an accommodation were terminated for failing to comply with United's vaccine mandate." MTD Order at 15.

In sum, Plaintiffs still cannot "fit a square peg into a round hole." *Id.* at 17. They have provided this Court with no reason to reconsider its well-reasoned refusal to let them "cry retaliation for United's supposed failure to reasonably accommodate." *Id.*

## III.   The Court Correctly Ruled That Castillo and Hamilton Did Not Suffer an Adverse Employment Action.

Based on a careful analysis of the *Hamilton* and *Harrison* precedents, this Court recognized that the Fifth Circuit has adopted a *de minimis* or materiality standard for evaluating an actionable adverse employment action. MTD Order at 4–6. That standard ensures that district courts do not "become 'super-personnel departments'" and avoids expanding Title VII "into the sphere of [ ] workplace trifles." *Id.* at 7. Then, "[h]aving clarified the applicable standard," (*id.* at 6), the Court held that neither Ms. Hamilton's and Mr. Castillo's objections to (i) their experiences with United's masking and testing protocol, nor (ii) to an accommodation they never received (*i.e.*, unpaid leave) "clear[ed] the *de minimis* threshold" (*id.* at 7).[5] Each of Plaintiffs' arguments for revisiting these rulings fails.

---

[5]      As described below, *infra* at IV.B., the Court also correctly held that Mr. Castillo's claims fail for the independent reason that they are time barred.

*First*, Plaintiffs argue that the Court required Plaintiffs to plead facts sufficient to prove a *prima facie* case but that need not be alleged to survive a 12(b)(6) motion.  Mot. at 15–16.  As the very case they cite explains, however, Plaintiffs "must plead sufficient facts on all of the ultimate elements of [the] claim."  *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation and alteration omitted).  And Fifth Circuit law, including *Cicalese*, is clear that one of those "ultimate elements a [Title VII] plaintiff must plead" is "an adverse employment action." *Id.* at 767.  Indeed, both *Hamilton* and *Harrison* arose in the context of a motion challenging the pleadings, and both adhered to the settled view that a failure to allege an actionable adverse action can be raised in that context.  *See Hamilton v. Dall. Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023); *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 432 (5th Cir. 2023).  Therefore, the Court properly asked whether Ms. Hamilton and Mr. Castillo had sufficiently alleged this element.

*Second*, Plaintiffs suggest that this Court misunderstood the post-*Hamilton* adverse action requirement.  Mot. at 15–16.  But as this Court has now explained in multiple cases, "*Hamilton* brought the Fifth Circuit in line with Title VII's text and the approach taken by other circuits" and that "this Court will not expand the *Hamilton* standard into the sphere of . . . workplace trifles, absent clear direction from the Fifth Circuit."  MTD Order at 7.[6]  That is an eminently sensible reading, which is further supported by *Harrison*'s reasoning that the "more than *de minimis*" standard performs a similar function to the "materiality" rule and prevents transforming "Title VII into a general civility code for the American workplace."  82 F.4th at 431.[7]

---

[6]     *See also, e.g.*, *Dixon v. Garland*, 2024 WL 150509, at *4–5 (N.D. Tex. Jan. 12, 2024) (addressing the post-*Hamilton* standard); *Lindsey v. American Airlines*, 2023 WL 5807015, at *2 (N.D. Tex. Sept. 7, 2023) (same).

[7]     There is no basis to replace this understanding of the materiality/*de minimis* standard with a dictionary definition of "very small or trifling" from *Groff v. DeJoy*, 600 U.S. 447 (2023) (Mot. at 4, 16–17), which was addressing a different issue.  Indeed, *Groff* cautioned against "read[ing] [words] in isolation."  *Id.* at 465.

*Third*, Plaintiffs are also incorrect that the Court "overlooked" certain allegations in applying the post-*Hamilton* standard. Mot. at 18–19. Plaintiffs point to allegations about lack of "training and oxygenation breaks" and to Mr. Castillo's alleged inability "to communicate with colleagues." *Id*. But those allegations appear on the same pages of the complaint that the Court cited in describing Plaintiffs' allegations, *see* MTD Order at 6–7 (citing ECF No. 156 at 27, 29). Although this Court did not quote each one, that is presumably because they are all just as trivial as the allegations that the Court rejected as "not clear[ing] the *de minimis* threshold," such as "making it hard . . . to breathe" and being "needlessly banished to eat outdoors." *Id*.

Plaintiffs also emphasize their allegations about the "context," which they describe as an accommodations process designed to "harass[]" and "coerc[e]" employees. Mot. at 19 (*i.e.*, alleging that United "subjected religious employees to harassing questions about their faith . . . then announced . . . that all accommodated employees would be put on indefinite, unpaid leave"). Those allegations are doubly immaterial. First, they are irrelevant to Ms. Hamilton and Mr. Castillo, as neither one alleges being among those who were asked any offending questions, SAC ¶¶ 106–120, 121–133, and because, as the SAC admits, both of their exemption requests were approved, *id.* ¶¶ 17, 127, and neither of them experienced unpaid leave, *id.* ¶ 142. Second, they are irrelevant more generally because Plaintiffs' SAC does not include a hostile-work-environment claim. Allegations about the "context" of the accommodation process have no bearing on their failure-to-accommodate claim and whether the accommodations they actually received can be construed as adverse action.[8]

---

[8]   Plaintiffs try to augment their "contextual" allegations by referring to the discovery record (Mot. at 20), referring to emails about whether there should or could be "automatic[] terminat[ion]" for violating the masking-and-testing protocol. Even if it were proper to consider these new allegations on a motion to dismiss, *see supra* at 5, Ms. Hamilton and Mr. Castillo never allege that they faced any threat of termination for non-compliance.

*Fourth*, Plaintiffs "attempt[] to relitigate . . . [the] argument[]" (ECF No. 115 at 1) about whether the unrealized "threat" of unpaid leave constitutes an adverse action. *Compare* Mot. at 17–18, *with* MTD Order at 8 (explaining that "Hamilton and Castillo were not fired, their compensation was not changed, and United's unpaid leave policy did not affect these Plaintiffs' terms, conditions, or privileges of employment"). Here again, Plaintiffs' only argument is that this Court's conclusion conflicts with the *McNeill* decision. Mot. at 17–18.

That is not so. *McNeill* did not involve an employer who tentatively announced a policy that it never actually implemented vis-à-vis the employee complaining about the policy. Rather, in *McNeill*, the employer subjected the employee to an immediate choice: termination, unpaid leave followed by termination, or vaccination. 2023 WL 8532408, at *6. The employee responded to these options by choosing to get vaccinated. *Id.* at *2. Here, by contrast, United tentatively announced that the initial accommodation for non-customer facing employees would be temporary unpaid leave, while making clear that it was working on developing alternative accommodations. Then, before Ms. Hamilton and Mr. Castillo would have been placed on unpaid leave, they – along with all other non-customer facing employees – were "allowed to work with mask-wearing and testing protocols." SAC ¶ 9; SAC p. 21 n.2; ¶ 142. *See also Sambrano v. United Airlines, Inc.*, 2022 WL 486610, at *2 (5th Cir. Feb. 17, 2022) (distinguishing between flight crew facing unpaid leave and Ms. Hamilton and Mr. Castillo who "continue[d] to work and be paid without receiving a COVID-19 vaccine"). As this Court recognized, if an employer tentatively announces a policy but then reconsiders or offers something different, the employees have not actually suffered any adverse employment action. MTD Order at 8.[9]

---

[9]     That is especially so here, given that, unlike the plaintiff in *McNeill*, neither Ms. Hamilton nor Mr. Castillo ever chose to get vaccinated. Even if they were "coerced," that is "exogenous" harm and thus not remediable under Title VII. *Sambrano*, 2022 WL 486610 at *7.

*Finally*, Plaintiffs argue that the Court's opinion "is internally inconsistent regarding Hamilton's and Castillo's failure-to-accommodate claims." Mot. at 20. Again, this is a pedantic quibble; the opinion needs no clarification. It is obvious that reasonableness and adverse action are separate elements of a failure-to-accommodate claim. *See, e.g.*, *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013). This Court held that whether masking and testing is a "reasonable" accommodation should not be resolved at the motion-to-dismiss stage, MTD Order at 9, but also found that Plaintiffs' objections to masking and testing did not satisfy the different legal standard for the adverse-action element. *Id.* at 6–8.[10] In any event, it is well-settled that a motion to reconsider must address "manifest errors," not mere alleged inconsistencies in the wording of a court's decision. *Jennings*, 11 F.4th at 345.

## IV. The Court Correctly Ruled That Castillo's, Medlin's and Rains' Claims Are Time-Barred.

In ruling on timeliness, the Court correctly described the applicable standards: A charge is timely if it is filed within 300 days of the employee's notice of the complained-of employment practice. MTD Order at 17; *see* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). A filing must both satisfy the regulatory requirements of a charge *and* "it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). The Court applied these standards to conclude that Medlin's, Castillo's and Rains' reasonable accommodation claims are untimely. MTD Order at 17–26. In arguing to the contrary, Plaintiffs misconstrue controlling precedent and focus on legally irrelevant facts.

---

[10]   If the Court did revive Ms. Hamilton's or Mr. Castillo's claims on the employee-specific factual grounds that Plaintiffs urge, it would only further cement the conclusion that there are individualized issues that preclude certification as a class action. *See* Mot. at 17 (arguing that whether adverse action exists "depends on the specific allegations").

**A.    Ms. Medlin's Failure-To-Accommodate Claim Is Untimely.**

Plaintiffs tacitly concede that the Court was correct when it found that "United's denial of [Medlin's] accommodation request in September 2021 occurred well before the 300-day window of her EEOC charge."  Mot. at 21 (alterations omitted) (quoting MTD Order at 23).  Nevertheless, Plaintiffs argue the Court misapplied the law to these facts because Ms. Medlin's March 2022 "termination was inextricably linked" to her earlier accommodation request.  Mot. at 21.  Plaintiffs raised this argument in their opposition brief (ECF No. 213 at 19 n.9; ECF No. 227 at 10 n.5), and the Court expressly addressed and rejected it.  MTD Order at 22–23 ("United's denial of Medlin's accommodation request was not a continuing violation, it was a discrete act.").

Plaintiffs also try two variations on their previous arguments, each of which is foreclosed by precedent.  *First*, Plaintiffs argue that the statute of limitations for Ms. Medlin's claim did not begin to run until her employment was impacted by the denial decision (*i.e.* when she was terminated).  Mot. at 21.  But under Supreme Court precedent, the charge-filing period begins when an employee receives notice that the employer has made the challenged decision, not when the effects of that decision are felt.  *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256–59 (1980) (Title VII claim accrued "at the time the tenure decision was made and communicated," even though "the *effects* of the denial of tenure–the eventual loss of a teaching position–did not occur until later"); *accord Simotas v. Kelsey-Seybold*, 211 F. App'x 273, 275 (5th Cir. 2006) ("The relevant date for determining the beginning date for the limitations period is the day the employee learns that the challenged decision has been made, not when she feels the effects of that decision.").  Therefore, this Court was correct when it found that the September 2021 denial of Ms. Medlin's accommodation request triggered the 300-day charge deadline, "[e]ven though Medlin did not require an accommodation until she returned to work."  MTD Order at 23.

15

*Second*, Plaintiffs claim the Court erred in relying on *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005), for its conclusion that "an employer's 'failure to provide accommodations' is a discrete act that does not qualify under the continuing violation doctrine," MTD Order at 22.  Mot. at 22.  As an initial matter, Plaintiffs seek to distinguish *Henson* by noting that *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698 (S.D. Tex. 2014), discussed *Henson* and observed that it is possible for the continuing violation doctrine to apply to a failure-to-accommodate lawsuit.  What Plaintiffs leave out, however, is that the *Jurach* court agreed that "denials of accommodation requests [are] discrete events rather than continuing violations."  *Id.* at 707.  In *Jurach* – unlike in Ms. Medlin's case or in *Henson* – none of the requests for an accommodation "were explicitly denied in the sort of discrete and salient event that should put an employee on notice that a cause of action has accrued."  *Id.* (citation omitted).  *See also* SAC ¶ 176 (admitting Ms. Medlin knew of the denial while on maternity leave).  Instead, the defendant in *Jurach* had granted the accommodation requests.  Thus, *Jurach* stands for the propositions (fully consistent with dismissing Ms. Medlin's claims) that an employer's prior *grant* of an employee's accommodation requests does *not* begin the charge-filing period but an employer's subsequent "explicit denial" of a request *does* start the clock.  *Id.* at 707.

Plaintiffs further argue that the rule articulated in *Henson* does not apply here because United supposedly "directed employees to address accommodation requests upon return from leave."  Mot. at 22.[11]  Even if that were true, it would be a legally immaterial distinction.  A discrete act does not become a continuing violation merely because the employer provides an opportunity for internal reconsideration.  To the contrary, the Supreme Court has held "that the pendency of a

---

[11]    This factual assertion finds no support in Plaintiffs' complaint, which only alleges that Ms. Medlin "assumed" she could address the denial of her accommodation when she returned from maternity leave.  SAC ¶ 176.

grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261. In other words, the fact that an employee can or did challenge the complained-of decision does not impact the statute of limitations for filing a charge. This is because "[m]ere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws." *Id.* at 261 n.15. Therefore, "an employer standing by a prior denial after an employee requests reconsideration neither constitutes a discrete act nor extends the filing period." *Das v. Am. Airlines, Inc.*, 2020 WL 364264, at *3 (N.D. Tex. Jan. 21, 2020). Accordingly, Plaintiffs have identified no plausible error in the Court's decision dismissing Ms. Medlin's failure-to-accommodate claim as untimely.

### B.  Mr. Castillo's Claims Are Untimely.

Plaintiffs' Motion with respect to Mr. Castillo's untimely charge largely relitigates points from their supplemental brief. *See* MTD Order at 25–26. Plaintiffs' various repackaged efforts to overcome the *Holowecki* standard (Mot. at 23–25) fall short.

*First*, Plaintiffs argue that the Court "overlooked *Holowecki*'s goal of ensuring that filed materials express a desire for the administrative machinery to be set into motion." Mot. at 23–24. To the contrary, this Court correctly articulated the Supreme Court's goal: to "put in place a 'mechanism to separate information requests from enforcement requests.'" MTD Order at 21 (quoting *Holowecki*, 552 U.S. at 401). A key aspect of that test from *Holowecki* is that the EEOC filing "must be reasonably construed as a request for the agency to take remedial action." *Id. See also* ECF No. 220; ECF No. 225 at 2–6. Thus, far from "overlook[ing]" anything, the Court simply found that the complaint and judicially noticeable materials did not satisfy Mr. Castillo's obligation to show that his pre-charge filings must be reasonably construed as a request for action from the EEOC. MTD Order at 24–26.

*Second*, Plaintiffs argue that because the EEOC "prepared a charge for [Castillo] to sign," this establishes that Mr. Castillo's pre-charge filings met the *Holowecki* test.  Mot. at 24.  The Court already correctly rejected this argument, citing controlling Fifth Circuit precedent.  MTD Order at 25 ("[T]he EEOC's characterization of [a pre-charge filing] is not dispositive.  What constitutes a charge is determined by objective criteria."  *Id.* (quoting *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020))).  Plaintiffs' Motion does not and cannot explain how this Court erred in following binding precedent that squarely disposes of their argument.

*Third*, Plaintiffs argue that the *Holowecki* standard does not apply and "it does not matter what Castillo's inquiry said," because the EEOC regarded Mr. Castillo's pre-charge filings as a "charge."  Mot. at 25 n.13.  But this merely repackages Plaintiffs' incorrect argument that the *Holowecki* test is not objective, and that the Court should defer to the EEOC's interpretation of an employee's pre-charge filings when deciding if Title VII's jurisdictional prerequisites are met.  As this Court recognized, Plaintiffs' position is contrary to law.  MTD Order at 25; *see also Cooper v. Dall. Police Ass'n*, 609 F. App'x 213, 214 (5th Cir. 2015) (courts should "not defer to the EEOC" on whether plaintiff complied with Title VII's pre-suit requirements).

In any event, the EEOC did *not* treat Mr. Castillo's pre-charge submissions as a charge.  If the EEOC had done so, it would have provided notice to United as required by Title VII, 42 U.S.C. § 2000e-5(e)(1), and its own regulations, 29 C.F.R. § 1601.14.  The EEOC did not provide such notice until after it received Mr. Castillo's actual charge, many months later.  *See* ECF No. 226, Def.'s App. at 045 (Notice of Castillo Charge uploaded 9/20/2022).  There is also no indication that the EEOC investigated Mr. Castillo's pre-charge filing, issued a determination about his allegations, or attempted conciliation, all of which are acts that Title VII requires the agency to perform when it receives a charge.  *See* 42 U.S.C. § 2000e-5(b).

18

### C.      Mr. Rains' Claims Are Untimely.

The Court also dismissed Mr. Rains' claims as untimely.  MTD Order at 23–24.  Plaintiffs raise two points in challenging that conclusion, neither of which has merit.

*First*, Plaintiffs assert that the September 2021 form Mr. Rains sent to the Texas Workforce Commission ("TWC") was "sufficient to trigger all administrative review, both state and federal," in light of the TWC and EEOC's worksharing agreement.  Mot. at 23.  However, under *Holowecki*, not only must there be a request for remedial action, but the filing at issue must also satisfy the applicable regulatory requirements for a charge.  *Holowecki*, 552 U.S. at 402.  Here, the Court properly concluded that Mr. Rains' unsuccessful filing with the TWC did not "satisfy the requirements of a pre-charge filing with the EEOC."  MTD Order at 24.[12]  Among other things, because it was unverified (ECF 228-4), Mr. Rains' submission does not constitute a charge that the TWC would dual file under its regulations.[13]  *See* Tex. Labor Code § 21.201 ("The complaint must be in writing and made under oath.").  Mr. Rains' TWC form did not meet the state agency's requirements for a "charge," and does not otherwise indicate Mr. Rains' intent to have the form dual-filed with the EEOC.  Indeed, the TWC expressly informed Mr. Rains it was not treating his filing as a charge, both through the clear disclaimer printed on Mr. Rains' form and again when the TWC "dismissed" his inquiry and confirmed that the agency did *not* dual-file Rains' pre-charge filing with the EEOC.  ECF No. 228-4 at 4 ("Submitting this Complaint Form DOES NOT represent filing a formal Charge of Discrimination."); ECF No. 228-6 at 2.  Thus, Mr. Rains' TWC

---

[12]      The Court assumed, for purposes of this discussion, that Mr. Rains' TWC submission "may [include] a specific request for remedial action" under *Holowecki*.  MTD Order at 23–24.

[13]      Even with the worksharing agreement between the TWC and the EEOC, the employee still has the burden to establish that he filed a timely "charge."  *See Connor v. Harris Cnty.*, 1992 WL 337420, at *5 (S.D. Tex. Sept. 17, 1992); *see also* EEOC, Fair Employment Practices Agencies (FEPAs) and Dual Filing, available at https://www.eeoc.gov/fair-employment-practices-agencies-fepas-and-dual-filing (state agency will only dual-file "charges" with EEOC).

form does not qualify as a "charge."  *See Ojedis v. JetBlue Airways Corp.*, 2008 WL 961884, at *5 (W.D. Tex. Apr. 9, 2008), *report and rec. adopted*, 2008 WL 11417026 (W.D. Tex. Sept. 17, 2008) (deeming unverified submission with TWC not to be a "charge" and explaining that "unlike *Holowecki*, the TWC did not treat Plaintiff's intake questionnaire as a charge, and in fact informed Plaintiff that it would *not* be preparing a charge of discrimination on his behalf").

Moreover, relation back cannot enable Mr. Rains to cure his failure to file a proper charge with the TWC.  Even under the EEOC's charge requirements, Mr. Rains' Texas pre-charge filing still does not constitute a "charge."  While a verification defect may be cured in some circumstances, the TWC dismissed Mr. Rains' pre-charge filing and never sent it to the EEOC. *See* ECF No. 228-6 at 2.  Because that happened, Mr. Rains' later-filed EEOC charge cannot "relate back" to the dismissed TWC form.  *See, e.g.*, *Univ. of Tex. at El Paso v. Isaac*, 568 S.W.3d 175, 186, n.10 (Tex. App. 2018) ("[A]n amendment filed after the file has been administratively closed by the EEOC would be treated as a new charge."); *Gonzales v. Pan Am. Labs., L.L.C.*, 2017 WL 4758672, at *9 (N.D. Tex. Oct. 20, 2017) ("Because Plaintiff's Intake Questionnaire and narrative do not qualify as a charge, there would be nothing to which a newly verified charge by Plaintiff would relate back.").  In short, Mr. Rains' defective TWC filing was not timely and he did not adequately exhaust his federal claims.

*Second*, Mr. Rains argues that being placed on unpaid leave "was not a discrete act of discrimination but a daily, ongoing discriminatory process."  Mot. at 23.  Despite Mr. Rains' emphasis on the allegedly "coercive" nature of unpaid leave, however, this argument fails for the same reasons it does for Ms. Medlin—a failure-to-accommodate claim accrues when the employee receives notice of the employer's adverse accommodation decision, not each time later adverse effects of that decision occur.  *See supra* at IV.A.

## V.     Further Amendments to the Pleadings Would be Futile and Inequitable.

Finally, Plaintiffs contend that, even if the Court were right to dismiss the claims at issue, it was wrong to dismiss with prejudice; and they thus seek leave to amend their complaint yet again.  Mot. at 2, 6, 25.  This fallback position fails too.

*First*, when there is a legal obstacle to a claim, a dismissal with prejudice is warranted.  *See Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004) ("A dismissal with prejudice is appropriate when amending a complaint would be futile.").  Here, for all the reasons discussed above, Plaintiffs cannot resuscitate their claims with new or additional factual allegations because (a) they were all treated better rather than worse because they requested accommodations; (b) Ms. Hamilton and Mr. Castillo suffered nothing more than *de minimis* burdens from their masking-and-testing accommodations; and (c) the undisputed factual record reflects that Messrs. Castillo and Rains and Ms. Medlin failed to timely exhaust their administrative remedies.

*Second*, Plaintiffs failed to submit a proposed amended complaint either during the motion to dismiss briefing or with their reconsideration motion.  That is fatal, as a plaintiff's "failure to provide and attach a proposed amended pleading alone [is] sufficient reason to deny [a] motion for leave to amend."  *Greer*, 2022 WL 394762, at *7.  Likewise, Plaintiffs, in opposing United's motion to dismiss, never sought an opportunity to replead their allegations or otherwise requested dismissal without prejudice.  Only now, having lost, do they want to do so.

*Third*, undue delay and prejudice to United justify rejection of any amendment at this stage of proceedings.  *Simmons*, 732 F.3d at 478.  Plaintiffs have already amended their complaint twice, and granting them "leave to retroactively bolster [their] allegations with a new complaint" at this late stage "would necessarily result in additional delay."  *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 2014 WL 107870, at *3 (E.D. La. Jan. 9, 2014).  That is especially so given this Court's "deep[ ] concern[] about the age of this case."  ECF No. 211 & n.1.

21

Allowing another amendment now would be especially problematic for purposes of the ongoing class certification briefing. United's opposition to class certification is due in 3 days. Its opposition does not, of course, address the dismissed Plaintiffs or the dismissed claims. Reviving the now-dismissed portions of the case prejudices United's ability to respond to the class certification motion and would require further extension of the deadlines or an additional round of class briefing. This Court has already granted numerous extensions, and stated that no further extensions would be granted absent extraordinary circumstances. ECF No. 233 & n.1. Plaintiffs' desire to try again to rehabilitate their failed claims is hardly an "extraordinary circumstance." Nor should United be forced to absorb the additional cost and delay of another round of class certification briefing. As this Court has indicated, the time has come to resolve this case one way or the other, and timely completion of the class certification briefing should go a long way toward accomplishing that goal.

## CONCLUSION

For the foregoing reasons, United respectfully requests that the Court deny Plaintiffs' motion for reconsideration in all respects.

Dated: February 6, 2024

Respectfully submitted,

/s/ *Russell D. Cawyer*
Russell D. Cawyer
TX Bar No. 00793482
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: +1.817.878.3562
Facsimile: +1.817.335.2820
Email: russell.cawyer@kellyhart.com

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626-1700
Email: dmunro@jonesday.com

Jordan M. Matthews
IL Bar No. 6300503
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60601
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Email: jmatthews@jonesday.com

Alexander V. Maugeri
NY Bar No. 5062666
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: +1.212.326.3939
Facsimile: +1.212.755.7306
Email: amaugeri@jonesday.com

**ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Russell D. Cawyer*

Russell D. Cawyer