UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DAVID SAMBRANO, individually and on behalf of all others similarly situated, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>*Defendant*. | Civil Action No.: 4:21-cv-01074-P |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

The Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. ---, 144 S. Ct. 967 (2024), provides powerful support for Plaintiffs' pending request for reconsideration of this Court's decision dismissing several of Plaintiffs' claims and concluding that some Plaintiffs had not sufficiently alleged an adverse employment action under Title VII. Doc. 231 at 3–7. In particular, the Court rejected the sufficiency of Plaintiffs' allegations about draconian masking-and-testing rules like those that banished employees to eating meals alone outside and other punitive measures United took to set certain employees apart to face ridicule and coercion. According to the Court, those events did not rise to the level of altering the "terms, conditions, or privileges of employment" because they did not clear the "*de minimis*" or "materiality" standard recently established by the Fifth Circuit. *Id*. This Court further concluded that "the '*de minimis*' and 'materiality' standards are one and the same." *Id.*

As already shown, that approach subjected Plaintiffs to an improperly high standard at the pleading stage, and the Court should grant Plaintiffs' motion for reconsideration. Doc. 241. But *Muldrow* provides further reason to reconsider that decision: the Supreme Court has now "change[d] the legal standard" for Title VII claims by "lower[ing] the bar … plaintiffs must meet" for showing an adverse employment action. 144 S. Ct. at 975 & n.2 (2024). Rather than requiring Plaintiffs to show a "material harm[]," they need only show "some harm." *Id.* at 972–73. Plaintiffs easily meet that standard.

1. There can be no dispute that *Muldrow* significantly altered the landscape for determining whether a plaintiff has identified a discriminatory impact to the terms, conditions, or privileges of employment. In *Muldrow*, the Supreme Court rejected the heightened standards that courts have applied when considering Title VII claims. A Title VII plaintiff "need *not* show that the injury [from discrimination] satisfies a significance" or materiality test, but rather must only "show *some*

harm" from the discrimination. *Id.* at 972–73 (emphases added). As Justice Kavanaugh correctly observed, this is "a relatively low bar" that a plaintiff "should easily be able to show[.]" *Id.* at 980 (Kavanaugh, J., concurring in the judgment). In fact, as Justice Kavanaugh further observed, that standard affords Title VII plaintiffs *many* ways to satisfy their burden by showing a harm in terms of: "money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effects on family obligations, or the like." *Id.* (Kavanaugh, J., concurring in the judgment).

In reaching this decision, the Supreme Court rejected the extra-textual standard that has infected many Title VII decisions, where courts reject "minor alterations of employment," requiring instead a showing of "material harm[]." *Id.* at 973. That approach led courts to look for claims about lost "title, salary, or benefits," ignoring claims of "only minor changes in working conditions." *Id.* In other words, this led courts to read "*de minimis*" as equivalent to "material."

The Supreme Court rejected that approach, holding that a Title VII plaintiff "does not have to show … that the harm incurred was 'significant' … or any similar adjective," such as material. *Id.* at 974. Rather, the plaintiff must only show that she was "treat[ed] worse" based on religious beliefs. *Id*. And nothing in the statute "says anything about how much worse." *Id.* And the worse treatment need not result in "economic or tangible" harm. *Id.* (quotation marks omitted). Simply put, "there is nothing" in the statute that "establish[es] an elevated threshold of harm." *Id.*[1]

---

[1] As Justice Kavanaugh put it: "The discrimination *is* harm." *Id.* at 980 (Kavanaugh, J., concurring in the judgment). United will no doubt point to criticisms of the majority opinion found in the concurrences from Justices Thomas and Alito. And United will likely suggest that there is still a "trifling harm" exception under Title VII that excuses their actions. *Id.* at 977 (Thomas, J., concurring in the judgment). But that ignores the import of the *Muldrow* decision, which is that companies cannot take intentional discriminatory action against their employees and employees are not obligated to make a materiality showing to prove discrimination. *Id.* at 976. As Justice Thomas notes, the change in employment terms (*i.e.*, working conditions) need only be "disadvantageous" in some respect. *Id.* at 977 (Thomas, J., concurring in the judgment).

2

2. *Muldrow* thus deals a fatal blow to United's repeated insistence that Plaintiffs must show *material* harm. Mot. to Dismiss at 2 (Doc. 209) (arguing that "material" and "more than de minimis" are equivalent (citing *Hamilton v. Dallas County*, 79 F.4th 494, 504 (5th Cir. 2023))). As United sees it, Title VII allows it to discriminate against its employees, provided it only discriminates a *little* bit or in trivial ways. As the playground adage goes: "no blood, no foul." But that standard, the Supreme Court has now confirmed, has no basis in Title VII's text. *Muldrow*, 144 S. Ct. at 972.

*Muldrow* also confirms that this Court's motion-to-dismiss decision must be reconsidered. In that decision, the Court noted that the Fifth Circuit in *Hamilton* "left 'for another day the precise level of minimum workplace harm a plaintiff must allege on top of showing discrimination in one's terms, conditions, or privileges of employment.'" Doc. 231 at 5 (quoting 79 F.4th at 505). And the Court nonetheless applied a materiality standard. *Id.* at 6 ("In other words, the '*de minimis*' and 'materiality' standards are one and the same."). But *Muldrow* answers this question, rejecting the materiality standard and confirming that a plaintiff need only show that she was "left worse off." 144 S. Ct. at 977. Further, *Muldrow* confirms that courts need not wade into "how much worse" off. *Id.* at 974. What matters is that there is "some injury" and "that the injury asserted concern the terms or conditions of" employment. *Id.* at 976.

Thus, with *Muldrow* in place, there is no need to search for post-*Hamilton* guidance about the level of harm sufficient to maintain a Title VII discrimination claim. Indeed, that inquiry led this Court to a conclusion *Muldrow* now rejects. The Court compared Plaintiffs' allegations about changed workplace conditions to the allegations in *Harrison v. Brookhaven School District*, 82 F.4th 427, 432 (5th Cir. 2023), where the plaintiff was subject to a "$2,000 out-of-pocket expenditure," and to the allegations in *Hamilton* about "the inability to take weekends off[.]"

3

Doc. 231 at 6–7. Using those allegations as the yardstick, the Court concluded that Plaintiffs Castillo and Hamilton had not identified sufficiently similar levels of harm. *Id.* But *Muldrow* rejects such a comparison. Rather, the test is whether Plaintiffs alleged "some harm" from United's actions, and the exact degree of harm is irrelevant. *Muldrow*, 144 S. Ct. at 972, 974.

3. As Plaintiffs already demonstrated, the Second Amended Complaint sufficiently alleges such harm in spades. Plaintiffs Hamilton and Castillo allege that United required them to wear respirators (not masks) without training or oxygenation breaks. SAC ¶¶ 116, 128 (Doc. 156). Further, Castillo alleges that this requirement put him "and his co-workers at significant safety risk" by limiting "his ability to communicate with colleagues during important maintenance activities." *Id.* ¶ 117. Plaintiffs also allege that United waged a campaign of coercion to pressure them to abandon their beliefs and health. *Id.* ¶¶ 49–56, 63–79. And this context is certainly "suggestive of intentional discrimination."[2] *Muldrow*, 144 S. Ct. at 976. Indeed, class discovery has confirmed that United wanted to punish employees with masking-and testing accommodations by making the policy sound "very serious" and terminating those who had just two infractions. *See* Doc. 239 at 23–26; Doc. 243 at App.72–73, 94, 130, 165; Doc. 243-1 at App.409, 443. Accordingly, Castillo's and Hamilton's allegations clearly suffice to state a claim, and the Court should apply *Muldrow* when reconsidering its decision dismissing their claims.

Additionally, *Muldrow* confirms that the remaining claims also satisfy the adverse employment action requirement, and the Court should grant Plaintiffs' certification motion. United

---

[2] As *Muldrow* confirms, these harms cannot be trivialized as merely the ordinary travails of the workplace. 144 S. Ct. at 976. Rather, the focus should be on whether the plaintiff has shown that the changes in the terms or conditions of employment were the result of discriminatory actions, where the employer took the actions "because of" sex, race, religion, or other protected trait. *Id.* That is precisely what Plaintiffs have alleged—and shown—here. United's actions were done intentionally to punish the dissenting voices who dared to claim an exemption from the mandate.

4

made the decision to put every Plaintiff on unpaid leave, and even though it later changed course because of this litigation, that universal decision altered the terms and conditions of each class member's employment—they were each singled out for harassment in the workplace and forced to plan for a transition to extended leave without pay. Doc. 242 at 17–18; Doc. 239 at 15–18. As explained above, even for those United subjected to the masking-and-testing protocols, those protocols altered Plaintiffs' employment in numerous and intentionally discriminatory ways. *See* Doc. 239 at 19–21. Thus, Plaintiffs who went on unpaid leave, those who suffered discrimination under the masking-and-testing regime, and those who retired under duress or who were terminated certainly meet the low bar set out in *Muldrow*—that the injury (of any sort or degree) "concern the terms or conditions of" employment.[3]  144 S. Ct. at 976.

\* \* \*

The central point of *Muldrow* is that Title VII only requires a plaintiff to show *some* disadvantageous change in their employment situation. Plaintiffs have alleged, and class discovery has confirmed, that United intentionally altered Plaintiffs' working conditions (via unpaid leave, onerous masking and testing, and transfers) to coerce and punish their inability to receive a COVID-19 vaccine. Plaintiffs maintain that even under previous standards they would prevail, but now, in light of the Supreme Court's lowering the standard for Title VII plaintiffs to demonstrate that they suffered harm from an employer's discrimination, the Court should grant Plaintiffs' motion for reconsideration and certify Plaintiffs' proposed class.

---

[3] The same is true for the other Plaintiffs who allege different harm. Employees such as Plaintiff Jonas, like the plaintiff in *Muldrow*, were transferred to less prestigious positions due to their beliefs or health. *See* Doc. 169 at 12 (explaining that Plaintiff Jonas's transfer to an Agent on Demand position caused her to lose union protection and the ability to work additional or overtime shifts). And, of course, subjecting all employees to a vaccine mandate and then stripping certain employees of their income undoubtedly impacted the terms and conditions of their employment.

5

<div style="display: flex;">
<div>

May 2, 2024

/s/ Mark R. Paoletta  
Mark R. Paoletta*  
D.C. Bar No. 422746  
Gene C. Schaerr*  
D.C. Bar No. 416368  
Brian J. Field*  
D.C. Bar No. 985577  
Cristina Martinez Squiers  
Texas Bar No. 24093764  
SCHAERR | JAFFE LLP  
1717 K Street NW, Suite 900  
Washington, DC 20006  
Telephone: (202) 787-1060  
Facsimile: (202) 776-0136  
mpaoletta@schaerr-jaffe.com

* Admitted *pro hac vice*

</div>
<div>

Respectfully submitted,

/s/ John C. Sullivan  
John C. Sullivan  
Texas Bar No. 24083920  
David Austin R. Nimocks  
Texas Bar No. 24002695  
S|L LAW PLLC  
610 Uptown Boulevard, Suite 2000  
Cedar Hill, TX 75104  
Telephone: (469) 523-1351  
Facsimile: (469) 613-0891  
john.sullivan@the-sl-lawfirm.com

</div>
</div>

Case 4:21-cv-01074-P   Document 260   Filed 05/02/24   Page 8 of 8   PageID 19155

## CERTIFICATE OF SERVICE

      On May 2, 2024, I filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF System).

      */s/ Brian J. Field*
      Brian J. Field