# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DAVID SAMBRANO, ET AL.,

  Plaintiffs,

v.                                             No. 4:21-cv-1074-P

UNITED AIRLINES, INC.,

  Defendant.

## OPINION & ORDER

Before the Court is United's Renewed Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint and Motion to Transfer Venue. ECF Nos. 209, 216. Having considered the Motions, the Court finds that United's Motion to Dismiss should be and is hereby **GRANTED in part**. United's Motion to Transfer Venue is **DENIED**.

## BACKGROUND

Plaintiffs are employed by United in a range of different roles and bring claims arising from United's COVID-19 vaccine mandate policy. On August 6, 2021, United announced that it would require all employees to get a COVID-19 vaccine. To that end, United mandated that employees be vaccinated by September 27, 2021. United employees could request an exemption from the mandate for religious or medical reasons, but not both. Ms. Hamilton, Ms. Kincannon, Ms. Medlin, and Mr. Burk requested religious exemptions; Ms. Jonas and Mr. Rains requested medical exemptions; and Mr. Sambrano and Mr. Castillo requested both religious and medical exemptions, but only Mr. Sambrano's religious exemption and Mr. Castillo's medical exemption were accepted.

In November 2021, United placed unvaccinated employees who received accommodations on indefinite unpaid leave. Some remained on unpaid leave until March 28, 2022; others were permitted to return to

work provided they wear a mask and submit regular COVID-19 test results. Plaintiffs sued on September 21, 2021, alleging employment discrimination and retaliation on behalf of themselves and other similarly situated employees. Plaintiffs say United violated the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII") by refusing to provide reasonable medical and religious accommodations and by retaliating against them for engaging in a protected activity (i.e., requesting an exemption). After two years, an appeal to the Fifth Circuit, and hundreds of filings, United filed the instant Motion to Dismiss in September 2023.

## LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). "Further, 'all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are not bound to accept as true legal conclusions couched as factual allegations. *See In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint must allege enough facts to move the claim across the line from conceivable to plausible. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether the plausibility standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

## ANALYSIS

United asserts six arguments in its Motion to Dismiss. *First*, United argues the Court should dismiss three Plaintiffs' Title VII failure-to-accommodate claims, arguing (1) Hamilton and Castillo have not sufficiently alleged that they suffered an adverse employment action, (2) United's accommodation for Hamilton, Castillo, and Jonas was reasonable as a matter of law, and (3) Hamilton, Castillo, and Jonas should be estopped from arguing the accommodation was unreasonable. *Second*, United argues Jonas and Rains's ADA claims should be dismissed because they have not shown they have a disability within the meaning of the ADA. *Third*, United argues all Plaintiffs' retaliation claims under Title VII and the ADA should be dismissed because (1) they did not engage in a protected activity by seeking an accommodation, and (2) United's accommodations were not retaliatory. *Fourth*, United argues (1) Medlin, Rains, and Castillo's claims are time-barred in full or in part, (2) All Plaintiffs' retaliation claims are beyond the scope of their EEOC charge, and (3) Jonas's Title VII claim is beyond the scope of her EEOC charge. *Fifth*, United asks the Court to dismiss all Plaintiffs' standalone "interactive process" claims. *Sixth*, United argues all Plaintiffs' request for a permanent injunction should be dismissed as moot. The Court addresses each argument in turn.

The Court agrees with United that (1) Hamilton and Castillo have not suffered an adverse employment action, (2) United did not retaliate against Plaintiffs for seeking an accommodation, (3) Medlin, Rains, and Castillo's claims are time-barred in full or in part, and (4) Jonas's Title VII claim is beyond the scope of her EEOC charge.

### A. Title VII Failure-to-Accommodate Claims

First, United argues that the Court should dismiss Hamilton, Castillo, and Jonas's Title VII failure-to-accommodate claims. United advances three arguments: (1) Hamilton and Castillo failed to adequately allege a materially adverse—or more than *de minimis*—employment action to state a prima facie claim; (2) even if all three Plaintiffs state prima facie claims, masking and testing is a reasonable accommodation as a matter of law; and (3) all three Plaintiffs should be

estopped from arguing that United's masking and testing protocol is unreasonable because they began this litigation by asking for a masking and testing option instead of indefinite unpaid leave.

    1.   <u>Castillo and Hamilton do not allege more than a *de minimis* adverse employment action.</u>

United argues that Hamilton and Castillo failed to allege an adverse employment action under Title VII that is either "material" or "more than *de minimis*." ECF No. 209 at 9. United argues that an adverse employment action must be "material," while Plaintiffs argue that it need only be more than *de minimis*. *See* ECF Nos. 209 at 9; 213 at 7. As the Parties endorse different standards, the Court starts by clarifying which applies.

In the Fifth Circuit, courts "analyze[] a Title VII claim for a failure to accommodate religious observances under a burden-shifting framework akin to the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), burden-shifting framework." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014). "The employee must first establish a prima facie case of religious discrimination." *Id.* (citing *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013)). "If she does, the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *See id.* (citations omitted). To establish a prima facie case of religious discrimination under Title VII, the plaintiff must present evidence that "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Id.* (citation omitted).

As to the fourth element of the prima facie case, the Fifth Circuit in *Hamilton v. Dall. Cnty.* explained that a plaintiff plausibly alleges Title VII discrimination by showing discrimination in hiring, firing, compensation, or the "terms, conditions, or privileges" of her employment. 79 F.4th 494, 502 (5th Cir. 2023) (citing 42 U.S.C. § 2000e-2(a)(1)). A plaintiff need not show an "ultimate employment decision."

*Id. Hamilton* left "for another day the precise level of minimum workplace harm a plaintiff must allege on top of showing discrimination in one's terms, conditions, or privileges of employment." *Id.* at 505 (internal quotations omitted). But *Hamilton* made clear that "Title VII [] does not permit liability for de minimis workplace trifles." *Id.* at 505.

*Hamilton* involved a sex-discrimination claim brought by female detention service officers against the Dallas County Sheriff's Department. *See id.* at 497. The department gave its detention service officers two days off each week, and used a sex-based policy to determine which two days an officer could pick. *See id.* Only men could select full weekends off—women could not. *See id.* The Complaint alleged that this sex-based system discriminated against the officers in the "terms, conditions, or privileges of employment." *Id.* at 504. The department argued that the plaintiffs had not suffered an actionable "adverse employment action" for purposes of a Title VII claim. *See id.* The department argued that to prove an adverse employment action, a plaintiff should be required to show—in addition to discrimination with respect to the "terms, conditions, or privileges of employment"—a "*materially adverse* employment action," a "*tangible* employment action," or an "*objective material* harm." *Id.* (emphasis added). Ultimately, the Fifth Circuit held that "whatever standard we might apply," whether it be a "*de minimis*" standard or a "materiality" standard, "it is eminently clear that the Officers' allegations would satisfy it at the pleading stage." *Id.* at 505. As the Fifth Circuit noted: "It's that simple. At the pleading stage, these allegations are sufficient to state a claim under Title VII." *Id.* Thus, the Fifth Circuit left district courts with little guidance as to the minimum workplace harm a plaintiff must show to state a prima facie discrimination claim.

The Fifth Circuit clarified the *Hamilton* standard in *Harrison v. Brookhaven Sch. Dist.*, explaining that:

> Title VII does not permit liability for *de minimis* workplace trifles. Thus, Harrison must allege not only an adverse action, but something more than a *de minimis* harm borne of that action. This is often referred to as the "materiality" half of the analysis . . . . To "discriminate" reasonably sweeps in some form of an adversity and a materiality threshold. It prevents the undefined

word "discrimination" from commanding judges to supervise the minutiae of personnel management. It ensures that a discrimination claim involves a meaningful difference in the terms of employment and one that injures the affected employee . . . . But we take these innovations to be shorthand for the operative words in the statute and otherwise to incorporate a *de minimis* exception to Title VII. *But de minimis means de minimis*, and shorthand characterizations of laws should not stray.

82 F.4th 427, 431–32 (5th Cir. 2023) (cleaned up) (internal citations and quotations omitted). In other words, the "*de minimis*" and "materiality" standards are one and the same. Materiality is a shorthand characterization of the well-established *de minimis* standard, which "has roots that stretch to ancient soil." *Id.* at 423. And thus, courts must give the *de minimis* standard its familiar meaning—"*de minimis non curat lex* (the law does not take account of trifles)." *Id.* Accordingly, a plaintiff alleges an adverse employment action if she alleges more than *de minimis* discrimination in the terms, conditions, or privileges of employment.

*Harrison* paints a clear picture of the *de minimis* standard in action. In *Harrison*, plaintiff LaRenda Harrison, a black female educator and school administrator, sued the school district for promising and then refusing to pay for her to attend a training program for prospective superintendents. *Id.* at 428. The only element of her claim at issue was whether she suffered an adverse employment action. *Id.* at 429. The court held that Harrison "alleges more than a *de minimis* injury inflicted on her by the School District's adverse action: the personal expenditure of approximately $2,000." *Id.* at 432. The Court explained that this "is not a *de minimis* out-of-pocket injury, particularly when that expense was originally promised to be paid by someone else." *Id.* Thus, the court concluded that "Harrison's injury clears the *de minimis* threshold." *Id.*

Having clarified the applicable standard, the Court must now ask if Hamilton and Castillo suffered more than a *de minimis* adverse employment action. Hamilton and Castillo allege that the masking and testing protocol "altered the conditions and terms of [their] employment." ECF No. 213 at 7–8. Specifically, they allege they were required to "provide regular COVID-19 test results," their workstations

were sprayed with Lysol "making it hard for [them] to breathe," they were "needlessly banished to eat outdoors," and they were required to "wear an N-95 respirator" as opposed to a KN-95 or cloth mask. ECF No. 156 at 27, 29. These, just as any personnel-management decisions, may have altered Hamilton and Castillo's terms, conditions, and privileges of employment. But unlike the $2,000 out-of-pocket expenditure in *Harrison* or the inability to take weekends off in *Hamilton*, the requirement to eat in designated areas, wear an FDA-approved mask at work, and submit COVID-19 test results do not clear the *de minimis* threshold.

To be sure, an injury need not be an "economically adverse employment action[]" to satisfy the *de minimis* threshold. *Harrison*, 82 F.4th at 430. But the *de minimis* standard prevents judges from supervising the "minutiae of personnel management." *Id.* at 431. The COVID-19 pandemic was a once in a century event, unprecedented in the modern era. If the *de minimis* standard excludes any workplace harm, surely it prevents judges from supervising a company's decisions regarding how employees' workspaces are sanitized, where employees take lunch, how often they submit COVID-19 test results, and the type of masks they wear. Employers across the country imposed these requirements in response to the COVID-19 pandemic, and trial courts should not be in the business of scrutinizing these details of personnel management in such extraordinary circumstances. *De minimis non curat lex*. The law does not take account of trifles.

Undoubtedly, *Hamilton* broadened the scope of Title VII from the previous "ultimate employment decision" test. *See Hamilton*, 79 F.4th at 497. In this regard, *Hamilton* brought the Fifth Circuit in line with Title VII's text and the approach taken by other circuits. *See id.* at 497, 504 n.62. And this Court will not expand the *Hamilton* standard into the sphere of these workplace trifles, absent clear direction from the Fifth Circuit. If such claims are allowed to survive at this stage, district courts would become "super-personnel departments." *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 214 (5th Cir. 2018) (citing *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006)). The Court is disinclined to so broaden the judiciary's role here.

Plaintiffs also argue United's initial decision to terminate Castillo and put Hamilton on unpaid leave constituted more than *de minimis* adverse employment actions, even though these decisions were never carried out. The Court disagrees. Hamilton and Castillo were never terminated or placed on unpaid leave. They never changed jobs or lost any pay, benefits, or opportunities. Thus, their "terms, conditions, or privileges" of employment were unaffected by United's unrealized decisions. Plaintiffs argue that these were "ultimate employment decisions," borrowing a phrase from the Fifth Circuit's pre-*Hamilton* standard. *See* ECF No. 213 at 7 ("The fact that this lawsuit forced United to walk back portions of its universal unpaid-leave plan does not erase United's previous ultimate decisions, which harmed Plaintiffs."). Setting aside the question of whether an unrealized decision would have passed the Fifth Circuit's prior test, the Court must apply the *Hamilton* test— the test that tethers the Court's analysis to the text of Title VII, asking whether a plaintiff has pled discrimination in "hiring, firing, compensation, or the 'terms, conditions, or privileges'" of employment. *Hamilton*, 79 F.4th at 497. Hamilton and Castillo were not fired, their compensation was not changed, and United's unpaid leave policy did not affect these Plaintiffs' terms, conditions, or privileges of employment. Plaintiffs nonetheless cling to the Fifth Circuit's outdated test because an ultimate employment "decision" was made, just not carried out. This argument is unavailing.

On the other hand, other employees who were actually placed on indefinite unpaid leave clearly suffered more than a *de minimis* adverse employment action—being deprived of their livelihood until such time as United saw fit for them to return to work. The same could be said for employees who lost responsibilities or were forced to change jobs. United does not argue—nor could it successfully—that these Plaintiffs do not satisfy the *de minimis* threshold. But Hamilton and Castillo, who were never terminated or placed on unpaid leave, do not clear this hurdle. The Court finds that Hamilton and Castillo have not established an essential element of their prima facie case because they were not subject to more than a *de minimis* adverse employment action. Accordingly,

Hamilton and Castillo's failure-to-accommodate claims are **DISMISSED with prejudice**.

2. <u>The Court declines to prematurely assess whether United's masking and testing protocol is a reasonable accommodation.</u>

Next, United argues that the Court should dismiss Hamilton, Castillo, and Jonas's failure-to-accommodate claims because masking and testing is a reasonable accommodation as a matter of law. The Court disagrees. "Whether an accommodation is reasonable is a question of fact." *Antoine*, 713 F.3d at 830–31 (citing *Turpen v. Mo.-Kan.-Tex. R.R. Co.,* 736 F.2d 1022, 1026 (5th Cir.1984)) ("We must uphold the district court's factual determinations on the interlocking issues of 'reasonable accommodation' and 'undue hardship' unless they appear clearly erroneous.")); *see also EEOC v. Universal Mfg. Corp.,* 914 F.2d 71, 73 (5th Cir. 1990) ("We need not embark on a long discussion of what is or is not 'reasonable' accommodation. Ordinarily, questions of reasonableness are best left to the fact finder."). Thus, whether an accommodation is reasonable is a fact-specific inquiry best left to the factfinder. Accordingly, the Court declines to dismiss Hamilton, Castillo, Jonas's failure-to-accommodate claim at the motion to dismiss stage.

3. <u>Plaintiffs are not estopped from arguing United's masking and testing protocol is unreasonable.</u>

Finally, United argues that Hamilton, Castillo, and Jonas should be estopped from arguing that United's masking and testing protocol was an unreasonable accommodation. Specifically, United believes the doctrine of judicial estoppel and "commonsense equitable principles" preclude these Plaintiffs from arguing the protocol was unreasonable because they "started out in this litigation by *demanding* masking and testing as an accommodation." *See* ECF No. 209 at 15 (citing ECF No. 6 at 19). This argument has certain intuitive merit, as Hamilton, Castillo, and Jonas, in initially seeking a temporary restraining order, argued "there are a host of reasonable accommodations that are not unduly burdensome, including: mask wearing . . . or periodic COVID-19 testing." ECF No. 6 at 19. The Court nevertheless remains unpersuaded.

The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position

inconsistent with a position they asserted in a prior proceeding. *See Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc). In determining whether to apply judicial estoppel, courts primarily look for the presence of the following criteria: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* at 574 (citations omitted). Judicial estoppel "is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (internal citations omitted) (cleaned up). But "[t]he presence of one or more of these elements does not mandate the invocation of judicial estoppel." *U.S. ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 272 (5th Cir. 2015) ("Because judicial estoppel is equitable in nature, trial courts are not *required* to apply it in every instance that they determine its elements have been met."). Rather, courts should determine if applying judicial estoppel is appropriate "in light of the specific facts of each case and the doctrine's purpose of 'protect[ing] the integrity of the judicial process.'" *Id.* at 272.

Focusing on the first criterion, Plaintiffs persuasively argue that the "[t]he issue here is not masking and testing in the abstract," but the specific masking and testing protocol United adopted. ECF No. 213 at 6. Hamilton, Castillo, and Jonas do not assert a "plainly inconsistent" position by later objecting to the specific protocol implemented by United. *See generally Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (applying estoppel because the plaintiff first argued that one defendant was the manufacturer of the product at issue and then later argued a different defendant was the manufacturer); *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-cr-240-G, 2007 WL 1308383, at *1 (N.D. Tex. May 4, 2007) (Fish, J.) (applying estoppel because the government first argued that documents were in its possession and then later argued that the documents were not in its possession). Accordingly, the Court declines to exercise its equitable

discretion to estop these plaintiffs from arguing United's specific masking and testing protocol was unreasonable.

## B. ADA Failure-To-Accommodate Claims

Second, United argues that the Court should dismiss Jonas and Rains's failure-to-accommodate claim under the ADA because they have failed to sufficiently allege that they have a disability. To prevail on an ADA failure-to-accommodate claim, a plaintiff must show: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *See Milteer v. Navarro Cnty., Tex.*, 652 F. Supp. 3d 754, 762 (N.D. Tex. 2023) (citing *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)).

The ADA defines a "disability" as (a) a physical or mental impairment that substantially limits one or more major life activities, (b) a record of such an impairment, or (c) being regarded as having such an impairment. *Id.* at 762 (citing 42 U.S.C. § 12102(1)). The ADA Amendments Act of 2008 requires the Court to interpret the term "substantially limits" as broadly as possible. *Id.* (citing 42 U.S.C. § 12102(4)(A)–(B)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Here, Jonas and Rains allege that they have disabilities within the meaning of the ADA. Jonas alleges that she has a "severe allergy disability." ECF No. 156 at 30. Jonas "cannot take medicines such as penicillin and has severe reactions to foods such as eggs and materials such as wool." *Id.* She must "tak[e] allergy medications each day and constantly carry[] a rescue inhaler and epi-pen with her in case she comes into contact with an environmental trigger." *Id.* Rains alleges that he has a "hereditary heart disease as well as heart stents and a repaired aorta" and a "history of allergic reactions—including anaphylaxis." *Id.* at 34–35.

11

At this stage, the Court must accept all well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and resolve all questions of fact and ambiguities in the substantive law in Plaintiffs' favor. *See Inclusive Cmtys. Project*, 920 F.3d at 899. Assuming Jonas and Rains's allegations are true, the Court may infer that these "severe allergies" substantially limit a major life activity. In Jonas's case, carrying an epi-pen implies that an encounter with an allergen carries a risk of life-threatening allergic reactions (most commonly anaphylaxis). During such an episode, it can be inferred that eating, speaking, breathing, thinking, communicating, or working may be substantially limited. These are all major life activities. *See* 42 U.S.C. § 12102(2)(A). Likewise, Rains's allegation that he has a history of anaphylaxis similarly implies that these major life activities would be limited during an anaphylactic episode. Thus, resolving all questions of fact in Plaintiffs' favor, the Court concludes that Jonas and Rains have sufficiently pleaded disabilities within the meaning of the ADA—at least at the motion to dismiss stage.

## C. Title VII and ADA Retaliation Claims

Third, United argues that the Court should dismiss all Plaintiffs' retaliation claims. Specifically, United advances two arguments: (1) all Plaintiffs have failed to show they engaged in a protected activity by seeking an accommodation, and (2) all Plaintiffs have failed to show that United retaliated against them for seeking an accommodation.

### 1. Plaintiffs engaged in a protected activity by seeking medical and religious accommodations.

Title VII and the ADA prohibit retaliation against an individual for engaging in a protected activity. *See* 42 U.S.C. §§ 2000e-3(a), 12203(a). In the Fifth Circuit, the court "applies the same analysis to ADA and Title VII retaliation claims." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). To state a Title VII retaliation claim, the plaintiff must allege facts that tend to establish: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)

(cleaned up). An employee has engaged in a protected activity when she has (1) "'opposed any practice made an unlawful employment practice' by Title VII" (the opposition clause) or (2) "'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII" (the participation clause). *Douglas v. DynMcDermott Petrol. Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (citing 42 U.S.C. § 2000e–3(a)).

Here, Plaintiffs base their retaliation claims on the theory that they "engaged in protected activity when they requested (or tried to request) religious [or medical] accommodations from United's vaccine mandate." *See* ECF No. 156 at 43, 45–46. United disagrees, arguing that Plaintiffs' accommodation requests were not protected activities. *See* ECF No. 209 at 15. Specifically, United argues that Plaintiffs did not "oppose" any unlawful employment practice by requesting an accommodation. *See id.*

In the context of the ADA, requesting a medical accommodation is a protected activity that satisfies the first element of a retaliation claim. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007) (holding an employee claiming retaliation for requesting reasonable accommodations established a prima facie case of retaliation under the ADA); *see also Tabatchnik v. Cont'l Airlines*, 262 Fed. App'x. 674, 676 (5th Cir. 2008) (per curiam) ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity."); *Cooper v. AT&T Corp./Lucent Tech.*, No. SA97-CA-0628-OG, 1998 WL 1784223, at *7 (W.D. Tex. Oct. 22, 1998) (Mathy, M.J.), *report and recommendation adopted sub nom.*, 1998 WL 1978660 (W.D. Tex. Dec. 8, 1998) (Garcia, J.) ("[A]lthough a person making [an accommodation] request might not literally 'oppose' discrimination or 'participate' in the administrative or judicial complaint process, she is protected against retaliation for making the request.").

Likewise, under Title VII, at least one court in the Fifth Circuit has held that a request for religious accommodation constitutes a protected activity. *See EEOC v. U.S. Steel Tubular Prod., Inc.*, No. 4:14-cv-02747, 2016 WL 11795815, at *16 (S.D. Tex. Aug. 4, 2016) (Harmon, J.). Indeed,

13

this is the EEOC's view. The EEOC's Compliance Manual states: "[p]rotected oppositional conduct includes actions such as . . . requesting reasonable accommodation for disability or religion." EEOC Compl. Man. § II-A(2)(e) (Aug. 2016); *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (explaining that the EEOC's compliance manual "reflect[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

Other courts that have considered this issue have adopted the EEOC's view. *See, e.g., Lewis v. N.Y.C. Transit Auth.*, 12 F. Supp. 3d 418, 449 (E.D.N.Y. 2014) (Townes, J.) (holding Muslim employee's refusal to remove khimar and request for religious accommodation were protected activities); *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) (Koeltl, J.) (holding Pentecostal bus driver's refusal to wear uniform and request for religious accommodation were protected activities); *Williams v. Wal–Mart Assocs. Inc.*, 2:12–CV–03821–AKK, 2013 WL 979103, at *3 (N.D. Ala. Mar. 8, 2013) (Kallon, J.) ("[R]equesting a religious accommodation and refusing to work due to First Amendment religious exercise was [a] 'protected activity.'").

For the moment, resolving any ambiguities in the controlling law in Plaintiffs' favor, the Court assumes that Plaintiffs' requests for medical and religious accommodations constituted protected activities for purposes of their retaliation claims.

### 2. United's accommodations were not retaliatory.

But United next argues that even if Plaintiffs' accommodation requests were protected activities, Plaintiffs have failed to show that United retaliated against them for seeking accommodations. *See* ECF No. 209 at 13. The Court agrees.

As previously discussed, to state a Title VII retaliation claim, a plaintiff must allege facts that tend to establish: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee*, 289 F.3d at 345 (cleaned up). In the retaliation context, an adverse employment action is one that might dissuade a reasonable worker from engaging in a protected activity,

such as "making or supporting a charge of discrimination," or in this case, requesting a reasonable accommodation. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (cleaned up); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) ("Title VII's antiretaliation provision prohibits an employer from discriminating against any of his employees for engaging in protected conduct."); *supra* Part (C)(1) (assuming requesting a reasonable medical or religious accommodation is protected conduct). This analysis is the same under both Title VII and the ADA. *See Seaman*, 179 F.3d at 301. To sustain a retaliation claim, a plaintiff must point to "actions that would have been materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006). Thus, the question is whether employees were treated materially worse than if they had not sought the accommodation at all, such that they would be deterred from seeking an accommodation. *See id.*

Here, assuming Plaintiffs engaged in a protected activity, Plaintiffs still fail to satisfy the second element of a retaliation claim—they did not suffer an adverse employment action. Plaintiffs argue that United "retaliated against them by imposing unreasonable and unlawful accommodations." ECF No. 213 at 12. Specifically, Plaintiffs argue that the looming possibility of being placed on indefinite unpaid leave was itself an adverse employment action because the accommodation would have dissuaded reasonable workers from seeking it in the first place. *See id.* at 13. But it is undisputed that unvaccinated employees who did not seek an accommodation were terminated for failing to comply with United's vaccine mandate. *See* ECF Nos. 209 at 14; 156 at 2. Thus, the question is whether United's indefinite unpaid leave policy would have dissuaded a reasonable worker from seeking an accommodation, given that failure get vaccinated or seek an accommodation would result in termination. No reasonable worker would be deterred by United's unpaid leave policy from seeking an accommodation if they knew the alternative was termination. Between these two choices, reasonable employees would (and did) seek an accommodation to avoid termination.

To be sure, the choice between termination and indefinite unpaid leave left many employees with no good options. But this is best

15

remedied by Plaintiffs' failure-to-accommodate claims. If the Court accepted Plaintiffs' position that United "retaliated against them by imposing unreasonable and unlawful accommodations," any arguably unreasonable accommodation could be said to "dissuade" workers from seeking it. ECF No. 213 at 12. Every failure-to-accommodate claim would also be a retaliation claim. The Court cannot allow the broad anti-retaliation provisions of Title VII and the ADA to swallow up the separate mandate that an employer reasonably accommodate its employees.

The interpretive cannon *lex specialis* dictates that if two legal provisions govern the same factual situation, the specific provision overrides the general. *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails."). Title VII and the ADA must be interpreted so that every word serves a purpose. Even if these statutes' broad anti-retaliation provisions covered Plaintiffs' allegation that United's unpaid leave policy was unreasonable, Plaintiffs' allegations are best governed by the statutes' mandate to reasonably accommodate. This is a separate cause of action with separate elements, each of which Plaintiff must prove to recover. To hold otherwise would erode the difference between a failure-to-accommodate claim and a retaliation claim.

But even if Plaintiffs could show they suffered an adverse employment action, Plaintiffs still fail to satisfy the third element of their retaliation claim. Plaintiffs cannot show a causal connection between the protected activity (seeking an accommodation) and the adverse employment action (United's unpaid leave policy). United's unpaid leave policy preceded Plaintiffs' request for an accommodation, so their request for an accommodation could not have "caused" the unpaid leave policy to be instituted in retaliation for Plaintiffs engaging in a protected activity. *Cf. Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *32 (5th Cir. Feb. 17, 2022) (Smith, J., dissenting); *see also Gee*, 289 F.3d at 345 (requiring "a causal connection . . . between the protected activity and the adverse employment action"). United created a system to accommodate its employees, and employees

participated in that system by requesting and receiving accommodations. The question of whether those accommodations were reasonable is a separate issue.

Each of these insufficiencies arise from Plaintiffs' attempt to fit a square peg into a round hole. This theory tasks the Court with articulating why exactly a square peg does not fit into a round hole. Ultimately, the answer is simple: Plaintiffs cry retaliation for United's supposed failure to reasonably accommodate. In so doing, Plaintiffs blur the line between these two causes of action, asking the Court to erode the difference between these claims. The Court declines to do so. Accordingly, Plaintiffs' retaliation claims under Title VII and the ADA are **DISMISSED with prejudice**.

### D. Time-Barred Claims

Fourth, United argues that the Court should dismiss several claims as time-barred and beyond the scope of Plaintiffs' EEOC charges. *See* ECF No. 209 at 23–27. Specifically, United argues (1) Plaintiffs Medlin, Rains, and Castillo's claims are time-barred in full or in part under the applicable statute of limitations, (2) all Plaintiffs' retaliation claims are beyond the scope of their respective EEOC charges, and (3) Plaintiff Jonas's Title VII claim is beyond the scope of her EEOC charge. *See id.*

After reviewing United's Motion and Plaintiffs' Response, the Court requested supplemental briefing on the timeliness of Medlin, Rains, and Castillo's EEOC charges, giving Plaintiffs an opportunity to demonstrate that they exhausted their administrative remedies. *See* ECF No. 224.

1. Medlin, Rains, and Castillo's claims are time-barred.

Under Title VII, plaintiffs must exhaust their administrative remedies by filing a discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). The same is true for ADA claims. *See id.* § 12117(a). "Failure to exhaust is not a procedural 'gotcha' issue. It is a mainstay of proper enforcement of Title VII remedies." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008). Consequently,

courts must dismiss any claims where plaintiffs fail to show administrative exhaustion. *See id.*

When using the EEOC's Public Portal to file a discrimination charge, the agency requires users to go through a multi-step process that includes: (1) submitting an online inquiry, (2) scheduling an interview with an EEOC representative, (3) participating in the interview, (4) allowing the representative to assist in charge preparation, and (5) editing and signing the formal "Form 5" charging document that is sent to the employer. *See Filing a Charge of Discrimination With the EEOC*, EEOC, https://www.eeoc.gov/filing-charge-discrimination (last visited Dec. 15, 2023).

United argues that Castillo did not file a charge with the EEOC within 300 days of the alleged unlawful employment action. *See* ECF No. 209 at 25. Indeed, Castillo filed formal (Form 5) charges on September 19, 2022—more than 300 days after the alleged unlawful employment action. *Id.*; *see also* ECF No. 156 at 5, 26–27. Castillo argues that his pre-charge filings are sufficient to constitute a charge. *See* ECF No. 227 at 4–6. Similarly, Rains and Medlin filed formal charges on November 3, 2022, but at least some of the alleged unlawful employment actions occurred more than 300 days before that date. *See* ECF No. 209 at 24–26. Like Castillo, Rains and Medlin argue that their online inquiry forms—filed by Rains in December 2021 and by Medlin in March 2022— are sufficient to constitute a charge. *See* ECF No. 227 at 6–9. Accordingly, the Court must determine whether Medlin, Rains, and Castillo's pre-charge filings were sufficient to constitute a charge.

The Supreme Court has clarified that any filing can deemed a "charge" if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). This is an objective standard based on a review of the filing. *See id.* The Fifth Circuit has held that preliminary filings may be deemed a charge under *Holowecki* if the preliminary filings specifically asked the EEOC to take remedial action. In *EEOC v. Vantage Energy Servs., Inc.*, the Fifth Circuit found an

intake questionnaire with "sparse content" constituted a charge when the employee checked a box stating: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." 954 F.3d 749, 755 (5th Cir. 2020). The court reasoned that checking this box "satisfies *Holowecki*'s additional request-to-act condition" because it "constitutes a clear manifestation of [plaintiff's] intent for the EEOC [to] take remedial action." *Id.*

But the online inquiry forms at issue here are an even more preliminary filing than the intake questionnaire at issue in *Vantage*. Online inquiry forms have no option to check a box requesting remedial action. *See Freeland v. Coors of Austin, L.P.*, No. A-14-CA-443-SS, 2015 WL 4744362, at *5, 8 (W.D. Tex. Aug. 10, 2015) (Sparks, J.). And courts have held that initial forms cannot constitute a charge where they "lack[] the request to act demanded by *Holowecki*." *Id.* at *7. As the court explained in *Freeland*:

> A review of the case law in this circuit applying *Holowecki* demonstrates courts analyzing intake questionnaires and any accompanying documents consistently identify a specific statement indicating a request to act when they deem a particular filing a charge . . . . In cases where there is an absence of any statement indicating a request for remedial action, courts in this circuit have held the intake questionnaire is not a charge and dismissed the plaintiff's claims.

*Id.* at *8 (collecting cases). Indeed, most courts in this circuit (including this Court) require that the filing contain a "specific request for EEOC action" to constitute a charge under *Holowecki*.[1] Accordingly, Medlin,

---

[1] *See, e.g., Perkins v. Starbucks Corp.*, No. 4:21-CV-4189, 2022 WL 17069145, at *5 (S.D. Tex. Nov. 17, 2022) (Hanks, J.) ("[T]he inclusion of or reference to supporting documentation, without an explicit request for the EEOC to take remedial action, does not make a filing a charge."); *Angelina v. Univ. of Miss. Med. Ctr.*, No. 3:14-CV-789-DPJ-FKB, 2015 WL 417846, at *3 (S.D. Miss. Jan. 30, 2015) (Jordan, J.) ("Nowhere in her submission does Angelina request any action or otherwise 'activate [the EEOC's] machinery and remedial processes.'")); *Nadesan v. Tex. Oncology PA*, No. 2:10-CV-239-J, 2011 WL 147570, at *5 (N.D. Tex. Jan. 18, 2011) (Robinson, J.) ("Nothing in Nadesan's Intake Questionnaire or attached supplement qualifies as a request that the EEOC take action."); *Asongwe v. Washington Mut. Card Servs. & subsidiaries*, No. 3:09-CV-0668, 2009 WL 2337558, at *3 (N.D. Tex. July 29, 2009) (Fish, J.) ("[T]he intake questionnaire completed by Asongwe states the name of the charged party and [it] alleges discrimination, but it fails to contain a request for remedial action."); *Evenson v. Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2008 WL 4107524, at *7

Rains, and Castillo's inquiry forms are charges only if the forms asked the EEOC to take remedial action.

<u>Medlin</u>—Medlin's claims stem from allegations that (1) United initially denied her religious accommodation "several weeks" after her August/September 2021 request, and (2) her March 9, 2022 discharge was unlawful. *See* ECF No. 156 at 37–38. Medlin submitted her online inquiry form on March 12, 2022, and included her contact information, general information about United, the reason for her dispute, and the reason she believed she was terminated. *See* ECF No. 228-8 at 183. Medlin's inquiry form did not contain any statement that "must be reasonably construed as a request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402. Medlin filed her EEOC charge on November 3, 2022. *See* ECF No. 228-8 at 178. Thus, her charge included all discrete acts that occurred after January 7, 2022—300 days before November 3, 2022. Accordingly, Medlin's EEOC charge was timely with respect to her allegation that she was unlawfully terminated on March 9, 2022. (which United does not dispute). Medlin has failed to show that her EEOC charge was timely with respect to United's alleged failure to reasonably accommodate—based on its denial of her August/September 2021 accommodation request.

Despite making no specific request for remedial action, Medlin argues that her online inquiry form should constitute a charge under *Holowecki* for purposes of both her failure to accommodate claim and her alleged unlawful termination. *See* ECF No. 227 at 12. This argument could apply to Rains and Castillo as well, so the Court will address it in full. Medlin argues that "[w]hen an employee reaches out to the EEOC indicating they have been fired for a religious belief, that is a sure indication that they want remedial action—there is no need for talismanic words such as 'please sue my employer.'" *Id*. This argument misses the point addressed in *Holowecki*.

In *Holowecki*, the Supreme Court attempted to define a "charge" in a way that allows the EEOC to "fulfill its distinct statutory function of

---

(N.D. Tex. Aug. 21, 2008) (Fitzwater, J.) (interpreting *Holowecki* as requiring a "specific request for EEOC action" for a filing to constitute a charge).

enforcing antidiscrimination laws and disseminating information about those laws to the public." 552 U.S. at 400–01; *see also* 42 U.S.C. § 2000e-4(g)(3) (noting that the EEOC shall have the power to "furnish to persons subject to this title such technical assistance as they may request"). Educating the public is "a critical part of the EEOC's mission; and it accounts for a substantial part of the agency's work." *Holowecki*, 552 U.S. at 401. If any communication that loosely alleged discrimination was considered a charge, countless individuals would unknowingly create a "charge" by taking their questions to the EEOC. *See id.* Thus, the Supreme Court devised a test to effect congress's dual-purpose for the EEOC and put in place a "mechanism to separate information requests from enforcement requests." *Id.*

This mechanism involves a two-step inquiry in considering whether a pre-charge filing constitutes a charge: (1) the filing must allege facts that describe the employer and the alleged unlawful employment practice, and (2) the filing must be reasonably construed as a request for the agency to take remedial action, based on an objective review of the terms of the filing. *See id.* at 402. As the Court noted in *Holowecki*, without the second element of the inquiry, any pre-charge filing could be construed as a charge—thereby undermining the dual-purpose of the EEOC. *See id.* at 401–02. The Court further explained:

> If an individual knows that reporting only minimal information to the agency will mandate the agency to notify her employer, she may be discouraged from consulting the agency or wait until her employment situation has become so untenable that conciliation efforts would be futile. The result would be contrary to Congress' expressed desire that the EEOC act as an information provider and try to settle employment disputes through informal means.

*Id.* at 401. The Supreme Court adopted the *Holowecki* test to hedge against this risk and support the EEOC's dual purposes.

The Court now turns to Medlin's argument that "[w]hen an employee reaches out to the EEOC indicating they have been fired for a religious belief, that is a sure indication that they want remedial action." *See* ECF No. 227 at 10. Not so. When *Holowecki* was decided in 2008, of about "175,000 inquiries the agency receives each year, it dockets around

21

76,000 of these as charges." *Holowecki*, 552 U.S. at 401. Plaintiffs ask this Court to hold that every employee who contacts the EEOC impliedly requests remedial action by virtue of their allegation of discrimination. Such a holding would contravene both *Holowecki* and Congress' intended dual-purpose of the EEOC. Instead, Plaintiffs must show, based on an objective review of their filings, that they asked the EEOC take remedial action. In the Fifth Circuit, this is evidenced by a specific statement requesting remedial action. Medlin's online inquiry form contains no such statement and thus cannot constitute a charge for purposes of United's alleged failure to reasonably accommodate.

But Medlin's formal November 3, 2022 charge was timely filed with respect to her alleged unlawful termination on March 9, 2022. And Medlin argues that even if her online inquiry form is not deemed a charge under *Holowecki*, her formal November 3, 2022 charge should encompass United's denial of her accommodation request. *See* ECF No. 227 at 10 n.5. Medlin argues that United's denial of her accommodation request was "the first step in a continuing process, culminating in her termination." *Id.* Thus, as Medlin sees things, United's denial of her request was not a discrete act of discrimination, but rather one part of a series of discriminatory acts leading to and including her March 9, 2022 termination. *Id.*

Under the continuing violation doctrine, plaintiffs do not have to show all alleged discriminatory conduct occurred within the actionable period if they demonstrate a series of related discriminatory acts, one or more of which fall in the limitations period. *See Felton v. Polles,* 315 F.3d 470, 487 (5th Cir. 2002). Discrete discriminatory acts, however, are not actionable if time-barred, even when they are related to acts complained of in timely filed charges. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). Some discrete acts are easy to identify, including "failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. Similarly, an employer's "failure to provide accommodations" is a discrete act that does not qualify under the continuing violation doctrine. *See Henson v. Bell Helicopter Textron, Inc.,* 128 F. App'x 387, 391 (5th Cir. 2005). Accordingly, United's denial of Medlin's accommodation request was not a continuing violation, it was a discrete

act. Even though Medlin did not require an accommodation until she returned to work—she was on maternity leave when she requested an accommodation—United's denial of her request occurred well before the 300-day window of her EEOC charge. Accordingly, Medlin's failure-to-accommodate claim is time-barred and must be **DISMISSED**. Insofar as she argues that her termination constituted retaliation for her engaging in a protected activity, her retaliation claim is not time barred, but it fails for other reasons. *See supra* Part (C)(2).

Rains—Rains's claims stem from allegations that (1) on September 8, 2021, he was not allowed to request a religious accommodation and (2) he received an inadequate accommodation in November 2021 after his medical exemption request was granted. *See* ECF No. 156 at 34–36. Rains submitted an online inquiry form to the EEOC on December 14, 2021, in which he provided his contact information, the reason for his dispute, and factual allegations about the alleged unlawful employment practice that occurred. *See* ECF No. 228-7 at 4. Rains's online inquiry form contains no specific statement requesting remedial action. *See id.* He did not ask the EEOC to take any action until he filed his charge on November 3, 2022—338 days after the last alleged unlawful act—nor did any pre-charge filing contain a statement that "must be reasonably construed as a request for the agency to take remedial action." *See Holowecki*, 552 U.S. at 402. Thus, Rains's pre-charge filings do not constitute a charge under *Holowecki*.

Rains argues that (1) his Texas Workforce Commission ("TWC") complaint requested remedial action and thus constitutes a charge under *Holowecki*, and (2) even if it does not, his EEOC charge is timely because it was filed within 300 days of an "ongoing violation." *See* ECF No. 227 at 9.

With respect to Rains's first argument, Rains filed a complaint with the TWC on September 21, 2021, in which he stated: "I hope through my pl[ight] and that of many others that are now suffering from these unconstitutional mandates[,] that to whom it may concern there may be a path to assist us legally and help us return to our jobs quickly and without [any undue delay]." ECF No. 224-8 at 5. This statement may be

a specific request for remedial action that would constitute a charge under *Holowecki*. However, this statement was filed with the TWC, not the EEOC, and the TWC declined to file a charge on his behalf because he had not yet been placed on unpaid leave. *See* ECF No. 227 at 4–5. After being placed on unpaid leave, Rains reached out to the TWC, but was "unable to obtain help from the TWC" and subsequently submitted a separate online inquiry form with the EEOC on December 14, 2021. His EEOC form did not contain a similar request for remedial action. *See* ECF Nos. 227 at 5; 228-7 at 2–5. Thus, none of Rains's pre-charge filings with the EEOC contained a statement that can be reasonably construed as a request for remedial action. Nor can his TWC complaint satisfy the requirements of a pre-charge filing with the EEOC. His separate, unsuccessful complaint with the TWC was not a request for remedial action with the EEOC, and thus does not satisfy *Holowecki*.

Next, Plaintiffs argue that Rains's formal November 3, 2022 charge was timely because United engaged in an "ongoing violation" throughout the period that Rains received an inadequate accommodation. But as discussed above, an employer's "failure to provide accommodations" are discrete acts [that] do not qualify under the continuing violation exception." *Henson*, 128 F. App'x at 391. Accordingly, United's alleged failure to accommodate Rains was not a continuing violation and his November 3, 2022 EEOC charge was not timely filed. Rains's claims must be **DISMISSED**.

<u>Castillo</u>—Castillo's claims stem from allegations that (1) United initially determined in September 2021 that his accommodation request was untimely, and (2) his October 2021 masking and testing accommodation was unreasonable. *See* ECF No. 156 at 26–27. Castillo first submitted an online inquiry to the EEOC on September 20, 2021, but his initial inquiry was closed by the EEOC and a second file was opened with a submission date of October 18, 2021. *See* ECF No. 227 at 2–4. Castillo is unable to produce the online inquiry he submitted on either September 20, 2021 or October 18, 2021, and nothing in the administrative record or in Castillo's written testimony indicates that Castillo made a specific request for remedial action in any pre-charge filings. Castillo's charge was filed on September 19, 2022—323 days

after October 31, 2021. *See* ECF No. 228-8 at 21. Accordingly, the record does not show that Castillo timely filed any materials that can be deemed a charge under *Holowecki*.

Castillo argues that his charge should be considered timely because (1) the EEOC prepared a charge for him to sign in April 2022, and (2) the EEOC's administrative record referred to his pre-charge filings as charges. *See* ECF No. 227 at 9. It is true that the EEOC prepared a charge for Castillo to sign on April 12, 2022 (within the 300-day window). *See* ECF No. 228-8 at 10. Castillo alleges he never received that message and the EEOC closed Castillo's inquiry on June 10, 2022. *See* ECF No. 227 at 3. Castillo's counsel contacted the EEOC in September 2022 and Castillo eventually signed and submitted a formal charge on September 19, 2022. *See id.* at 3. Castillo reasons that because the EEOC prepared a charge based on his pre-charge filings, the EEOC must have interpreted his pre-charge filings as a request for remedial action. Consequently, Castillo argues his unproduced online inquiry form should constitute a charge under *Holowecki*. *See id.*

A pre-charge filing, even if unsworn or unsigned, may constitute a charge if it satisfies *Holowecki*'s request-to-act condition. *See Vantage Energy Servs.*, 954 F.3d at 755. But "the EEOC's characterization of [a pre-charge filing] is not dispositive. What constitutes a charge is determined by objective criteria. *See id.* (citing *Holowecki*, 552 U.S. at 404 ("It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control.")). The fact that the EEOC prepared a charge for Castillo to sign based on his pre-charge filings is not dispositive, as the definition of a charge cannot depend on the EEOC's treatment of an online inquiry. Rather, the test is whether an employee's pre-charge filings contained a statement satisfying *Holowecki*'s request-to-act condition. It did in *Vantage*, but it does not here. *See id.* at 752 (holding employee's pre-charge intake questionnaire satisfied the request-to-act condition when he "check[ed] a box stating that he wanted 'to file a charge of discrimination' and 'authoriz[ing] the EEOC to look into the discrimination.'"). Castillo's online inquiry contained no such box, nor

can Castillo point to any statement in a timely-filed pre-charge document that asked the EEOC to take remedial action.

For the same reason, Castillo's second argument fails. The EEOC record indicates an agent "viewed *charge* details," referring to Castillo's online inquiry form. ECF No. 227 at 8. Castillo argues the EEOC's treatment of his inquiry as a charge is sufficient to satisfy *Holowecki*. *See id.* But again, the EEOC's treatment of a document as a charge is not dispositive—the only question is whether, based on an objective inquiry, the filing requested remedial action. Here, in the absence of such a request, the Court will not treat Castillo's pre-charge filing as a charge under *Holowecki*. Accordingly, Castillo's claims must be **DISMISSED**.

Plaintiffs finally argue that their delay can be attributed to the EEOC, which constitutes a basis for equitable tolling. *See* ECF No. 213 at 19. But the Court applies equitable tolling "when an employee seeks information from the EEOC, and the organization gives the individual incorrect information that leads the individual to file an untimely charge." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). Here, Plaintiffs have not alleged that the EEOC gave them incorrect information that led them to file an untimely charge. Accordingly, equitable tolling does not apply.

### 2. Plaintiffs' retaliation claims are not beyond the scope of their EEOC charges.

United also asks the Court to dismiss all Plaintiffs' retaliation claims as beyond the scope of their EEOC charges. *See* ECF No. 209 at 20. "[T]he claims an employee can bring in a lawsuit are limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Madaki v. Am. Airlines, Inc.*, No. 4:21-CV-0760-P, 2022 WL 227163, at *2 (N.D. Tex. Jan. 25, 2022) (Pittman, J.) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). But an employee is not required to check the box for retaliation on her EEOC charge to pursue a retaliation claim. *See Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Provided that "[t]he facts alleged in her EEOC charge could have reasonably been extended to

encompass a claim" for retaliation, an employee may pursue such a claim. *Id.* Thus, whether a claim is beyond the scope of an employee's EEOC charge depends on whether the claim arises from facts alleged in the charge. Here, as discussed in Part (C)(2), Plaintiffs' retaliation claims stem from the same factual allegations as their failure-to-accommodate claims. Plaintiffs, in essence, argue that United retaliated against them by failing to reasonably accommodate them. While these allegations don't support a retaliation claim, it cannot be said that the claim falls beyond the scope of Plaintiff's respective EEOC charges.

   3.   <u>Jonas's Title VII claims are beyond the scope of her EEOC charge.</u>

   Finally, United asks the Court to dismiss Jonas's Title VII claims as beyond the scope of her EEOC charge, which relates solely to disability discrimination. ECF No. 209 at 27; *see* ECF No. 210 at 15. The Court is not constrained to the four corners of an EEOC charge when determining the charge's scope. *See Fellows v. Univ. Restaurants, Inc.*, 701 F.2d 447, 448 (5th Cir. 1983) (looking beyond initial EEOC charge to entire resulting investigation); *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco*, 448 F.3d at 789) ("To balance [conflicting] considerations, 'this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself.'"); *Pacheco*, 448 F.3d at 789 ("We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label."). But here, the facts alleged in Jonas's EEOC charge could not have reasonably been extended to encompass her Title VII claim for religious discrimination.

   Plaintiffs' Second Amended Complaint makes only a passing mention of Jonas's religious objection to receiving the COVID-19 vaccine. *See* ECF No. 156 at 31 ("Ms. Jonas also wanted to submit a request for religious accommodation but was unable to do so because Help Hub permitted an employee to request only one type of accommodation."). Jonas's EEOC charge, on the other hand, does not discuss religious discrimination at all:

> I began my employment on or about September, 1984. My current position is United Club Representative. On or about August 6, 2021, I was notified by my employer that it would be requiring all employees to be fully vaccinated against Covid-19 by September 27, 2021. I am an individual with an impairment which substantially limits one or more major life activities. My doctor has recommended that I not take a COVID-19 vaccination because of my disability. My employer requires me to get a COVID-19 vaccination as a requirement of my job. During my employment, I requested a reasonable accommodation to Respondents Covid-19 vaccination mandate due to my disability. My request for accommodation was approved. However, Respondent requires that I submit to testing twice weekly and wear a KN95 mask. The same is not required of vaccinated co-workers. I am also assigned to work in a small, closed office. I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended. I believe that my employer discriminated against others because of their disability in violation of the Americans with Disabilities Act of 1990, as amended.

ECF No. 210 at 15. Even construing Jonas's charge liberally, the Court finds no facts to support a charge of religious discrimination. Thus, the facts in Jonas's EEOC charge could not have reasonably been extended to encompass her Title VII claim for religious discrimination.

Plaintiffs did not respond to United's argument that Jonas's Title VII claims are beyond the scope of her EEOC charge. Having considered the evidence of record, the Court finds that Jonas's Title VII religious discrimination claim is beyond the scope of her EEOC charge and must be **DISMISSED**.

### E. Interactive Process Claims

Fifth, United argues that the Court should dismiss Plaintiffs' "interactive process" claims because neither the ADA nor Title VII "contain[] a stand-alone requirement to follow an 'interactive process,' let alone imposes liability for failure to do so." ECF No. 209 at 21. Plaintiffs, on the other hand, say that "as Plaintiffs have repeatedly explained, they have not asserted such a claim. Rather, the lack of an interactive process goes to the unreasonableness of United's accommodations." ECF No. 213 at 21 (citing *Guerra v. United Parcel*

*Serv., Inc.*, 250 F.3d 739, 2001 WL 274296, at *3 (5th Cir. 2001) ("When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.")). Thus, Plaintiffs assert that "there is no standalone interactive-process claim to dismiss here." *Id.* United's Reply did not address this issue further. *See* ECF No. 215. Accordingly, the Court agrees with Plaintiffs' assertion that there is no standalone interactive-process claim to dismiss.

### F. Request for Permanent Injunction

Sixth, United argues that the Court should dismiss Plaintiffs' request for a permanent injunction for two reasons: (1) the request is moot since the contested vaccine policy is no longer in effect, and (2) the Court should decline to exercise its equitable discretion to grant injunctive relief. *See* ECF No. 209 at 22–25.

The doctrine of mootness is a jurisdictional matter. *See Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017). "A claim is moot when a case or controversy no longer exists between the parties." *Id.* Mootness "can arise in one of two ways: First, a controversy can become moot when the issues presented are no longer live. A controversy can also become moot when the parties lack a legally cognizable interest in the outcome." *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (internal citations and quotation marks omitted).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The doctrine of voluntary cessation evaluates the risk that a defendant is engaging in "litigation posturing" to avoid judicial review. *See Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018); *Aladdin's Castle*, 455 U.S. at 289 n.10. Thus, when a defendant's voluntary cessation moots a plaintiff's claim, the defendant bears the "heavy burden" to make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.*, 528 U.S. 167, 189 (2000). "A controversy may remain to be settled in such

circumstances," namely "a dispute over the legality of the challenged practices." *United States v. W. T. Grant Co.*, 345 U.S. 629, 631 (1953). Because "[t]he defendant is free to return to his old ways" once the litigation is ended, public interest weighs in favor of "having the legality of the practices settled." *Id.*

Here, United voluntarily ended the vaccine mandate that Plaintiffs challenge, triggering the voluntary cessation doctrine. United has not satisfied its "heavy burden" of showing it is "absolutely clear" that the challenged conduct could not reasonably be expected to recur. United argues that the decision to lift the vaccine mandate was not solely the result of United's decision-making, but also a result of a change in the underlying factual circumstances—the decline of the "delta variant surge in 2021." ECF No. 209 at 23. United argues that another COVID-19 surge or a new pandemic is unlikely, and thus, United is unlikely to reimpose its vaccine mandate. *See id.* But United falls short of showing it is "absolutely clear" that United would not impose a vaccine mandate in the future. Accordingly, there is an interest in having the legality of United's vaccine mandate settled.

In the alternative, United invites the Court to decline to exercise its equitable discretion because "the facts and circumstances have changed substantially." ECF No. 209. But because there is an interest in having the legality of United's vaccine mandate settled, the Court declines this invitation.

### G. United's Motion to Transfer Venue

Finally, in addition to United's Motion to Dismiss, United has filed a Motion to Transfer Venue. ECF No. 216. Pursuant to 28 U.S.C. § 1404, United seeks to transfer this case to the Northern District of Illinois. *See id.* at 1. Section 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). In assessing a motion to transfer under § 1404(a), courts must weigh various non-exhaustive private and

public interest factors, none of which is given dispositive weight.[2] *Id.* at at 315 (citations omitted).

The Court finds that United's delay in bringing this Motion and the accompanying practical problems that would result from a transfer at this time weigh strongly against transfer. Among other things, transferring the case at this stage would result in increased costs and a substantial delay in the expeditious resolution of Plaintiffs' claims. Further, this Court is already painfully familiar with the complexities of this case, which again weighs against transfer. Public interest factors do not save United's Motion. The Northern District of Illinois, like this Court, has a highly congested docket, a substantial part of United's actions occurred in this District, and this Court is deeply familiar with the controlling law that governs this case.

The Court would have gladly entertained this Motion two years ago when this litigation commenced, but United's Motion comes after years of litigation and hundreds of case filings.[3]

Accordingly, United's Motion to Transfer Venue is **DENIED**.

## CONCLUSION

For the reasons outlined above, United's Motion to Dismiss (ECF No. 209) is **GRANTED in part**. United's Motion to Transfer Venue (ECF No. 216) is **DENIED**.

---

[2]The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am.*, 545 F.3d at 315. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

[3] This case is now one of the oldest active civil cases on the Court's docket, yet the progress towards resolving it has seemed painfully slow. President Biden stated that the Covid 19 pandemic was "over" in the fall of 2022. *See* 60 Minutes (@60Minutes), X (Sept. 18, 2022, 7:09 PM), https://tinyurl.com/2s35maau. The time has come to resolve this lawsuit and move on. Transferring this case to a new court would only delay matters further. The Court is confident that this matter will be tried or otherwise disposed of in 2024.

All Plaintiffs' retaliation claims under Title VII and the ADA are **DISMISSED with prejudice** because United's unpaid leave accommodation was not retaliatory. Castillo's failure-to-accommodate claim is **DISMISSED with prejudice** as time-barred and for failure to satisfy his prima facie discrimination case. Hamilton's failure-to-accommodate claim is likewise **DISMISSED with prejudice** for failure to satisfy her prima facie discrimination case. Medlin's failure-to-accommodate claim is **DISMISSED with prejudice** as time-barred. Rains's failure-to-accommodate claims under Title VII and the ADA are **DISMISSED with prejudice** as time-barred. Jonas's Title VII failure-to-accommodate claim is **DISMISSED with prejudice** as beyond the scope of her EEOC charge. And Medlin's failure-to-accommodate claim is **DISMISSED with prejudice** as time-barred.

**SO ORDERED** on this **18th day of December 2023.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATED DISTRICT JUDGE

32